**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

| | | |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | No. 4:08-CR-00016 |
| | : | |
| -v- | : | **CAPITAL § 2255 PROCEEDINGS** |
| | : | |
| DAVID ANTHONY RUNYON, | : | HON. REBECCA BEACH SMITH |
| Defendant/Movant | : | |
| | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF
MOTION FOR APPOINTMENT OF CO-COUNSEL**

DAVID ANTHONY RUNYON, by his direct appeal counsel and their Virginia-barred associate, previously asked this Court to appoint two experienced habeas attorneys to represent him in pursuing any and all available postconviction remedies, including the investigation, preparation, and prosecution of a motion for postconviction relief pursuant to 28 U.S.C. § 2255. The Court appointed CJA Attorney Michele J. Brace but declined to appoint a second attorney at that time. It said, "To the extent that circumstances arise in the future to warrant the appointment of an additional attorney, and upon a motion filed by Ms. Brace, this court will consider the subsequent appointment of a second qualified attorney for collateral review proceedings in this court." ECF No. 410 at 12. Those circumstances exist. In the accompanying motion, Runyon therefore asks the Court to appoint Federal Defender Services of Eastern Tennessee, Inc., and Dana Hansen Chavis, Supervisor of the capital habeas unit at that defender organization, to be co-counsel.

**A.  Runyon's Case Presents Specific Reasons for Additional Counsel.**

Review of the record has proved to be unusually time-consuming in this case. It involves

1

over 24,000 pages of discovery, nineteen days of trial, and more than 300 marked government exhibits. In addition, it includes the voluminous combined files of three different defense lawyers that, as received by postconviction counsel, were not separated, indexed, or usefully organized. As a result, review of these records has consumed a substantially greater amount of time than anticipated.

To identify issues and develop and prepare a competent habeas motion by October 6, 2015, when the statute of limitations expires, will require the resources of at least one additional highly experienced habeas attorney. This is necessary because of the nature of the work that remains to be done *after* review of the record and files, and because the remaining investigation, work with experts, claim identification, and drafting of pleadings exceeds Attorney Brace's capacity to competently develop and prepare the motion on her own.

### 1.  The Nature of the Work that Remains in This Case

Review of the record is an essential starting point, but it is just the beginning step. As the American Bar Association has succinctly observed:

> Collateral counsel cannot rely on the previously compiled record but must conduct a thorough, independent investigation. . . . As demonstrated by the high percentage of reversals and disturbingly large number of innocent persons sentenced to death, the trial record is unlikely to provide either a complete or accurate picture of the facts and issues in the case. That may be because of information concealed by the [government], because of witnesses who did not appear at trial or who testified falsely, because the trial attorney did not conduct an adequate investigation in the first instance, because new developments show the inadequacies of prior forensic evidence, because of juror misconduct, or for a variety of other reasons.

"Duties of Post-Conviction Counsel," *ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (rev. 2003 ed.), Guideline 10.15.1 Commentary B (footnotes omitted) (printed at 31 Hofstra L. Rev. 913, 1085-86 (Summer 2003)), available at

http://www.americanbar.org/content/dam/aba/migrated/2011_build/death_penalty_representation/2003guidelines.authcheckdam.pdf.[1]

In Runyon's case, the inappropriateness of relying on the pre-trial investigation performed by the defense is greatly amplified because much of trial counsel's underlying investigation may be tainted or incomplete. The private investigator appointed to work for the defense was retired police detective Robert Glenn Ford who, at the time he was investigating the facts relating to Cory Voss's death and Runyon's purported involvement, had been engaged in an extensive practice of criminal conduct that included making false statements about the facts of cases he had investigated. He was indicted barely five months after the entry of judgment in Runyon's case. *See United States v. Ford*, 470 Fed.Appx. 146 (4th Cir. Apr. 3, 2012) (affirming Ford's convictions and 12½-year sentence for extortion under color of official right and five counts of making false statements). Accordingly, post-conviction counsel cannot take the work product of the defense investigator—or the litigation decisions made by trial counsel in reliance on that work product—at face value. At a minimum, this extraordinary circumstance compels postconviction counsel to scrutinize all of Ford's work with skepticism and, wherever there is any doubt, to organize and direct a new and potentially extensive reinvestigation.

In this respect, and without prematurely disclosing specific potential claims being investigated, Runyon's case needs co-counsel who is intimately familiar with the legal principles governing collateral claims, whose experience enables her to recognize the kinds of facts that can give rise to a persuasive collateral attack, and who understands the important differences between issues that are appropriately raised in postconviction proceedings and those that can

---

[1] The U.S. Supreme Court repeatedly recognizes that the Guidelines adopted by the American Bar Association are guides to the prevailing norms of professional practice. *See, e.g., Padilla v. Kentucky*, 559 U.S. 356, 366-67 (2010), and cases cited therein.

succeed only if raised at trial or on direct appeal. Postconviction counsel's tasks will include, for example, spotting facts that give rise to the right kinds of issues in the record; planning and supervising the necessary and extensive investigations so they are appropriately targeted and stay within the scope of what can be considered and reviewed in collateral proceedings; drafting discovery requests and reviewing the discovery production; obtaining public and private records from a wide variety of sources; identifying important facts or legal issues that trial counsel unreasonably overlooked or ignored; and identifying, vetting, and working with potential experts. Counsel also must have experience representing defendants who are mentally or emotionally impaired (and whose family members also may be impaired)—a circumstance that experienced habeas lawyers in capital cases frequently have encountered, and that may have had relevance for Runyon's mens rea, as well as for issues at the sentencing trial. Attorney Brace has identified and begun many of these tasks but will need assistance to be able to appropriately complete them for this Court's consideration.

Postconviction counsel also must consider the aggravating and mitigating evidence related to punishment, looking not only at what trial counsel obtained or reviewed, but also discovering and identifying important facts that trial counsel failed to uncover or unreasonably failed to present. Ford conducted part of the mitigation investigation, which raises the same concerns noted above and underscores the need for further supervised investigation. In addition, postconviction counsel has identified important red flags in defense counsel's mitigation investigation, including the critical fact that trial counsel developed scant or little information about the period of Runyon's life in the several years before the offense, failed to obtain important records related to Runyon's social history, and may have botched the investigation. In addition, the fact that trial counsel presented no mental health evidence at trial requires particular

attention, given some of the evidence undersigned counsel has already uncovered.

Furthermore, postconviction counsel must look for possible wrongdoing by others involved in the trial process—not just by trial counsel but by other actors as well—and must be aware of the legal standards that govern each such claim. *See, e.g. Wolfe v. Clarke*, 691 F.3d 410 (4th Cir. 2012) (affirming grant of postconviction relief where prosecutors failed to disclose evidence that would impeach their key witness; *Williams v. True*, 39 Fed.Appx. 830 (4th Cir. June 21, 2002) (affirming grant of postconviction relief where jury forewoman failed to disclose that deputy sheriff who investigated the murder was her former husband and that the trial prosecutor was her attorney in the divorce proceedings); *Bracy v. Gramley*, 520 U.S. 899 (1997) (allowing postconviction discovery where evidence showed that trial judge was taking bribes in other cases). These kinds of wrongdoings can be unearthed only through investigation outside the record.[2]

Brace also has identified some discrete instances of potentially ineffective assistance of counsel on direct appeal, and these need to be investigated. Brace also is aware of a second law enforcement officer—Clifford Dean Posey, who worked an agent for the United States in its investigation and prosecution of this case—who was engaged in criminal conduct at that time and has since been convicted of multiple felonies, including four counts of making false statements. *See United States v. Posey*, No. 3:11-cr-94, ECF No.38 (E.D. Va., Sept. 21, 2011). Only extra-record investigation can reveal whether, and to what extent, Posey engaged in misconduct that benefitted the United States and thereby tainted the prosecution of Runyon's case. Runyon certainly cannot ignore this possibility, but instead must explore it.

---

[2] At present, counsel's investigation of possible juror misconduct is limited to a review of public records and public information. As this Court has ordered, there will be no contact with any juror or prospective juror without a court order. ECF Nos. 422 and 423.

Given the time available and the enormous amount of work that still needs to be done, it is essential that Runyon be represented by two experienced habeas lawyers working in tandem. A common division of tasks in these situations is for one lawyer to focus on identifying and developing all the facts that give rise to and support the collateral claims, and for the second attorney, at the same time, to research the applicable substantive and procedural law relating to each such claim, and to take a primary role in drafting the habeas motion. Undersigned counsel cannot accomplish all of this in such a large case, and within the time available, without the assistance of co-counsel.

**2. The Remaining Work Exceeds Attorney Brace's Capacity.**

When the Court appointed Brace on the motion of direct appeal counsel, the Court may have believed that Brace would have additional litigation support from her employer, the Virginia Capital Representation Resource Center (VCRRC)—in the sense that legal colleagues and support staff at VCRRC would be working with her on Runyon's case. *See* ECF No. 426 at 6 (sua sponte granting Brace permission "to share the [sealed] documents with her legal colleagues and support staff at the Virginia Capital Representation Resource Center"). While that belief may have been reasonable, it was mistaken. VCRRC's commitment to other matters has precluded it from providing Brace with such assistance. *See* ECF No. 425 at 2 n.2 ("Other than Attorney Brace, no lawyer or nonlegal staff member at the Virginia Capital Representation Resource Center has been—or will be—available to work on Runyon's case").

For her part, Brace offered herself for appointment in Runyon's § 2255 case in the belief that this Court would follow the practice of every other federal court and would appoint two attorneys pursuant to 18 U.S.C. §3599 and that these lawyers would work on the case together in complementary fashion. She also believed that Runyon would have the additional voluntary

assistance of a third lawyer (Farber) acting pro bono.[3] Brace's beliefs also were reasonable but mistaken. The Court appointed a single lawyer rather than two. Moreover, the Court's most recent order raises questions about Farber's continuing ability to provide voluntary assistance on issues that do not implicate his performance on direct appeal. ECF No. 426. Recognizing the Court's concerns, Brace applies to the Court now for independent assistance in the time remaining on the statute-of-limitations clock.

An additional constraint on Brace's time in this case is that since August 2014, she has been one of two lawyers with responsibility for the direct appeal in another capital case. The opening brief in that case presently is due to be filed in late July, and the preparation of that brief diminishes the time Brace can spend on Runyon's case. In these circumstances, the limited time available is directly related to the need for co-counsel who is highly experienced in capital habeas litigation—someone who can jump into all aspects capital habeas litigation without overcoming a learning curve, and who can begin work immediately.

**B. The Federal Defender Services of Eastern Tennessee, Inc., Is Available Immediately To Be Appointed as Co-Counsel, and It Has the Resources to Investigate, Research, and Develop Claims Within the Time Remaining Before Expiration of the Statute of Limitations.**

Runyon has been extremely fortunate to learn that the Federal Defender Services of Eastern Tennessee, Inc. (FDSET), which is a Federal Community Defender Organization established under 18 U.S.C. §§ 3006A(a) and 3006A(g)(2)(B), is both available and prepared to

---

[3] Brace has always recognized that the lawyers who represented Runyon on direct appeal had a potential conflict of interest and that they could not investigate, develop, or present claims that might challenge the adequacy of their own performance. But Brace also recognized that in two analogous cases, *Juniper v. Davis*, 737 F.3d 288 (4th Cir. 2013), and *Gray v. Pearson*, 526 Fed.Appx. 331 (4th Cir. 2013), the court of appeals indicated that potentially conflicted counsel could continue to represent the habeas applicant on unconflicted issues so long as the applicant was represented, in addition, by an independent lawyer who could address the issues that were subject to potential conflict.

represent Runyon immediately as Brace's co-counsel. FDSET has extensive capital habeas expertise, and its current availability will be critical to getting a comprehensive § 2255 motion filed within the statute of limitations period on Runyon's behalf. As required, the chief judges of both the Fourth Circuit and the Sixth Circuit were given notice, and neither objected to the proposed out-of-district appointment in this case.

Runyon respectfully asks the Court to appoint FDSET, and Dana Hansen Chavis, Supervising Assistant Federal Defender, to represent Runyon. Chavis is the supervising attorney of FDSET's specialized capital habeas unit. See Ex. 1 (Chavis resume). She is fully qualified for appointment under 18 U.S.C. § 3599, as her resume shows.[4] She not only has extensive experience representing death-sentenced prisoners in collateral proceedings in state and federal courts, but also has skill in planning and supervising investigations—an aspect of postconviction representation for which Brace has had more limited experience. Chavis is prepared to work personally and immediately on Runyon's case. Importantly, she is prepared to assign a second experienced capital habeas attorney, Assistant Federal Defender Susanne Bales, to work with her on this case. Chavis also will have access to the defender organization's support staff. The deep experience and quick availability of this team is critical to Runyon's case because of the limited time remaining: the statute of limitations for filing his § 2255 motion expires on October 6, 2015.

Moreover, Chavis can represent Runyon in a manner that is efficient and cost-effective for several reasons. First, she and her colleagues have extensive experience representing defendants in precisely this kind of case. The FDSET's capital habeas unit has operated since 1996, and it has handled a broad and diverse group of habeas cases in federal courts. Second,

---

[4] Although Chavis is not yet admitted in the Fourth Circuit, she is fully qualified under 18 U.S.C. § 3599(d) because her background, knowledge, and experience—including admission to the Sixth Circuit since 1999—otherwise enable her to properly represent the defendant.

consistent with each district's Criminal Justice Act Plan, the defender employees are on salary from their defender organization. They cannot seek payment from this Court for any staff member's time or expenses on this case, or for any other related services that they obtain.

FDSET is headquartered in Knoxville, Tennessee, which is geographically well-situated for the aspects of Runyon's case that require travel and investigation. Although a number of potential witnesses have moved since Runyon's trial, most are still located in the Midwest and the South, in areas where FDSET staff travel regularly on other cases. Moreover, there are several flights each day between Knoxville and Norfolk when co-counsel's presence is needed for in-court proceedings.

Chavis is not currently a member of the Virginia Bar. Postconviction counsel has assembled the necessary paperwork and is prepared to petition for Chavis' admission *pro hac vice* immediately, should the Court enter an order granting Chavis' appointment.

WHEREFORE, Runyon respectfully requests that the Court appoint the Federal Defender Services of Eastern Tennessee, Inc., and Dana Hansen Chavis, to represent him in collateral proceedings under § 2255. Chavis' contact information is:

Dana Hansen Chavis
Supervising Assistant Federal Defender
Federal Defender Services of Eastern Tennessee, Inc.
800 South Gay Street, Suite 2400
Knoxville, TN 37929-9714
Phone (865) 637-7979
Fax (865) 637-7999
Dana_Hansen@fd.org

A proposed order accompanies this motion.

                                Respectfully Submitted,


                              _____/S/_____

Michele J. Brace
Virginia State Bar No. 36748
Virginia Capital Representation Resource Center
2421 Ivy Road, Suite 301
Charlottesville, VA 22903
Telephone (434) 817-2970
Fax (434) 817-2972
mbrace@mindsort.com

Dated: May 20, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2015, I have electronically filed the foregoing Memorandum in Support of Motion for Appointment of Co-Counsel with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Brian J. Samuels
U.S. Attorney's Office
Fountain Plaza Three
721 Lakefront Commons
Suite 300
Newport News, VA 23606
(757) 591-4032
Brian.Samuels@usdoj.gov

Lisa Rae McKeel
U.S. Attorney's Office
Fountain Plaza Three
721 Lakefront Commons
Suite 300
Newport News, VA 23606
(757) 591-4000
Lisa.McKeel@usdoj.gov

                                         /S/
Michele J. Brace
Virginia State Bar No. 36748
Virginia Capital Representation Resource Center
2421 Ivy Road, Suite 301
Charlottesville, VA 22903
Telephone (434) 817-2970
Fax (434) 817-2972
mbrace@mindsort.com