**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

—————————————————                   :

UNITED STATES OF AMERICA,           :          No. 4:08-CR-00016

                                    :

          -v-             :     **CAPITAL § 2255 PROCEEDINGS**

                                    :

DAVID ANTHONY RUNYON,               :      HON. REBECCA BEACH SMITH
Defendant/Movant

                                    :

                                    :

—————————————————                   :

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
FOR COPIES OF GRAND AND PETIT JURY SELECTION RECORDS**

### Introduction

On July 29, 2015, undersigned counsel for defendant David Anthony Runyon sent a letter to the Clerk of the Court asking for copies of certain records related to the selection of the venire in Runyon's case, including voter registration lists, master jury wheels, certificates, orders, reports, and information about the computer program used to facilitate the random selection of potential jurors. In doing so, counsel followed the procedure used for obtaining these documents in the Eastern District of Texas, with which she had some familiarity. On August 3, 2015, the Court indicated by letter that counsel's request for these materials must be made to the Court rather than to the Clerk, and that it must be made by motion rather than by letter. In compliance with this instruction, counsel has filed such a motion, expanded to include information related to the grand jury, and the motion is supported by this memorandum.

### The Materials That Runyon Requests

Runyon asks the Court to direct the Clerk to provide the following materials that were

1

used in the selection of the venire in his case:

1.      A CD containing the three voter registration list databases from which names were selected for the 2007, 2009, and 2011 Master Jury Wheels for the Norfolk Division, pursuant to the District's Plan for the Random Selection of Grand and Petit Jurors, p.3 ("Method and Manner of Random Selection from the Source List"). Each voter registration list database should be in a .txt format so it can easily be searched electronically. The Clerk also should provide the layout structure of the databases. To assist the Clerk, an example of this kind of voter registration list database structure is appended as Ex. 2.

2.      A CD containing the 2007, 2009, and 2011 Master Jury Wheel databases for the Norfolk Division, selected pursuant to the District's Plan for the Random Selection of Grand and Petit Jurors, p.10 ("Emptying and Refilling the Master and Qualified Jury Wheels"). Each Master Jury Wheel database should be in a .txt format so it can easily be searched electronically. For the same reason, the Clerk also should provide the layout structure of the Master Jury Wheel database if it is different from the layout structure of the voter registration list database.

3.      A CD containing the 2007, 2009, and 2011 Qualified Jury Wheel databases for the Norfolk Division, selected pursuant to the District's Plan for the Random Selection of Grand and Petit Jurors, p.10 ("Emptying and Refilling the Master and Qualified Jury Wheels"). Each Master Jury Wheel database should be in a .txt format so it can easily be searched electronically. For the same reason, the Clerk also should provide the layout structure of the Master Jury Wheel database if it is different from the layout structure of the voter registration list database.

4.      All grand jury venires drawn from the Norfolk Division's 2007, 2009, and 2011 Qualified Jury Wheel, with names and identifying information redacted if necessary.

2

5.    A list of each grand jury venire member who actually served on the grand jury that indicted Runyon, and each grand juror's qualifying questionnaires.

6.    A list of each person who was initially drawn for the petit jury venire in Runyon's case, and each such person's qualifying questionnaires, including but not limited to qualification forms returned as undeliverable, completed qualification forms of those placed in the Qualified Jury Wheel, and qualification forms of those exempted from jury service with the statement of the Clerk as to why such persons were exempted.

7.    Copies of any orders directing any person to add additional names to the 2007, 2009, and 2011 Master Jury Wheel, pursuant to the District's Plan for the Random Selection of Grand and Petit Jurors, p.3 ("Master Jury Wheel").

8.    Copies, if any, of certificates prepared and executed by the person(s) who randomly selected names for the 2007, 2009, and 2011 Master Jury Wheels for the Norfolk Division.

9.    The name of the software used to randomly select names placed in the 2007, 2009, and 2011 Master Jury Wheel databases for the Norfolk Division, and the program code for the selection software. To assist the Clerk, an example of a response to this kind of request is appended as Ex. 3.

10.    Copies of all reports on the operation of the jury selection plan, created between January 1, 2007, and December 31, 2011, that relate to the jury compositions of the Norfolk Division.

**Trial Counsel's Right to Jury Selection Records**

Under 28 U.S.C. § 1867(f), Runyon's trial counsel had an absolute right to inspect and

3

copy the relevant jury lists in order to determine whether the venire was drawn in a manner that complied with statutory and constitutional law. As the Court explained in *Test v. United States*, 420 U.S. 28 (1975) (per curiam):

> Section 1867 (f) of the Act, in relevant part, provides:
>
> > "The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . as may be necessary in the preparation or presentation of a motion [challenging compliance with selection procedures] under . . . this section . . . . *The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion. . . .*"
>
> This provision makes clear that a litigant has essentially an *unqualified* right to inspect jury lists. It grants access in order to aid parties in the "preparation" of motions challenging jury-selection procedures. Indeed, without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge. Thus, an unqualified right to inspection is required not only by the plain text of the statute, but also by the statute's overall purpose of insuring "grand and petit juries selected at random from a fair cross section of the community." 28 U.S.C. § 1861.

*Test* at 29-30 (brackets and emphases in original).

The Supreme Court further emphasized that the right to inspect under § 1867(f) does not require the litigant to identify any possible defect in the jury-selection procedures. "Petitioner further argues that the affidavit accompanying his motion to inspect established a prima facie case of jury exclusion thereby entitling him to inspection under 28 U.S.C. § 1867(d). Since we conclude that petitioner had an unqualified right to inspection under § 1867 (f) we do not decide whether his counsel's affidavit was sufficient to establish a prima facie case." *Test* at 29 n.2; *see also Government of Canal Zone v. Davis*, 592 F.2d 887, 889 (5th Cir. 1979) ("defendants' right to inspection was unqualified … [because otherwise] a defendant is denied access to the very materials containing the information necessary to the filing of a motion to dismiss for defective

4

jury selection").

In applying *Test*, the courts of appeals have broadly construed the litigants' right of access to the documents used in the jury selection process. In *United States v. Curry*, 993 F.2d 43 (4th Cir. 1993), for example, the Court confirmed that "[u]nder *Test*, Curry was entitled to inspect, reproduce, and copy the master jury list to support a motion for a new trial based upon a substantial failure to comply with the provisions of 28 U.S.C. §§ 1861-68 ('the Act') in selecting the grand or petit jury." *Id.* at 44.

In *United States v. Alden*, 776 F.2d 771 (8th Cir. 1985), the defendant moved in 1984 for pretrial access to certain ministerial records from 1980 to 1983 regarding grand jury selection—the "roll sheets reflecting the composition of grand juries, attendance records, records setting forth the method by which the grand juries were empaneled, and records reflecting the reasons for disqualification of a grand juror based on information derived from the questionnaires sent to the names selected from the master wheel." *Id.* at 772-73. The defendant subsequently amended his motion to seek such records going back to 1970. After surveying the case law, the court of appeals held that the district court had wrongly denied the amended motion because it "balanc[ed] the 'defendant's right to discover the facts necessary for a successful grand jury challenge' and the need to protect the integrity of the grand jury process and also to protect innocent participants, including the grant jurors themselves.'" *Id.* at 774. Citing *Test*, the Eighth Circuit rejected the district court's concerns. It described the district court's analysis as "persuasive," *id.* at 775, but cited *Test* for the proposition that "the only limitation authorized by Congress on the disclosure of this information is that *the disclosure be at reasonable times.*" *Id.* at 773 (emphasis in original). "The district court is not free to establish additional requirements

5

that defendants must meet in order to gain access to jury selection records." *Id.* at 775.

In *United States v. Beaty*, 465 F.2d 1376, 1381-82 (9th Cir. 1972), the court noted that after the trial has concluded, access to the jury selection materials is authorized not only by 28 U.S.C. § 1967(f), but additionally by § 1868. Reversing the district court's refusal to provide access, the court of appeals explained:

> The trial court was in error. The statutes clearly mean what they state. Appellant or his attorney or investigator, as the court might direct depending upon the circumstances, was entitled to inspect the old records from the master jury wheel under § 1868 and the "contents of records or papers used by the jury commission or clerk in connection with the jury selection process …", under § 1867(f).

*Beaty* at 1381.

### Collateral Counsel's Right to Jury Selection Records

Undersigned counsel anticipates that Runyon's motion for collateral review will allege that trial counsel unreasonably failed to request and inspect the jury selection records to determine whether there was a defect in the grand jury or petit jury selection process. Information in the juror questionnaires certainly put trial counsel on notice that there might be such a defect. To take one obvious red flag, undersigned counsel's preliminary review of census information indicates that the population of the United States as a whole is closely split by gender, with a small advantage to women. It is about 50.8 percent female and 49.2 percent male—a spread of 1.6 percent. The population of Virginia as a whole is about 50.9 percent female and 49.1 percent male—a spread of 1.8 percent. There is less complete information about the individual jurisdictions that comprise the Norfolk Division, but the population of those counties and cities appears collectively to be about 51.1 percent female and 48.9 percent male—a spread of 2.2 percent. The 243 venire members who completed questionnaires had a startlingly

wide split that did not at all reflect the population: there were 140 females and 103 males. In percentages, it was 57.6 percent female and 42.4 percent male—a spread of 15.2 percent.

While there can be multiple theories for this gender imbalance, an obvious possibility is that it resulted from a defect at some stage in the jury selection process. Trial counsel could have learned whether there was such a defect only by obtaining and examining the records. "Grounds for challenges to the jury selection process may only become apparent after an examination of the records." *Alden*, 776 F.2d at 775 (citing *Test*).

To determine whether there is a viable claim for collateral review, undersigned counsel must obtain the documents and information that trial counsel could and should have obtained. Some of these documents are necessary for the additional reason that they will enable counsel to identify the point at which any defect occurred.[1] Given the great technological changes in compiling and storing records in the 40 years since *Test*, the significant increase in the size of the relevant databases as a result of population growth, and the limited time before counsel must file Runyon's petition, undersigned counsel requests that the major databases be provided electronically in .txt format so they can easily be searched by name, by gender, and by any other category that is included in the database.[2]

---

[1] For example, if counsel identifies an apparent defect in the Master Jury Wheel, she will need to determine whether that defect already existed in the voter registration list, or if it occurred during formation of the Master Jury Wheel. Similarly, if counsel identifies an apparent defect in composition of the 243 people who completed juror questionnaires, she will need to determine whether that defect existed in the complete group of those called for the petit jury venire, or if it was present only in the group of members who completed juror questionnaires.

[2] The electronic format enables efficient review by allowing litigants to sort the records in each database by name, gender, age, geographic jurisdiction, and the like, and to cross-compare them quickly. To take a hypothetical example, suppose that because of a defect in drawing names from the voter registration list, 100 percent of the people on the Master Jury Wheel from Accomack County were under the age of 30, while those from all other jurisdictions in the Norfolk Division

Finally, collateral counsel in other capital cases have requested and obtained access to these documents to determine if there are defects in the jury selection process. *See*, e.g., Letter from David J. Maland, Clerk of the United States District Court for the Eastern District of Texas, Ex. 1.

### The Issue of Confidentiality

Congress intended the jury selection records to be confidential, but only for a limited period of time:

> After the master jury wheel is emptied and refilled pursuant to section 1863(b)(4) of this title, and after all persons selected to serve as jurors before the master wheel was emptied have completed such service, all records and papers compiled and maintained by the jury commission or clerk before the master wheel was emptied shall be preserved in the custody of the clerk for four years or for such longer period as may be ordered by a court, *and shall be available for public inspection for the purpose of determining the validity of the selection of any jury.*

28 U.S.C. § 1868 (emphasis added).

The jury records are inactive, and they should be made available for inspection in the manner requested here, which takes into consideration the fact that all counsel are in remote locations outside the Eastern District of Virginia. Counsel recognize the importance of maintaining confidentiality in order to promote the integrity of grand and petit juries. Therefore, undersigned counsel voluntarily agree that with respect to jury selection materials that contain personal identification information, such as name or street address, they will not disclose the information beyond their own offices, except that they may disclose some or all of these materials to experts or consultants who assist in the analysis or assessment of these materials.

---

had a normal distribution of ages. That fact could be discovered quickly if the database is electronic. Depending on the size of the database, it could take months for a paralegal to find if she has only a hard-copy version of that database.

WHEREFORE, Runyon asks this Court to issue an order directing the Clerk of the Court to provide Runyon's counsel with the enumerated documents that relate to selection of the grand and petit juries in his case.

Respectfully Submitted,

_____/s/_____

| | |
|---|---|
| Dana Hansen Chavis, *pro hac vice* | Michele J. Brace |
| Asst. Federal Community Defender | Virginia State Bar No. 36748 |
| Federal Defender Services of | Virginia Capital Representation |
| Eastern Tennessee, Inc. | Resource Center |
| 800 S. Gay Street, Suite 2400 | 2421 Ivy Road, Suite 301 |
| Knoxville, TN 37929 | Charlottesville, VA 22903 |
| Telephone (865) 637-7979 | Telephone (434) 817-2970 |
| Fax (865) 637-7999 | Fax (434) 817-2972 |
| Dana_Hansen@fd.org | mbrace@mindsort.com |

Dated: August 13, 2015

9

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2015, I have electronically filed the foregoing Memorandum in Support of Defendant's Motion for Copies of Grand and Petit Jury Selection Records with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:


Brian J. Samuels                            Lisa Rae McKeel
U.S. Attorney's Office                      U.S. Attorney's Office
Fountain Plaza Three                        Fountain Plaza Three
721 Lakefront Commons, Suite 300            721 Lakefront Commons Suite 300
Newport News, VA 23606                      Newport News, VA 23606
(757) 591-4032                              (757) 591-4040
Brian.Samuels@usdoj.gov                     Lisa.McKeel@usdoj.gov

Jeffrey A. Zick
U.S. Attorney's Office
Fountain Plaza Three
721 Lakefront Commons, Suite 300
Newport News, VA 23606
Phone: (757) 591-4000
JZick@usa.doj.gov


_____/S/_____
Michele J. Brace, VSB No. 36748
Virginia Capital Representation
 Resource Center
2421 Ivy Road, Suite 301
Charlottesville, VA 22903
Telephone (434) 817-2970
Fax (434) 817-2972
mbrace@mindsort.com
*Counsel for Defendant/Movant*
*David Anthony Runyon*


10