UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA

v.                                              Criminal No. 4:08cr16-3

DAVID ANTHONY RUNYON,

            Defendant.

MEMORANDUM ORDER

This matter comes before the court on the "Defendant's Motion for Copies of Grand and Petit Jury Selection Records" ("Motion"), and Memorandum in Support, both filed on August 13, 2015. ECF Nos. 465, 466. In the Motion, the Defendant requests that the court provide him with copies of records relating to the jury selection process in his case, including voter registration lists, jury wheels, certificates, orders, reports, and information about the computer system used in selecting potential jurors. The matter has been fully briefed and is ripe for review. For the reasons that follow, the Defendant's Motion is **GRANTED** in part and **DENIED** in part.

By Memorandum Order on November 5, 2014, Ms. Brace was appointed the Defendant's counsel of record for his collateral review proceedings. See ECF No. 410. On April 7, 2015, the court granted the Defendant's request for a copy of the completed

questionnaires of all prospective jurors who returned a questionnaire prior to the Defendant's trial. See Order at 3, ECF No. 422. On August 13, 2015, the Defendant filed the instant Motion, in which he requests additional documents and records regarding the selection of the grand and petit juries in his case. On August 14, 2015, the court ordered the government to respond, see Order, ECF No. 467, and the government filed its Response on August 27, 2015. ECF No. 469. On September 4, 2015, the Defendant filed his Reply. ECF No. 470. In his Reply, the Defendant seeks to amend his original Motion to include requests for the grand jury venires drawn from the Newport News Qualified Jury Wheels, rather than from the Norfolk Qualified Jury Wheels, and for the names and contact information of the outside vendors involved in creating the Master Jury Wheels, and the approximate dates of the court's contact with such vendors. Id. at 3, 6. The Defendant also withdrew his request for the Master and Qualified Jury Wheels for 2009 and 2011. Id. at 3.

The Defendant's request for documents is premised on the Jury Selection and Service Act (the "Act"), which states that "litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community." 28 U.S.C. § 1861. A defendant may challenge his jury selection, if he believes there was a substantial failure to comply with the Act during the

2

selection process. Id. § 1867. In order to prepare such a challenge, section 1867(f) of the Act provides as follows:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under [this section] . . . . The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.

Id. In 1975, the Supreme Court clarified this provision by holding that a defendant has "essentially an unqualified right to inspect jury lists." Test v. United States, 420 U.S. 28, 30 (1975) (per curiam). Without the ability to make such an inspection, a party would face difficulties when attempting to determine the existence of a potential jury selection challenge. Id. Thus, permitting a party to inspect the jury lists furthers the purpose of the Act by giving parties a way to ensure that juries are chosen "at random from a fair cross section of the community." Id. (quoting 28 U.S.C. § 1861).

However, while the Supreme Court has made clear that a party has an unqualified right to inspect jury lists, it has not applied that same right of inspection to qualifying questionnaires and other jury selection records. The Act states that these records shall not be disclosed unless "necessary in the preparation or presentation of a motion under [this section]." 28 U.S.C. § 1867(f). As such, courts have come to

3

different conclusions when determining what documents a defendant may access, other than the jury lists provided for under Test, when preparing a jury selection challenge. See United States v. Curry, 993 F.2d 43, 44 (4th Cir. 1993) (citing United States v. Davenport, 824 F.2d 1511, 1513-15 (7th Cir. 1987)) (noting that the Supreme Court did not provide an unqualified right to inspect juror qualification questionnaires); United States v. Rice, 489 F. Supp. 2d 1312, 1319-21 (S.D. Ala. 2007) (denying the defendant's motion to allow inspection of all qualifying questionnaires, records of disqualifications and non-responders, and records of all venires from the last ten years); United States v. Diaz, 236 F.R.D. 470, 480-83 (N.D. Cal. 2006) (denying the defendant's request for disclosure of questionnaires, list of disqualified and excused individuals, and grand juror names). But see United States v. Causey & Skilling, No. H-04-025, 2004 WL 1243912, at *14-17 (S.D. Tex. May 25, 2004) (permitting the defendant to inspect qualification questionnaires and documents used to determine excuses and exemptions). Therefore, the court must now examine each of the Defendant's requests to determine if the Defendant has an unqualified right to inspect that particular record, and if not, whether the Defendant has sufficiently shown that the information is necessary to prepare a challenge under the Act to warrant disclosure.

**1. A CD containing the three voter registration list databases from which names were selected for the 2007, 2009, and 2011 Master Jury Wheels for the Norfolk Division**

The Defendant argues that because the Jury Selection Plan for the Eastern District of Virginia does not explicitly prohibit disclosure of the voter registration lists, he may obtain copies of the lists. Reply at 2. However, while the Plan does not specifically prohibit inspection, that does not mean that the Defendant is entitled to obtain copies of the voter registration lists. These records contain personal identifying information, and the risks associated with releasing that amount of sensitive data outweigh the benefit of disclosure to the Defendant. See United States v. Savage, CRIM. A. No. 07-550-03, 2012 WL 4616099, at *6 (E.D. Pa. Oct. 2, 2012) (denying the defendant's request to provide source lists from which the jury pool was created because those lists were derived from voter registration lists and contained confidential information).

As the court is granting the Defendant's request for copies of the Master and Qualified Jury Wheels,[1] the Defendant will have access to the relevant information for those individuals actually considered for jury selection. This will provide the Defendant with the data he needs to evaluate compliance with the Act. The information from the voter registration lists goes beyond the scope of the Defendant's case, and as the Defendant

---

[1] See infra Parts 2-3.

5

fails to state why it is necessary to his claim, his request for the voter registration lists is **DENIED**.[2]

> **2. A CD containing the Master Jury Wheel databases in .txt format for the Norfolk Division for the years of 2007, 2009, and 2011**

The Defendant requests the Master Jury Wheel databases for the Norfolk Division. However, as the government points out in its Response, the Defendant was indicted by a grand jury sitting in Newport News. Resp. at 5. He was then tried before a petit jury in Norfolk. Id. Further, the government states that the Master Jury Wheels used in selecting the grand and petit juries in the Defendant's case were created and uploaded in 2005 and 2007. Id. Because of the Defendant's "unqualified right" to inspect the jury lists, the government does not object to the Defendant's receipt of the Master Jury Wheel databases for the Norfolk and Newport News Divisions for the years of 2005 and 2007, and the Defendant withdrew his request for the 2009 and 2011 Wheels. Accordingly, his request is **GRANTED** with respect to the Master Jury Wheels for the Newport News and Norfolk

---

[2] The court notes that the Defendant has withdrawn his requests for the 2009 and 2011 Master and Qualified Jury Wheels. See infra Parts 2-3. Given this withdrawal and the fact that none of the relevant Jury Wheels were drawn from the 2009 or 2011 voter registration lists, the request for the 2009 and 2011 lists is irrelevant.

Divisions for the years of 2005 and 2007.[3] However, to limit unnecessary disclosure of confidential information, the Clerk is **ORDERED** to redact the Social Security Numbers and addresses of those individuals listed in the Master Jury Wheels.[4]

> **3. A CD containing the Qualified Jury Wheel databases in .txt format for the Norfolk Division for the years of 2007, 2009, and 2011**

As with the Master Jury Wheels, the relevant years for the Qualified Jury Wheels are 2005 and 2007, and the appropriate Divisions include both Newport News and Norfolk. The government does not object to the Defendant receiving a copy of these Wheels, and the Defendant withdrew his request for the 2009 and 2011 Wheels. As such, the Defendant's request is **GRANTED** with respect to the Qualified Jury Wheels for Newport News and Norfolk for the years of 2005 and 2007.[5] Further, to limit unnecessary disclosure of confidential information, the Clerk is

---

[3] Although the Defendant never formally amended his Motion to request the Master Jury Wheels from Newport News and the Master Jury Wheels from 2005, the government submitted in its Response that the Defendant is entitled to these records. Resp. at 4. In his Reply, the Defendant did not challenge this submission and instead chose to withdraw his request for the 2009 and 2011 Wheels. Reply at 3.

[4] The necessary information of gender and age will be disclosed. Race, however, is not included in the Master Jury Wheel. But see infra note 6 and accompanying text. Race is included when the Qualified Jury Wheel is created from the completed qualifying juror questionnaires. Id.

[5] The same analysis as in Part 2 also applies to the Qualified Jury Wheels. See supra note 3 and accompanying text.

**ORDERED** to redact the Social Security Numbers, addresses, and phone numbers contained in the Qualified Jury Wheels.[6]

**4. All grand jury venires drawn from the Norfolk Division's 2007, 2009, and 2011 Qualified Jury Wheels**

Although the Defendant named Norfolk as the relevant Division, he was indicted by a grand jury sitting in Newport News.[7] Thus, he now asks to amend his Motion to request the grand jury venires from the Newport News Division.[8] However, even granting the Defendant's request to amend his Motion, the information he is requesting is beyond the scope of his case. He is not entitled to grand jury venires from three different Qualified Jury Wheels, which did not indict his case. Although the Defendant states that personal identifying information may be redacted, this request and redaction would still give the Defendant access to extensive information that would not aid in his determination of a violation of the Act. The court has granted the Defendant's request to provide the Master and

---

[6] The Defendant will receive the necessary information of race, gender, and age for each individual listed in the Qualified Jury Wheel.

[7] See supra Part 2.

[8] The court notes that the Defendant did not amend his Motion to request the grand jury venires from the 2005 Qualified Jury Wheel, which is the wheel from which his grand jury venire was drawn. See Resp. at 5; supra Parts 2-3.

8

Qualified Jury Wheels for the relevant years,[9] and he has not stated a reason as to why he additionally requires multiple venires from three separate Jury Wheels, none of which are relevant to his case. Accordingly, this request is **DENIED**.

**5. A list of each grand jury venire member who actually served on the grand jury that indicted the Defendant, and each grand juror's qualifying questionnaire**

The Defendant will be provided with the Master and Qualified Jury Wheels, which contain the names of the grand jurors who indicted him. However, he does not have a right to the names of the specific individuals who served on his grand jury. See United States v. Diaz, 236 F.R.D. 470, 480-84 (N.D. Cal. 2006) (denying the defendant's request for grand juror names); United States v. Swan, No. CRIM. 03-36-01-B, 2003 WL 21799915, at *2 (D.N.H. July 22, 2003) (citing United States v. Hansel, 70 F.3d 6, 8 (2d Cir. 1995)) (same). As the Defendant does not explain why the names of the grand jurors will aid in a challenge under the Act, and in order in order to maintain the secrecy and confidentiality of grand jury proceedings, the Defendant's request for grand juror names is **DENIED**.

Regarding the qualifying questionnaires, the Defendant's unqualified right to inspect grand jury lists does not extend to grand juror questionnaires. See United States v. Davenport, 824 F.2d 1511, 1513-15 (7th Cir. 1987) ("Test does not hold that

---

[9] See supra Parts 2-3.

completed [grand] juror questionnaires must be made available to defendants in addition to jury lists."); United States v. Diaz, 236 F.R.D. 470, 482-83 (N.D. Cal. 2006) (holding that the Defendant was not entitled to the grand juror questionnaires for the members of the grand jury that indicted him). Further, it is unclear how most of the personal information in a grand juror questionnaire would be necessary to challenge the jury selection. The court understands, however, that some information from the qualifying questionnaires may aid the Defendant in determining whether there was a violation of the Act. As such, the Defendant's request is **GRANTED** in part, and the Defendant will be provided with a statistical breakdown of the grand jury by race, gender, and age, as this information may be valuable in evaluating compliance with the Act, but it does not involve disclosure of unnecessary confidential information.[10] The remaining portion of the Defendant's request for grand juror qualifying questionnaires is **DENIED**.

> 6. A list of each person who was initially drawn for the petit jury venire in the Defendant's case and each such person's qualifying questionnaire, including but not limited to qualification forms returned as undeliverable, completed qualification forms of those placed in the Qualified Jury Wheel, and qualification forms of those exempted from jury service with the statement of the Clerk as to why such persons were exempted

---

[10] This list includes the information for the grand jury alternates, as well as for those who actually sat on the grand jury which indicted the Defendant.

10

As with the qualification questionnaires for the grand jury venire, the Defendant has no unqualified right to the qualification questionnaires for the petit jury venire.[11] The Defendant argues that he may inspect these records because the Act allows a party to challenge the selection of a jury by contending that the excusals, disqualifications, and exemptions of potential jurors were not objective, and he claims that he needs the qualifying questionnaires to determine if he can make such a challenge. Reply at 5. The government argues that the Defendant is not entitled to this information and notes that he already received the two hundred forty-three (243) case-specific juror questionnaires for the petit jury venire. Resp. at 9.

As to the Defendant's request for names and qualifying questionnaires of those individuals drawn for the petit jury venire, the Defendant makes no showing as to why he needs that information in order to determine if there was a violation of the Act. He will receive the Master and Qualified Jury Wheels, and he already has the case-specific questionnaires, which contain the names of the individuals drawn for his petit jury venire.[12] The court is unsure of the reason why the Defendant

---

[11] See supra Part 5.

[12] The Defendant asserts in his Reply that thirteen (13) individuals were issued juror numbers but did not return questionnaires. Reply at 5. Thus, the questionnaires that he received contain the names of most, but not all, of the

11

also needs the personal information contained in the qualifying questionnaires. However, in order to help the Defendant determine if there was a violation of the Act, without unnecessarily releasing personal information, the Defendant will be provided with a statistical breakdown of the race, gender, and age for all of those individuals drawn for the petit jury venire.[13]

The Defendant also requests a statement explaining any exemptions or disqualifications so that he may evaluate such exemptions to ensure that they were based on objective reasons. As the Defendant has explained why this information is necessary to determine if there was a violation of the Act, he will be provided with a document stating the number of individuals excused, disqualified, or exempted, and the reason for such action, along with each individual's race, gender, and age. However, the names and qualifying questionnaires of those individuals will not be provided, as their personal information is not necessary for evaluating a potential challenge to the

---

individuals drawn for his petit jury venire. Id. Clearly, if an individual did not even return the questionnaire, that person would not have been considered for jury duty in a federal death penalty case. In any event, the Defendant will still be provided with the race, gender, and age of the individuals drawn for the petit jury venire.

[13] See supra note 12.

Act. Accordingly, this request is **GRANTED** in part and **DENIED** in part.

**7. Copies of any orders directing any person to add additional names to the 2007, 2009, and 2011 Master Jury Wheels**

The Jury Selection Plan, which the Defendant has already accessed, provides the means by which individuals are added to the Master Jury Wheel. Plan for the Random Selection of Grand and Petit Jurors 2-3 (2003). As the Defendant will also receive the Master Jury Wheel, and thus will be able to see the names of individuals who were randomly selected for the Wheel, the request for orders directing additional names to be added is **DENIED**.[14]

**8. Copies, if any, of certificates prepared and executed by the person(s) who randomly selected names for the 2007, 2009, and 2011 Master Jury Wheels for the Norfolk Division**

The Jury Selection Plan provides information about how names are randomly selected for inclusion in the Master Jury Wheel. Id. Access to that information is enough to evaluate the jury selection process and determine if it draws from a "fair cross section of the community." See 28 U.S.C. § 1861. Therefore, this request is **DENIED as MOOT**.[15]

---

[14] While the court rules herein to avoid improper precedent, in point of fact, no such orders exist.

[15] In point of fact, there are no such certificates.

In his Reply, the Defendant also seeks to amend this request to include the disclosure of the names and contact information for outside vendors involved in creating the Master Jury Wheel, and the approximate dates of the court's contacts with such vendors. Reply at 6. As this information is beyond the scope of the Defendant's case and is not necessary to evaluate compliance with the Act, this request is **DENIED**.

**9. The software and program code for the software used to randomly select names for the Master Jury Wheel**

The government has no objection to this request. However, because this information no longer exists, the request is **DENIED** as **MOOT**.[16]

**10. Copies of all reports on the operation of the Jury Selection Plan, created between January 1, 2007, and December 31, 2011, that relate to the jury compositions of the Norfolk Division**

Although the government presents no objection to this request, no reports on the operation of the Jury Selection Plan exist or were created between January 1, 2007, and December 31, 2011. As such, the request is **DENIED as MOOT**.[17]

---

[16] The court utilizes the Jury Management System provided by Xerox/ACS, which is approved for use by the Administrative Office of the United States Courts ("AO"), but the court has used multiple AO-approved versions of the program since 2005 and 2007. As such, the program codes for the version used in 2005 and 2007 no longer exist in the court's records.

[17] The court further notes that no such reports for any other time period exist for any Division in the Eastern District of Virginia.

14

## CONCLUSION

Accordingly, the Clerk is **DIRECTED** to release to counsel for the Defendant and to the United States Attorney at Newport News the following:

(1) a CD of the 2005 and 2007 Master Jury Wheels for Newport News and Norfolk in .txt format, with Social Security Numbers and addresses redacted; (2) a CD of the 2005 and 2007 Qualified Jury Wheels for Newport News and Norfolk in .txt format, with Social Security Numbers, addresses, and phone numbers redacted; (3) a statistical breakdown of the grand jury by race, gender, and age; (4) a statistical breakdown of the individuals drawn for the petit jury venire by race, gender, and age; and (5) a list of the reasons for any disqualifications, excusals, or exemptions from the petit jury venire, and the race, gender, and age of those individuals, but omitting any personal identifying information.

Counsel for the Defendant and the United States Attorney are **DIRECTED** to make arrangements with the Clerk, within seven (7) days from the entry of this Memorandum Order, to pick up the above-listed CDs and records in person, and at such time to sign and date acknowledgement receipts that they have received the CDs and records. The Clerk shall enter these acknowledgement receipts on the case docket. The Clerk shall

15

also maintain <u>under seal</u> an exact copy of the CDs and records received by counsel, together with any cover letter from the Clerk that accompanies the CDs and records. Counsel for the Defendant and the United States Attorney are **ORDERED** to maintain all of these CDs and records <u>under seal</u> and to return all CDs and records to the Clerk when the habeas litigation is complete, together with a sworn statement that the CDs and records have been <u>maintained</u> <u>under seal</u>, and no copies thereof of any nature — paper, electronic, or otherwise — have been made or exist, other than those maintained <u>under seal</u> by the Clerk. The court also reminds counsel for both parties that <u>no contact</u>, <u>direct or indirect</u>, may be made with <u>any juror</u>, <u>grand or petit</u>, who actually served or who was named in any lists, CDs, or records produced pursuant to this Memorandum Order. The sworn statement accompanying the return of the CDs and records shall also include an acknowledgement that <u>no juror contact has been made</u>, directly or indirectly, through someone else, or by any means.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Order to counsel for the Defendant and to the United States Attorney at Newport News.

IT IS SO ORDERED.

/s/

Rebecca Beach Smith
Chief Judge

October 2 , 2015

16