**DECLARATION OF STEPHEN A. HUDGINS**

1. My name is Stephen A. Hudgins. In February 2009, I was in private practice. I was appointed to represent David Runyon because Jon Babineau was removed due to a conflict of interest. I took over Mr. Babineau's role, working mainly on the mitigation portion of the case. Between co-counsel, Larry Woodward, and myself I had the most contact with the defense experts. Mr. Woodward represented Runyon from the start and was mainly responsible for the guilt phase of trial.

2. When I was appointed to represent Runyon, the trial date was March 13, 2009. Immediately after I was appointed, Mr. Woodward requested a continuance of the trial. See Doc. No. 160. The trial date was re-scheduled for May 4, 2009. See Doc. No. 162. I had a jury trial scheduled for seven days to begin on April 21, 2009. See Doc. No. 165. That particular case was ultimately tried over a two-week period from May 6 – May 19, 2009. See *United States v. Garries*, No. 4:08-cr-50. I requested a continuance of Runyon's trial date and it was re-set for June 30, 2009.

3. Mr. Woodward and I spoke with Runyon about pleading guilty in exchange for a life sentence. I believe the prosecutors were willing to enter into a plea agreement throughout Runyon's trial. Runyon's thinking was very rigid. He adamantly asserted he was innocent and would not plead guilty.

4. At the time I entered the case, Runyon's defense team included an investigator, Robert Glenn Ford, and mitigation specialist Sheila Cronin. Dr. Evan Nelson had been hired. I did not believe his opinions were favorable to the defense and I decided a different mental health expert was needed. Ultimately, the defense experts were Dr. Merikangas and Dr. Mirsky.

5. Due to the passage of time since Runyon's trial, I have tried hard to determine my actual recollection of events and to avoid speculation. I know I was looking for an

EXHIBIT 5

injury in Runyon's past that affected his reasoning ability. Runyon reported that he had been exposed to grenade blasts in the Army. We searched for medical records related to those episodes. Runyon also reported he was in a car accident and we tried to obtain the initial treatment records. After the car accident, I do not believe Runyon followed up with Army medical providers. I wanted documentation of these events for the penalty phase. The experts also requested Runyon's medical records. We had difficulty obtaining Runyon's military medical records and requested a continuance of the trial date because of this difficulty.

6. The Court granted a four week recess between the eligibility phase and the penalty phase which gave time to work on the mitigation case. During this time I made the final arrangements for the mental health evidence. I filed with the court preliminary reports from Dr. Merikangas and Dr. Mirsky. Dr. Merikangas wanted brain scans of Runyon. I do not remember the results of the scans. I cannot remember why Dr. Merikangas and Dr. Mirsky did not testify in the penalty phase. I remember that Dr. Mirsky contacted me after the trial.

7. With respect to Runyon's background, I travelled to interview Runyon's wife, Maria, his son, Davy, and Runyon's father and mother. I spoke with Runyon's brother by telephone.

8. Aside from the Portsmouth Jail witnesses, all of the penalty phase witnesses were from out-of-state. For the most part, I relied on Ford's and Cronin's interview reports to inform me of the witnesses' knowledge of Runyon. The witnesses arrived in Norfolk right before the penalty phase began. I spent the weekend before and other times during the penalty phase speaking to the witnesses in person at a hotel in Norfolk.

**Page 2 of 3**

EXHIBIT 5

9. I was recently informed by Runyon's current attorneys that some witnesses were subpoenaed for the penalty phase, were present, but did not testify. I remember the Seegers -- a husband and wife from Alaska -- but do not remember why they did not testify.

10. Runyon's trial was the first capital trial in many years in the Norfolk Division of the Eastern District of Virginia. The prosecutors, defense counsel for Runyon, and defense counsel for co-defendant Michael Draven provided input and participated in preparing a questionnaire for the jurors.

11. Runyon wrote throughout the trial. He filled legal pads with writing but I don't know the contents. I never had a client write as much during trial as Runyon did.

**I declare under penalty of perjury that the foregoing is true and correct. Executed on the 22 day of September, 2015.**

**Stephen A. Hudgins**

Page 3 of 3

EXHIBIT 5