## DECLARATION OF LAWRENCE H. WOODWARD, JR.

1. My name is Lawrence H. Woodward, Jr.  In March 2008, I was appointed to represent David Runyon.  Jon Babineau was my co-counsel at that time.

2. I was primarily responsible for the guilt phase of the case and Mr. Babineau was primarily responsible for the penalty phase.

3. The prosecution was willing to let Runyon plead guilty in exchange for a life sentence.  The prosecution maintained this offer throughout the case.  Runyon would not agree to plead guilty.  The prosecution's offer was communicated to Mr. Runyon on a multitude of occasions throughout the case.

4. Mr. Babineau recommended investigator Robert Glenn Ford, mitigation specialist Sheila Cronin, and Dr. Evan Nelson.  I agreed with his recommendations and they were approved by the Court.  Mr. Ford and Ms. Cronin worked very hard and did a good job investigating the case and David's background.

5. I remember we were looking for Runyon's military medical records that reportedly were in a St. Louis warehouse.  Runyon had told us he was in a serious car accident.  We could not verify the car accident and Runyon's family did not know anything about it.

6. Jon Babineau told me that Dr. Nelson was not helpful and we decided not to use him.

7. In February 2009, Mr. Babineau was removed from the case due to a conflict of interest.  When Stephen Hudgins -- now Judge Hudgins -- replaced Mr. Babineau as co-counsel, we needed more time for him to get familiar with the case.  Mr. Hudgins assumed the role of working on the mitigation portion of the case.  He had primary contact with the experts and prepped the witnesses for the sentencing phase.

8. The juror questionnaire used in this case required prospective jurors to think about the death penalty.  It was most helpful for de-selecting jurors.  Question 61 was informative because jurors who chose answer A, F or G would never be on the jury.  All jurors have to be able to consider the death penalty as a sentencing option.  In this case, the parties used the juror questionnaires to compose three lists for the trial:  (1) a list of jurors that the parties agreed should be called for voir dire; (2) a list of jurors that the parties agreed should be dismissed from consideration and not called for voir dire; and, (3) a list of jurors that the parties could not agree upon.  The panel was then drawn from

EXHIBIT 6

the lists submitted to the court. Mr. Hudgins and I objected to any jurors who expressed extreme positions on the death penalty in the questionnaire.

9. The guilt-phase theory of defense was reasonable doubt. Most of the evidence involved the co-defendants, Michael Draven and Cat Voss. The defense tried to portray them as the bad actors and to create doubt regarding Mr. Runyon being the person who shot Cory Voss.

10. The theory of defense at the eligibility phase was to avoid alienating the jurors. Runyon was clearly eligible for death and it was the selection phase where the defense presented mitigation and tried to convince the jury to impose a life sentence.

11. I did not want to call Cat Voss as a witness. I did not speak with her but the prosecutors told me she would testify that she hired Runyon and that Runyon and Michael Draven were lying in wait for Cory. Ms. Voss had pled guilty to hiring Mr. Runyon to kill her husband. I had reviewed her statement of facts. Draven's counsel interviewed her and shared the information with me from there interviews.

12. Dr. Patterson and Dr. Montalbano were the prosecution's witnesses in this case. They routinely appear in cases as government witnesses. As I recall, the reports expressed a strong opinion that Runyon did not have any mental or emotional issues that would be mitigating. The defense also retained mental health experts to replace Dr. Nelson. These experts evaluated Mr. Runyon.

13. I gave the closing argument for the selection phase. The strongest argument we had was that it just wasn't fair for Runyon to be sentenced to death when two equally culpable co-defendants were receiving life sentences. Family sympathy was another argument we too presented.

14. Runyon's mother was judgmental of David in interviews. Runyon's adoptive father was not close with David. He was very matter of fact in expressing his relationship and feelings for Runyon. In this case, it seemed that David Runyon was not part of his parents' lives and they were testifying out of obligation. It was also clear that these parents were very strict disciplinarians toward Runyon as he was growing up.

15. The jury was made up of people who expressed they would be fair and who are willing to consider a death sentence as well as willing to consider a sentence that is not the death penalty.

16. I don't know why the death penalty was not authorized for Michael Draven. In my experience, how conservative the administration is -- and the Attorney

EXHIBIT 6

General -- makes a difference in whether the death penalty is authorized in murder cases.

17. This declaration consists of my general comments on the case and are from memory. I have discussed the case with Michelle Brace several months ago and Dana Hansen on September 10, 2015, Mr. Runyon's counsel. I informed Ms. Hanson that I would be willing to make a further declaration once I was informed as to what claims were being made on Mr. Runyon's behalf. I requested to know what claims are being made but was not informed. I did not review the file prior to my interview and was not asked to review any documents during my interview. I was asked a number of questions by Ms. Hanson about my opinions on certain witnesses and certain aspects of the federal death penalty scheme. I answered all her questions but have limited my initial declaration to factual matters. If my opinions on any subject are necessary to any claim Mr. Runyon makes, I will express them if requested or ordered by the court. I did not want to express any opinions that would not be helpful to Mr. Runyon unless required to do so based on claims he makes. I also want to insure that the attorney-client privilege or attorney work privilege is not implicated in any opinions I have based on my discussions with Mr. Runyon and my work on the case.

**I declare under penalty of perjury that the foregoing is true and correct. Executed on the 24th day of September, 2015.**

_Lawrence H. Woodward, Jr._

EXHIBIT 6