**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

|  |  |  |
|---|---|---|
| _____ | : | |
| DAVID ANTHONY RUNYON, | : | No. 4:15cv108 |
| Petitioner, | : | Original Criminal No. 4:08cr16-3 |
| | : | |
| -v- | : | **CAPITAL § 2255 PROCEEDINGS** |
| | : | |
| UNITED STATES OF AMERICA, | : | HON. REBECCA BEACH SMITH |
| Respondent. | : | |
| _____ | :_____ | |

**PETITIONER'S REPLY IN SUPPORT OF FIRST MOTION FOR DISCOVERY**

Runyon's discovery motion discusses in detail the circumstances under which this Court can grant a motion for discovery. One point raised in the Government's response is that the required "good cause" for discovery exists when a habeas petition establishes a prima facie case for relief. ECF No. 500, p.3. That standard does not set a high hurdle. As the Court explained in *Johnson v. California*, 545 U.S. 162, 170 (2005), a party makes a prima facie case when he produces evidence "sufficient to permit the trial judge to draw an inference" that a violation occurred. Each of the claims for which Runyon seeks discovery satisfies that standard.

The Government's response asserts that Runyon is not entitled to discovery because his claims are procedurally defaulted or lack merit. The Government makes this assertion in isolated sentences within its discussion of each individual request. It provides no specifics on any assertion; it simply incorporates by reference the arguments in its answer to Runyon's §2255 motion. Runyon is constrained to do the same. He hereby asserts that the referenced claims are not procedurally defaulted, that if they are defaulted there is cause and prejudice to excuse the defaults, and that the

1

claims are meritorious and worthy of relief. Runyon further incorporates here by reference the responsive arguments on those points that will appear in his forthcoming reply in support of the §2255 motion. Runyon cannot present those arguments in greater detail at this point because he very recently received the Government's answer, and he has not yet had the opportunity to fully research and draft those arguments.[1]

Even if Runyon's claims were defaulted, the discovery he requests is relevant to his ability to overcome those defaults. For example, facts showing "cause and prejudice parallel two of the three components of the alleged *Brady* violation itself." *Strickler v. Green*, 527 U.S. 263, 282 (1999). Facts showing a pattern or policy of prosecutorial misconduct can similarly contribute to showing cause and prejudice to overcome the procedural default.

## I.    Requests for information regarding the selection of jurors in this case.

The Government's response notably does not raise any of the traditional objections to discovery—that the request is burdensome or overbroad; that the materials sought are privileged or confidential; or that the discovery sought is not relevant to the substance of the claims presented. Instead, the Government argues that Runyon is not entitled to discovery at all. The Government is wrong.

Runyon has already presented credible facts that raise an inference of purposeful discriminatory intent and entitle him to obtain discovery under *Bracy v. Gramley*, 520 U.S. 899 (1997). He has made a specific showing that *all* of the peremptory strikes of African-Americans in this case were exercised by the prosecutors, and that this accomplished the removal of 70% of

---

[1] Runyon's proposed scheduling order (ECF Nos. 501 & 502), which this Court declined to implement (ECF No. 505), would have deferred Runyon's reply regarding discovery until after he filed his reply on the §2255 motion. This would have avoided Runyon's need to incorporate arguments from a pleading that he has not yet filed.

the eligible black potential jurors. This targeted statistical evidence is sufficient on its own to require evidentiary development. *See Miller-El v. Cockrell*, 537 U.S. 322, 342 (2003) ("the statistical evidence alone raises some debate as to whether the prosecution acted with a race-based reason when … [they] used their peremptory strikes to exclude 91% of the eligible African-American venire members … [and] happenstance is unlikely to produce this disparity); *Batson v. Kentucky*, 476 U.S. 79, 93 (1986) ("seriously disproportionate exclusion of Negroes from jury venires ... is itself such an unequal application of the law ... as to show intentional discrimination") (quoting *Washington v. Davis*, 426 U.S. 229, 241-42 (1976) (internal citation and quotation marks omitted)). The Government's conduct in Runyon's case easily would have required this Court to demand an explanation at trial if defense counsel had objected.

But Runyon has shown more than just statistical evidence. Like African-Americans, Runyon is a member of a racial minority: he is Asian. At the time of voir dire, the prosecutors intended to put into evidence (and did put into evidence) an inflammatory videotape that conveyed "stereotyping and insulting notions about how 'an honorable Asian man' is supposed to act," which the court of appeals said "had no place at this sentencing proceeding." *United States v. Runyon*, 707 F.3d 475, 493-94 (4th Cir. 2013). On brief, the prosecutors engaged in the same kind of inappropriate racial stereotyping. They argued to the Fourth Circuit that their use of the videotape was "not problematic" because it did not present a *bad* stereotype of Asians; it presented a *good* one that purportedly appealed to "positive aspects of [Runyon's] identity." *Id.* at 493-94. The prosecutors' use and subsequent defense of the videotape indicates a degree of animosity toward racial minorities that adds weight to Runyon's statistical evidence. In aggregate, this evidence makes a significant showing of intentional discrimination in selection of the jury.

3

The Government argues that for unstated reasons incorporated from its recently filed answer to the §2255 motion, Runyon's Claim 16A, which contains the allegations of racial and gender discrimination, is defaulted. Runyon disagrees. Because of the current schedule for Runyon's filings, he has not had the opportunity to carefully read that answer, nor the ability to research and draft his reply in support of the §2255 motion, but he will address the issue of procedural default in that reply and he incorporates here his argument from that forthcoming pleading.

The Government also argues that for unstated reasons incorporated from its answer to the §2255 motion, Runyon's Claim 16B lacks merit. That is the claim which alleges that defense counsel unreasonably failed to object to the prosecution's discriminatory exercise of peremptory strikes. Runyon disagrees that this claim lacks merit. He must again state that because of the current schedule he has not had the opportunity to carefully read the Government's answer, nor the ability to research and draft his reply in support of the §2255 motion. He will address the merits of his claim in that reply, and he incorporates here his arguments on the merits from that forthcoming pleading.

To the extent the Government makes other arguments in opposition to discovery, they are meritless and sometimes self-contradictory. The Government resists Runyon's request for historical evidence of its policies and prior accusations of discrimination, for example, because it says that information has no application to this case. Yet it recognizes the relevance of such evidence a few paragraphs later when it faults Runyon for having failed to already present evidence of prior policies or prior accusations of discrimination. ECF No. 500, pp.5-6.

4

The Government also argues that Runyon is not entitled to discover the kinds of historical documents presented in *Miller-El v. Dretke*, 545 U.S. 231 (2005), because the particular manifestations of prosecutorial discrimination in that case—calling for multiple jury shuffles, asking disparate voir dire questions based on the potential juror's race, and a prior policy of discrimination—are allegedly missing in Runyon's case.[2] Even if those manifestations are not present in Runyon's case, it is irrelevant. Evidence of the prosecution's discriminatory intent is what matters, not the particular mechanisms it uses to exercise that intent.

## II.    Requests for information regarding the application of the death penalty in this case.

Runyon has requested the production of documents related to the unconstitutional, discriminatory application of the death sentence in this case (Claim 12)[3] and/or the unconstitutional disparity of the death sentence in this case (Claim 13). These claims are related but assert different legal theories for relief.

### A.  Claim 12

To obtain discovery on Claim 12, Runyon need not establish a prima facie case of selective prosecution but must satisfy a "rigorous standard" of producing "'some evidence tending to show the existence of the essential elements of the defense,' discriminatory effect and discriminatory intent." *United States v. Armstrong*, 517 U.S. 456, 468 (1996) (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)); *United States v. Bass*, 536 U.S. 862, 863 (2002) (same). In this context, "some evidence" means "a credible showing" that "similarly situated individuals of a different race were not prosecuted." *Armstrong*, 517 U.S. at 465. Evidence "identify[ing]

---

[2] Whether there is a prior policy of discrimination is an open question on which Runyon has requested discovery.

[3] Claim 12 includes an allegation of ineffective assistance of counsel for failing to raise this issue.

individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted," therefore suffices. *Id*. at 470. As stated by one court, "the question here is whether [the defendant's] behavior was so dissimilar from that of the [others] in nature, kind, and degree as to nullify the possibility that his discovery request might yield information relevant to a claim of selective prosecution." *Commonwealth v. Bernardo B.*, 900 N.E.2d 834, 846 (Mass. 2009).

The Government's opposition states that Runyon has not "proffer[ed] any evidence that a particular group of individuals has been treated any differently than a similarly situated group." ECF No. 500, p.7. To the contrary, Runyon alleged that the Government could have sought the death penalty for his two white co-defendants but did not, and it chose to seek the death penalty only for him, a member of a minority race. *See Armstrong*, 517 U.S. at 469 (selective prosecution implies that a selection has taken place).

All three co-defendants in this case were charged with the same crimes and the two white co-defendants were charged with three statutory aggravating circumstances whereas Runyon was charged with only two. Runyon's jury found all three co-defendants were equally culpable in the commission of the crime. The majority of the guilt-phase evidence demonstrated the white co-defendants' planning and execution of the crime, the lavish manner in which the two spent the proceeds of the crime, and their coordinated effort to cover-up the crime. Although the white female co-defendant pled guilty and received a life sentence she did not provide additional information regarding the crime nor did she testify against the other two co-defendants during their subsequent joint trial. The white male co-defendant exercised his right to a trial, as did Runyon, but he was not exposed to the death penalty nor did he assist the prosecution against Runyon.

The Government possessed evidence showing that the white male co-defendant's prior violent conduct and potential for future violent conduct was much stronger than its evidence of Runyon's prior violence. *See* Claim 2. Moreover, the white co-defendants enjoyed $100,000 in proceeds of the crime which establishes a weightier "pecuniary gain" aggravating circumstance than was levied against Runyon. The "substantial planning" aggravator is weightier with respect to the two white co-defendants who, according to the prosecution's theory, engaged in an extensive illicit affair, planned the crime for months, searched for a triggerman, chose the location of the crime, lured the victim to the crime scene and directed Runyon's actions. The "victim impact" aggravator is as strong or stronger against the white co-defendants, especially since the white female co-defendant was the victim's wife and mother of his children and the white male co-defendant was the white female's lover. With regard to the "lack of remorse" aggravator, the white female arranged the crime scene location by opening a bank account, directed her husband to the bank's ATM, and remained on the phone with him as he drove to his death while coordinating his whereabouts with the white male co-defendant. The white female co-defendant lied to military and federal officials and law enforcement to receive a pay-out on her husband's death. Both white co-defendants spent those proceeds and engaged in a coordinated cover-up, tampered with witnesses, and confessed only after being taken into custody and when arrest was inevitable. The white female co-defendant pled guilty for purposes of escaping the death penalty. The white male co-defendant exercised his right to trial and did not apologize or express remorse. Accordingly the "lack of remorse" aggravator asserted against Runyon because he did not confess to the crime is not stronger for him than the white co-defendants.

7

The Government's opposition is silent regarding the discriminatory intent prong of Claim 12. Indeed, Runyon has set forth some evidence of intent based on statistical evidence of racial disparity and the prosecution's conduct at Runyon's trial where, as discussed in Claim 16, the prosecution demonstrated a bias against persons of color. The prosecution introduced evidence and comments that "contaminated the sentencing proceeding with invidious considerations concerning [Runyon's] ethnicity and religion." *Runyon*, 707 F.3d at 493-95. The prosecution's closing argument evidenced a further intent to contravene other constitutional rights. It "infringed [Runyon's] Sixth Amendment rights by impugning his decision to proceed to trial[,]" and violated Runyon's Fifth Amendment right against self-incrimination by urging the jurors to penalize him for remaining silent and not articulating remorse. *Id.* at 507-09. The court of appeals' finding that these violations were harmless is irrelevant to Runyon's threshold demonstration of discriminatory intent.

The discriminatory choices and acts of the prosecution in Runyon's case are probative of discriminatory intent reflected in statistical evidence of racial disparity in the application of the Federal Death Penalty Act, particularly in the Eastern District of Virginia. An overwhelming 42 out of 44 death-authorized cases in the Eastern District of Virginia (95%) are prosecutions of non-white men.[4] The race of the defendant directly correlates to the rate of being federally-charged

---

[4] Either race-of-victim or race-of-defendant discrimination, or both, result in disparate charging in capital cases. Because the victim in this case is white, Runyon was three times more likely to be sentenced to death than a defendant who kills a non-white victim. The likelihood that this discrepancy occurs by chance is "essentially zero." In the time-period before this crime, "the race of the victim was found to influence the likelihood of being charged with capital murder or receiving the death penalty[.]" (Attachment A, Staff Report by the Subcommittee on Civil and Constitutional Rights, Committee on the Judiciary, *Racial Disparities in Federal Death Penalty Prosecutions 1988-1994*, p.7 (March 1994) ("*Racial Disparities*") (quoting U.S. General Accounting Office, Death Penalty Sentencing 5 (Feb. 1990)). The declaration of Lauren Cohen

with capital murder. From 1988-1994, the percentage of defendants selected for capital prosecution nationwide who were white was 11% whereas 89% were non-white. (Attachment A, *Racial Disparities*, p.1). For example:

> Three-quarters of those convicted of participating in a drug enterprise under the general provisions of § 848 have been white and only about 24% of the defendants have been black. However, of those chosen for death penalty prosecutions under this section, just the opposite is true: 78% of the defendants have been black and only 11% of the defendants have been white. (See Fig.1). Although the number of homicide cases in the pool that the U.S. Attorneys are choosing from is not known (the Justice Department has not responded to Congressional inquiries for that data), the almost exclusive selection of minority defendants for the death penalty, and the sharp contrast between capital and non-capital prosecutions under § 848, indicate a degree of racial bias in the imposition of the federal death penalty that exceeds even pre-*Furman* patterns.

> *Id.* at pp.2-3.

From 1995-2000, the federal death penalty was authorized for 159 defendants. U.S. Dep't. of Justice, *The Federal Death Penalty System: A Statistical Survey (1988)-(2000)*, p.8 (Sept. 12, 2000), *available at* http://www.justice.gov/archive/dag/pubdoc/_dp_survey_final.pdf. Of the 159 death-authorized defendants, 28% were white and 72% were non-white. *Id.* Clearly, the race of the defendant is a significant factor in how the federal death penalty is applied. *Compare Hunter v. Underwood*, 471 U.S. 222, 227 (1985) (finding discriminatory impact from a state law where Blacks were at least 1.7 times as likely to suffer disenfranchisement under the law). Statistics for

---

Bell was inadvertently not attached to Runyon's initial §2255 motion. *See* Attachment B. Although that study focused on the correlation between white female victims and the death penalty, it remains probative in this case where the victim is a white male. In society as a whole, African-Americans account for about half of murder victims. Almost 80% of death row defendants have been executed for killing white victims. *See* Death Penalty Information Center, *Race and the Death Penalty*, *available at:* http://www.deathpenaltyinfo.org/race-and-death-penalty.

the Eastern District of Virginia are not only consistent with nationwide statistics but at an authorization rate of 95% for non-whites, they show an even greater disparity in the application of the death penalty. In a related context, the Supreme Court "has recognized that the direct impact of the challenged official action is frequently probative of why the action was taken, since people 'usually intend the natural consequences of their actions.'" *Williams v. Hansen*, 326 F.3d 569, 585 (4th Cir. 2003) (quoting *Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 487 (1997) (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977))).

In *United States v. Bass*, 536 U.S. at 863, the Supreme Court acknowledged nationwide statistics demonstrating that "[t]he United States charges blacks with a death-eligible offense more than twice as often as it charges whites[.]" The defendant in *Bass* fell short on his demonstration of a right to discovery because he did not relate the overall statistics to the treatment of similarly situated defendants. *Id.* at 864. From federal cases docketed in 2008, undersigned have identified 12 defendants—including Runyon—who were authorized for the death penalty. *See Federal Capital Prosecutions – race and gender of defendants and victims* (August 2015), *available at:* http://www.capdefnet.org/FDPRC/pubmenu.aspx?menu_id=96&folder_id=5120. Only two of the twelve defendants were white. The impact of both nationwide and district statistics is clearly exemplified in Runyon's case where the similarly situated white co-defendants (charged with the same crimes and three aggravating circumstances compared to Runyon's two) were not exposed to the death penalty. The prosecution chose not to subject two similarly situated co-defendants of another race to the death penalty and Runyon has alleged "some evidence" making a "credible showing of different treatment" which entitles him to discovery on Claim 12. *Armstrong*, 517 U.S. at 470.

10

## B.  Claim 13

The Government's response is silent as to Runyon's discovery requests in relation to Claim 13 where the lesser "good cause" standard for discovery under Rule 6 applies.

## III.   Requests for medical and mental health information related to David Runyon.

Runyon has requested a subpoena for his medical and mental health records from the Portsmouth City Jail and Portsmouth Sheriff's Office which will support Claims 4, 5, 6, 13, and 14 of his §2255 motion. ECF No. 491, pp.33-36. The Government opposes this request for reasons incorporated from its answer to the §2255 motion and argues that Runyon's claims of ineffective assistance of counsel (Claims 4, 5 and 6) lack merit. ECF No. 500, pp.9-10. Runyon has not had the opportunity to carefully read that answer, nor the ability to research and draft his reply in support of the §2255 motion, but he will fully address the Government's argument in that reply and he incorporates here his argument from that forthcoming pleading.

The Supreme Court has rejected the two bases argued by the Government in its opposition. *See* ECF No. 500, p.9. First, regarding the Government's vague allegation that the mental health evidence has a "double-edged nature," the Supreme Court does not discount the mitigating value of significant mental and psychological impairments just because of the unsurprising "fact that along with … new mitigation evidence there was also some adverse evidence[.]" *Sears v. Upton,* 561 U.S. 945, 951 (2010). When some adverse evidence accompanies mitigating evidence competent counsel should have been able to "turn some of the adverse evidence into a positive[.]" *Id.* The Court has explained the value of the evidence which "might not have made [the defendant] any more likable to the jury, but it might well have helped the jury understand [him], and his horrendous acts—especially in light of his purportedly stable upbringing." *Id.*

11

Second, relief is not foreclosed just because the Government alleges that there was "overwhelming evidence in aggravation as a result of Runyon's calculated and cruel crimes."[5] ECF No. 500, p.9. The Supreme Court has consistently held that a defendant's criminal acts do not excuse counsel's failure to investigate and present mitigating evidence, nor does a defendant's conduct foreclose a life sentence. *See*, *e.g.*, *Williams v. Taylor*, 529 U.S. 362, 398 (2000) (counsel was ineffective for failing to investigate and present mitigating evidence because it "may alter the jury's selection of penalty, even if it does not undermine or rebut the prosecution's death-eligibility case.").

The Government's argument against a subpoena for Runyon's own records would require the Court to render a merits determination of Runyon's several ineffective assistance of counsel claims as opposed to analyzing whether "good cause" exists. An order authorizing the subpoena should be granted because Runyon has set forth specific facts regarding the content of the jail records and the expectation that the discovery will support the claim that counsel unreasonably failed to discover that Runyon suffers from severe mental illness. ECF No. 491, p.35.

The Government's opposition is silent regarding Runyon's request in relation to Claim 13 (regarding the disproportionate and arbitrary imposition of death) and Claim 14 (alleging the death sentence is cruel and unusual punishment because Runyon is severely mentally ill).

---

[5] Although the jurors found the crime involved "substantial planning" they did not find it was "cruel."

12

**IV.     Requests for information that would have supported Runyon's sentencing-phase defense.**

The Government argues against discovery by asserting for unstated reasons that Runyon would not be able to demonstrate a meritorious claim even if the facts are fully developed. ECF No. 500, p.8. The sole support for this argument is a citation to a Supreme Court case that held the defendant had established "good cause" for discovery. *Id.* That case, *Bracy v. Gramley*, *supra*, presents a factual scenario similar to this case and illustrates that Runyon, too, has established "good cause" for discovery.

The habeas petitioner in *Bracy* advanced a judicial bias claim stemming from the trial judge's alleged interest in a conviction in Bracy's case "to deflect suspicion that he was taking bribes in other cases[.]" *Bracy*, 520 U.S. at 901. Bracy requested discovery of the prosecution's materials and research in the subsequent criminal prosecution of the judge in order to support the claim of judicial bias in his case. *Id.* at 902 & n.3. Bracy submitted in support of discovery "a copy of the United States' proffer of evidence in aggravation in [the judge's] case, which describes in considerable detail [the judge's] corruption both before and after he became a judge." *Id.* at 906. The Supreme Court held that Bracy's specific allegations established "good cause" for discovery despite the fact that his theory was "quite speculative," *id.* at 905, and "not supported by any solid evidence," *id.* at 908, because the allegations regarding the judge's corruption were true and Bracy's case was tried between two other trials that had been "fixed." *Id.* "It may well be," stated the Court, "that petitioner will be unable to obtain evidence sufficient to support a finding of actual judicial bias in the trial of his case, but we hold that he has made a sufficient showing, as required by Habeas Corpus Rule 6(a), to establish 'good cause' for discovery." *Id.* at 909.

13

Runyon's §2255 motion asserts a *Brady* claim based on the prosecution's withholding of evidence that would have added substantial weight to the "equally-culpable co-defendant" mitigating circumstance and reduced the weight of the "abuse of women" aggravating circumstance. Runyon has shown that the prosecution gathered materials and research on co-defendant Draven's background and history of violence and used some of it during Draven's sentencing hearing. Similar to the discovery request in *Bracy* for the Government's information on the judge's conduct, Runyon has requested discovery of the prosecution's evidence of Draven's past conduct. He has made a particularized showing of what he expects to find from the discovery. ECF No. 491, pp.21-25. The information regarding co-defendant Draven, as discussed in Claim 2, is true. It is also true that this information was in the prosecution's possession and was not disclosed to Runyon's counsel. The Government's response does not deny the existence of the requested information nor the fact that it was withheld, it asserts only (for unstated reasons) that the information is not material. The withheld information, however, is relevant and favorable to Runyon's sentencing defense. If the facts are fully developed, Runyon "'may … be able to demonstrate that he is ... entitled to relief [and] it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry.'" *Bracy*, 520 U.S. at 909 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

The Government's argument against discovery would require the Court to render a merits determination of Runyon's *Brady* claim as opposed to analyzing whether "good cause" exists. The Government asserts that co-defendant Draven's history of violence against children and women—including adjudicated and unadjudicated criminal conduct—would not have been material nor admissible in Runyon's sentencing hearing. This argument overlooks the fact that the

14

"centerpiece" of defense counsel's mitigation case was the "equally-culpable co-defendant" mitigating circumstance. *Runyon*, 707 F.3d at 508.

Draven's background was a relevant comparison for whether Runyon should be sentenced to death. This is especially so because the prosecution argued the "abuse of women" aggravator against Runyon but Draven's history of violence against children and women would have overshadowed Runyon's past conduct. The prosecution asserted Draven's violent history was relevant to Draven's life sentence, ECF No. 301, p.5, and pre-determined that it did not merit a death sentence for Draven. Runyon's counsel could have presented to the jurors the withheld evidence to demonstrate that the prosecution did not seek death against Draven despite his substantial history of violence. Just like the prosecution introduced police reports, police officer testimony, a protective order, and victim testimony in support of the "abuse of women" aggravator against Runyon, Runyon could have introduced the same evidence relating to Draven because it supported his mitigation theory.[6] This withheld evidence would have substantially strengthened counsel's argument that because the prosecution did not seek death for Draven, Runyon likewise did not deserve death.

---

[6] The Government is incorrect in its bald assertion that the withheld evidence would not have been admissible, ECF No. 500, p.8, and such an assertion serves only as a diversion. *Sears*, 561 U.S. at 950 ("[T]he fact that some of such evidence may have been 'hearsay' does not necessarily undermine its value—or its admissibility—for penalty phase purposes."). When presenting penalty phase evidence, "[t]he relevant inquiry … is not whether the [evidence] was admissible under the Federal Rules of Evidence (which do not apply in capital sentencing proceedings), but whether the [evidence] was so unreliable that its admission violated due process." *United States v. Fulks*, 454 F.3d 410, 436 (4th Cir. 2006); *see also United States v. Moussaoui*, 382 F.3d 453, 472 (4th Cir. 2004). With respect to Runyon's discovery request, information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1) (as amended Dec. 1, 2015). It need only be relevant to Runyon's claim. *Id.*

Finally, the Government argues for unstated reasons that Runyon's *Brady* claim "is procedurally defaulted" so "discovery is unnecessary."[7] ECF No. 500, p.8. Runyon will fully address the issue of procedural default in his reply to the Government's answer and he incorporates here his argument from that forthcoming pleading. In short, the *Brady* claim is not procedurally defaulted because it could not "be fully and completely addressed on direct review based on the record created" in the trial court. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Waley v. Johnston*, 316 U.S. 101, 104 (1942) (a claim is not procedurally defaulted when the facts are "dehors the record and their effect on the judgment was not open to consideration and review on appeal.").

## V.   Requests for documents and interrogatory responses regarding the illegal activities of Posey and Ford.

In Claim 1, Runyon alleges that the Government failed to disclose the involvement of two dishonest law enforcement officers in connection with the criminal proceedings against the defendant. The claim also alleges that trial counsel provided ineffective assistance to the extent they knew these law enforcement officers were dishonest.

As with Claim 16, the Government does not suggest that Runyon's requests for the production of documents and for leave to propound interrogatories are burdensome or overbroad;

---

[7] An allegation of procedural default does not negate a need for discovery. "[D]iscovery is allowed in this case if it would lead to evidence that could excuse the apparent procedural default of Petitioner's claims." *Sample v. Colson*, 958 F.Supp.2d 865, 888 (W.D. Tenn. 2013). A showing of "cause and prejudice" or "actual innocence" clears procedural bars to constitutional claims and the determination of the sufficiency of such a showing may require discovery or an evidentiary hearing. *Wolfe v. Clarke*, 691 F.3d 410, 412-13 (4th Cir. 2012). For example, counsel's failure to investigate and present evidence of co-defendant Draven's history of violence against women and children constitutes a denial of the effective assistance of counsel and also establishes "cause" for any asserted procedural default. *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)).

16

that the materials and answers he seeks are privileged or confidential; or that the discovery is not relevant to the substance of the claims presented.

The Government opposes all discovery on this claim on the sole ground that for unstated reasons incorporated from its recently filed answer to the §2255 motion, Runyon's claim is defaulted and also lacks merit. Runyon disagrees. Because of the current schedule for Runyon's filings, he has not had the opportunity to carefully read the Government's answer, nor the ability to research and draft his reply in support of the §2255 motion. Runyon will address both the merits and the procedural posture of this claim in that reply, and he incorporates here his arguments from that forthcoming pleading.

### Conclusion

For all the reasons above, and those contained in Runyon's motion for discovery and his §2255 motion, the Court should grant in all respects Runyon's motion for discovery.

Respectfully Submitted,

_____/s/_____

| | |
|---|---|
| Dana Hansen Chavis, *pro hac vice* | Michele J. Brace, VSB No. 36748 |
| Federal Defender Services | Virginia Capital Representation |
| of Eastern Tennessee, Inc. | Resource Center |
| 800 S. Gay Street, Suite 2400 | 2421 Ivy Road, Suite 301 |
| Knoxville, TN 37929 | Charlottesville, VA 22903 |
| Telephone (865) 637-7979 | Telephone (434) 817-2970 |
| Dana_Hansen@fd.org | mbrace@mindsort.com |

Dated: January 29, 2016

17

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2016, I have electronically filed the foregoing Petitioner's Reply in Support of First Motion for Discovery with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Brian J. Samuels
U.S. Attorney's Office
Fountain Plaza Three
721 Lakefront Commons, Suite 300
Newport News, VA 23606
(757) 591-4032
Brian.Samuels@usdoj.gov

Jeffrey A. Zick
U.S. Attorney's Office
Fountain Plaza Three
721 Lakefront Commons, Suite 300
Newport News, VA 23606
Phone: (757) 591-4000
Jeffrey.Zick@usdoj.gov

Lisa Rae McKeel
U.S. Attorney's Office
Fountain Plaza Three
721 Lakefront Commons Suite 300
Newport News, VA 23606
(757) 591-4040
Lisa.McKeel@usdoj.gov

_____/s/_____
Michele J. Brace, VSB No. 36748
Virginia Capital Representation
 Resource Center
2421 Ivy Road, Suite 301
Charlottesville, VA 22903
Telephone (434) 817-2970
Fax (434) 817-2972
mbrace@mindsort.com
*Counsel for Defendant/Movant*
*David Anthony Runyon*

18