**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

_____

| | | |
|---|---|---|
| DAVID ANTHONY RUNYON, | : | No. 4:15-cv-108 |
| Petitioner, | : | Initial Criminal No. 4:08-cr-16-3 |
| | : | CAPITAL §2255 PROCEEDINGS |
| v. | : | |
| | : | HON. REBECCA BEACH SMITH |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |
| | : | |
| | : | |

_____        _____

**REPLY TO RESPONSE OF THE UNITED STATES TO PETITIONER'S SECOND MOTION FOR DISCOVERY AND CONSOLIDATED MEMORANDUM OF LAW**

Respondent opposes Runyon's request for records regarding the ballistics evidence while ignoring the fact that Runyon seeks to discover what he was entitled to review at the pre-trial and/or trial stages of his case. ECF No. 31, p.2 (Discovery Order); FED. R. CRIM. P. 16(a)(1)(E)-(G); FED. R. EVID. 702, 703, & 705. Defense counsel was entitled to inspect the bullets. He was entitled to the results and reports of the ballistics examination generated by the Virginia Department of Forensic Science (DFS). He was entitled to the facts and data underlying the opinions of forensic experts. The fact that trial counsel failed to obtain this information is prima facie proof of counsel's deficient performance, as alleged in Claim 3.

The record of the case, including the exhibits introduced against Runyon, is a public record open to inspection. Undersigned counsel undertook a diligent review of

the record maintained by the clerk of court. Exhibits consisting of bullets and firearms are not maintained by the clerk of court but are given to the ATF agent for safe-keeping. Counsel and/or counsel's agent were unable to inspect the four bullets and bullet jacket, exhibits 5 and 22, because the ATF agent cannot locate the exhibits. As indicated in Runyon's motion, ECF No. 530, p.5, the DFS records presently constitute the best and only evidence of the bullets and bullet jacket left at the crime scene.

Respondent acknowledges initially that Runyon need only demonstrate good cause for discovery but asserts this standard is not established because: (1) the prosecution expert's testimony was all-inclusive of .357 and .38 brands of firearms, and (2) Chad Costa's statements regarding the characteristics of Runyon's firearm "adds little" to Runyon's claim since they contradict other testimony. ECF No. 532, pp.4-5. To the contrary, this illustrates the point that counsel failed to investigate and present evidence challenging the prosecution's forensic testimony. Counsel's reasonable doubt strategy required an effective challenge to the prosecution's attempt to connect Runyon's gun to the crime. If the forensic analysis revealed that almost every brand of .357 and .38 firearms could have fired the bullets then Chad Costa's contrary description of Runyon's .357 raised a factual dispute supporting a reasonable doubt of Runyon's guilt. Thus, Runyon's §2255 pleadings contain specific allegations that, if the facts are fully developed, will demonstrate that he is entitled to relief. *Bracy v. Gramley*, 520 U.S. 899, 908-08 (1997).

Respondent also asserts that "Runyon offers no study or evidence that rebuts the validity of the analysis … performed on the bullets." *Id.*, p.4. At the discovery stage, Runyon need not rebut the validity of the prosecution's evidence. He need only demonstrate that the requested information "might demonstrate" he is entitled to relief on his ineffective assistance of counsel claim. *Hill v. Ozmint*, 339 F.3d 187, 201 (4th Cir. 2003). Runyon's discovery motion made this showing by discussing the discrepancies above and relying upon his allegations in Claim 3 which include the fact that, about five months before Runyon's trial, the National Academy of Sciences ("NAS") issued a landmark report regarding the unreliable state of forensic science in this country. ECF No. 511, p.33 n.20 (citing Nat'l Acad. of Sci., *Strengthening Forensic Science in the United States: A Path Forward* (Feb. 2009)) ("NAS report") (Attachment A) (Partial: pp.1-53 (introduction); pp.150-55 (toolmark and firearms identification)).

The NAS Report concluded that "[w]ith the exception of nuclear DNA analysis … no forensic method has been rigorously shown to have the capacity to consistently, and with a high degree of certainty, demonstrate a connection between evidence and a specific individual or source." (Attachment A, NAS Report, p.7). As the NAS Report recognized, "there is a notable dearth of peer-reviewed, published studies establishing the scientific bases and validity of many forensic methods," *id.* p.8, and the report makes clear that these deficient methods include the precise types of scientific evidence presented at Runyon's trial: toolmark and firearm identification. *Id.*, pp.150-55. "The fact is that many forensic tests—such as those

used to infer the source of toolmarks or bite marks—have never been exposed to stringent scientific scrutiny." *Id.*, p.42. Although the NAS Report is perhaps the most renowned publication revealing the unreliable and unscientific nature of this type of forensic testimony, it is not the first nor the last.

Even before the 2009 NAS Report, counsel should have been aware of published criticism regarding the reliability of "ballistics" or firearms identification testimony.[1] Such criticism and concern continues today. In 2014, the National Institute of Standards and Technology reported on a project goal to develop objective toolmark identification criteria and error rate estimates so "examiners in court will not only present their subjective opinion of identification, but also will have an independent objective measurement of similarity between the evidence items."[2] In 2015, the Attorney General endorsed a charter for the National Commission on Forensic Science (NCFS), a purpose of which is to "strengthen the

---

[1] Scholarly and legal scrutiny of firearms identification testimony since 2005—four years before Runyon's trial—is collected and discussed in an article by Lanigan Bonnie: *Firearms identification: the need for a critical approach to, and possible guidelines for, the admissibility of "ballistics" evidence*, 17 Suffolk J. of Trial & Appellate Advocacy, 54 & notes 2, 7-9, 12, 13, 45, 58, 83-95, 115, 120 (Feb. 1, 2012). *See also* Adina Schwartz, *A Systemic Challenge to the Reliability and Admissibility of Firearms and Toolmark Identification*, 6 The Columbia Sci. and Tech. L. Rev. 1, 2 (2005) (discussing *United States v. Kain*, Crim. No. 03-573-1 (E.D. Pa. 2004), and demonstrating that "because of the systemic scientific problems, firearms and toolmark identification testimony should be inadmissible across-the-board.").

[2] Robert M. Thompson & Xiaoyu Alan Xheng, *NIST Forensic Topography Analysis Project Seeks to Improve Ballistics Identification*, 2 NIST Forensic Sci. News pp.1, 4 (Summer 2014), *available at*: http://www.nist.gov/forensics/upload/Summer-2014.pdf

4

validity and reliability of the forensic sciences" and "develop proposed guidance concerning the intersection of forensic science and the courtroom[.]" (Attachment B, Charter). It is the view of the NCFS that "[a] trusted and impartial process of judging scientific merit of forensic practices and the presentation of data must be developed to ensure that all forensic results are based on sound and current science." (Attachment C, Nat'l. Comm. on Forensic Sci., *Views of the Commission: Validation of Forensic Science Methodology*, p.3 (Feb. 29, 2016).

Last month, March 2016, the Principal Deputy Assistant Attorney General and head of the Justice Department's Office of Legal Policy presented materials to the NCFS for the purpose of addressing testimonial inaccuracies of forensic examiners in disciplines including firearms/ballistics. Office of Legal Policy Presentation, *The Forensic Science Discipline Framework*, pp.4, 6, 7, *available at*: https://www.justice.gov/ncfs/file/835636/download. The materials set forth the framework for adopting and implementing "correct testimonial standards" and for reviewing closed cases involving FBI forensic testimony for "testimonial inaccuracies." *Id.*, pp.8, 9, 11. Runyon's case will not be selected for review because his case is not closed and the examiner who testified—although trained by the FBI—was not an FBI agent. Discovery therefore should also be granted because the Department of Justice has identified a clear need to review ballistics/firearms testimony like the testimony presented at Runyon's trial.

Finally, Respondent fails to address the cases included in Runyon's motion which provide for discovery under substantially similar circumstances and, instead,

5

ultimately argues against discovery by asserting an inapplicable standard: that Runyon has not established the merits of his ineffective assistance of counsel claims. ECF No. 532, pp.5-6. This argument would require the Court to render a merits determination of Runyon's several ineffective assistance of counsel claims as opposed to analyzing whether "good cause" exists. An order authorizing access to the DFS records should be granted because Runyon has set forth specific facts regarding the content of the DFS records and the expectation that the discovery will support the claim that counsel unreasonably failed to investigate and discover that Runyon's gun was not the murder weapon.

WHEREFORE, Runyon respectfully requests a court order requiring the Virginia Department of Forensic Science to release to undersigned counsel copies of all records related to forensic services in FS Lab #T07-4553 regarding the bullets and/or firearm involved in this case, including but not limited to, reports, requests for examination, certificates of analysis, bench notes, handwritten and typed notes, charts, drawings, diagrams, digital photographs in .pdf format, color copies of film photographs, email, memoranda and written correspondence.

Respectfully Submitted,

_____/s/_____
Michele J. Brace, VSB No. 36748
Virginia Capital Representation
   Resource Center
2421 Ivy Road, Suite 301
Charlottesville, VA 22903
Telephone (434) 817-2970
Fax (434) 817-2972
mbrace@mindsort.com
Dana C. Hansen Chavis, *pro hac vice*

Asst. Federal Community Defender
Federal Defender Services of
   Eastern Tennessee, Inc.
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Dana_Hansen@fd.org

Dated: April 13, 2016

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2016, I have electronically filed the foregoing Reply to Response of the United States to Petitioner's Second Motion for Discovery and Consolidated Memorandum of Law with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

Jeffrey A. Zick
Special Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4000
Fax (757) 591-0866
Jeffrey.Zick@usdoj.gov

_____/s/_____
Michele J. Brace, VSB No. 36748
Virginia Capital Representation
  Resource Center
2421 Ivy Road, Suite 301
Charlottesville, VA 22903
Telephone (434) 817-2970
Fax (434) 817-2972
mbrace@mindsort.com

*Counsel for Petitioner*
*David Anthony Runyon*