## DECLARATION OF STEPHEN A. HUDGINS

1. My name is Stephen A. Hudgins.  In February 2009, I was in private practice. I was appointed to represent David Runyon.

2. This is my second declaration regarding my representation of David Runyon. The first declaration is dated September 22, 2015.

3. I was appointed to represent David Runyon because Jon Babineau was removed due to a conflict of interest.  Mr. Babineau provided me with his files on Runyon's case.  He was not, however, responsive to my requests to speak about the case.  Mr. Babineau did not return my phone calls and I don't think I ever had a conversation with him about the penalty-phase defense.  This may well have been because of the conflict.  I reviewed Mr. Babineau's files but proceeded in my own direction in preparing the penalty-phase defense. The time Mr. Babineau spent working on David Runyon's case was not much benefit to me.

4. The work I put into this case was constrained by the short amount of time I had to prepare for trial as well as my existing case load.  In my September 2015 declaration I stated, "The Court granted a four week recess between the eligibility phase and the penalty phase which gave time to work on the mitigation case."  ECF No. 511-5, ¶6.  The court appointed Dr. Merikangas at the beginning of this time-period and after the jury found David Runyon was eligible for the death sentence.

Exhibit 1

5.  In my September 2015 declaration I stated that I do not remember the result of the brain scans of David Runyon which were conducted right before the penalty phase began.  ECF No. 511-5, ¶6.  I still do not remember the result of the scans.  David Runyon's current attorneys informed me that a radiologist reported a "normal brain MRI."  This report would not have supplied me with enough information to make a decision to cease investigation of David Runyon's mental health or social history.  I understand the difference between a radiologist's reading and a neuropsychiatrist's/neurologist's reading of such scans.

6.  David Runyon's current attorneys informed me that Dr. Merikangas recently read the film from the 2009 scans and that one scan revealed brain damage.  This is the type of information I would have been looking for at the penalty phase.

7.  I do not have any memory about the contents of the prosecution experts' reports.  I would expect a prosecution expert to express a differing, if not unfavorable, opinion of my client.  I would not have ceased an investigation into, or decided not to present, David Runyon's mental health and social history based on the fact that one or two prosecution experts issued unfavorable reports.

8.  I recently reviewed the 2009 reports of Dr. Mirsky and Dr. Merikangas.  In my opinion, the reports do not contain negative information about David Runyon.

Exhibit 1

9. I recently reviewed Army medical records related to David Runyon's car accident. This is the type of information I was looking for at the penalty phase.

10. I understand that a person's intelligence quotient is unrelated to mental illness. The fact that David Runyon's I.Q. is above average did not rule out the possibility that he suffered from mental illness. Runyon's above-average I.Q. was not inconsistent with mental health mitigation and was not a reason to cease investigation into Runyon's mental health and social history.

11. I would not forego presenting mental health mitigation because a client was diagnosed with a personality disorder. A personality disorder was not a reason to cease investigation into Runyon's mental health and social history nor a reason to forego presentation of mental health and social history mitigation.

12. Runyon's current attorneys recently shared with me information they learned about Michael Draven. I was informed that Michael Draven had a history of domestic violence, sexual assault against a mentally disabled teenager, and sexual acts against children under the age of ten. If I had known this at the time of David Runyon's trial I would have used this information in support of the mitigation case.

13. One of the mitigating factors advanced in the selection phase of trial was the fact that two equally culpable co-defendants would not be sentenced to death. The defense argued that Catherina Voss was a bad actor. The new

Page **3** of **4**

Exhibit 1

information about Michael Draven would likely have been presented because it supported the argument that Michael Draven was a bad actor.

14. The new information about Michael Draven also would have rebutted the prosecution's argument regarding David Runyon's alleged bad personal characteristics. The prosecution introduced incidents of domestic abuse involving David Runyon that paled in comparison to Michael Draven's violent conduct.

15. My co-counsel Larry Woodward presented the guilt-phase defense where he tried to portray the co-defendants as bad actors. The information I recently learned about Michael Draven would have been consistent with this defense.

16. The new information about Michael Draven could have tilted the balance of the jury's sentencing decision because it strengthens the mitigating circumstance that the co-defendants were just as culpable, if not more so, than David Runyon but only Runyon faced a death sentence.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on the 22 day of June, 2016.

_____
Stephen A. Hudgins

Exhibit 1