**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

_____     _____

DAVID ANTHONY RUNYON,                    :
          Petitioner,                     :              No. 4:15-cv-108
                                          :        Initial Criminal No. 4:08-cr-16-3
          v.                              :        CAPITAL §2255 PROCEEDINGS
                                          :
UNITED STATES OF AMERICA,                 :        HON. REBECCA BEACH SMITH
          Respondent.                     :

_____     :     _____
                                          :

**THIRD MOTION FOR DISCOVERY**
**AND CONSOLIDATED MEMORANDUM OF LAW**

David Anthony Runyon, by counsel, hereby files this third motion for discovery pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Equal Protection and Due Process clauses of the Fifth Amendment, and the Eighth Amendment. In this motion Runyon asks for a court order requiring the ATF to release to defense expert, Board Certified Forensic Engineering Scientist John Nixon, Government trial exhibits 5 and 22 (bullets and bullet jackets) so that he may conduct testing to identify the items and the type of weapon which could have fired them. See Attachment A, Nixon Declaration. An order of the Court is necessary for the expert to conduct a forensic examination. As is explained below, this motion is filed soon after ATF's revelation that it has possession of these exhibits. The ATF is willing to permit a visual examination of the evidence at its office in Norfolk, Virginia. ATF is unwilling to relinquish custody of the bullets and bullet jackets to the expert so that he may conduct a forensic analysis. Thus, David Runyon moves this Court for an order directing that exhibits 5 and 22 be released to Nixon for forensic testing.

## Procedural History

On October 5, 2015, David Runyon timely filed a motion under 28 U.S.C. § 2255 to vacate his convictions and sentence. ECF No. 478.[1] As relevant to this motion, Claim Three alleges that trial counsel were ineffective for failing to investigate and challenge the Government's ballistic evidence. ECF No. 511, pp. 32-34.

As part of his investigation related to the § 2255 motion, Runyon attempted to locate Government trial exhibits 5 and 22 (the bullets and bullet jacket), which reportedly had been returned to the Government after trial. He began those efforts in late 2015. As of February 2, 2016, the Government advised Runyon's counsel that it was unable to locate these exhibits.

On April 1, 2016, Runyon moved to discover records related to the Government's forensic analysis of its ballistic evidence. ECF No. 530. This discovery motion noted that because exhibits 5 and 22 (bullets and bullet jacket) could not be located, the forensic records were the sole source of information regarding evidence used by the prosecutor to connect Runyon to the crime. The motion discussed indicators that warranted a new review of the evidence. ECF No. 530, p.5 fn.2. In its response, the Government did not contest the fact that the bullets and bullet jacket could not be located. ECF No. 536, pp.34-36.

On July 12, 2016, this Court ordered that a subpoena duces tecum issue directing the Virginia Department of Forensic Science to produce the sought-after records under seal for in camera review by the court. ECF No. 552.

---

[1]Runyon filed an amended §2255 motion on February 4, 2016.  ECF No. 511. Aside from the instant cite to the initial motion, all remaining cites here are to the amended motion.

On January 19, 2017, this Court denied Runyon's §2255 motion, as well as his discovery motion related to records generated during testing of the ballistic evidence. ECF No. 560, pp.62-65.

On February 2, 2017, the Government advised Runyon's counsel that the trial exhibits 5 and 22 had been "recently locate[d]." Attachment B, p.4, Email string. Counsel promptly communicated with the Government's counsel and attempted to arrange for independent testing of the recently found evidence. Attachment B, p.3, Email string. The proposed independent testing will be 100% non-invasive, non-destructive, and will not alter the evidence.  It is Runyon's understanding that the results of this testing would establish the type of bullets and the type of weapon which could have fired them.

 The Government advised Runyon's counsel that it is willing to permit only visual inspection of the bullets and jacket, and that it must be conducted at the ATF office in Norfolk, Virginia. The Government advises counsel that the Norfolk office does not contain a laboratory or any other type of necessary and appropriate examining equipment.

Defense expert John Nixon, who is a board certified forensic engineering scientist, with expertise in ballistics, advises that a visual inspection would not produce any useful information for Runyon's purpose. Nixon's facility for forensic analysis is located in Indiana. He uses specialized testing equipment that is expensive, delicate, bulky, and heavy. Thus, he could not travel to Norfolk, Virginia, with the equipment needed to conduct the necessary evaluation. Attachment A, Nixon Declaration.

In order for necessary testing to be conducted by Runyon's expert, the bullets and bullet jacket must be released to Nixon's facility in Indiana. It is part of Nixon's routine professional

3

practice in other cases to receive evidence, to test it, and then to return it to its previous custodian or other designated recipient. During the time the materials are in Nixon's custody, he stores the evidence in a secure vault with permanently monitored electronic security and armed human security. Attachment A, Nixon Declaration.

> **Runyon requires a court order to conduct investigation he was unable to perform earlier, through no fault of his own.**

A full discussion of the rules for discovery in Section 2255 cases is set forth in Runyon's first motion for discovery and is incorporated herein. ECF No. 491, pp.2-5. In short, if Runyon demonstrates "good cause" then discovery should be granted. "Good cause" for discovery is established when (1) the movant makes credible allegations of a constitutional violation; and (2) the requested discovery will enable the movant to investigate and prove his claims. *Bracy v. Gramley*, 520 U.S. 899, 904, 908-09 (1997).

There is good cause for independent testing of the bullets and bullet jackets. The testing is relevant to Runyon's Claim 3, which alleges that counsel were ineffective for failing to investigate, present, emphasize and/or argue evidence that created reasonable doubt or supported Runyon's innocence. ECF No. 511, p.21. To prevail on an ineffective assistance of counsel claim, Runyon must demonstrate that counsel's performance was deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 692 (1984). Trial counsel have been found ineffective for failing to investigate and present ballistics evidence that is inconsistent with the prosecution's case. *See, e.g.*, *Draughon v. Dretke*, 427 F.3d 286 (5th Cir. 2005) (counsel's failure to retain a ballistics expert was prejudicial where the prosecution relied on ballistics evidence); s*ee also Hinton v. Alabama*, 134 S.Ct. 1081 (2014) (per curiam) (counsel ineffective where his investigation into ballistics evidence was unreasonably limited).

4

Runyon acknowledges this Court denied his previous discovery requests related to the Department of Forensic Science documents created during testing of the bullets and bullet jacket. However, the Government only recently located the bullets and the bullet jackets themselves, and for that reason alone Runyon has not previously requested examination of those items by his own expert.

As noted in Runyon's motion for discovery of evidence related to the forensic ballistics testing, during Runyon's trial, the prosecutor told the jury that the five bullets used in the crime were fired from the same gun and the bullets are "the only evidence that was left behind by the killer." Tr. 218, 7/2/09.[2] The prosecution's theory necessarily relied on ballistics evidence to show a correlation between the five bullets from the crime and a gun owned by Runyon. A forensic examiner from the Virginia Department of Forensic Science, John Willmer, testified that the bullets used in the crime were fired from the same gun. Tr. 362, 7/6/09. The Certificate of Analysis on the bullets generated by James Pickelman from the Virginia Department of Forensic Science was introduced into evidence. Tr. 358, 7/6/09; Gov't Tr. Ex. 23. Four bullets and one bullet jacket and fragment were also introduced into evidence. Gov't Tr. Ex. 5 & 22. Willmer testified the bullets were .38 class and that .38 caliber bullets could be fired from a .357 revolver. Tr. 362, 364, 7/6/09. Testimony and exhibits were introduced to show that Runyon purchased a Taurus .357 revolver the day of the crime and that he pawned the same revolver on separate occasions before his arrest. The prosecution's presentation of Willmer's testimony and proof of Runyon's gun ownership "could not fail to suggest an inference that this was the weapon used to

---

[2] Four bullets and one bullet jacket and fragments were recovered and this is referred to as five bullets.

commit the offense for which [Runyon] was on trial." *Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 845 (4th Cir. 1964).

Defense counsel's performance was deficient due to an inadequate investigation into Runyon's .357 revolver and the prosecution's ballistics evidence. As discussed in Claim 3, counsel failed to investigate and present lay-witness evidence distinguishing the appearance of Runyon's Taurus revolver from the silver or steel, five-shot handgun alleged at trial to be the murder weapon. For example, Chad Costa handled and observed Runyon's .357 and described it as a black, six-shot revolver. ECF No. 511-7, Declaration of Chad Costa.

In addition, the Certificate of Analysis (Gov't Tr. Ex. 23) should have alerted counsel to inconsistencies between the ballistics evidence and Runyon's revolver. An obvious discrepancy is that the government's ballistics evidence does not mention the Taurus brand of .357 revolvers. It states that the bullets were "fired from the same firearm having a barrel rifled with six (6) lands and grooves inclined to the right[.]" Gov't Tr. Ex. 23. It said firearms which produce those characteristics include *.357 Magnum* revolvers "with the brand names Astra and Llama" and include *.38 Special* revolvers "with the brand names Astra, Beistegui, Charter Arms, Llama, Quality Firearms, Rossi and Taurus[.]" *Id.*; *see also* Tr. 369 (Pickelman's report includes .38 special brands of firearms and brands of firearms that can fire .357 magnum cartridges that have those rifling specifications). The fact that the report uses qualifying language, i.e., "not limited to," does not refute the fact that the Government's list of .357 revolvers with these characteristics omitted the Taurus brand. Counsel failed to adequately investigate, cross-examine and/or rebut the testimony of the forensic examiner which was used to connect Runyon's Taurus .357 revolver to the .38 bullets used in the crime.

6

Federal Rule of Criminal Procedure16(a)(1)(E) provides that upon request, the government must permit the defendant to inspect tangible objects in its possession if the government intends to introduce the items in its case-in-chief.  A "concomitant part of the examination or inspection [is] the right of the accused to have an independent" analysis of the object. *United States v. Butler,* 988 F.2d 537, 543 (5th Cir. 1998) (quoting *United States v. Gaultney,* 606 F.2d 540, 545 (5th Cir. 1979), *rev'd on other grounds sub nom. Steagald v. United States,* 451 U.S. 204 (1981)). "Fundamental fairness is violated when a criminal defendant on trial for his liberty is denied the opportunity to have an expert of his choosing, bound by appropriate safeguards imposed by the Court, examine a piece of critical evidence whose nature is subject to varying expert opinion." *Bernard v. Henderson*, 514 F.2d 744, 746 (5th Cir. 1975).

The Rules governing the filing of section 2255 proceedings contemplate discovery consistent with the Federal Rules of Criminal Procedure, after a finding of good cause. Rules— Section 2255 Proceedings Rule 6(a). *See Hall v. United States*, 30 F. Supp. 2d 883, 899 (E.D. Va. 1998) (same).

On February 16, 2017, David Runyon filed a timely Rule 59(e) Motion to Alter or Amend the Court's order denying relief. ECF No. 566, 567. A Rule 59(e) motion is an appropriate vehicle to consider evidence that was not available to the Court when it issued its decision. *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (Rule 59(e) motion is appropriate to "account for new evidence not available at trial") (internal citation and quotation marks omitted).

Trial counsel plainly would have been permitted to have their own expert inspect and examine the evidence the Government introduced at trial. Case law further supports independent

7

testing. *Butler, supra*.  Testing is necessary here to establish *Strickland* prejudice. In light of the Government's recent disclosure that the evidence finally has been located, this discovery motion is timely filed.

Had counsel investigated the ballistics issue and/or consulted with a ballistics expert, the jurors would have learned of discrepancies between Runyon's .357 revolver and the ballistics evidence. *See Soffar v. Dretke*, 368 F.3d 441, 476 (5th Cir. 2004) *amended on reh'g in part on other grounds*, 391 F.3d 703 (5th Cir. 2004) ("[D]efense counsel were deficient in not seeking out a ballistics expert when there were such readily apparent discrepancies between the ballistics evidence and the State's theory of the case."). The fact that Runyon's gun was not the murder weapon might not have been absolute proof of Runyon's innocence, but had it been made known, "it might well have nurtured, even generated, a reasonable doubt as to guilt." *Barbee*, 331 F.2d at 847. Since no evidence directly places Runyon at the crime scene there is a reasonable probability that at least one juror—presented with evidence that Runyon did not possess the murder weapon—would have found Runyon not-guilty. *Soffar*, 368 F.3d at 478-79 (counsel's failure to consult with a ballistics expert was prejudicial where there was no "clear objective evidence" of guilt as demonstrated through forensics). If these allegations are true, Runyon is entitled to a new trial.

The allegations supporting Claim 3 establish good cause for factual development regarding the independent testing of the bullets and bullet jacket. Additional information "might demonstrate" Runyon is entitled to relief based on trial counsel's ineffectiveness in this aspect of the case. *Hill v. Ozmit*, 339 F.3d 187, 201 (4th Cir. 2003). *See also Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997) (denial of discovery was an abuse of discretion where it may establish

8

the prejudice required for an ineffective assistance of counsel claim); *Toney v. Gammon*, 79 F.3d 693, 696 (8th Cir. 1996) (denial of discovery was an abuse of discretion where it was requested to support counsel's ineffectiveness for failing to "highlight lack of evidence linking [the defendant] to the crime").

Here, Runyon seeks independent testing of Government exhibits 5 and 22. As demonstrated above, testing in Virginia is not a viable option. Further, Runyon has diligently attempted to locate the bullets since late 2015. More than one year later, after multiple requests and after this Court denied relief, the Government revealed that it had located the exhibits. Nixon is accustomed to receiving and maintaining ballistic evidence. He is qualified to conduct testing and render a reasoned opinion. The ballistics were a key part of the Government case against Runyon. They should be independently tested.

For these reasons, Runyon requests a court order directing ATF to release and to securely transmit exhibits 5 and 22 (bullets and bullet jacket) to John Nixon, Athena Research & Consulting, so that Nixon may perform non-invasive and non-destructive forensic testing and analysis. The order should further direct Nixon to maintain exhibits 5 and 22 under secure conditions, and at the conclusion of his examination to return these exhibits in a secure manner to the ATF in Norfolk or other specified custodian.

Respectfully Submitted,

_____/s/_____

Michele J. Brace, VSB No. 36748
Virginia Capital Representation
 Resource Center
2421 Ivy Road, Suite 301
Charlottesville, VA 22903
Telephone (434) 817-2970
Fax (434) 817-2972
mbrace@mindsort.com

Dana C. Hansen Chavis, *pro hac vice*
Asst. Federal Community Defender
Federal Defender Services of
 Eastern Tennessee, Inc.
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Dana_Hansen@fd.org

Dated: February 24, 2017

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2017, I have electronically filed the foregoing Third Motion for Discovery and Consolidated Memorandum of Law with the Clerk of Court using the CM/ECF No. system, which will then send a notification of such filing (NEF) to the following:

Brian J. Samuels, Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Jeffrey A. Zick, Special Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4000
Fax (757) 591-0866
Jeffrey.Zick@usdoj.gov

Lisa R. McKeel, Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

_____/s/_____
Michele J. Brace, VSB No. 36748
Virginia Capital Representation
  Resource Center
2421 Ivy Road, Suite 301
Charlottesville, VA 22903
Telephone (434) 817-2970
Fax (434) 817-2972
mbrace@mindsort.com

*Counsel for Petitioner*
*David Anthony Runyon*

11