```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                      Newport News Division


- - - - - - - - - - - - - - - - - - -
                                     )
  UNITED STATES OF AMERICA,          )
                                     )
                                     )   CRIMINAL ACTION NO.
  v.                                 )   4:08cr16
                                     )
  DAVID ANTHONY RUNYON,              )
                                     )
          Defendant.                 )
                                     )
- - - - - - - - - - - - - - - - - - -
```

TRANSCRIPT OF PROCEEDINGS

Norfolk, Virginia

November 15, 2021

BEFORE:   THE HONORABLE REBECCA BEACH SMITH
          United States District Judge


APPEARANCES:

          UNITED STATES ATTORNEY'S OFFICE
          By:  Brian Samuels
               Lisa R. McKeel
               Carrie Ward
               Assistant United States Attorneys
               Counsel for the United States

          FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE,
          INC.
          By:  Dana C.H. Chavis
                   And
          VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER
          By:  Michele J. Brace
               Counsel for the Defendant

JODY A. STEWART, Official Court Reporter

(Hearing commenced at 2:06 p.m.)

THE CLERK:  In case 4:08cr16, United States of America versus David Anthony Runyon.

Mr. Samuels, Ms. McKeel, Ms. Ward, is the government ready to proceed?

MR. SAMUELS:  The government is ready.  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

THE CLERK:  Ms. Chavis, Ms. Brace, is the defendant ready to proceed?

MS. CHAVIS:  Yes, Your Honor.

THE COURT:  Good afternoon.

MS. CHAVIS:  Good afternoon.

THE COURT:  Before we start, let me mention a couple of administrative matters.  Let me make a comment about the courtroom and the way we are set up.  Then other than that, I'll give a background of the case.  First of all, this matter is before the Court on a status conference following the Fourth Circuit's limited remand of petitioner's motion to vacate his sentence pursuant to 28, United States Code, Section 2255.

We are here today for a status conference on the remand from the Fourth Circuit, and I would note that we are in a courtroom that is fully equipped for COVID-19 proceedings.  The Court and the court personnel are behind

Plexiglas, and we are all socially distanced.  Anyone seated in the gallery, the seats are marked for social distancing, and we have plenty of room for anyone that is here.  We are in the large ceremonial courtroom.  The attorneys and court personnel are protected behind the Plexiglas.

Also, we, the court personnel, are extremely more than six feet away in the large courtroom.  The Court would ask that the attorneys, and obviously anyone in the gallery, wear their masks, although you are at least the six feet socially distanced, and you've got the Plexiglas.

When you address the Court, the Court would appreciate it if you would come up behind the enclosed podium, and you may remove your mask to address the Court so that it is easier for the court reporter to take down everything that you say as well as for the Court to hear you.

If you come to the podium, and you take off your mask, you are requested to use one of the Clorox wipes that are up on the podium to wipe down the podium and the microphone, and then there is a trash can for disposal of the Clorox wipes.

Also, before we proceed, I want to note that the defendant is here in person through a remote setup, the video, at his place of incarceration.  This was done pursuant to his request to attend remotely.  On the docket,

it is entry number 641 that was filed, motion for a special appearance for Petitioner Runyon to participate via videoconference at the status conference.  It was an unopposed motion, and the Court did grant that motion.

However, I would indicate that the proceeding is occurring in a full open courtroom, and that the only video is that of the defendant.  I can see him.  He can see me. He can see the proceedings.  He has been granted permission to participate or to be here by video.  If his counsel want him to say anything, they can elicit that.  We are all in visual contact, with full view of the court proceedings open.

I would further put on the record, either Ms. Brace or Ms. Chavis, that you did file the motion, and this is still your wish and the respondent's wish that he participate by video?

MS. CHAVIS:  Yes, Your Honor, it is.

THE COURT:  Also, Mr. Runyon, I would ask that the clerk put you under oath.  I want to affirm under oath that this is your desired mode of participation in this particular proceeding.

Madam clerk.

(Defendant was sworn.)

THE COURT:  Mr. Runyon, let me ask you just a couple of questions so that everything is clear.  It is my

JODY A. STEWART, Official Court Reporter

understanding that you made this request to participate through video whereby all of the participants in the courtroom can see you and hear you and vice versa; is that correct?

THE DEFENDANT:  That's correct, Your Honor.

THE COURT:  Did you discuss this decision with your attorneys?

THE DEFENDANT:  Yes, I did, Your Honor.

THE COURT:  Is this still the way you wish to proceed?

THE DEFENDANT:  Yes, it is.

THE COURT:  You do understand that if you had desired to be here in person, the Court would have issued the appropriate writ to have you here in person?  I believe you're in Indiana; is that correct?

THE DEFENDANT:  Yes, ma'am.  Yes.

THE COURT:  You do understand that I would have issued that writ but for your request to be here by video?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any questions at all about your participation today by video?

THE DEFENDANT:  No.

THE COURT:  Mr. Runyon, if at any time you can't hear us, you can't see us, or you're having any problem with the video, will you please speak up and let the Court know?

THE DEFENDANT:  Yes, I will.

THE COURT:  Mr. Runyon, obviously, if we are having any problems with the video feed or with hearing you or seeing you, we will also speak up and correct the situation. Do you understand?

THE DEFENDANT:  Yes, I do.

THE COURT:  So do you have any questions now before we proceed?

THE DEFENDANT:  No.

THE COURT:  Thank you.

Counsel, is there anything else you want the Court to inquire in regard to the video participation, because we are in a full open court proceeding?  Do you have any questions or anything further you want the Court to ask, Mr. Samuels?

MR. SAMUELS:  No, Your Honor.  The Court's been very thorough.

THE COURT:  Ms. Chavis, is there anything else you'd like the Court to inquire of?

MS. CHAVIS:  No, Your Honor.

THE COURT:  Thank you.

MS. CHAVIS:  Thank you.

THE COURT:  I will briefly give a history of the case, and then I will hear from counsel.  In late April 2007, the petitioner shot and killed Cory Allen Voss in

Newport News, Virginia, pursuant to a murder-for-hire conspiracy.  On July 17, 2009, a jury found petitioner guilty of three counts:  Count one, conspiracy to commit murder for hire, in violation of Title 18 of United States Code, Section 1958(a); count two, carjacking resulting in death, in violation of Title 18 of United States Code, Sections 2119 and 2; and count five, murder with a firearm in relation to a crime of violence, in violation of 18, United States Code, Section 924(c)(1), (j)(1) and 2.  He was found not guilty of count three.  I think it was count three or four.  I can go to the jury verdict.

MR. SAMUELS:  Judge, I know there was one count that was dismissed on the 924, and he was found not guilty of another count.

THE COURT:  I can give you the exact counts.  I have the jury verdict here.

MR. SAMUELS:  I know one was the Hobbs Act robbery and the other was a bank robbery.

THE COURT:  I think it was count four, but I want to be sure.  I have a lot of paper, but let me look at that. He was convicted by the jury of counts one, two, and five. Count three was dismissed on July 15, 2009, when the Court granted defendant's motion to dismiss count three of the indictment.  Count four was dismissed on the motion of the United States, and I believe that the jury had found him not

JODY A. STEWART, Official Court Reporter

guilty on that count.

MR. SAMUELS:  That's correct, Your Honor.  That's my recollection.

THE COURT:  That is what would be reflected in the record.  In any event, on August 27, 2009, the jury recommended that petitioner be sentenced to death on counts one and five, and life imprisonment without the possibility of release on count two.

Accordingly, the Court entered judgment on December 4, 2009, sentencing petitioner to death on counts one and five, and life imprisonment without the possibility of release on count two pursuant to the jury's verdict and recommendation and imposition, which is required by law in a death penalty case.

The Fourth Circuit affirmed the petitioner's convictions and sentences on direct appeal, *United States v. Runyon*, 707 F.3d 475.  It's a Fourth Circuit 2013 case, and cert was denied by the United States Supreme Court at 574 U.S. 813 in 2015.

Now I turn to the brief procedural history of the 2255 motion currently before the Court.  On October 5, 2015, petitioner filed a motion under 28, United States Code, Section 2255 to vacate, set aside, or correct sentence.  The motion to vacate raised 18 claims for relief.

On January 19, 2017, the Court entered an opinion

denying the motion to vacate in its entirety.  Petitioner filed a motion to alter, amend judgment on February 16, 2017, and the Court denied the motion to alter or amend in a memorandum order dated June 21, 2017.

On August 18, 2017, the petitioner filed a notice of appeal.  The Fourth Circuit issued an opinion on December 23, 2020, and amended its opinion on February 12, 2021.  In the amended opinion, the Fourth Circuit affirmed the Court's January 19, 2017, opinion except as to one issue, that issue being whether petitioner's counsel, "Failed to provide him with effective assistance in violation of the Sixth Amendment by failing to investigate adequately his brain injury and potential mental illness and introduce such evidence in mitigation during the penalty phase of the trial."  That's from *United States v. Runyon*, 994 F.3d 192 at 204.  It's a Fourth Circuit 2021 case.

On this issue, the Fourth Circuit remanded to this court for an evidentiary hearing to determine whether petitioner's counsel was constitutionally inadequate in the penalty phase for not having explored or presented, upon exploration, the evidence of brain injury and any type of mental illness.

The mandate issued on February 19th, 2021, and the time to file a petition for certiorari expired on July 13th, 2021.  On August 20th, 2021, the Court entered the order

directing the parties to schedule a status conference to address the Fourth Circuit's limited remand.

The Court ordered the petitioner to be present for the hearing, and as we've indicated, and we have gone through earlier here, on September 17, 2021, the petitioner moved the Court to permit him to participate in the hearing remotely, and the Court granted the unopposed motion after considering the administrative nature of the planned proceedings.

What had been represented in the motion for remote participation is petitioner's current medical conditions, as well as the ongoing COVID-19 pandemic. We have confirmed on the record that this is still petitioner's desire and that he is participating remotely. We are here on a remand. It's a limited remand for a determination of ineffective assistance of counsel on this one issue during the penalty phase of the defendant's proceedings.

Why I have called you here is I wanted to ascertain with the United States what its plans to proceed in the matter were, whether they were expecting to go forward with an evidentiary hearing, to seek to vacate the death sentence without going forward with an evidentiary hearing, and how exactly the United States wishes to proceed, and obviously hear from the defense counsel.

Mr. Samuels.

MR. SAMUELS:  Thank you, Your Honor.  Your Honor, the United States appreciates the opportunity to review what it plans on or what is being done and what it plans to do going forward here.  I would tell the Court that the United States anticipates going forward with the evidentiary hearing.  In order for that to happen, there does need to be an exchange of some information between the defendant and the United States.

Specifically, we need information regarding trial counsels' files, correspondence, and other information relating to this particular claim.  We also need some information regarding certain expert issues, expert reports and background information related to the prejudice area of the inquiry.

The United States understands that the evidentiary hearing limited to this one particular issue would have essentially two prongs.  The one prong would be the performance of counsel, which is why we need to obtain trial counsels' files and be able to speak to trial counsel.  We would anticipate trial counsel would need to be witnesses at that hearing for the Court to be able to see and evaluate the decisions and the comment of trial counsel.

Then the hearing would also focus on any prejudice accruing to the defendant as a result of counsels' actions, if we had to get that far, and that would involve deeper

exploration of some of the mitigation involving mental health.

Now, Your Honor, the Court went through the procedural history of this. Let me tell the Court what we've done to today on those fronts. So the Court referenced that on August 20th the Court reached out to set this status conference. We reached out to counsel, habeas counsel for Mr. Runyon on August 25th to try and see if we could obtain an exchange of information through an informal process rather than going through the formal discovery under the proceedings for 2255. Habeas counsel was amenable to that. We've had some exchanges back and forth on that.

We did get some information from trial counsel related to certain mental health issues on October 18th, I believe is when the disclosure was provided to us. We've had additional discussions about the information that he disclosed, what the effort is going to need to be undertaken to get that information for us. I'll let habeas counsel speak to that.

My understanding is that the trial counsel files are quite voluminous, and it will take some time to review that information and to provide us with that information. That is somewhat of a threshold basis that we need, Your Honor. We need to have the information from trial counsel's file before we can go and talk to trial counsel.

We anticipate seeking an order from the Court permitting us to do so.  We've had informal discussions with trial counsel for Mr. Runyon, Mr. Woodward, who indicated that he would need such an order prior to him engaging in communication with us.  Of course, Mr. Hudgins is now Judge Hudgins, and that brings up a little bit of a different way to go about that, but we will investigate and pursue that. But we believe we need information from trial counsel in the file to undertake that task.

So we are close to coming to agreement on an agreed protective order, close to finalizing that, that we would then submit to the Court, and that will allow the better release of some of that information.  When I say close, Your Honor, we are very close.  It's just I's dotted and T's crossed, and we can submit that to the Court.

We had talked about a timeline for another status conference.  Where we would hope to see this going, Your Honor, is we would continue to work with habeas counsel, hopefully minimize any areas of disagreement and be able to proceed in an informal process with the exchange of information.

To the extent there is information which the United States believes that it's entitled to, and that raises any kind of issue with privilege, that's something that we could present to the Court down the road, of course.  But at this

point we do seem to be working well with habeas counsel in terms of trying to accommodate our request for information.

So in terms of timeline and going forward, Your Honor, what we would propose, and we have had discussions with habeas counsel as recently as last Friday on this, I believe we are pretty close on this approach.  I don't want to speak for Ms. Chavis, but I believe we are pretty close, which is we would allow approximately another 60 days for the turning over of the information that the United States would require to begin preparing for this evidentiary hearing from the trial counsel file and related to mental health, which would allow us to potentially identify and procure our own rebuttal expert related to some of the issues raised in this claim.

So that would take approximately 60 days for that process to occur, sometime in mid to late January, and then we would ask for another status hearing either at the middle part of February or the end of February, in early March, which hopefully at that point, Your Honor, we would have narrowed any issues or any areas of disagreement.

We would have the information that we need from trial counsel's file, we would have sought an order from the Court allowing us to talk with trial counsel, and we could then come before the Court and propose a plan for an evidentiary hearing, both for the timing for that and what

that would potentially look like.

So we are moving forward on this, Your Honor.  We have made some progress, but there are still some steps to go just in terms of being able to get this information that we need to take the next steps and prepare for an evidentiary hearing.  At this time that is our plan, to go forward with the evidentiary hearing and defend on this claim.

THE COURT:  So I'm hearing basically three things.

MR. SAMUELS:  Yes, Your Honor.

THE COURT:  Number one, that you need approximately 60 days to complete and get any necessary information from the defense counsel files and looking into retaining an expert.

Number two, you do need a Court order that would direct the attorneys to speak with you regarding the information in the files as well as the decisions that they made because you would need to put that on at a hearing.

Number three, you would like a renewed status hearing sometime around mid-February so that we could then see where you are and go ahead and set the evidentiary hearing, if we are ready for that?

MR. SAMUELS:  Judge, that is a perfect summary. The reason, again, we ask for this additional status hearing, we know some things but we don't know everything we

are going to find along the way.  So an additional status hearing would just allow us to give a better estimate and time frame for the Court.  Again, we want this to move along.  We know this has been a long process, but there are some steps that we just need to go through in order to be able to prepare for this hearing.

THE COURT:  Well, I understand.  Obviously, everyone wants it done as soon as possible but also the importance of it as thoroughly as possible.  The defendant is not being currently prejudiced necessarily because he does have the life sentence that is in effect.

MR. SAMUELS:  That's correct, Your Honor, including the life sentence on the other count.

THE COURT:  What I would note is, and I don't make this as a ruling because I haven't done any in-depth research on it, but in terms of Mr. Hudgins, who is now a state court judge, any immunity that he would have only attaches to his functions as a state court judge and the cases that he would have heard as a state court judge.

So, consequently, when he was Mr. Runyon's counsel, he was an officer of this court on the court's court appointed list, and I'm not making this a ruling, but from my limited research it would be a requirement for him to cooperate with the United States and counsel on divulging his information, his knowledge, and whatever part he had in

JODY A. STEWART, Official Court Reporter

the decision, the extent to investigate.  Those are the two issues, was there a complete investigation or proper investigation; and, number two, if so, why wasn't the information presented and whether or not there is basically ineffective assistance of counsel.  Then you go to the prejudice.

MR. SAMUELS:  Exactly, Your Honor.

THE COURT:  It's a *Strickland* test, but that's my limited research.  I don't know that Mr. Hudgins would even disagree, if the Court enters an order that directs both him and Mr. Woodward as counsel for Mr. Runyon in the specific years to produce the files.

Well, it appears they are going to need to produce the files and then discuss the information in them.

MR. SAMUELS:  That would be our desire, and that would be our hope, Your Honor, yes, ma'am.

THE COURT:  Then let me hear from Ms. Chavis, and then we will decide exactly what we need to do to proceed. If you need a Court order setting out the schedule, and if you all agree, you could present the Court with an agreed order, and I'll be glad to enter it, unless there is some disagreement as to the way we are going to proceed.

MR. SAMUELS:  Thank you, Your Honor.  We could certainly work to do that.

THE COURT:  Ms. Chavis.

MS. CHAVIS:  It's a pleasure being in front of you for the first time.

THE COURT:  I think you currently are in Tennessee?

MS. CHAVIS:  Yes, ma'am.  Yes.  It's a beautiful day to come to Virginia.

THE COURT:  Well, good.

MS. CHAVIS:  But, yes, that was a fair recitation of what's happened the past several months and our cooperation and moving these proceedings forward.  One thing that I would like to state is I do appreciate the Court's question about whether the United States might seek to vacate the death sentence without us moving forward with an evidentiary hearing, and that is something that the parties did briefly discuss and something that I think perhaps we might continue to discuss.

I understand that that's not a decision that perhaps could be made at this level, but it does have to be discussed at the higher level, but representations were made that inquiries would be made to that effect.  So that is something that I believe is being considered, and I do hope that we will continue to pursue, while I do diligently continue to go through trial counsel's files so I can produce the information that's been requested.

THE COURT:  I will obviously leave any such discussions between counsel, but right now I felt it

incumbent upon the Court to proceed on the Fourth Circuit opinion since the mandate did issue back in the summer.

MS. CHAVIS:  Yes, Your Honor.  I think the only other item that I do need to raise with Your Honor is the matter of counsel for Mr. Runyon.  Unfortunately, Your Honor, my co-counsel, Ms. Brace, has recently had some medical issues, and she is in a position where she is forced to resign, and she is going to be seeking permission to withdraw from this case.

It initially did cause us great concern, having to lose her valuable assistance, but we did seek to solve this problem before we came to court today, and there is a counsel who's highly qualified within Ms. Brace's current office who is very able and qualified and willing to step in and take Ms. Brace's place.

So we are prepared to file a motion with the Court as soon as we return home and can get to our computers to file that motion request and permission for Ms. Brace to withdraw and to substitute her colleague, Elizabeth Peiffer.

THE COURT:  I'm sorry that Ms. Brace has to consider resignation.  She is an outstanding counsel.

MS. CHAVIS:  Yes.

THE COURT:  I will certainly give your motion a thorough and utmost consideration.  From what you're saying, I don't see a problem.

MS. CHAVIS:  Thank you, Your Honor.  Unless the Court has any other questions, I think we are good.

THE COURT:  I do not.  It's nice to met you, Ms. Chavis.

MS. CHAVIS:  Thank you, Your Honor.  Very nice to meet you.

THE COURT:  Ms. Chavis, let me just ask you one thing.  Is there anything that you want to inquire of the defendant in this proceeding?  I'm not asking that you have to, but if there is anything you want to inquire of him, and you want the Court to know through him, you can do so now. I certainly understand you may not want to venture into that area.

MS. CHAVIS:  No, I can't think of anything, Your Honor.

THE COURT:  Thank you.

MS. CHAVIS:  Thank you.

THE COURT:  Mr. Samuels, is there anything further, then, for the Court to review today?

MR. SAMUELS:  Not from the United States, Your Honor.

THE COURT:  Well, if you could get the Court an agreed order, hopefully before the end of November.

MR. SAMUELS:  Of course, Your Honor.

THE COURT:  If you can't, then I guess we will have

JODY A. STEWART, Official Court Reporter

to reconvene, or you can give me an order with objections to it, and I'll see if I can rule on it without reconvening. It sounds like to me that everybody's got the same interests in mind here, is to move everything forward, but to do it in a very careful and efficient manner.

I would ask you, Ms. Chavis, the substitution of counsel for Ms. Brace from her office will not affect the timeliness of any of the proceedings?

MS. CHAVIS:  No, Your Honor, it will not.

THE COURT:  Thank you.

MS. CHAVIS:  Yes.

THE COURT:  Mr. Runyon, have you been able to hear and see and be present basically for the whole proceeding?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Thank you.

With that, then, counsel, I appreciate your appearing here today and us setting a tentative schedule and getting underway with the case.  We will be in recess.  One thing I would tell you in the order is that when you set the schedule, you can do one of two things, either request a scheduling conference, I think you said, for mid-February, and you will contact the courtroom deputy to get a date, or you can contact her in advance and get a date.  But one way or the other you should put that in the order that you need to contact the courtroom deputy or you have contacted her.

MR. SAMUELS:  Yes, Your Honor.  We will take care of that.

THE COURT:  The Court stands in recess until tomorrow.

(Hearing adjourned at 2:40 p.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

X_____/s/_____x

Jody A. Stewart

X_____11-29-2021 _____x

Date

JODY A. STEWART, Official Court Reporter