**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | | |
|---|---|---|
| DAVID ANTHONY RUNYON, | ) | |
| | ) | |
| Petitioner, | ) | No. 4:15-cv-108 |
| | ) | Original Criminal No. 4:08-cr-16-3 |
| v. | ) | CAPITAL §2255 PROCEEDINGS |
| | ) | HON. REBECCA BEACH SMITH |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**PETITIONER'S REPLY TO THE RESPONSE TO PETITIONER'S FIRST MOTION FOR DISCOVERY AND TO PROTECT PETITIONER'S ABILITY TO ASSERT ATTORNEY-CLIENT PRIVILEGE AND CONFIDENTIALITY OF WORK PRODUCT, AND CONSOLIDATED MEMORANDUM OF LAW**

Petitioner Runyon asks for the production of recorded communications between the government and its trial experts, Drs. Paul Montalbano and Raymond F. Patterson, and leave to depose, and issue subpoenas duces tecum to, Drs. Paul Montalbano and Raymond F. Patterson. ECF No. 670, Motion. Petitioner also moved for an order permitting his attorneys' presence when the government interviews trial counsel.

The government opposes the motion, asserting that document disclosures and depositions are not warranted "at this time." ECF No. 672, Response, at 6984. Always acting in good faith, undersigned counsel have disclosed to the government a large volume of records. Only now, after receiving all documents requested, the government reveals it had no intention of providing reciprocal discovery.

Further, opposing counsel reveal they interviewed trial counsel during the pendency of this motion; their conduct has mooted Runyon's request to have counsel present to protect his rights and guard the narrow scope of the waiver of the attorney-client privilege. ECF No. 672, Response, at 6986 n.1 ("Government counsel did briefly and informally interview both trial defense counsel,

separately, on March 29, 2022."); *id.* at 6991 ("Interviews of Trial Counsel have been Completed …"). Counsel's duty to protect the scope of the waiver remains. Respondent should disclose the substance of the conversations, including any notes and written documents or emails surrounding the meetings with each trial attorney.

This reply briefly addresses Respondent's arguments in opposition.

### A. Records of communications between the prosecution team and the prosecution's mental health experts

Runyon requests an order directing the government to disclose all records of communications between the prosecution team and the prosecution's mental health experts including, but not limited to: instructions regarding the scope and nature of work on this case; correspondence to and from mental health experts; resumes, curriculum vitae, and other bona fides received from mental health experts; cover letters accompanying background material provided to mental health experts; and research, articles, and any other material provided by mental health experts. *See* ECF No. 670, Motion, at 6970-71.

Respondent's one-paragraph opposition simply repeats information from Runyon's discovery request, yet concludes that Runyon "acknowledges[] the government has provided all matters responsive to this request and an order for production is unnecessary." ECF No. 672, Response, at 6986. This is not true. Respondent has only stated, but not yet verified, that they do not possess written notes from Dr. Montalbano or Dr. Patterson. *Id. See also* ECF No. 670, Motion, at 6971 n.4 (same). The plain language of the discovery request seeks more than written notes from doctors Montalbano and Patterson. ECF No. 670, Motion, at 6971 (explaining the importance of written communications between the prosecution and its experts). Respondent informally sought the same written communications from Runyon, and they were produced voluntarily.

{2}

Respondent should disclose the documents requested in reciprocal discovery because the information provided to the prosecution's experts and reported by the experts to the prosecution is relevant to the claim before the Court and Runyon believes it will demonstrate he is entitled to relief.

### B.      Depositions and Subpoenas Duces Tecum

Runyon requests an order allowing him to depose the government's mental health experts and to issue subpoenas duces tecum for those experts to appear at deposition with copies of their records related to Petitioner's case. *See* ECF No. 670, Motion, at 6971-72.

The bulk of Respondent's opposition is directed toward preventing, or delaying, depositions and subpoenas for the records of the prosecution experts, Dr. Montalbano and Dr. Patterson. *See* ECF No. 672, Response, at 6986-91. In the end, Respondent complains that depositions of the prosecution experts would be expensive so Runyon's current attorneys "should explore informal, permissive interviews with the experts at issue, prior to seeking this Court's authorization for the most expensive avenue of discovery." ECF No. 672, Response, at 6990-91. Although Respondent believes undersigned counsel should "explore" discussions with the prosecution experts, Respondent's counsel did not indicate that they have encouraged their experts to discuss the case in the interviews Respondent suggests should replace discovery depositions. Undersigned counsel are not aware of any retained experts who would freely discuss their work on a case with a third party, let alone an opposing party.

Respondent's objection to depositions due to costs rings hollow since Respondent decided years ago to expend significantly more money on this case in pursuit of the death penalty for David Runyon. For example, the average cost for the defense at trial in a federal death penalty case is

{3}

about 8 times that of a non-capital federal murder case.[1] The cost of housing Runyon on federal death row is thirty percent higher than housing codefendant Draven in general population.[2] Moreover, Respondent <u>does</u> expend money and resources in this case.[3] Respondent has revealed that "the government secured funding to contract with Dr. Daniel Martell as an expert consultant[]" to tell them how to investigate, or "inform the course of the government's investigation into," the ineffective assistance of counsel claim. ECF No. 672, Response, at 6988-89. In the unreported Indiana case cited by Respondent, *Phillips v. Indianapolis Life Ins. Co.*, the district court ordered interrogatories of opposing counsel as an alternative to a deposition, not to save money, but because proceeding by interrogatory would require the opposing party to provide the information (as opposed to claiming a lack of information during deposition) and it would minimize privilege problems. 2009 WL 1564384 at *4 (S.D. Ind. 2009). Respondent should not be permitted to deny, or cut short, under the guise of saving money ordinary discovery procedures available to Runyon.

---

[1] Gould, Jon B., and Lisa Greenman, *Report to the Committee on Defender Services Judicial Conference of the United States Update on the Cost and Quality of Defense Representation in Federal Death Penalty Cases*, Rep. United States Judicial Committee on Defender Services (2010).

[2] See McFarland, Torin, *The Death Penalty vs. Life Incarceration: A Financial Analysis*, 7 Susquehanna U. Pol. Rev. 46, 60 (2016).

[3] The government issued a writ weeks ahead of the deadline agreed upon by the parties for Runyon to file any motion to waive his physical presence at the status conference, and for about ten weeks beginning January 17, 2022, Runyon was removed from USP Terre Haute and transported by plane and vehicle to different privately-run and locally-run incarceration facilities across the country. *See* ECF No. 669 at 6959 & n.2. Each facility contracts bedspace with the federal government.

{4}

In any event, Respondent's argument about costs for the prosecution experts' time spent in deposition is a distraction because Federal Rule of Civil Procedure 26 assigns payment to the party seeking discovery. Fed.R.Civ.P. 26(b)(4)(E).

Respondent tries to complicate a simple motion for depositions. Unable to explain the purported difficulty, Respondent just asserts that "[t]he expert witnesses simply are, for obvious reasons, a more complex issue[,]" ECF No. 672, Response, at 6988, the role of the prosecution experts "remains unclear," *id.* at 6989, and it is "difficult to ascertain how [they] … pertain to any performance based inquiry of former trial counsel," *id.* The Fourth Circuit's opinion straightforwardly sets forth the relevance of the prosecution experts to *Strickland's* performance prong:

> Runyon was also examined by two government mental-health experts, both of whom reported that Runyon had sustained a series of head traumas. He had apparently been knocked out during military training after being too close to an exploding grenade, and he had suffered injuries in two serious car accidents. These doctors, however, concluded that Runyon did not "suffer from any serious mental illness, mental disorder, or brain pathology and that there [were] no mental health factors that are mitigating or aggravating to whatever sentence, if any, is determined by the court." But both doctors did suggest that Runyon was narcissistic and demonstrated some evidence of "personality dysfunction."
>
> * * *
>
> Dr. Merikangas also observed that the evaluations done by the government experts suggested that Runyon suffered from post-traumatic stress disorder.

*United States v. Runyon*, 994 F.3d 192, 204-05 (4th Cir. 2021).

Chief Judge Gregory put it like this:

> But on the record before the Court now, it appears that such evidence—and not just a little, but a lot of it—could have been available to counsel. As the majority opinion notes, before trial, two of the government's own experts noted Runyon's history of head trauma and neuropsychologists hired by the defense identified potential mental illness requiring further investigation.

{5}

*Id.* at 215 (opinion concurring in part and dissenting in part).[4]

This information attributed to the prosecution experts by the Fourth Circuit will be areas of inquiry for deposition.

Furthermore, the distance between *Strickland's* two prongs is often not far and renders Respondent's suggestion to bifurcate the evidentiary hearing, *see* ECF No. 672, Response, at 6992-93, impractical to implement. Although Respondent claims confusion about the relevance of the prosecution experts to the performance prong and asserts there should be a clear division of proof between *Strickland's* performance and prejudice prongs, the response in opposition demonstrates the close connection between these two prongs. For example, the response implies that Dr. Montalbano would support a finding for the government that trial counsel made an informed, strategic decision and that Runyon was not prejudiced by the failure to present mental health mitigation:

> Consistent with trial counsel's guilt phase strategy, David Runyon "adamantly maintained that he was innocent of the charges and stated that he disagreed with any legal strategy to absolve him of responsibility or culpability for actions he did not commit." ECF 277 [Montalbano report] at 30. Dr. Montalbano concluded that, "Mr. Runyon does not suffer from any major mental illness. There is however evidence of personality dysfunction" and "no significant impairment in overall intellectual function." *Id.*

ECF No. 672, Response, at 6987.

Finally, Respondent has "noted" that witnesses who will testify at the evidentiary hearing "should be excluded from any request for deposition." ECF No. 672, Response, at 6988.

---

[4] Chief Judge Gregory dissented because he would have additionally remanded for a hearing and discovery on Runyon's *Batson*, *Brady*, and related ineffectiveness claims. *Runyon*, 994 F.3d at 216.

Respondent also cites an unreported Alaska case where depositions were denied. *Id.* at 6990. But Respondent's position, if adopted, will contort procedures to render meaningless time-tested rules designed to benefit the parties and the Court. Without a discovery deposition, there is no way to test and establish the experts' credentials before the hearing, to narrow areas of dispute between various experts, or to streamline the expert testimony for presentation at the hearing.

Courts have "a duty to protect the trial process by ensuring that pretrial preparation discovery can be properly used to narrow the issues in controversy and allow for informative trial cross-examination." *United States v. Duke Energy Corp.*, 208 F.R.D. 553, 558 (M.D.N.C. 2002) (citing *Tabatchnick v. G.D. Searle, & Co.*, 67 F.R.D. 49, 54 (D.N.J.1975) ("The purpose of discovery is to explore everything available and narrow down the fact issues in controversy so that the trial process may be efficient and economical.")). Contrary to Respondent's suggestion that testifying expert witnesses should not be deposed, the Fourth Circuit has determined that the ability to simply cross-examine an expert is not enough. *See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 598 (4th Cir. 2003). Rule 26 provides for depositions of an expert witness who a party has designated as a possible witness after the expert's report is disclosed. Fed.R.Civ.P. 26(b)(4)(A). Rules governing disclosures and depositions "are designed to allow an opponent to examine an expert opinion for flaws and to develop counter-testimony through that party's own experts." *S. States Rack & Fixture, Inc.*, 318 F.3d at 598. As explained by the Second Circuit, the policy behind "liberal discovery of potential expert testimony was not merely for convenience of the court and the parties, but was intended to make the task of the trier of fact more manageable by means of an orderly presentation of complex issues of fact. 'Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" *Weiss v. Chrysler*

{7}

*Motors Corp.*, 515 F.2d 449, 457 (2d Cir. 1975) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947), and citing Fed.R.Civ.P. 26(b)(4), Advisory Committee Notes to 1970 Amendments.).

In this case, Respondent has identified Drs. Montalbano and Patterson as experts whose opinions may be presented, and their reports have been disclosed. They have knowledge relevant to the claim before the Court and Runyon reasonably anticipates that their deposition testimony will lead to the discovery of admissible evidence in support of his claim of ineffective assistance of trial counsel for failing to investigate and present evidence of brain damage and mental health mitigation, which would have persuaded at least one juror to vote for a sentence less than death. Runyon has demonstrated good cause to depose the government's expert witnesses.

**C.        Physical presence at the government's interviews of trial counsel**

After the Court granted Respondent's request for an order "permit[ting] and direct[ing]" trial counsel to "respond to the inquiry of the United States concerning Claim 6 in the Section 2255 motion[,]" ECF No. 666, undersigned counsel contacted Respondent's counsel and asked to be present during the interviews of trial counsel.[5] ECF No. 670, Motion, at 6973. Petitioner thereafter requested an order providing for habeas counsel's physical presence at the government's interviews of trial counsel, for the purpose of protecting Petitioner's right to due process of law, his Sixth Amendment right to the effective assistance of counsel, his right under 18 U.S.C. § 3599 to the assistance of counsel, and his right under 28 U.S.C. § 2255 to a fundamentally fair post-conviction proceeding, and maintaining the narrow scope of the waiver of the attorney-client privilege and work product confidentiality. ECF No. 670, Motion, at 6973. Respondent

---

[5] Respondent's counsel never provided undersigned counsel with an answer.

interviewed trial counsel on March 29, 2022, while Petitioner's request was pending. ECF No. 672, Response, at 6991. Respondent has mooted this request by rushing to interview trial counsel without disclosing when such interviews would take place, and without allowing undersigned counsel to be present or allowing this Court to first rule on the pending request for counsel to be present during the interviews. Instead of saying this, Respondent has placed statements (not verified by trial counsel) before the Court but allegedly obtained during Respondent's "brief[] and informal[] interview[s]" of trial counsel. ECF No. 672, Response, at 6986 n.1. Respondent does not request action based on the unsubstantiated assertions and it was improper to place before the Court this hearsay which is allegedly related to material issues before the Court; it serves no purpose in a response to Runyon's discovery motion. Counsel does have an ongoing duty to protect the scope of the waiver of the attorney-client privilege. Respondent should disclose the substance of the conversations with each of Runyon's trial attorneys, including any notes and written documents or emails surrounding the meetings with each trial attorney.

### D.    Judge Hudgins' testimony

The response contains additional statements regarding the health of former trial counsel (now Judge) Stephen A. Hudgins that are not supported by affidavit, declaration, or medical records. ECF No. 672, Response, at 6992-93. Respondent proposes to bifurcate the evidentiary hearing stating that Judge Hudgins was diagnosed with cancer in 2018 and will begin a new course of treatment in May 2022. *Id.* Even assuming Judge Hudgins' future unavailability—and therefore assuming a need to preserve his testimony—the solution to such a problem is a *de bene esse* deposition, or a deposition to preserve testimony for trial. *See* Fed.R.Civ.P. 32(a)(4) (using depositions in court proceedings); *see also Tatman v. Collins*, 938 F.2d 509, 511 (4th Cir. 1991).

{9}

E.    **Other matters of fact**

The response states: "On March 29, 2022, the United States interviewed former trial counsel for the defendant. Both attorney Woodward and Judge Hudgins were made aware of current counsel's request to be present, but were willing to proceed with the scheduled interview." ECF No. 672, Response, at 6984. In fact, free will was not involved because in the government's proposed order, adopted by the Court, trial counsel were ordered "to respond to the inquiry of the United States concerning Claim 6 in the Section 2255 motion." ECF No. 666, Order ("IT IS THEREFORE ORDERED that Lawrence H. Woodward, Jr., and Stephen A. Hudgins, are permitted and directed to respond") (emphasis added); *see also*, ECF No. 658, Motion, at 6902 (indicating trial counsel required a court order to speak with counsel for the government).

The response states: "After the guilt/innocence phase of the trial in 2009, trial counsel sought and received approximately 30 days to complete its mitigation investigation in preparation for the penalty phase of the trial. ECF 254." ECF No. 672, Response, at 6986. In fact, on July 20, 2009, trial counsel sought a continuance of at least 90 days but was granted a continuance only until August 19, 2009. ECF No. 254, Order, at 2288-89 (recounting that defense counsel sought a continuance of at least 90 days); ECF No. 247, Motion, at 2194 (requesting a continuance of at least 90 days).

{10}

## CONCLUSION

For all the above reasons, the reasons set forth in Runyon's Motion, ECF No. 670, and based upon the full record before this Court, Petitioner requests that the Court enter an order providing:

(a) discovery including production of records of any communications between the government and its trial experts, Drs. Paul Montalbano and Raymond F. Patterson;

(b) leave to depose, and issue subpoenas duces tecum to, Drs. Paul Montalbano and Raymond F. Patterson; and,

(c) Respondent must disclose the substance of the conversations with each of Runyon's trial attorneys, including any notes and written documents or emails surrounding the meetings with each trial attorney.

Respectfully Submitted,


/s/ Elizabeth J. Peiffer_____
Elizabeth J. Peiffer, VSB No. 71353
Virginia Capital Representation
  Resource Center
2421 Ivy Road, Suite 301
Charlottesville, VA 22903
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

/s/ Dana C. Hansen Chavis_____
Dana C. Hansen Chavis, *pro hac vice*
Asst. Federal Community Defender
Federal Defender Services of
  Eastern Tennessee, Inc.
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Dana_Hansen@fd.org

{12}

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2022, I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

/s/Nancy Hernandez
Nancy Hernandez
Paralegal, Capital Habeas Unit
nancy_hernandez@fd.org

{13}