IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

- - - - - - - - - - - - - - - - - - -
                          )

UNITED STATES OF AMERICA,      )
                          )

v.                       )
                          )  CRIMINAL ACTION NO.

DAVID ANTHONY RUNYON,      )  4:08cr16
                          )

      Defendant.        )
                          )

                          )

- - - - - - - - - - - - - - - - - - -
                          )

DAVID ANTHONY RUNYON,      )
                          )

      Petitioner,      )
                          )

v.                       )  CIVIL ACTION NO.
                          )  4:15cv108

UNITED STATES OF AMERICA,      )
                          )

      Respondent.      )
                          )

- - - - - - - - - - - - - - - - - - -

TRANSCRIPT OF PROCEEDINGS

Norfolk, Virginia

April 13, 2022

BEFORE:  THE HONORABLE REBECCA BEACH SMITH
        United States District Judge

APPEARANCES:

      UNITED STATES ATTORNEY'S OFFICE
      By:  Brian Samuels
          Lisa R. McKeel
          Carrie Ward
          Assistant United States Attorneys
          Counsel for the United States

JODY A. STEWART, Official Court Reporter

APPEARANCES CONTINUED:


          FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE,
          INC.
          By:  Dana C.H. Chavis
               Elizabeth Peiffer
               Molly Kincaid (Via telephone)
                    And
          VIRGINIA CAPITAL REPRESENTATION RES CENTER
          By:  Elizabeth J. Peiffer
               Counsel for the Defendant


APPEARING VIA TELEPHONE:

          David Anthony Runyon
          Molly Kincaid

(Hearing commenced at 3:51 p.m.)

THE CLERK:  In case number 4:15cv108, David Anthony Runyon, petitioner, versus United States of America, respondent; and case number 4:08cr16, United States of America versus David Anthony Runyon.

Mr. Samuels, Ms. McKeel, Ms. Ward, is the government ready to proceed?

MR. SAMUELS:  The government is ready.  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

THE CLERK:  Ms. Peiffer, Ms. Chavis, is the defendant ready to proceed?

MS. CHAVIS:  Yes, we are.

THE COURT:  Good afternoon.

MS. CHAVIS:  Good afternoon.

THE COURT:  The first thing that I will say is that we are in a courtroom, we are socially distanced, we are behind Plexiglass, and if you have been vaccinated, you may remove your mask for the proceeding.

Also, I would note that it has been represented to the Court that Mr. Runyon is on a telephonic line at this point, and I will verify that.  He is also with an attorney from the Federal Public Defender's office.  Ms. Peiffer, who is the attorney that is with him?

MS. PEIFFER:  Good afternoon, Your Honor.  The

JODY A. STEWART, Official Court Reporter

attorney with him is named Molly Kincaid.  She's an attorney at Ms. Chavis's office.

THE COURT:  Molly Kincaid?  Where is she an attorney?

MS. CHAVIS:  Your Honor, she is with my office, Federal Defender Services of Eastern Tennessee.

THE COURT:  So Ms. Kincaid is with you, Ms. Chavis, in your office?

MS. CHAVIS:  Yes.

THE COURT:  Thank you.

Mr. Runyon, are you there with Ms. Kincaid?  If so, would you indicate in the affirmative.

THE DEFENDANT:  Yes, that's affirmative.

THE COURT:  Ms. Kincaid, are you there with Mr. Runyon?

MS. KINCAID:  Your Honor, I'm sorry.  I couldn't hear.  We are sharing a phone.  Could you repeat the question?

THE COURT:  I asked if you were there with Mr. Runyon?

MS. KINCAID:  Yes, Your Honor.

THE COURT:  Next, Mr. Wyrock, he is the correctional counselor that is there?

THE DEFENDANT:  He's not present, Your Honor.

THE COURT:  Then the information that I have been

JODY A. STEWART, Official Court Reporter

given, there has obviously been a technical problem.  We have audio with Mr. Runyon and Ms. Kincaid, but we do not have video.  This is my understanding of what has transpired.  Number one, the clerk, Ms. Cherry, and our IT department here got everything set up and did a trial run, not with Mr. Runyon but with Mr. Wyrock, who is the correctional officer who has to initiate the call and the equipment at the facility.  After a number of tries on Monday, they were successful in initiating both the video and the telephonic contact with Mr. Wyrock.

Then it is the Court's understanding today that, for some reason, and it's not clear to Court, that everything is working correctly from the court's end or standpoint.  We have had Mr. Otero with IT check here, and everything is in order, but that the facility cannot activate the video for this particular conference.  So that is the information that has been given to Court.

Is there anything to add to that, Madam Clerk?

THE CLERK:  No, Your Honor.

THE COURT:  Whoever is going to speak for each party can let me know, is that your understanding, Ms. Chavis?

MS. CHAVIS:  Yes, Your Honor, that's my understanding.

THE COURT:  Is that your understanding,

Mr. Samuels?

MR. SAMUELS:  It is, Your Honor, that's correct.

THE COURT:  Well, given that, I would tell you that the Court has concerns here, and I will tell you why the Court has concerns.  Number one, the Court entered an order on March 22nd, 2022, and that was for an authorization for a videoconference, and the order was quite specific that it was a videoconference.  I won't go into the backup request and paperwork, but Mr. Runyon himself had signed the request, and, in fact, the Court actually sent it back because it appeared someone had Xeroxed a piece of paper with a date on it of January with a signature, and I required a new signature on the new request because the January signature would have predated this particular conference being set, as I understood it.

In any event, there was a signature from Mr. Runyon on that new request, and it was a current signature for this conference here today.  I would also note that in the order, and the Court entered that, as I say, on March 22nd, 2022, it's document 671 in the file, it specifically references Mr. Runyon participating by videoconference, and that was his request.  He had previously appeared by videoconference on November 15th, 2021, and that had worked out well.  We were able to see Mr. Runyon; Mr. Runyon was able to see us. It was an interactive proceeding from that standpoint.

So the request was for Mr. Runyon, and he was waiving his appearance to be here physically present, but his request was by videoconferencing at the status conference today, and that was the Court's specific order, that he may appear by videoconference at the status conference here today.

The concern that the Court has is that even in doing that, the Court was making an exception for this case because this particular court, pursuant to the chief judge's order, general order number 2021-9, has discontinued the CARES Act conferencing in this manner.

However, the Court had discretion under the circumstances to go ahead and authorize this particular conference because it had been authorized before.  It was a specific request by Mr. Runyon, and so the Court had authorized that and had done it under Rule 43(b)(3), as well as the provision of the CARES Act, which was still in effect.  The CARES Act, I will note, has been continued.  I don't know when I saw the last memo from the administrative office, but it's still in effect for proceedings in the United States, but in this particular court, it has been discontinued except upon exceptional circumstances.

I exercised my discretion to allow this hearing to go forward by videoconference.  That is the background.  Of course, there is nothing that this Court can do about

technical difficulties at a BOP facility.  I want to make it clear that that's where the technical difficulties are.

The concern the Court has is that, at minimum to proceed, Mr. Runyon would have to make a record waiver because he has requested a videoconference.  I do not feel a Court could take an appropriate waiver without observing the individual.  I think when one is waiving one's right, and even then the Court doesn't have to accept a defendant's waiver, it can decline.  Waivers have been declined in the past when the Court feels the rules should be followed otherwise.

I would find it very difficult to take a waiver from an individual by telephone.  I cannot see Mr. Runyon. I can hear him.  I haven't heard him in many years except for the conference we had in November.  So with Ms. Kincaid there, she can verify that it's him, but I still can't observe him for a waiver.

There are important matters that are being determined today.  We are setting the parameters for a proceeding in this matter for the evidentiary hearing that the Fourth Circuit has ordered.

So I will hear from each counsel, but I'm not particularly inclined to go forward when all I can do is hear voices, and I can't see an individual.  If Mr. Runyon has to be transported, he has to be transported, the Bureau

of Prisons just has to do it.

So this is too important.  It's a death penalty case.  It has been going on since 2008.  It was a full trial in this court, I believe in the summer of 2009, and on appeal was affirmed.  It went to the Supreme Court, cert. was denied.  It then came back on *habeas corpus*, and it's been affirmed except it's been returned for this one narrow issue of whether counsel was ineffective for not putting on certain mitigating evidence regarding potential mental health issues.

It's been going on too long, and it's too important for this Court to take a shortcut for convenience, certainly not for convenience of the Court, the Court is here, and perhaps for counsel, but, again, counsel's interest is always in justice being served, as is the Court's, and it may inconvenience the Bureau of Prisons, but that may just have to be.  They have to transport prisoners.

So that's where the Court is on this.  So I will hear from each side.  First I'll hear from Ms. Chavis.  She represents Mr. Runyon and his appearance, because his audio appearance is here, but his video, being able to see him, his appearance is not here.

Ms. Chavis.

MS. CHAVIS:  Yes, Your Honor.  Thank you.  Can I speak from here or would you like me to approach?

JODY A. STEWART, Official Court Reporter

THE COURT:  I prefer that you approach the podium, which is also behind Plexiglass.

MS. CHAVIS:  Thank you.  Yes.  I haven't been in this courtroom, but it's rather grand and lovely, so thank you for having us here today, and I note it's a very late start, and I appreciate your patience, Your Honor.  Thank you for your words, and I understand the concerns.

I wish that the technical difficulties that have occurred here today did not occur because the videoconference that we had at the last status conference, I thought, went really well, and I appreciated everybody's efforts the last time that we did have the hearing.

I thought that it was important to be able to have that video conference because of all of the circumstances that were involved in the transportation of Mr. Runyon for status conference, and I believe those circumstances are still present, and that's why we asked for him to appear by videoconference again this time.

So I understand the Court's concerns, and I agree that this is a serious matter.  Because I have not had an opportunity to speak to David or to Mr. Runyon, I think I would like for him to be able to just take a minute, if it's possible, to speak with Ms. Kincaid, who's with him, to confer for just a minute and to have Ms. Kincaid relate to us perhaps what Mr. Runyon, his position would be on what

Your Honor has indicated, what his position is on moving forward today or whether we should perhaps -- Your Honor hasn't suggested that we reschedule today, but I'm assuming that's where we are moving towards, is rescheduling the hearing that was supposed to happen today.

THE COURT:  Before you sit down, I may just require that you stay at the podium because you'll need to react.

First, Ms. Kincaid, can you hear us?

MS. KINCAID:  Your Honor, I've heard parts of the hearing.  For whatever reason, I was able to hear Ms. Hanson (sic) better than I was able to hear the Court.  So I did just understand what she proposed.  Mr. Runyon was giving me a little rundown of what the Court was concerned about.  So while conditions are far from perfect, I can definitely do as Ms. Hanson suggested and discuss Mr. Runyon's preferences and then relay them to the Court.

THE COURT:  I still have a few more questions for you before you do that.  Number one, is Mr. Runyon there in person with you?

MS. KINCAID:  He is.  I can avow to the Court that Mr. Runyon is here and is hearing everything.

THE COURT:  Well, I want to know, and I can't see him, and you're there, and I'm asking you to verify that that is Mr. Runyon that is there with you?

MS. KINCAID:  Yes, Your Honor.

THE COURT:  Mr. Runyon, I would ask you, have you been there the entire time with Ms. Kincaid?

THE DEFENDANT:  Yes, ma'am, Your Honor.

THE COURT:  Ms. Kincaid, I would ask you, is there any way for you to cut off the microphone and have a discussion?

MS. KINCAID:  Yes, Your Honor.  We can cover the speaker.

THE COURT:  Well, do so.  I can't imagine you can't hear me because I speak pretty loudly.  I've never even been told I need a microphone, but you go ahead and see if you can mute or whatever you need to do and discuss the matter with Mr. Runyon.

MS. KINCAID:  Yes, Your Honor.  I will do that.

(Pause in proceedings.)

MS. KINCAID:  Your Honor, this is Ms. Kincaid.

THE COURT:  Yes.

MS. KINCAID:  So we discussed the conditions that we are present under today, and, nonetheless, Mr. Runyon strongly prefers to go forward with the hearing.  His concern is that if it's the Court's preference would be for him to be present in person, he is still highly concerned about the COVID pandemic and recent surges in cases.  The last time he was transported, I believe by accident, he did have to spend considerable time in several different

counties and state jails, and five different detention center jail incarceration places, and he was also transported on an airplane where there were COVID positive individuals, he was told, by one of the guards. So that's -- or by marshals, excuse me.

So that is his concern, and he has indicated that he can understand everything that the Court is saying, so his preference is to go forward with the hearing today.

THE COURT: Mr. Runyon, has Ms. Kincaid properly represented to the Court your preference?

THE DEFENDANT: Yes. Yes, Your Honor.

THE COURT: Mr. Runyon, have you been vaccinated for COVID-19?

THE DEFENDANT: Yes. I received the two Pfizer doses and one booster shot.

THE COURT: Anything else, Ms. Chavis?

MS. CHAVIS: No, Your Honor.

THE COURT: Thank you.

MS. CHAVIS: Thank you.

THE COURT: Mr. Samuels.

MR. SAMUELS: Thank you, Your Honor. The government certainly appreciates the Court's concerns on this matter. Even in typical criminal cases, if a defendant is going to waive his right to be present at motions, that would be a written waiver. In this case the Court's

14

concerns about being able to evaluate that, we certainly understand that.  I would observe that at some point as these matters progress, and we move towards a hearing, it is going to get to the point where we need to bring Mr. Runyon out here to be present for that, and I think we are somewhat limited in what we can get accomplished today without him present and with the lawyer he has with him not able to hear necessarily everything that's going on at the time.

So the government shares the Court's concerns.  If the Government wanted to delay the hearing, I think we could make use of the time to try and work with habeas counsel, see if there are other issues that can be narrowed down.  We may have a little bit more information that may go into the Court's scheduling concerns as to any hearing that would be set if we were to go forward.

But initially I was of the mind that Mr. Runyon could waive and agree to this, but I do think it is difficult to be able to assess that on the line in the manner that he's describing when we don't know if his counsel that's there can hear everything that's being said at the time.  So the government does share the Court's concerns.

THE COURT:  One thing I would note is that obviously everyone, the United States and perhaps around the world, is concerned about COVID.  We have all done the very

JODY A. STEWART, Official Court Reporter

best that we can do under the circumstances.  I have not been given any information that would suggest that Mr. Runyon is particularly susceptible to COVID.  I haven't been given any information that he physically can't travel, and I actually accepted this waiver because it, A, was in writing.

MR. SAMUELS:  Yes, Your Honor.

THE COURT:  Not only was it in writing, but I was trying to facilitate things moving forward.  But for convenience, one does not sacrifice potential rights, and while everyone is happy now, will they be happy a year or two from now?  So that someone wants to do something now doesn't always mean that they persist in that desire and maybe would consider their counsel ineffective, their habeas counsel ineffective for pushing this and agreeing to it.

So things can be right at the moment, and they can be unrighted very quickly.  I'm a great believer in haste can make waste, and that sometimes we are better off for a short delay such that we can proceed properly as opposed to an immediate solution.

So unless I hear something very important to the contrary, I'm not going to proceed, regardless of Mr. Runyon's verbal desires.  There has not been any written waiver, and there is no ability for the Court to observe him.  I don't even know if they both can properly hear.  It

appears there is one microphone, and the attorney says, I can't imagine she can't hear me.  She can hear Ms. Chavis better than she can hear the Court.

I'm just not going to take a shortcut on something this important, and we will need to reschedule this matter. I'm going to require that Mr. Runyon be present for this matter and all further proceedings in regard to this *habeas corpus* matter.

The last time we were not really addressing anything but scheduling.  We weren't addressing matters of, or let's just put it this way, there were no findings of fact or matters of law, and it was strictly a scheduling conference.  So consequently it went well, that Mr. Runyon could see and interact, and I think we all agree it went well, but I'm not comfortable going forward here.  We have a number of issues to address.

We have a very important outstanding discovery motion.  We have decisions on whether we are going to bifurcate the proceeding, and these issues are of great importance as to how the proceeding is both structured in terms of going forward, in terms of administrative matters but also in terms of substance.

MR. SAMUELS:  Yes, Your Honor.

THE COURT:  So, consequently, I'm sorry that things haven't worked well, and we certainly endeavored here.  We

spent an afternoon, I think, doing trial runs of this, not with Mr. Runyon but between the penitentiary and the court. So the way we will proceed is, I guess you'll need to put in a detainer, Mr. Samuels.

MR. SAMUELS:  We will, Your Honor.  We will need to writ Mr. Runyon back here, and we will start that process immediately.

THE COURT:  Then when you get some idea of the timing, if you will work with Ms. Chavis to set a hearing date, and if there are any additional matters that come up between now and the hearing, you should bring those to the Court's attention because we are going to want to resolve as much as we can preliminarily at the next hearing.

I think Ms. McKeel wants to say something to you.

(Mr. Samuels conferred with Ms. McKeel.)

MR. SAMUELS:  Your Honor, Ms. McKeel reminded me. We may need a date for the hearing for a writ.  So that may be something that we can work out with Ms. Chavis and your deputy clerk to pick out a date enough time away so that it will give us time to bring Mr. Runyon here.

Your Honor, in the meantime, we will continue to try and work with habeas counsel.  We have worked, and one of the things I was going to tell the Court today, is we have resolved some matters, and we have made some progress. We will continue to try and do so between now and when the

next hearing will be.

THE COURT:  I do commend you both for trying.  I know that Ms. Chavis is trying and you're trying.  So I think as much as can be worked out, that's good.  Whatever can't be worked out, let's see if we can get it all resolved in one hearing.

MR. SAMUELS:  Yes, ma'am.

THE COURT:  Then set the hearing itself with sufficient time for both of your preparations.

MR. SAMUELS:  Yes, Your Honor.  Thank you.

THE COURT:  Ms. Chavis, is there anything further you'd like to say to the Court?

MS. CHAVIS:  Yes, Your Honor, there is.  So, Your Honor, I do need to ask if it's possible for us to present to you further information, like you had inquired about information regarding Mr. Runyon's susceptibility to COVID or reasons why perhaps he could not travel, and I understand Your Honor has indicated that he should be present for all future hearings, but I'm interested in whether you may be open to receiving further information about that in a written motion with a written waiver?

THE COURT:  Well, you can present it, but unless you've got some pretty good medical records, I'm not so inclined.  At some point we have to do this, and we have to do it properly.  He's been transported before.  He's gone

back.  He's had his COVID shots.  There is no one out there, and particularly it's the inconvenience of everyone, including all of the people incarcerated.  They have limited movements, they have restrictions, and the restrictions are across the aboard for everybody.

You can present it, if that's a motion you want to make, but in the meantime we are going to set a hearing date, and we are going to get the writ going because I don't want to delay this anymore.

MS. CHAVIS:  Yes.  Of course, I'm not asking about for the evidentiary hearing, just for a further status conference.  I would not ask for an evidentiary hearing, Your Honor.

THE COURT:  This is more than a status conference at this point.  This is where the Court starts making rulings.  In other words, the issues before the Court are ones for rulings that will set the parameters and the substance for the hearing.

I mean, there are rulings on discovery, and you're asking for a lot of things that I have questions about and particularly under the rules for *habeas corpus* proceeding.  This is not a civil case between two individuals where we are setting out on a new round of discovery.  We have a very narrow issue here, and certain information has already been produced.  I'm not going to go any further, but I disagree

with you that it's just a status hearing.  Maybe that's what the clerk puts on the docket, but I've got rulings to be made, and they're important rulings that set the parameters and the substance for the upcoming hearing.

MS. CHAVIS:  Thank you for that.  So that leads to my next question, is that the government, in its response to our discovery motion, did bring up the issue of bifurcation, so that does seem to be a different topic, and I would like to inquire as to whether they were going to file a motion with respect to bifurcation so that that could be briefed for Your Honor before that is argued before the Court?

THE COURT:  You all can brief it.  As far as I'm concerned, it's already before the Court.  It's been raised, and it was certainly one of the issues I had planned to address today.

MS. CHAVIS:  Okay.

THE COURT:  If you want to file something more, you can, but I was going to listen to argument on it and exercise my discretion as to whether the matter should be bifurcated or not.  As far as I'm concerned, it's before the Court.  If you all want to keep submitting things, you can keep submitting them, but I feel it's before the Court.  I think you maybe even addressed it partially in your reply you just filed a couple of days ago.

MS. CHAVIS:  Yes, we did.  We did briefly address

it.  So just for my clarification, just so I can make sure that I'm on the same page, because perhaps I wasn't, so I really do appreciate Your Honor's comments about how this next hearing is not a status conference.  That's very helpful.

THE COURT:  How can it be just a status conference, Ms. Chavis, when you've got these issues before the Court?  You've got discovery issues.  You want depositions of experts.  You want experts' reports.  You want subpoena duces tecums.  This is not just a status hearing.  This is a ruling on substantive discovery matters that set the parameters.

So the clerk puts it on the docket as a status hearing, but if you want us to put it on ruling on all outstanding motions, then we will label it that.

MS. CHAVIS:  No, Your Honor, I just appreciate your statements before, and that did clarify for me.  I just wanted to make sure that the issues that will be addressed at the outstanding discovery motion and the issue about whether to bifurcate, and there is nothing further that will be addressed at the next hearing?

THE COURT:  I'm can't answer those questions, Ms. Chavis.  I will address what's ripe and appropriate.  You know what's before the Court.  You all are filing.  Go through the docket.  You know what's been filed.  Come on.

What are you trying to do?  I'm going to tell you I'm going to rule on anything that's outstanding and before the Court at the next hearing.  Whether you call it a status hearing or whether you call it a ruling on all outstanding motions and matters pending, you may do so.

Right now there are a number of matters that are outstanding before the Court, and they are discovery matters.  I will give my reasoning, and I will put it all on the record at the appropriate time.

Let's see what else have you raised?  You have these outstanding discovery motions.  You have all sorts of requests.  I'm not going to go through everything you've requested to tell you what's out there.  That's your job as an attorney.  Is there anything else?

MS. CHAVIS:  No, Your Honor.  I know what's in our motion, but that was why I asked if the government was filing any motions because they have no outstanding motions.  But I have nothing else, Your Honor.

THE COURT:  If they do, they do.

MS. CHAVIS:  No, I'm good, Your Honor.  Thank you very much, and I hope you have a good evening.

THE COURT:  Ms. Kincaid, have you been able to hear the proceedings?

MS. KINCAID:  Yes, Your Honor.

THE COURT:  Do you have any questions about the way

JODY A. STEWART, Official Court Reporter

we are going to proceed?

MS. KINCAID:  No, Your Honor.

THE COURT:  You don't have any of those questions like Ms. Chavis had?

MS. KINCAID:  No, Your Honor.

THE COURT:  Mr. Runyon, have you heard the proceedings?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any questions of how we are going to proceed?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Is there anything else that anybody wants to raise, Mr. Samuels?

MR. SAMUELS:  Your Honor, we will just work with your deputy clerk and Ms. Chavis to set a date for the status conference.

THE COURT:  That's fine.  I will just reiterate one more time that at that status conference the Court is going to resolve all outstanding motions and matters that are ripe and properly before the Court at that time, and you will just have to, as attorneys, review your docket and know what you have outstanding.  The Court is not going to put out a list of this is what I'm going to rule on.  I'm going to rule on all outstanding matters and motions that are properly before the Court to the best of my ability.

JODY A. STEWART, Official Court Reporter

MR. SAMUELS: Yes, Your Honor. Thank you.

THE COURT: The Court stands in recess until tomorrow.

(Hearing adjourned at 4:29 p.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

X_____/s/_____x

Jody A. Stewart

X_____5-9-2022 _____x

Date

JODY A. STEWART, Official Court Reporter