**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

| | | |
|---|---|---|
| DAVID ANTHONY RUNYON, | : | |
| Petitioner, | : | No. 4:15-cv-108 |
| | : | Original Criminal No. 4:08-cr-16-3 |
| v. | : | |
| | : | **CAPITAL § 2255 PROCEEDINGS** |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | HON. REBECCA BEACH SMITH |
| | : | |

**PETITIONER'S OPPOSITION TO
RESPONDENT'S PROPOSAL FOR A BIFURCATED EVIDENTIARY HEARING**

Petitioner, David Anthony Runyon, by counsel, states the following opposition to the proposal to bifurcate the evidentiary hearing that is set forth in the United States' Response to Petitioner's First Motion for Discovery and to Protect Petitioner's Ability to Assert Attorney-Client Privilege and Confidentiality of Work Product, and Consolidated Memorandum of Law, ECF No. 672. Respondent has suggested that the evidentiary hearing be bifurcated, with separate hearings on the two-pronged test for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). ECF No. 672 at 13-14. At the status hearing on April 13, 2022, the Court said that the government's discovery response put the issue of bifurcation "before the court," authorizing Mr. Runyon to file additional briefing on it. *See* 4/13/2022 Tr. at 20; *see also* Order, ECF No. 675 at 2-3 (stating that potential bifurcation of the hearing will be addressed at the hearing scheduled on July 20). Mr. Runyon opposes the United States' suggestion to bifurcate the evidentiary hearing because it is unnecessary, it would be impracticable, it would

1

inconvenience witnesses, it would slow down the hearing(s) and ultimately the resolution of the case, and it would require significantly more judicial resources.

## **Background**

In April 2022, the government suggested in its response to Mr. Runyon's discovery motion that the evidentiary hearing be bifurcated into two separate proceedings. ECF No. 672 at 13-14. According to the government, a "performance hearing" consisting of trial counsel's testimony should be held first because former trial counsel Judge Hudgins is undergoing cancer treatments impacting his availability, impacting his health, and "risking the loss of material evidence." *Id.* There are two reasons why the evidentiary hearing should not be bifurcated.

First, there has been no showing that bifurcation of the evidentiary hearing is necessary to preserve evidence for the hearing. *See also* ECF No. 673 at 9 (pointing out that the government's response contains factual statements regarding the health of former trial counsel that are not supported by affidavit, declaration, or medical records). Second, inquiry into *Strickland's* performance prong-which subsumes the strategic inquiry-requires information beyond trial counsel's testimony. Also, performance-prong information is often intertwined with the prejudice-prong inquiry and dividing witnesses or categorizing questioning along strict performance or prejudice lines would be burdensome, cumbersome, and highly inefficient. Bifurcation would require the parties and the Court to expend great efforts to artificially cabin witnesses and evidence into a "performance hearing" or a "prejudice hearing" for no appreciable purpose.

### 1. Bifurcation is not necessary

On April 4, 2022, the government represented in its discovery response that bifurcation was needed due to Judge Hudgins's health condition. ECF No. 672 at 13-14. The government alleged without support that in May, Judge Hudgins was beginning a new cancer treatment "[t]hat will impact his availability in later months, due to visits and resulting impacts on his health." ECF No. 672 at 13. According to the government, the evidentiary hearing should be bifurcated "to take trial counsel's in-court testimony first, so that the parties and the Court do not lose the opportunity to assess counsels' [sic] credibility and complete the strategic inquiry." ECF No. 672 at 14.

Yet, on April 12, 2022, Judge Hudgins represented to undersigned counsel that he did not expect his treatment to interfere with his availability or ability to testify in this matter. Runyon's Discovery Reply, filed April 11, 2022, ECF No. 673 at 9, had pointed out that the government's discovery response contained statements regarding the health of former trial counsel that were not supported by affidavit, declaration, or medical records. Furthermore, even if an issue arose regarding Judge Hudgins's (or any witness's) availability at the evidentiary hearing and there was a need to preserve testimony, the solution is a *de bene esse* deposition, or a deposition to preserve testimony for trial. *See* Fed. R. Civ. P. 32(a)(4) (using depositions in court proceedings); *see also Tatman v. Collins*, 938 F.2d 509, 511 (4th Cir. 1991).

### 2. Bifurcation would be impractical, inefficient, and inconvenient

The government suggests that to "complete the strategic inquiry" only trial counsel would need to testify at a hearing on the performance prong of this claim. ECF No. 672 at 14. Yet, even the government's suggestion acknowledges a greater scope to the performance prong, conceding at least that the Court must also consider documentary evidence. *Id.* (suggesting a prejudice inquiry

would not be needed "[s]hould the documentary evidence and testimony of trial counsel convince this Court that [trial counsel's] strategy was in fact sound"). Such documentary evidence is of little value to the Court without witnesses to provide context and explanation regarding the scope and reasonableness of trial counsel's investigation. This is because investigation is the key to any determination of whether any decision by counsel can be deemed sound strategy under *Strickland's* performance prong. *Strickland*, 466 U.S. at 690-91; *see also Wiggins v. Smith*, 539 U.S. 510, 521-23 (2003). Since Mr. Runyon has alleged that counsel's investigation was unreasonable, the Court must "consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 549 U.S. at 527.

An assessment of trial counsel's performance requires consideration of the scope and quality of the "untapped body of mitigating evidence" that counsel failed to uncover. *See, e.g.*, *Andrus v. Texas*, 140 S. Ct. 1875, 1883 (2020); *id.* at 1881 (finding that counsel "fell short of his obligation" in part because he "overlook[ed] vast tranches of mitigating evidence"); *id.* at 1882, 1884 (detailing the evidence that counsel failed to uncover due to his unreasonable investigation in explaining the finding that counsel's performance was deficient); *Wiggins*, 539 U.S. at 525 (discussing the evidence that counsel "may well have discovered" in explaining determination that counsel's investigation was unreasonable); *Williams v. Taylor*, 529 U.S. 362, 395-96 (2000) (detailing the evidence that counsel "would have uncovered" in finding that counsel's investigation was unreasonable); *Winston v. Pearson*, 683 F.3d 489, 315-16 (4th Cir. 2012) (discussing the evidence attorneys would have obtained had they conducted a reasonable investigation in determining that counsel performed deficiently). This includes an examination of the evidence in

4

counsel's possession for any "red flags" that "reasonable counsel should have at least explored." *Williams v. Stirling*, 914 F.3d 302, 315 (4th Cir. 2019); *see also Gray v. Branker*, 529 F.3d 220, 29 (4th Cir. 2008).

For example, counsel ignoring experts alerting them to these red flags is especially important in determining whether the limits on their investigation were reasonable. *See Jefferson v. GDCP Warden*, 941 F.3d 452, 482 (11th Cir. 2019) (finding that counsel was ineffective for failing to pursue "red flags calling out for further investigation," and that "most importantly" they were ineffective for ignoring a doctor's written report "recommend[ing] that further neuropsychological testing would be worthwhile"); *see also United States v. Runyon*, 994 F.3d 192, 205 (4th Cir. 2020) (in considering counsel's performance, describing that Merikangas told counsel that "the evaluations done by government experts suggested that Runyon suffered from post-traumatic stress disorder"). Thus, in evaluating counsel's performance, the Court will hear evidence from experts about the information given to counsel and any recommendations made to counsel regarding further investigation. Where trial counsel failed to independently identify red flags, testimony from experts and others will explain and evaluate the red flags in this case. *See Blystone v. Horn*, 664 F.3d 397, 421 (3d. Cir. 2011) (citing testimony from doctors consulted during post-conviction in determining that counsel was ineffective for failing to pursue red flags that "any qualified expert" would have noticed); *Commonwealth v. Smith*, 995 A.2d 1143, 1172-73 (Pa. 2010) (relying on testimony from an expert obtained by post-conviction counsel that certain records "were 'red flags' concerning potential mental disorders" in determining that counsel's failure to investigate further was unreasonable). This will include, for example, an expert(s) to explain the red flags about Runyon's capacity to function at the time of the crime and other

5

mitigating factors that would have been evident to an experienced expert. ECF No. 511-29, Dudley Report, pp. 14, 15.

In determining whether counsel's performance was deficient, it would be erroneous not to consider mental health evidence from experts which counsel did not uncover, but to which "a reasonable investigation by counsel could have led." *Gray*, 529 F.3d at 231. Thus, a hearing on performance will require the testimony of experts about, for example, Mr. Runyon's brain scans.

While counsel's testimony can shed light on the facts they possessed, the performance inquiry will also require information from other sources such as testimony from those who provided, or could have provided, mitigating evidence to counsel. *See, e.g.*, *id.* (citing testimony from a doctor about what he told counsel in determining that counsel was ineffective for ignoring that information); *Jennings v. Woodford*, 290 F.3d 1006, 1015 (9th Cir. 2002) (finding counsel's performance deficient considering that counsel's paralegal, as well as the defendant's coworkers and friends, had alerted counsel to the fact that there was "something 'seriously wrong'" with his client); *Robinson v. Nelson*, 2022 U.S. Dist. LEXIS 6056, (D.S.C. Jan. 19, 2022) (weighing the credibility of counsel's testimony against that of a witness to determine whether counsel knew about certain exculpatory information); *Crockett v. Clarke*, 2019 WL 1367741 at *60 (E.D. Va 2019) (considering the testimony of "disinterested witnesses" about what they told counsel in determining that counsel's failure to investigate further was deficient) (quoting *Crockett v. Clarke*, Rec. No. 161572, at 7 (Va. Nov. 3, 2017)). In its opinion in this case, the Fourth Circuit contemplated that evidence from experts regarding the information they gave counsel might be necessary to evaluating the performance prong for this reason. *See Runyon*, 994 F.3d at 204-05; *see also id.* at 215 (Gregory, C.J., concurring in part and dissenting in part).

The need for mental health experts at the performance hearing undercuts the government's assertion that bifurcation is somehow more efficient because coordinating schedules with various experts is a "cumbersome effort[]." ECF No. 672 at 14. Even if the hearing were bifurcated, experts would need to appear at the "performance hearing" in addition to the "prejudice hearing," so their schedules would still need to be coordinated prior to the taking of counsel's testimony. Bifurcation of the hearing would only serve to create the possibility that this "cumbersome" process would need to be conducted twice. In addition, testimony from mitigation specialist Sheila Cronin will describe and explain the information that she relayed to trial counsel. *See, e.g.*, Cronin declaration, ECF No. 511-4 ¶ 10 (explaining that she "summarized" Runyon's military medical records for counsel). She can testify to discussions she had with trial counsel about mitigation evidence that was presented at trial, including readily available testimony from friends and family members whose testimony this Court will also have an opportunity to consider.

All of this evidence will also be relevant to the prejudice inquiry, which will require the Court to "consider 'the totality of the available mitigation evidence . . . and 'reweigh it against the evidence in aggravation,'" *Porter v. McCollum*, 558 U.S. 30, 41 (2009) (quoting *Williams*, 529 U.S. at 397-98). In this case, the performance and prejudice prongs of Mr. Runyon's claim are "too interrelated to meaningfully separate them for the purposes of evidentiary development" and "limiting the scope of inquiry at the outset to only one prong" would "create more problems than it [would] solve." *Henry v. State*, 937 So.2d 563, 574 (Fla. 2006); *see also Elmore v. Ozmint*, 661 F.3d 783, 876 (4th Cir. 2011) (Wilkinson, J., dissenting) ("These two prongs [the prejudice and performance prongs of a *Strickland* claim] . . . necessarily overlap." (citing *Correll v. Ryan*, 539 F.3d 938, 951 (9th Cir. 2008))); *cf. Roe v. Flores-Ortega*, 528 U.S. 470, 485-486 (2000) (noting

that "the performance and prejudice prongs [of a *Strickland* claim] may overlap"). Because the two hearings would be nearly coextensive, bifurcation would not serve any purpose.

To the extent that this Court determines there is evidence that is relevant to prejudice and not performance, "limiting evidentiary development to only half of the full query" would still be "an awkward approach for answering the broader question of ineffective assistance of counsel." *Henry*, 937 So.2d at 574-75. The Supreme Court of Florida described the issues with this method that arose in one case:

> [T]he postconviction experts who examined Henry were called in to testify at the evidentiary hearings, but were allowed to testify only as to the sufficiency of [the pre-trial expert]'s mental health evaluation insofar as it related to the adequacy of trial counsel's performance. They were prevented from relating their findings and evaluations regarding Henry's mental condition, which the trial court believed related only to prejudice. However, given the intertwined nature of such inquiries, the transcripts from the evidentiary hearings are full of instances when the parties would object to a line of questioning, forcing the trial court to stop and analyze the particular *Strickland* prong a potential answer could address and permit or prohibit the question accordingly.

*Id.*

Similarly, in this case, many of the witnesses would need to testify at both the prejudice and the performance hearings. Bifurcation, thus, will create opportunities for multiple and time-consuming objections to questions and answers that cannot be divided neatly into discrete categories. Bifurcation will force multi-faceted evidence into one *Strickland* prong or the other and thereby create multiple opportunities for reversible errors. Not only would the partitioning of these witnesses' testimony be difficult and inefficient, as described in *Henry*, but the witnesses also would be required to attend two separate hearings, which would be onerous and would waste judicial resources. A number of witnesses are elderly, immunocompromised, employed, or would

have to travel long distances to Norfolk, and making them appear twice would be particularly burdensome. None of this delay and complication is necessary nor is it prudent.

Because of the overlap in both evidence and witnesses required to evaluate the performance and prejudice prongs of Mr. Runyon's claims, bifurcation would serve little purpose, and if attempted, would be inefficient and inconvenient for both the Court and the witnesses. Therefore, this Court should decline the United States' suggestion to bifurcate the hearing and should hold one hearing in which evidence on both performance and prejudice is presented.

Respectfully Submitted,


/s/Elizabeth J. Peiffer
Elizabeth J. Peiffer, VSB No. 71353
Virginia Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

/s/Dana C. Hansen Chavis, *pro hac vice*
Dana C. Hansen Chavis
Asst. Federal Community Defender
Federal Defender Services of Eastern Tennessee
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Dana_Hansen@fd.org

9

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2022, I have electronically filed the foregoing PETITIONER'S OPPOSITION TO RESPONDENT'S PROPOSAL FOR A BIFURCATED EVIDENTIARY HEARING with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW, Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

/s/Nancy Hernandez
Nancy Hernandez
Paralegal, Capital Habeas Unit
Federal Defender Services of
Eastern Tennessee, Inc.
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Nancy_Hernandez@fd.org

10