UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

DAVID ANTHONY RUNYON,

        Petitioner,

    v.                                            CIVIL NO. 4:15cv108
                                      [ORIGINAL CRIMINAL NO. 4:08cr16]
UNITED STATES OF AMERICA,

        Respondent.

<u>MEMORANDUM ORDER</u>

This matter comes before the court on Petitioner's "First Motion for Discovery and to Protect Petitioner's Ability to Assert Attorney-Client Privilege and Confidentiality of Work Product, and Consolidated Memorandum of Law," filed by Petitioner on March 21, 2022, ECF No. 670 ("Discovery Motion"), and on the issue of whether the upcoming evidentiary hearing in this matter should be bifurcated, see ECF No. 672 at 13-14. The court also addresses counsel's verbal request to return certain sealed documents by commercial carrier.

For the reasons explained in this Memorandum Order, the court **DENIES** the Discovery Motion and **DIRECTS** the parties to prepare for the upcoming hearing in the manner described below. Counsel for Petitioner are further **DIRECTED** to return the sealed jury selection documents to the court in person as soon as practicable.

## I. PROCEDURAL HISTORY

In late April 2007, Petitioner shot and killed Cory Allen Voss in Newport News, Virginia, pursuant to a murder-for-hire conspiracy. On July 17, 2009, a jury found Petitioner guilty of three counts related to this offense:

- **Count One** – Conspiracy to Commit Murder for Hire, in violation of 18 U.S.C. § 1958(a);

- **Count Two** – Carjacking Resulting in Death, in violation of 18 U.S.C. §§ 2119 and 2; and

- **Count Five** – Murder with a Firearm in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1), (j)(1) and 2.

On August 27, 2009, the jury recommended that Petitioner be sentenced to death on Counts One and Five, and life imprisonment without possibility of release on Count Two. Accordingly, the court entered judgment on December 4, 2009, sentencing Petitioner to death on Counts One and Five, and life imprisonment without the possibility of release on Count Two. The Fourth Circuit affirmed Petitioner's convictions and sentences on direct appeal. United States v. Runyon, 707 F.3d 475, 521 (4th Cir. 2013), cert. denied, 574 U.S. 813 (2014).

On October 5, 2015, Petitioner filed a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence" ("Motion to Vacate"). ECF No. 478. The Motion to Vacate raised eighteen (18) claims for relief. On January 19, 2017, the court entered an Opinion denying the Motion to Vacate in its entirety. Petitioner

2

filed a Motion to Alter or Amend the Judgment on February 16, 2017. The court denied the Motion to Amend in a Memorandum Order dated June 21, 2017.

On August 18, 2017, Petitioner filed a Notice of Appeal. The Fourth Circuit decided the appeal by Opinion issued on December 23, 2020, and amended on February 12, 2021. In the Amended Opinion, the Fourth Circuit affirmed the district court's decision on the Motion to Vacate except as to one issue, which is the sole issue currently before the court: whether Petitioner's trial counsel "failed to provide him with effective assistance, in violation of the Sixth Amendment, by failing to investigate adequately his brain injury and potential mental illness and introduce such evidence in mitigation during the penalty phase of trial." United States v. Runyon, 994 F.3d 192, 204 (4th Cir. 2021). On this issue, the Fourth Circuit remanded for an evidentiary hearing to explore whether Petitioner's counsel was constitutionally inadequate. Id. at 209.

On November 15, 2021, the court held a status conference to ascertain how the parties wished to proceed. Thereafter, on January 27, 2022, the court entered an Agreed Scheduling Order setting discovery deadlines. ECF No. 657. Upon the United States' motion, the court also issued an order on March 8, 2022, permitting and directing Lawrence H. Woodward, Jr. and Stephen A. Hudgins, Petitioner's trial counsel, to respond to the United States'

inquiries concerning Petitioner's pending claim. ECF No. 666 ("Interview Order").

At the request of the parties, the deadline to file motions related to discovery disclosures was twice extended, and has now passed. ECF Nos. 663, 665. Petitioner filed his Discovery Motion on March 21, 2022, requesting certain documentary and testimonial discovery. ECF No. 670. The United States responded in opposition, on April 4, 2022, and suggested that the court bifurcate future proceedings into two hearings, one to address each aspect of the Strickland ineffective assistance of counsel standard. See ECF No. 672 at 12-13. Petitioner replied on April 11, 2022. ECF No. 673 ("Discovery Motion Reply").

A status conference to resolve the outstanding matters was set for April 13, 2022, with Petitioner to appear by video conference. The conference could not go forward, and on April 15, 2022, the court entered an order explaining as follows:

> A status conference to resolve preliminary matters, including discovery issues, and to set the evidentiary hearing, was scheduled for April 13, 2022. Pursuant to Petitioner's written request and waiver of right to be physically present, ECF No. 669, the court authorized Petitioner to appear by video conference from USP Terre Haute, where he [was] incarcerated, see ECF No. 671. On the day the hearing was to take place, counsel for petitioner and the United States were present in court but, due to the Bureau of Prisons' ("BOP") technical difficulties, Petitioner was unable to participate by video as planned. Petitioner also had counsel with him at the prison, but they were only able to connect to the court by telephone, and it was not clear on the record

4

that his attorney with him at the prison could even hear some of the proceedings.

ECF No. 675 at 1-2.

For these reasons, the court declined to proceed with a telephonic hearing, directed counsel to reschedule the hearing, and explained that Petitioner must appear in person at the rescheduled hearing. Id. at 2. The court also made clear that the parties should be prepared to discuss "all outstanding matters properly before the court," such as the Discovery Motion, ECF No. 670, and the potential bifurcation of the upcoming evidentiary hearing. ECF No. 675 at 2-3. The hearing was scheduled for July 20, 2022.

On July 11, 2022, Petitioner filed an Opposition to the United States' proposal for a bifurcated evidentiary hearing ("Bifurcation Opposition"). ECF No. 682. He argues that bifurcation "is unnecessary, . . . would be impracticable, . . . would inconvenience witnesses, . . . would slow down the hearing(s) and ultimately the resolution of the case, and . . . would require significantly more judicial resources." Id. at 1-2.

The court held a hearing to address these outstanding preliminary issues on July 20, 2022. Petitioner was present, in person, along with his two attorneys of record in this matter. The United States was likewise present through counsel of record. During the hearing, the parties informed the court concerning the

5

status of discovery, and the court heard argument on the outstanding Discovery Motion and issue of bifurcation. This Memorandum Order briefly reviews the court's reasoning for its Interview Order, ECF No. 666, resolves the Discovery Motion, and provides instructions for the parties relating to scheduling the upcoming evidentiary hearing, and the return of certain sealed documents.

## II. INTERVIEW ORDER

The court will briefly explain its reasoning for permitting the United States to interview trial counsel without the restrictions Petitioner requested in the Discovery Motion.

### A. Background

At the November 15, 2021, status conference, the United States represented that it wished to interview Woodward and Hudgins, Petitioner's former trial counsel, in preparation for the upcoming evidentiary hearing. Hearing Transcript (ECF No. 653) at 12-13. It also explained that it anticipated seeking a court order to permit this inquiry. Id. Petitioner's counsel did not voice any concern with this possibility during the status conference.

On January 28, 2022, the United States filed a motion formally requesting that the court "permit and direct former trial counsel to provide a response to the United States" concerning Petitioner's pending habeas claim. ECF No. 658. On February 11, 2022, Petitioner responded, requesting that the court narrow the substance of what

trial counsel may disclose, and the circumstances under which they may disclose it, arguing that the United States' Motion was "vague, overbroad, and ambiguous." ECF No. 660 at 1. Petitioner specifically requested that his current habeas counsel be present for any interviews of former trial counsel, and that the inquiry be conducted by deposition or interrogatory. Id. at 10, 14.

The United States replied on February 17, 2022, arguing that the court should permit trial counsel to respond to Petitioner's claim without these restrictions. See ECF No. 662 at 1. On March 8, 2022, the court entered the Interview Order, "permit[ing] and direct[ing]" former trial counsel "to respond to the inquiry of the United States concerning Claim 6" of the Motion to Vacate without the restrictions Petitioner sought. ECF No. 666. The United States represents that the interviews have already occurred, rendering Petitioner's request to be present moot. See ECF No. 672 at 12-13.

In his Discovery Motion Reply, Petitioner takes issue with the manner the United States proceeded with the interviews. According to Petitioner, the United States "rush[ed]" to interview trial counsel, mooting his request to be present at the interview. ECF No. 673 at 9. He argues that the government should "disclose the substance of the conversations with [trial counsel], including

any notes and written documents or emails surrounding the meetings" with each attorney. Id.[1]

## B. Discussion

The court issued the Interview Order, ECF No. 666, without the restrictions Petitioner requested because they were not necessary to preserve Petitioner's rights or develop the record in this matter.

First, as licensed attorneys practicing in this federal court and the courts of Virginia, Petitioner's trial counsel are bound by the Virginia Rules of Professional Conduct. See E.D. Va. Local Civ. Rule 83.1(I) ("The ethical standards relating to the practice of law in civil cases in this Court shall be Section II of Part Six of the Rules of the Virginia Supreme Court as it may be amended or [superseded] from time to time."). Under these Rules, attorneys have a duty of confidentiality under the attorney-client privilege. See Va. R. Pro. Conduct 1.6(a). Accordingly, Petitioner's trial counsel, who are both experienced attorneys in this court and the courts of Virginia, were capable of tailoring their responses to the United States' questioning to comply with their ethical obligations to their former client, as well as to a challenge of their ineffective assistance of counsel.

---

[1] In point of fact, the government has already satisfied this request. See infra Part III.

8

Second, it is well-settled that "[a] petitioner who claims ineffective assistance of counsel in a habeas petition waives the protection of attorney-client privilege over information that is relevant to those claims." Courtade v. United States, 243 F. Supp. 3d 699, 702 (E.D. Va. 2017) (Smith, C.J.) (quoting LaBorde v. Virginia, No. 1:10-cv-493, 2011 WL 2358510, at *2 (E.D. Va. June 9, 2011) (Ellis, J.), and collecting cases). Though this waiver is not limitless, it surely extends to communications relevant to resolving Petitioner's claim that his trial counsel failed to adequately investigate and present mental health mitigation evidence. See id. In his Claim Six, Petitioner directly placed in issue the propriety of his trial counsels' tactics concerning their mental health mitigation strategy. The Interview Order was appropriately tailored to communications concerning this issue, permitting and directing trial counsel to respond to inquiries concerning Petitioner's Claim Six in his § 2255 petition – not every aspect of his trial defense strategy. ECF No. 666. Petitioner's interests are further safeguarded by the provisions of the Protective Order entered by the court on November 30, 2021. See ECF No. 652.[2]

---

[2] The Protective Order provides Petitioner several important protections. Most relevant here is the following limitation: "The affidavits and documents supplied by the Petitioner's former counsel shall be limited to use in this § 2255 proceeding, as shall any interviews the government conducts with potential witnesses." ECF No. 652 at 2.

Third, the United States could not prepare for the upcoming evidentiary hearing without first exploring information relevant to Claim Six with Petitioner's trial counsel. To proceed otherwise would be inefficient and ineffective for fleshing out the relevant issues.

Finally, to the extent Petitioner's counsel wished to be present at any questioning by the United States, and have such questioning conducted in a deposition setting or by interrogatory, the court finds this unnecessary, as such is the purpose of the evidentiary hearing. Petitioner has the United States' notes from its interviews with trial counsel, and will have the full ability to cross-examine, object to, and further explore statements made by trial counsel at the evidentiary hearing, during which a thorough record will be developed. Therefore, lack of habeas counsel's presence at a preliminary interview of trial counsel by the United States in no way hinders the necessary development of the record at the evidentiary hearing and did not abridge Petitioner's rights on his claim of ineffective assistance of counsel.

## III. DISCOVERY MOTION

Petitioner filed his Discovery Motion on March 21, 2022, ECF No. 670, and the United States responded in opposition on

10

April 4, 2022, ECF No. 672. Petitioner replied on April 11, 2022.

Petitioner makes three requests:

(1) "the production of recorded communications between the government and its trial experts, Drs. Paul Montalbano and Raymond F. Patterson," ECF No. 670 at 1;

(2) "an order allowing him to depose" these doctors "and to issue subpoenas duces tecum for those experts to appear at [their] deposition[s] with copies of their records related to Petitioner's case," ECF No. 670 at 7; and

(3) an order directing the United States to "disclose the substance of the conversations with each of [Petitioner's] trial attorneys, including any notes and written documents or emails surrounding the meetings with each trial attorney," ECF No. 673 at 9.[3]

At the July 20, 2022, hearing, counsel for Petitioner represented that the United States has already satisfied his first and third requests, and therefore that the only outstanding issue was Petitioner's request for an order allowing for depositions of Doctors Montalbano and Patterson and related documentary discovery. Before turning to this issue, the court begins by outlining the applicable standard for discovery in § 2255 proceedings.

## A. Legal Standard for Habeas Discovery

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary

---

[3] Petitioner initially requested that habeas counsel be present at these interviews. ECF No. 670 at 9. However, as discussed above, the interviews have already occurred, rendering this request moot. Petitioner made the request for related documents in his Discovery Reply. ECF No. 673 at 9.

11

course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Instead, Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules") provides that courts "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." § 2255 Rule 6(a). The requesting party "must provide reasons for the request," which "must . . . include any proposed interrogatories and requests for admission, and must specify any requested documents." Id. at 6(b).

A movant demonstrates "good cause" where his "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief . . . ." Bracy, 520 U.S. at 908-909 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). Read together, the Bracy standard and Rule 6 make clear that a "habeas proceeding is not a fishing expedition," and that "generalized," non-specific discovery requests should be denied. See Teti v. Bender, 507 F.3d 50, 60 (1st Cir. 2007). Accordingly, even after crossing the "good cause" threshold, "the scope and extent of [] discovery is a matter confided to the discretion of the District Court," Bracy, 520 U.S. at 909, and litigants who demonstrate "good cause" are not automatically entitled to the full extent of discovery sought, see United States v. Roane, 378

12

F.3d 382, 403 (4th Cir. 2004) (applying abuse-of-discretion standard when affirming district court's conclusion that petitioners "had not shown good cause for the bulk of their discovery requests").

For instance, where a discovery request is "far too broad and unspecific," it may be reasonable for a district court to deny it on the basis that the requested material "would add little or nothing to the proceedings." See United States v. Wilson, 901 F.2d 378, 382 (4th Cir. 1990). Denial is likewise appropriate where a movant does not "state what he hope[s] to find" through his requested discovery, or how it "would help him prosecute his section 2255 motion." See Smith v. United States, 618 F.2d 507, 509 (8th Cir. 1980) (affirming denial of request for various records and "communications" on this basis). Ultimately, "[t]he burden of demonstrating the materiality of information requested is on the moving party." Stanford v. Parker, 266 F.3d 442, 460 (6th Cir. 2001) (citing Murphy v. Johnson, 205 F.3d 809, 813-15 (5th Cir. 2000)).

In this case, Petitioner must demonstrate "good cause" for discovery material to proving his one remaining claim: that trial counsel "failed to provide him with effective assistance, in violation of the Sixth Amendment, by failing to investigate adequately his brain injury and potential mental illness and introduce such evidence in mitigation during the penalty phase of

trial." See Runyon, 994 F.3d at 204. Thus, any discovery requested must bear on an aspect of the two-pronged Strickland inquiry. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Under this framework, Petitioner must ultimately prove "(1) 'that counsel's representation fell below an objective standard of reasonableness,' and (2) that any such deficiency was 'prejudicial to the defense.'" Garza v. Idaho, 139 S. Ct. 738, 743-44 (2019) (internal citations omitted) (quoting Strickland, 466 U.S. at 687-88, 692).

## B. Parties' Positions

Petitioner seeks "an order allowing him to depose the government's mental health experts and to issue subpoenas duces tecum for those experts to appear at [their] deposition[s] with copies of their records related to Petitioner's case." ECF No. 670 at 7. He submits that this discovery is relevant to the "performance" and "prejudice" prongs of the Strickland inquiry and "will lead to the discovery of admissible evidence . . . ." See id. at 7-8. He does not explain why such evidence cannot be gained at the actual evidentiary hearing.

The United States argues that this discovery request should be denied for several reasons. First, the government points out that the two experts are rebuttal witnesses who never actually testified at trial, "would have testified only in rebuttal at the sentencing phase had a mental health defense been pursued," and

14

that the information they would have provided "was hardly mitigating." See ECF No. 672 at 10. Counsel for the government also highlights that Petitioner "apparently never sought to interview the government's experts when preparing for filing his Section 2255 petition and he does not explain why such measure is necessary to address Claim 6, beyond the general claim that such effort will lead to additional information." Id. at 11.

In any event, the United States represents that "a deposition prior to the completion of discovery and presentation of [Petitioner's] evidence at the hearing is simply premature." Id. It explains that granting Petitioner's request now "would stymy the government's ability to present a robust case in rebuttal, if its experts were locked into testimonial depositions without exposure to the full scope of the evidence at issue." Id. (emphasis added). Finally, the United States argues that Petitioner's request for depositions should be denied as "unduly burdensome" because he offers no explanation for why informal interviews will not suffice, particularly considering "the likelihood of the experts' in-court testimony." Id. at 11-12.

In his Discovery Motion Reply, Petitioner argues that his request for depositions and subpoenas duces tecum related to the United States' rebuttal experts is warranted because responsive information would be relevant to both prongs of the Strickland inquiry. ECF No. 673 at 3-8. Petitioner admits that he has the

15

expert reports of Doctors Montalbano and Patterson. Id. at 8.[4] Petitioner also seemingly argues that because the ongoing proceedings are already expensive, the United States' argument concerning costs of depositions should ring hollow. Id. at 3-5. This argument from either party is not significant to the main matter at issue here. Additionally, Petitioner argues that, even if the experts will ultimately testify, "[w]ithout a discovery deposition, there is no way to test and establish the experts' credentials before the hearing, to narrow the areas of dispute between various experts, or to streamline the expert testimony for presentation at the hearing." Id. at 7. The experts' credentials and the relevance and extent of their testimony is an issue for the court to determine at the evidentiary hearing. Petitioner concludes by highlighting the general principals, and liberal nature, of discovery in civil cases, none of which involve habeas corpus proceedings. See id. at 7-8.

## C. Discussion

Petitioner has failed to demonstrate good cause for his request to depose and seek documentary discovery from Doctors Patterson and Montalbano. To demonstrate entitlement to discovery, Petitioner must at least explain to the court how the request bears

---

[4] Petitioner cites passages from the Fourth Circuit's 2021 Runyon opinion, but these passages refer to the expert reports and record evidence to which Petitioner already has full access. See ECF No. 673 at 5-6; see also infra note 7 and accompanying text.

16

on the two relevant issues in these proceedings: whether trial counsel's "'representation fell below an objective standard of reasonableness,' and ," if so, whether "any such deficiency was 'prejudicial to the defense.'" Garza, 139 S. Ct. at 743-44 (internal citations omitted) (quoting Strickland, 466 U.S. at 687-88, 692). Although he does a good job of reciting this standard, Petitioner does very little to explain why the depositions and subpoenas he seeks will actually help him apply the facts of his case to it. He does even less to demonstrate the need for additional factual development prior to the evidentiary hearing.

In his Discovery Motion, he largely restates the nature of the inquiry concerning his trial counsel's performance, explaining that he "believes that [the requested] depositions will lead to the discovery of admissible evidence, and will therefore assist him in proving his claims." ECF No. 670 at 8. He also suggests that the deposition testimony "could corroborate the mitigation evidence submitted in support of [his] claim." Id. (emphasis added).

Petitioner attempts to bolster his argument in his Discovery Motion Reply. As to the performance prong, Petitioner suggests that the government mental health experts could provide information relevant to trial counsel's notice of Petitioner's prior head injuries. See ECF No. 673 at 5. However, the information

17

Petitioner identifies – the fact of his prior injuries – was contained in the expert reports. See Runyon 994 F.3d at 204-05 (cited in ECF No. 673 at 5). It is therefore unclear how or why additional discovery would aid Petitioner in proving that they occurred (and presumably) that trial counsel should have investigated them further.

His explanation of relevance to the prejudice prong is likewise weak.[5] But once again, Petitioner merely speculates that such evidence could be uncovered through the discovery he seeks, and does little to explain why cross-examination of the experts at issue would not suffice. He argues that, "[w]ithout a discovery deposition, there is no way to test and establish the experts' credentials before the hearing, to narrow areas of dispute between various experts, or to streamline the expert testimony for presentation at the hearing." ECF No. 673 at 7. Yet, the experts' reports have been, and are currently available for this purpose, and Petitioner fails to explain why they are inadequate. See ECF

---

[5] However, because the inquiry requires "reweigh[ing] the evidence in aggravation against the totality of available mitigating evidence," the court is well aware that any testimonial or documentary evidence casting doubt on the government's experts' reports would be relevant. See Wiggins v. Smith, 539 U.S. 510, 534 (2003).

18

No. 519 (March 3, 2016, Order unsealing the doctor's expert reports).[6]

As for the subpoenas duces tecum, Petitioner also speculates as to why the experts' documents would be informative, suggesting that their informal notes "could be probative if at variance with the formal typewritten reports provided to trial counsel before the sentencing phase." See ECF No. 670 at 8 (emphasis added). Though this information requested may be relevant to the prejudice inquiry, Petitioner's suggestion that there is a "variance" is simply speculation. And nothing stops Petitioner from exploring whether the experts had reservations concerning their reported opinions at the evidentiary hearing, without going on an unnecessary discovery "fishing expedition."

What is left then is Petitioner's argument that pre-hearing depositions and evidentiary discovery is necessary to streamline the expert's testimony at the upcoming hearing. Because Petitioner has not identified any specific area in need of exploration prior to the hearing, the court concludes that this concern is unfounded and only delays and extends the process of getting to the evidentiary hearing that the Fourth Circuit ordered on remand well over a year ago.

---

[6] Doctor Patterson's Report is docketed as ECF No. 276, and Dr. Montalbano's Report is docketed as ECF No. 277.

19

Ultimately, Petitioner fails to identify any specific area in need of factual development, tied to the ultimate issues in these proceedings, prior to the evidentiary hearing. Therefore, the court concludes that Petitioner has not demonstrated good cause for deposing the government's mental health experts, or demanding documents from them, particularly in light of the fact that Petitioner already has access to their trial reports.[7] Petitioner's request is "far too broad and unspecific," leading the court to believe that granting it "would add little or nothing to the proceedings." See Wilson, 901 F.2d at 382; see also Bracy, 520 U.S. at 909 ("the scope and extent of [habeas] discovery is a matter confided to the discretion of the District Court"). Accordingly, Petitioner's Discovery Motion, ECF No. 670, is **DENIED.**

---

[7] See supra note 6 and accompanying text. The court further notes that Petitioner suggests that the Fourth Circuit "contemplated that evidence from experts regarding the information they gave counsel might be necessary to evaluating the performance prong for this reason." ECF No. 682 at 6. This citation to the Fourth Circuit's opinion is a bit misleading, as the Circuit Court was discussing the potential value of what Petitioner's trial expert's may have told counsel. See Runyon, 994 F.3d at 204-05 (referencing communications with Drs. Merikangas and Mirsky). These experts would undoubtedly be relevant to the performance issue because they could explain what they communicated to trial counsel, and therefore inform the court's assessment of how counsel should have responded. See also supra note 4 and accompanying text.

20

## IV. BIFURCATION OF PROCEEDINGS

The parties disagree about whether the upcoming evidentiary hearing should be bifurcated into to two stages, one for each aspect of the Strickland inquiry.

### A. United States' Position

The United States has suggested bifurcating the upcoming evidentiary hearing to address each prong of the Strickland test independently. It argues that "it is in the best interest of judicial economy" to "first take evidence as to whether trial counsel's performance was in fact ineffective at the time of trial," as doing so may obviate the need for a full evidentiary hearing. ECF No. 672 at 13.

According to the United States, this strategy is particularly prudent considering a key witness's medical condition. Id. at 14. It also explains that this will allow the parties to "more efficiently proceed with the prejudice investigation, and the cumbersome efforts to coordinate schedules with the various expert witnesses for both sides, without risking the loss of material evidence." Id.

### B. Petitioner's Position

Petitioner briefly addressed the bifurcation issue in his Discovery Motion Reply. ECF No. 673 at 6-9. He argues that the appropriate solution to the potential unavailability of a witness is to depose him, rather than to bifurcate the proceedings. See

id. at 9. He further argues that "the distance between Strickland's two prongs is often not far," making bifurcation of the hearing "impractical." Id. at 6. Petitioner elaborates on his stance in his Bifurcation Opposition. ECF No. 682.

Basically, Petitioner submits that "categorizing questioning along strict performance or prejudice lines would be burdensome, cumbersome, and highly inefficient." Id. at 2. He states that there is "no appreciable purpose" for "artificially cabin[ing] witnesses and evidence" based on the two Strickland prongs. Id. Petitioner continues by arguing that additional witnesses are necessary to contextualize the documentary evidence related to the performance inquiry. See id. at 4. Specifically, he argues that because he "has alleged that counsel's investigation was unreasonable, the [c]ourt must 'consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.'" Id. (quoting Wiggins, 539 U.S. at 527). Thus, the court must examine "the evidence in counsel's possession for any 'red flags' that 'reasonable counsel should have at least explored.'" Id. at 5 (quoting Williams v. Stirling, 914 F.3d 302, 315 (4th Cir. 2019)). While this is a correct statement of the law, it does not mean that every witness is necessary to explore both performance and

prejudice.[8] In sum, Petitioner argues that "the overlap in both evidence and witnesses required to evaluate the performance and prejudice prongs of [his] claims" render bifurcation inappropriate. Id. at 9.

### C. Discussion

Bifurcation of the upcoming proceedings into two stages to address each of the Strickland prongs is not the appropriate path forward. The arguments offered in Petitioner's briefing and at the July 20, 2022, hearing have convinced the court that cabining the proceedings in this way would prove inefficient.

However, the court must still organize "the mode and order of examining witnesses and presenting evidence" in this matter to "make those procedures effective for determining the truth," "avoid wasting time," and "protect witnesses from harassment or undue embarrassment." See Fed. R. Evid. 611(a) (explaining that the court "should exercise reasonable control" over these procedures to achieve these goals). To this end, the hearing should be organized to focus on eliciting the testimony of lay fact witnesses first, before delving into expert testimony, to the

---

[8] For instance, Petitioner has not explained how the Government's rebuttal mental health experts – who almost certainly would not have communicated with Petitioner's trial counsel outside the context of their expert reports – would be relevant witnesses for the performance inquiry. Thus, the Circuit Court's discussion does not necessarily mean that bifurcation is inappropriate.

23

extent practicable. All witnesses will be permitted to testify concerning information relevant to either Strickland prong when they are called, although the overall focus will be to address the performance issue before the prejudice issue.

With these overarching goals in mind, to the extent they wish to call witnesses in these categories, the parties should present their witnesses in the following order:

(1) The first group of witnesses that should be called are Petitioner's former trial counsel. These witnesses will inform the court about key information concerning the Strickland performance prong. Namely, what they knew, what they investigated (or did not investigate), why they did or did not investigate particular issues further, and their overall mitigation strategy.

(2) The next set of witnesses should be those laypersons who have relevant knowledge of what trial counsel was informed of, and what trial counsel could have learned had they asked the witness about Petitioner's relevant mental health history.[9]

(3) The third set of witnesses should be experts who actually informed trial counsel of matters relevant to Petitioner's Claim 6.

(4) The fourth group to be presented are experts who possessed but did not notify trial counsel about relevant information, but could have if asked during trial. These are the experts most likely to bear on both prongs of the Strickland inquiry.

(5) Fifth, any other "performance" prong witnesses may be called.

(6) Finally, lay and expert witnesses with relevant information bearing only on the issue of prejudice may be offered.

---

[9] Counsel offered Petitioner's wife as an example at the July 20 hearing.

After considering these instructions, the parties should exchange lists of the witnesses they intend to call, and exhibits they intend to offer, no later than **August 29, 2022.** The parties shall then meet and confer, before **September 16, 2022,** to discuss a potential agreed schedule for the evidentiary hearing, to include the number of days the hearing will last, with witnesses and exhibits to be presented. If the parties reach such an agreement concerning the presentation of evidence and argument, they should contact the Courtroom Deputy to set the hearing for dates available on the court's calendar. If the parties are unable to reach such an agreement by **September 16, 2022,** then they shall notify the Courtroom Deputy to this effect.

### V. RETURN OF JURY SELECTION DOCUMENTS

At the July 20, 2022, hearing, counsel for Petitioner sought permission to return jury selection records to the court by commercial carrier. The court previously allowed the parties by counsel to obtain these sealed documents after imposing significant restrictions and requirements for their return. See ECF No. 649 at 2-4 (discussing the history of these documents).

Given their highly sensitive nature, and their sealed status, the court concludes that shipping the records by commercial carrier would be inappropriate. Therefore, counsel may not ship the documents to the court, but instead must deliver them in person to

25

the Jury Clerk and sign all appropriate acknowledgments as directed by the court.

Specifically, when counsel return the documents, they must provide the certification required by this court's earlier Order:

> [U]pon completion of the habeas litigation, with the return to the court of [the Records], [counsel] will be required to submit "a sworn statement that the [Records] have been maintained under seal, and no copies thereof of any nature – paper, electronic, or otherwise – have been made or exist" and that "no juror contact has been made, directly or indirectly, through someone else, or by any means."

ECF No. 481 at 6 (emphasis added) (quoting ECF No. 475 at 16).

## VI. CONCLUSION

For the foregoing reasons, Petitioner's Discovery Motion, ECF No. 670, is **DENIED**, and bifurcation of the evidentiary hearing, ECF No. 672 at 13-14, is **DENIED**. The parties are **DIRECTED** to discuss a potential agreed schedule for the upcoming evidentiary hearing and advise the court, as explained in this Memorandum Order. Counsel are further **DIRECTED** to return the sealed jury selection documents to the court, in person, as soon as practicable. The Clerk is **DIRECTED** to forward a copy of this Memorandum Order to counsel for Petitioner and the United States Attorney at Newport News.

IT IS SO ORDERED.

/s/
Rebecca Beach Smith
Senior United States District Judge

_____
REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

July 28, 2022

26