IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

- - - - - - - - - - - - - - - - - - - -
                                        )
UNITED STATES OF AMERICA,               )
                                        )
   v.                                   )   CRIMINAL ACTION NO.
                                        )   4:08cr16
DAVID ANTHONY RUNYON,                   )
                                        )
        Defendant.                      )
                                        )
                                        )
        AND                             )
                                        )
DAVID ANTHONY RUNYON,                   )
                                        )
        Petitioner,                     )   CIVIL ACTION NO.
                                        )   4:15cv108
   V.                                   )
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        Respondent.                     )
                                        )
- - - - - - - - - - - - - - - - - - - -

TRANSCRIPT OF PROCEEDINGS

Norfolk, Virginia

July 20, 2022

BEFORE:   THE HONORABLE REBECCA BEACH SMITH
          United States District Judge

JODY A. STEWART, Official Court Reporter

APPEARANCES:

       UNITED STATES ATTORNEY'S OFFICE
       By:  Brian Samuels
           Lisa R. McKeel
           Assistant United States Attorneys
             And
       DEPARTMENT OF JUSTICE
       By:  Carrie Ward
           Counsel for the United States

       FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC.
       By:  Dana C.H. Chavis
            And
       VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER
       By:  Elizabeth J. Peiffer
           Counsel for the Defendant

(Hearing commenced at 4:45 p.m.)

THE CLERK:  In case number 4:15cv108, David Anthony Runyon, petitioner, versus United States of America, respondent; and case number 4:08cr16, United States of America versus David Anthony Runyon.

Ms. McKeel, Ms. Ward, Mr. Samuels, is the government ready to proceed?

MS. McKEEL:  Good afternoon, Judge.  We are ready.

THE COURT:  Good afternoon, Ms. McKeel, and your co-counsel.

THE CLERK:  Ms. Chavis, Ms. Peiffer is the defendant ready to proceed?

MS. CHAVIS:  Yes, we are ready to proceed.  Good afternoon, Your Honor.

THE COURT:  Good afternoon, Ms. Chavis and your co-counsel.

Sir, you are David Anthony Runyon?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Mr. Runyon is here in person with his counsel, both of his counsel, Ms. Peiffer and Ms. Chavis.

Mr. Samuels and Ms. McKeel and Ms. Ward are here on behalf of the United States.

Counsel, I appreciate very much your consideration and your indulgence.  The Court has been in a very lengthy criminal jury trial with a jury that has probably stayed

JODY A. STEWART, Official Court Reporter

4

longer than they had expected, and we were able to get the case to the jury about 15 minutes ago.  So I do appreciate your consideration and your indulgence in being agreeable to us dropping this hearing down.

We are here today on a status conference, and we started the conference, I believe, back in April.  I can give you the exact date.  I entered an order of April 15th, 2022, and the status conference was on April 13th, 2022.  So we came, and we convened for a status conference.  Everyone had agreed for Mr. Runyon to be able to participate virtually from Terre Haute, and we had agreed for him to participate virtually, but we had some difficulty with the equipment, mainly from the standpoint of the prison facility, so we discontinued that hearing, and we scheduled it for today.

That's what we are here for today, is continuation of the status conference that we started earlier.  I believe the first matter that we need to take up is the outstanding discovery motion that has been filed on behalf of the petitioner.  It was the motion that was filed on March 21, 2022.  The United States responded in opposition on April 4, 2022, and the petitioner replied on April 11th, 2022.  ECF Number 672 is the motion and the United States' opposition, and the petitioner has replied to that motion.

So that would bring us to, first of all, hearing

that.  Ms. Chavis, do you want to argue that motion or present that motion to the Court?

MS. CHAVIS:  Yes, Your Honor.

THE COURT:  One thing I would mention to everyone, we are in a courtroom that is equipped for COVID proceedings.  All the participants are behind Plexiglass, and anyone in the gallery should be socially distanced.  If you have been vaccinated, you can remove your mask.  You do not have to, if you don't want to, except if the Court can't hear you, or the court reporter can't get down what you're saying, we might ask you to remove your mask.

Again, you do not have to be masked if you choose, if you have been vaccinated and you choose not.

Ms. Chavis.

MS. CHAVIS:  Thank you, Your Honor, and I will remove my mask if it is difficult to understand me.  I am trying to be cautious because I do have to test for COVID before I go visit my next client.

THE COURT:  That's fine.  You speak clearly and distinctly, so I think we will be okay.

MS. CHAVIS:  Okay.  Thank you, Your Honor.  I am happy to report that two of the items in our discovery motion have been resolved.  The first item was the record of communication between the prosecution team and the prosecution's expert.  The government disclosed the records

JODY A. STEWART, Official Court Reporter

that it had to us.  They did that in court on April 13th, so that item is resolved.

The second item that was requested in our motion was that we were to be present during the government's interview of trial counsel, and then we requested to receive notes from the government's interviews of trial counsel after those interviews had been conducted, and the government did disclose those notes to us, so that issue is also resolved.

Those notes were disclosed to us on June 15th.

THE COURT:  All right.

MS. CHAVIS:  So the only issue that's left, Your Honor, is the issue of us deposing Dr. Montalbano and Dr. Patterson and receiving their notes and raw data.

THE COURT:  Receiving their what?

MS. CHAVIS:  Their notes and their raw data.

THE COURT:  Then you can go forward and argue why you would be entitled to do that.  You have to demonstrate good cause and why you would be entitled to it under discovery in a *habeas corpus* matter.

MS. CHAVIS:  Yes, Your Honor.  So most of our argument is contained in our written documents.  I really don't want to repeat it because it is very late in the day. I would just say that depositions would be very important in this case in order to narrow the issues, in order to make

JODY A. STEWART, Official Court Reporter

the evidentiary hearing more efficient in order for us to discover the evidence that will provide us support for our claims that have already been found to be colorful by the Fourth Circuit.  The Fourth Circuit's opinion does mention the government expert's report and the information contained within the government expert's report.

So we believe, speaking with the government's experts, deposing them before the evidentiary hearing is very important to obtain that information in an orderly way and so that we present that information to the Court in support of Mr. Runyon's claim.

THE COURT:  Let me just ask you a question.  You said that you have gotten the interview notes; is that correct?

MS. CHAVIS:  The interview notes from trial counsel, yes, Your Honor.

THE COURT:  Isn't that what the evidentiary hearing is for where they will be under oath?  I mean, you can't accomplish anymore in, it would seem, in a deposition than you can at the evidentiary hearing.  They are under oath, and that's what the evidentiary hearing is for.  I don't believe the Fourth Circuit referred to discovery.  That's just the issue before the Court.

The Court is going to have an evidentiary hearing, and if those experts, if the government relies on them, you

8

will have an opportunity to question them under oath, and it would seem duplicative, particularly of counsel's time, to have depositions and then proceed to an evidentiary hearing. So I'm not exactly sure what would be the purpose of depositions, because the purpose of the evidentiary hearing is for you to be able to listen to their testimony and cross-examine them and so forth.

MS. CHAVIS:  Yes, Your Honor.  The purpose of the evidentiary hearing is for us to present proof that supports our claim.  So in order to present that proof, we need to be able to obtain the proof.  I think the rule governing 2255 proceedings in the U.S. District Court, the discovery rules and the evidentiary hearing rule are side by side, and they are contemplated that they do work together and along with the rules of civil procedure so that we are able to obtain that information beforehand as any ordinary civil case.

The Fourth Circuit has indicated that obtaining information on the witness stand in the spur-of-the-moment due process examination isn't enough when it comes to presenting the merits of a person's claim, that it is important to be able, for litigants to have the full scope of the facts before them so that they can present their case to the Court in an orderly manner.

THE COURT:  Right now we are back on one issue, and it's basically whether counsel was ineffective for not

JODY A. STEWART, Official Court Reporter

presenting certain evidence, and you will have an opportunity to examine counsel, you'll have an opportunity to examine the experts, and then the Court has to basically determine whether there is a basis to go forward on an ineffective assistance of counsel claim.

The United States at some point has got to come forward and show basically that counsel was not ineffective, and you've first got to show they were ineffective. I don't know what evidence. You may want to present some evidence of your own. I don't know if you have experts. Do you?

MS. CHAVIS: Yes, Your Honor, we do.

THE COURT: Have you shared those with the United States?

MS. CHAVIS: Not yet, Your Honor.

THE COURT: So the United States has experts, you have experts, but you haven't shared them with the United States. It's really a situation where you are asking for more, it seems like, than you're willing to give.

MS. CHAVIS: Your Honor, they haven't asked for any expert information from us at this point in time.

THE COURT: All right.

MS. CHAVIS: But we have engaged in reciprocal discovery throughout this process, and I think we have worked pretty well together. We have had some little bumps along the road, but I think we are doing all right when it

10

comes to trying to work this out besides having to come to Your Honor to intervene in any discovery disputes.

THE COURT:  Well, I do commend all counsel for working together to determine this.  I have obviously read what you have presented, and as what I understand, you were just highlighting why you wanted today, and you rely on your brief and everything that you have cited in your brief.

MS. CHAVIS:  Yes, ma'am.

THE COURT:  I will get out an opinion fairly quickly so that we can move things along.  I'm not going to belabor with trying to put an opinion on the record, but I will get it out fairly quickly because I've done the research, I've read what you have submitted, and then you can just argue it today, is what I was looking for, and any other issues that might be necessary for the Court to determine.

First we will go through, I will hear any response that the United States wishes to make to this last discovery issue that I'm aware of.

Ms. McKeel.

MS. McKEEL:  Yes, ma'am.  Would you like me to come to the podium?

THE COURT:  Yes, I would.

MS. McKEEL:  Your Honor, with regard to the defense motion for discovery, we have resolved two of the issues.

With regard to the deposition, the United States has filed our response, and we rely on that.  I'm not going to belabor the point, but we oppose any depositions.  We agree with what you exactly just said to defense counsel, is that they are just not necessary and just going to prolong this procedure.

What we hope today is to get a date to start this procedure.  What we would propose is that we have the non-expert witnesses, we set a court date for them to testify with regard to the performance issue first, and then we propose that we have a second day.

That goes into the second motion why we are here today, but as long as I'm standing up here, I'll just address that, too.  So we are hoping to do that so we can just start this procedure, and if something were to come up in that first court date, certainly I think the defense counsel, if they have something, they could file something, a motion of some sort if they needed something more.

We know what we'd like to do is go ahead and start this procedure.  Deposition would just prolong this procedure, Judge, so we are asking you to deny that portion of the motion.

THE COURT:  While you are there, since the next motion is yours to bifurcate the proceedings, I understand that you want one where it would basically involve

Mr. Woodward and Mr. Hudgins?

MS. McKEEL:  We believe, if you recall, Judge, there was an earlier counsel, John Babineau, was for most of the proceeding actually right before trial.  So we would anticipate him and potentially, you know, Dr. Nelson, who they had consulted with during this procedure.

So we roughly think we might have roughly five witnesses, and so that would be the first in our proposal, we start with those witnesses.  Then based on what they say, like Ms. Chavis told you, the United States doesn't know anything yet, defense has not shared anything about their experts.  So we think that after that we will need to regroup and see what the government needs.  Of course, this is the defendant's burden to carry in this proceeding.  So that's what we are asking for with regard to the bifurcation.

THE COURT:  Your five witnesses would be the attorneys and Dr. Nelson?

MS. McKEEL:  I think so, Judge.  That is what we talked about.  Mr. Samuels, of course, has been with you for this period of time so not had a lot of time to discuss this with him, but that's what we believe would happen in the first phase of this.

THE COURT:  Is there anything you want to add, Mr. Samuels, at this juncture?

MR. SAMUELS:  No, Judge, that's right, and that's what we had discussed during this, that we would have the lawyers, they would be available to present first possibly Mr. Babineau and Dr. Nelson.

MS. McKEEL:  Judge, I'll just add for the Court, too, the Court may or may not know this, Steve Hudgins, who was the attorney that went to trial for Mr. Runyon, he is currently a judge and a state court judge, and he is undergoing cancer treatments.  So we are hoping, so he doesn't have to sit here, if we combine the whole procedure, we will need a few weeks on the Court's docket to get everybody's schedule.

We think that this would just be an easier way to get the lawyers to testify and Dr. Nelson first, and then we will set another hearing.  We are going to try to work around Judge Hudgins' schedule, his cancer treatment.

THE COURT:  I think you had mentioned that before, I believe.

MS. McKEEL:  Yes, ma'am.

THE COURT:  That was one of the reasons for some of the urgency to move this along so that we could be sure that we were able to accommodate all the attorneys and any health issues they may have.

MS. McKEEL:  He is going to seek a new treatment, Judge, so we don't have a date that he starts this new

treatment.  I communicated with him on Tuesday, and right now he's asked just to avoid August, I believe it was 22nd through the 26th.  He's in judicial conference.  So those are his avoid dates as of right now.

THE COURT:  All right.

MS. McKEEL:  Thank you, Judge.

THE COURT:  Ms. Chavis, your response to the bifurcation, or Ms. Peiffer, if you want to add anything, I'll be asking you, that you can certainly add something the way I asked Mr. Samuels.

Ms. Chavis, I'll first hear from you in regard to the bifurcation.

MS. CHAVIS:  Thank you, Your Honor.  I would just note that when it comes to depositions, we have asked the prosecution about depositions since approximately December of last year.  So when it comes to prolonging any type of proceedings, we have been trying to expeditiously pursue depositions of the experts.  We don't think that taking depositions would take up much time at all and delay any type of hearing, especially if the prosecutors are wanting to delay testimony of expert witnesses in this case already.

When it comes to the proposal to bifurcate the evidentiary hearing, based on the two *Strickland* prongs, we have submitted in opposition to that idea that's before Your Honor, and I'm not going to -- I'll try not to repeat

anything that we have submitted to the Court already.  I will say that since that submission we have continued to do research, and we have reviewed the capital 2255 cases where there have been evidentiary hearings in similar issues, and none of those hearings have been bifurcated in this manner.  So to bifurcate this hearing would be rather unique.

THE COURT:  Do you have those citations for the Court?

MS. CHAVIS:  For all of those cases?

THE COURT:  That's just a general representation, it's no directive from the Supreme Court or the Fourth Circuit, you're just talking about hearings that have been handled in other District Courts?

MS. CHAVIS:  Yes, Your Honor.  I'll give you a list of those cases, if Your Honor would like.  I don't have them on me, but I can provide them to the Court.

THE COURT:  Well, if you want to, you can.  I'll look at them and review them, but, of course, I'll look at each case.  I don't know what the issues were in those cases or any such thing, if it's the same issue or whatever.  I understand the argument for bifurcation, I understand the argument contrary to bifurcation, and I've read everything that you all have submitted.

I will be glad to read any other cases, and, likewise, if the United States has any other cases, but you

should get them to me fairly quickly because I plan to issue whatever I'm going to do on this and all other outstanding matters so that we can go ahead and get at least a hearing date or some hearing date set.

MS. CHAVIS:  Thank you, Your Honor.  I understand. With respect to this idea of the first prong, the deficiency prong of *Strickland*, the government has proposed a limited number of witnesses for that prong, and, Your Honor, this is our case, we do have to carry the burden in this case, of course, and we do have more witnesses to present in addition to those witnesses that the government would like to present.

So it's not just those five witnesses with respect to that first prong of *Strickland*, and in addition, when it comes to any lay witnesses that we would present, because -- and I think we do touch on this in the submissions that we made, the testimony is not going to be clear-cut with respect to only *Strickland* -- the performance bond in *Strickland*.  The prejudice prong is very difficult to split up that type of testimony.

So if that's going to be attempted, then we would be calling lay witnesses to court on two separate occasions, and that is going to be rather inefficient and burdensome. We would also have our expert witness in court to view the lay witness's testimony because our expert can rely on that

testimony in forming their opinion.  So that's an additional burden, having our expert return to court multiple times.

So I believe that this idea of bifurcating this hearing based on the two prongs of *Strickland* is rather complicated, and for those reasons, you know, as we say in our opposition, we think it's going to be difficult to work out.

THE COURT:  I understand somewhat what you're saying, but in terms of your lay witnesses, they would, I assume, be talking about what a reasonable attorney would have done under the circumstances faced with the same information.  In other words, it has to be the information that the individual attorneys had, or could get reasonably.

So your lay witnesses, how would they be lay witnesses?  Would they be talking about their expert opinion or would they be setting a standard?  I'm not exactly sure what you mean by lay witnesses.

MS. CHAVIS:  So for example, Your Honor, Mr. Runyon's wife, she had counsel ask his wife certain questions.  She could have provided information to trial counsel regarding Mr. Runyon's brain injury and his mental illness.  That was not done.  That's an avenue of investigation that was not pursued with that particular lay witness, with Mr. Runyon's wife.

So she will -- is required for her to testify to

say that counsel did not even ask her these questions, and that establishes that counsel did not pursue that line of investigation.

THE COURT: You can ask counsel that, too. I'm not saying you can't present that information from his spouse, but I'm saying you can also ask that same information from counsel. If they didn't, they probably will readily admit that they didn't. Then I think you can present, well, what would you have learned? I don't think they are going to say they talked to her when they didn't. What you would be presenting from her would be if they had asked me, this is what I would have told them.

MS. CHAVIS: But if they did not ask, and that this is what I would have told them, yes. Because of those two areas that she is a witness to, that touches on both performance and prejudice.

THE COURT: Do you anticipate attorney lay witnesses?

MS. CHAVIS: Your Honor, we have been in contact, and I do have under contract an expert with respect to performance standards in this particular community back at the time. You know, we are not supposed to look in hindsight from today's standards but back at the time of trial. So I do have an expert that can address that area, yes.

THE COURT:  Is there anything else you want to add on the bifurcation?  I've read what both of you all have presented.  I'm considering both ways.  I'm trying to make the decision both from the standpoint of efficiency as well as not having to have people here for a longer period of time than they need to, particularly very busy attorneys and someone who has an illness and judicial responsibilities.

So I'm trying to consider all of the witnesses.  Even if it's bifurcated, I'm going to hear them all as appropriate.  Certainly, your witnesses can sit in if they've got to form an opinion on testimony.  I'm certainly not going to exclude you, if it's a proper expert, from expert testimony and from having them know what the testimony is.

MS. CHAVIS:  Thank you, Your Honor.  Yes, we would, of course, accommodate the experts' schedules, in particular Judge Hudgins as he's going through treatment.  I'm glad that he was able to -- the government was able to be in contact with Judge Hudgins by Tuesday.  I had reached out to both him and Mr. Woodward on Monday, and neither of them had returned my calls, because I had tried to find out what their schedules were in advance of this hearing.  So I'm glad that the government was able to contact them.

THE COURT:  While you're there, Ms. Chavis, other than these two matters, the discovery matter that we've

talked about and the issue of bifurcation, is there anything else that the Court would need to take care of today?

MS. CHAVIS:  Your Honor, not that the Court needs to take care of, but I would like to inform the Court of a couple matters that I think are important.

THE COURT:  All right.

MS. CHAVIS:  Can I grab my notes?

THE COURT:  Sure.

MS. CHAVIS:  So I can give Your Honor a citation. I wanted to alert the Court that due to a recent Supreme Court decision in *United States versus Taylor* that came out just a couple of weeks ago, and that citation is 142.

THE COURT:  I'm familiar with it.

MS. CHAVIS:  Okay.  Thank you, Your Honor.  Due to that decision, we are going to ask the Fourth Circuit to recall its mandate with respect to the Davis issue that was decided in Mr. Runyon's appeal, and so we will be filing that motion to recall the mandate.

Hopefully, we are trying very hard to get that motion filed by the end of next week and maybe the following week.  But we hope to have that motion filed, and we will see what the Fourth Circuit does with that, Your Honor.  The *Taylor* decision by the United States Supreme Court shows that the analysis that was used by the Fourth Circuit to decide the Davis claim was incorrect, and so we will ask the

Fourth Circuit to reconsider its decision on that issue.

Of course, if the Fourth Circuit were to do that and take jurisdiction of the case in order to correct its decision, then that would affect the proceedings here.

THE COURT:  Well, I'm going to keep going forward on the mandate that they have sent to this Court on the one issue, because, as I indicated earlier, as far as the Court is concerned, that's not before the Court.  What's before the Court is the remand and the remand on the one issue of ineffective assistance of counsel.  So I'm going to keep on that path unless jurisdictionally I'm told otherwise.

MS. CHAVIS:  Yes, Your Honor.  Thank you.  I just wanted to alert you so that if you saw the notation on the docket, you would have a heads up, and you would know what we were doing.

THE COURT:  Thank you.

MS. CHAVIS:  Okay.  One other housekeeping matter, Your Honor.  I apologize for this, but I have need to return the juror questionnaires to the Court's clerk's office.  I want to make sure that it is okay that I do place those in Federal Express.  It is a banker's box that I'd like to return to the Court.

THE COURT:  That's something that I'd want to hear what the United States has to say.  In any event, I'm not sure on that one.

JODY A. STEWART, Official Court Reporter

MS. CHAVIS:  Okay.  If we need to address it another time, that's fine.  I just had it on my list.  That was when the hearing was scheduled for earlier.  So I understand if we need to wait.

THE COURT:  All right.

MS. CHAVIS:  Can I take one minute?

THE COURT:  Certainly.

MS. CHAVIS:  Thank you.  One final matter, Your Honor.  I just wanted to inquire of Mr. Runyon's status and how long he will be here.  We do have a defense visitation scheduled with him for Monday at the Tidewater Regional Jail, so just wanted to make sure or request that he not be transferred over the weekend so that can occur on Monday.

THE COURT:  You have that scheduled?

MS. CHAVIS:  It is scheduled, Your Honor.

THE COURT:  Then I will ask the marshals that he needs to remain so that you can have your visit with him so that he doesn't go back to Indiana, and then you have to make those arrangements.  So I haven't been advised of any plans, but I will direct that he be held until Tuesday.

MS. CHAVIS:  I'd really appreciate it.  Thank you very much.

THE COURT:  All right.

MS. McKEEL:  On that issue alone, we have no intention for him to return back to Terre Haute.

JODY A. STEWART, Official Court Reporter

THE COURT:  Let me check with Ms. Peiffer. Ms. Peiffer, is there anything that hasn't been covered that you want covered today?

MS. PEIFFER:  Thank you, Your Honor.  I believe Ms. Chavis has covered everything.

THE COURT:  Thank you.  So, in other words, you have got your detainer, and so there's not a time limit in there where the marshals say, all right, it's time for him to go back?

MS. McKEEL:  Yes, ma'am.

THE COURT:  That's fine.  Just be sure and coordinate with the marshals.  I'm sure they are aware of it, but sometimes things do fall through the cracks, not very often.

MS. McKEEL:  Normally, what they do after a witness such as this or a defendant such as this, they contact us, and we tell them to keep a hold on them.

THE COURT:  I usually don't get into those things, so it's the United States' burden to produce the defendant for these hearings, or the petitioner.  So that's taken care of.

So I'm going to get an opinion out as quickly as I can on this discovery issue and on the bifurcation.  Is there anything further that you want the Court to take care of, and what is your opinion of the banker's box?

JODY A. STEWART, Official Court Reporter

MS. McKEEL:  Thank you, Judge.  Your Honor, with regard to what the United States would ask the Court to do, is that we would like, in addition to your opinion, we would like to set a date, and with the date in mind, what we anticipate is that we would like a witness list to be turned over by the parties, exhibit list to be turned over by the parties, and expert disclosures to be turned over by the parties.

So we would ask in addition to setting a date as a scheduling order from the Court with those issues in mind.

THE COURT:  So what I had planned to do is when I issue the opinion, direct counsel to contact the calendar clerk with hearing dates, whether it be bifurcated or one hearing, and then give a time period for that.  What you're asking for is in addition for the Court to set certain deadlines which would be witness lists, exhibit lists, and expert disclosures?

MS. McKEEL:  Yes, ma'am.

THE COURT:  Now, what I will do is I will probably go ahead and ask you for hearing dates, and then once we get a hearing set, if you all can agree on an agreed order, that's fine.  If you can't, then I would work backwards to the way we do when we set things in the court, we set the hearing date, and then we go from that date to set the other dates.

MS. McKEEL:  Yes, ma'am.  Judge, can I just confirm with counsel if I just missed anything else?

THE COURT:  What about this banker's box?

MS. McKEEL:  So, yes, ma'am.  What happens when the habeas was first filed by first habeas counsel, I believe that was Michelle.

THE COURT:  Ms. Brace.

MS. McKEEL:  Right.  Judge, you told us and directed us, because one of the issues was with regard to the jurors, you directed us to come to the courthouse to pick up the juror questionnaires.  You directed us to do that.

THE COURT:  When you say us, you mean Ms. Brace and you?

MS. McKEEL:  Yes, ma'am.

THE COURT:  For both parties?

MS. McKEEL:  Yes, counsel.  You directed counsel, specifically counsel to come here and pick up the boxes.

THE COURT:  I remember.

MS. McKEEL:  I did have to come here physically, Judge, and pick those boxes up.  We still have those, so Ms. Chavis is right, the issue is over, and so we are at this point we need to return those back.  I understand counsel is not local, and so that may be problematic for counsel, but I would say that those juror questionnaires are

sealed, they are not public disclosure. I just think that they need to be brought back physically by the attorneys, myself included, bring back the boxes to the clerk's office like we started out previously.

THE COURT: I think I had certifications, too, where you certify you have received them, and then you have to do a certification that you're returning them. I know that Ms. Brace came down.

MS. McKEEL: Yes, ma'am.

THE COURT: She came down because I know that she came from Charlottesville to pick them up and sign. That's my recall. It's been awhile back, but that's my recall of how it was done. I'd have to go back and look at my order, but I know I specifically ordered the mechanism by which you could get the questionnaires and by which you had to return them. I may put something in my current order or do a separate order that says they should be returned to the court on or before a certain date pursuant to the previous order, and I'll give directions in that order.

MS. McKEEL: Thank you, Judge.

THE COURT: So we have the opinion on the discovery issue, the opinion on bifurcation with the request for hearing dates and getting that set, and then work backwards for the exhibit list, the witness list, and the expert disclosures for the actual habeas hearings.

MS. McKEEL:  Yes, ma'am.

THE COURT:  Hearing or hearings.

MS. McKEEL:  Yes, ma'am.

THE COURT:  Then separately the request from Ms. Chavis about the return of the juror questionnaires.  I do probably think it is time to get those back because you don't want to handle them, but we still will maintain them under seal until the case is concluded.

MS. McKEEL:  Thank you, Judge.

THE COURT:  You want to check and see if there is anything else?  Did you want to check with Mr. Samuels?

MS. McKEEL:  Thank you, Judge.

We have nothing further.

THE COURT:  Anything further, Ms. Chavis, Ms. Peiffer?

MS. CHAVIS:  Nothing else, Your Honor.  Thank you.

THE COURT:  If there is nothing further, the Court hears nothing, the Court will be in recess in this case.

(Hearing adjourned at 5:28 p.m.)

JODY A. STEWART, Official Court Reporter

CERTIFICATION

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

X_____/s/_____x

Jody A. Stewart

X_____8-2-2022 _____x

Date