IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

- - - - - - - - - - - - - - - - - - -
                                      )
UNITED STATES OF AMERICA,             )
                                      )
v.                                    )    CRIMINAL ACTION NO.
                                      )    4:08cr16
DAVID ANTHONY RUNYON,                 )
                                      )
        Defendant.                    )
                                      )
                                      )
        AND                           )
                                      )
DAVID ANTHONY RUNYON,                 )
                                      )
        Petitioner,                   )    CIVIL ACTION NO.
                                      )    4:15cv108
V.                                    )
                                      )
UNITED STATES OF AMERICA,             )
                                      )
        Respondent.                   )
                                      )
- - - - - - - - - - - - - - - - - - -


TRANSCRIPT OF PROCEEDINGS

Norfolk, Virginia

October 18, 2022


BEFORE:   THE HONORABLE REBECCA BEACH SMITH
          United States District Judge


JODY A. STEWART, Official Court Reporter

APPEARANCES:

          UNITED STATES ATTORNEY'S OFFICE
          By:  Brian Samuels
          Assistant United States Attorneys
               Counsel for the United States

          FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE,
          INC.
          By:  Dana C.H. Chavis
                    And
          VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER
          By:  Elizabeth J. Peiffer
               Counsel for the Defendant

(Hearing commenced at 11:13 a.m.)

THE CLERK:  In case number 4:15cv108, David Anthony Runyon, petitioner, versus United States of America, respondent; and case number 4:08cr16, United States of America versus David Anthony Runyon.

Mr. Samuels, is the government ready to proceed?

MR. SAMUELS:  The government is ready.

Good morning, Your Honor.

THE COURT:  Good morning, Mr. Samuels.

THE CLERK:  Ms. Chavis and Ms. Peiffer, is the defendant ready to proceed?

MS. CHAVIS:  Yes, we are.  Good morning.

THE COURT:  Good morning, counsel.

Let the record reflect that Mr. Runyon is here in person with his counsel.

I will briefly review where we are for today, and then we will go forward with the things that we need to do. This matter comes before the Court as a final preparation and status hearing on the upcoming evidentiary hearing regarding petitioner's motion pursuant to 28 United States Code, Section 2255.

Briefly, I'll give you a procedural background, and it will be very brief, and then we will proceed into the issues that need to be addressed for today's hearing.  The sole issue before the Court for the *habeas* hearing is claim

6 of petitioner's motion concerning whether his trial counsel failed to provide him with a, quote, and this is from the Fourth Circuit case, "Failed to provide him with effective assistance in violation of the Sixth Amendment by failing to investigate adequately his brain injury and potential mental illness and introduce such evidence in mitigation during the penalty phase of the trial."

That is from *United States v. Runyon*, 994 Fed.3d 192 at 204, and that was decided by the Fourth Circuit in 2021.  On this issue the Fourth Circuit remanded for an evidentiary hearing to explore whether petitioner's counsel was constitutionally ineffective.

On November 15, 2021, this Court held a status conference to ascertain how the parties wished to proceed, and thereafter on January 27th, 2022, the Court entered an agreed scheduling order which set deadlines for discovery.

Upon the United States' motion, the Court also issued an order on March 8, 2022, permitting and directing Lawrence H. Woodward, Jr., and Steven A. Hudgins, petitioner's trial counsel, to respond to the United States' inquiries concerning petitioner's pending claim.

At the request of the parties, the deadline to file motions relating to discovery disclosures was twice extended.  Petitioner ultimately filed his motion for discovery on March 21, 2022.  In his motion the petitioner

requested certain documentary and testimonial discovery.

The United States responded in opposition on April 4, 2022, and suggested that the Court bifurcate future proceedings into two hearings, one to address each aspect of the Strickland ineffective assistance of counsel standards.

A status conference to resolve the outstanding matters was set for April 13, 2022, with petitioner to appear by video conference.  Due to technical difficulties at the facility in which the petitioner was incarcerated, petitioner's attempt or the attempt to join him into the status conference by video -- and he did have an attorney there with him -- the Court exercised its discretion and declined to go forward with only a telephonic hearing.  On April 15, 2022, the Court entered an order that explains all of that reasoning in detail.

Instead, the Court directed counsel to schedule the hearing and explained that petitioner must appear in person at the rescheduled hearing and obviously all hearings thereafter.  The Court also made clear that the parties should be prepared to discuss all outstanding matters properly before the Court, such as the petitioner's discovery motion and the potential bifurcation of the upcoming evidentiary hearing.

The hearing was scheduled for July 20th, 2022.  On July 11th, 2022, petitioner filed an opposition to the

United States' proposal for a bifurcated evidentiary hearing and argued that the bifurcation, "is unnecessary, it would be impractical, it would inconvenience witnesses, it would slow down the hearings, and ultimately the resolution of the case, and it would require significantly more judicial resources."

During the July 20, 2022, hearing, petitioner was present in person with his counsel of record in this matter. The United States was likewise present through counsel of record.  At the hearing the parties informed the Court of the status of the discovery, and the Court heard argument on the discovery motion and issue of bifurcation.

On July 28, 2022, the Court issued an order denying petitioner's discovery request and the United States' proposal to bifurcate the evidentiary hearing.  The order also explained how evidence would be presented during the evidentiary hearing and directed the parties to proceed with discussing a potential agreed schedule for the upcoming hearing.

The petitioner notified the Court that he provided the government with a list of 23 witnesses and 141 exhibits on August 29, 2022, that he expects to present, or he may present at the upcoming evidentiary hearing, and that he further provided the United States with an amended prehearing disclosure on September 23, 2022.

That brings us to today because everyone, if there were any further issues, the parties were to notify the Court by September 16th, 2022, and there was no such notification, so we are here today to set the hearing. That's the first order of business.

The Court has been notified by the parties, through the docket clerk, that they estimate three weeks are required for the entire evidentiary hearing and approximately ten days would be devoted to petitioner's presentation of evidence, and petitioner's counsel has advised that there is approximately a 90-day delay or so, they say, to obtain subpoena service and transport witnesses via the United States Marshal Service. That, of course, can always be expedited if it has to be.

The United States has proposed that the Court begin the evidentiary hearing during the week of December 12, 2022, to take trial counsel's testimony. However, that is not a date that is convenient to the Court, and the Court also doesn't want to start and not end. We need to set the hearing, move forward with it, and complete it in a continuum of weeks, days, whatever. So we will proceed to conclusion. The Court has offered to the parties, through the docket calendar clerk, the dates of February 7 through the 27th. I believe Ms. Peiffer has first said, this is in an e-mail to Ms. Armstrong, the clerk, that she was

unavailable from February 7 through 14 due to a deadline regarding appointment to represent a death-sentence inmate in North Dakota or Minnesota.

Ms. Peiffer, if you would please come up to the podium and tell the Court what the hearing is, what the case is, and what deadline it is, and if there are other counsel in the case, and when this hearing was scheduled.

MS. PEIFFER:  Thank you, Your Honor.  And if I miss any of those points, I will ask for clarification.  The case is in the District Court for the Northern District of Mississippi.

THE COURT:  Mississippi.  All right.

MS. PEIFFER:  Yes.  The date of February 14th is not a hearing.  It's a jurisdictional deadline to file a petition for hearing 2254.  So it's not a hearing date.  It was anticipated that I would -- I'd planned out of necessity of being in Mississippi from the 7th to 14th, which is why I had named those dates as a conflict.  It's a *habeas* petition in the federal court for a death-sentence petitioner in state court in Mississippi.

THE COURT:  So basically this is a deadline for the filing of a petition that is due in February.  The deadline is in February?

MS. PEIFFER:  That's correct, Your Honor.  Typically, there's a one-year statute of limitations, but

due to a delay in appointing an attorney from my office, we had approximately five months from appointment to file the petition.  Our operating as a team because, as the Court is well aware, filing a petition such as this involves investigating and identifying additional claims to present to the Court within a fairly short amount of time.

THE COURT:  Well, as far as the Court is concerned, that's not a valid excuse for delaying this hearing, for a number of reasons.  First of all, you've got a number of people in your office.  Number two, you've got plenty of time to prepare if your deadline is the 14th of February.

Thirdly, if you can't meet the deadline, then you should go to the other court, not this Court where this case has been sent back by the Circuit Court now for over two years.

Constantly, when you have appeared, not you *per se*, but when you all have appeared before the Court, you constantly have, I think that Ms. Chavis had to be down in Guantanamo, and you've got all of these conflicts.  If we keep just saying, okay, well, I've got this to file, I've got that to file, as far I'm concerned, we won't be able to set a proper date.

So I would deny that as a valid reason for delaying this hearing, because, number one, I would find that this is the middle of October, October 18th.  You've got more than

10

proper time to prepare for filing this petition. To the extent you don't, then it's up to you to go to the other court, not to this court that's had this case pending all of this time. It hasn't even been filed. So if you need a continuance and can't meet the deadline, go to the other judge, find out if you can alter that deadline because you have a hearing here, if that turns out not to be the case, or otherwise, I would suggest that you've got plenty of time, you can work over upcoming holidays if you need to. You've got months. You have got four months, approximately. Four months should be more than sufficient time. So I cannot accept that as a reason that this couldn't be scheduled during that time period.

MS. PEIFFER: Thank you, Your Honor. I just want to clarify for the record because I may have misspoke. We cannot ask for an extension of that deadline in my understanding because it's a statute of limitations jurisdictional deadline, so I just wanted to clarify for the record, but I understand your ruling.

THE COURT: Well, that's fine. You've still got plenty of time, and you've got plenty of people, and maybe you have to not be the one on the case. I don't know. But I cannot let a deadline for filing a petition that is four months away be a reason to continue this hearing that has been pending before this Court for two years. The Court

JODY A. STEWART, Official Court Reporter

feels it has been very patient with giving you all continuances and extensions for various reasons.  So, yes, I do deny that reason to continue this particular habeas hearing.

The next reason that I received was that another conflict was an expert witness would be in a 10-week trial from January 23 to March 31.  I want to know what the case is, why the expert would have to be there for the whole time.  Certainly, we can make arrangements, and if need be I can probably contact whoever the judge is to make arrangements for the expert to be here.  We certainly can be flexible with our schedule if we have a long enough schedule for experts.

So I do not understand that excuse.  When you hire an expert, they're obligated to be available.  That's part of any agreement with an expert.  I cannot understand that excuse, so somebody would have to explain that one to me.  Do you want to try to do that, Ms. Peiffer?

MS. CHAVIS:  Ms. Chavis.

THE COURT:  Ms. Chavis.  I just spoke with Ms. Peiffer.

MS. CHAVIS:  Yes, you did, Your Honor.  Yes, so the person we are speaking about is Jean Barrett, and she is an attorney, a death penalty attorney, and so the trial that she's going to be in is a federal death penalty trial in

Illinois, and it was scheduled for ten weeks. When I last spoke with her, it has been scaled back to six weeks. I believe one of the co-defendants has pled and that then shortened the anticipated amount of time for the trial. So she's now unavailable January 23rd to March 3rd. So Jean Barrett is our expert with respect to the Strickland standards.

THE COURT: How long is her testimony going to take?

MS. CHAVIS: Your Honor, I would anticipate her testimony would take maybe a morning.

THE COURT: So as far as I'm concerned, when we are getting to that point, she can check with the judge in advance. We can even give her a date during the time period in advance. What Court is it?

MS. CHAVIS: It's one of the federal courts in Illinois. I did not ask her specifically which court.

THE COURT: I can't imagine that a judge would hold up a *habeas corpus* death penalty hearing in this court that has been referred back by the Fourth Circuit Court of Appeals for a morning of testimony. If so, then I'll convene on a Saturday. I can convene on a non-weekday to have her testimony. I mean, I'm not going to stop this because, frankly, we will never get this to trial.

I have a multi-district litigation case, it's a

civil case, but it involves 23 separate cases and about a hundred attorneys scheduled for later in the spring, and it's time to get this case tried.  So you've got one expert who's got half a day or whatever, and if she can't get away from that trial, and she's got plenty of time to prepare, I'll convene in an evening.  I'll convene on a weekend. I'll make it possible for her convenience.

If necessary, if you want, you can find out the court and the judge, and I will be glad to call the judge. I think I know most of the district judges in Illinois from service on the judicial conference, and I would be very comfortable calling a judge and saying I've got a death penalty *habeas corpus* case that went forward for trial in 2009, I think it was, and it's still pending, and it's been back from the Fourth Circuit for two years, and we need to get it tried.  The only thing that was holding up this schedule was one attorney who needs to testify for approximately a half a day, and if we can make arrangements, I would very much appreciate it.  If we can't, then I'll make the arrangements here.  So I deny that as a reason for a continuance in this case.

MS. CHAVIS:  Understood, Your Honor.  I appreciate your willingness to be flexible and to get this hearing set. Just for the record, I would note that while her testimony would take a few hours, it would require her to travel down

JODY A. STEWART, Official Court Reporter

here the day before and then most likely travel back either, hopefully, if we can get a flight out that evening or the next day, but so just looking at her end, I'm anticipating that she would be gone three days out of her federal trial.

THE COURT:  Well, we've got President's Day.  I've had to do this enough through my judicial career that I can make arrangements for somebody's one-day testimony.  If necessary, there is President's Day, I know during this period, I believe in February, and we can make those arrangements.

I can't imagine a federal judge being so rigid as to say somebody couldn't have a day away from a lengthy death penalty case.  Most judges, I don't know who the judge is, but many judges don't go five days a week on a case like that.  Many judges go four days a week on a case like that because they have other matters to attend to and jurors have matters to attend to.

So we will work around that, and I will make arrangements.  If you would get to me her name and the federal court and the docket sheet for the case, and I can proceed from there.  So I will need to see that so when the time comes, I can be prepared for it.  So I'll need to see the docket sheet, which would show the case and the name of which counsel it is and what court.  You can mail those to me with a copy in a letter and mail it in a copy to me and

with a copy to Mr. Samuels.

MS. CHAVIS:  Yes, Your Honor.  It would probably be good of me to note that another witness that we've spoken with does have some scattered dates within that three-week time period when he is unavailable.  So I note Your Honor did set out a schedule for witnesses, but it did note that there was flexibility built into that.  So I already know that this one person does have some dates when he's unavailable within those three weeks.  So because I know that, I just wanted to reveal it ahead of time just so it's on people's radar.

THE COURT:  I will certainly be willing to accommodate.  Is that the one who has a vacation?

MS. CHAVIS:  No, Your Honor.  This is Evan Nelson. He's also an expert, but he's a fact witness in this case, and he does a lot of court-appointed examinations and things that he already has scheduled into the future.

THE COURT:  Well, I will certainly accommodate his schedule.  He has been retained, and he is obligated to be here.  It is long enough that we can adjust the schedule.  I know I set it out just so that it could be orderly, but we don't have a jury, and the case schedule that I set out was one that I thought would help you all in terms of ordering, putting in the order to your witnesses, and, therefore, I'm certainly flexible on adjusting a schedule to make

reasonable accommodations for your witnesses.

Anything else?

MS. CHAVIS:  Yes, Your Honor.  We did file a motion for appointment of Suzanne Bales to help us in the evidentiary hearing in this case.  Given that perhaps we will be without Ms. Peiffer for about half of the time from when the hearing is scheduled for, it would be really helpful for Ms. Bales to be able to assist in this hearing.

THE COURT:  We will go to that.  Let's get this set, and then we will discuss Ms. Bales and whether she's admitted in the case.  First, she certainly isn't going to be admitted if she is going to create more excuses not to be here because I notice that your motion said in all proceedings.

The defendant is entitled to two attorneys, not to three.  I previously, as I recall, denied her coming into the case.  I'm not going to have it if she is creating more reasons for continuances.  We are going to get this set, and everybody's going to need to be available.  Ms. Peiffer, I'm not excusing her from being here, if she's got something to file.  She's attorney of record.  I set this, and she's going to be here the entire time.  I just finished telling her I denied her reason.  So I don't know why she wouldn't be here for half of the case or part of the case.

MS. CHAVIS:  Understood, Your Honor.  Ms. Bales is

in the courtroom today.

MS. BALES:  Good afternoon, Your Honor.

THE COURT:  Nice to see you.

MS. CHAVIS:  Thank you.

THE COURT:  Then, counsel, it looks like that we can set this matter to start this hearing on Tuesday, February 7th, and right now it would be set to go until it ends.  I am setting aside the rest of the month of February because it may run over a couple of days.  If it does go into the first week of March, once we start it, we finish. So it will start, and it will go to the end.

I do have some things during those periods, but if it's a civil matter, I will continue it or move it from my docket.  If it's a criminal matter, I'll just have to see if I can find another judge to do it because it's time. Certain things it becomes time to move forward, and it's time now to move forward.

So we will start the evidentiary hearing for Mr. Runyon on February 7, and it will continue at least through February 28 or until completion.  So that's when we will set it.  It is just before me so there isn't a jury that we have to be involved with right now.  We will follow the schedule that I put out before as closely as we can. Again, I am flexible.  I understand that, since it's just a bench matter at this juncture, that sometimes things do have

to be adjusted, and so that will go.

I would appreciate if you would provide whatever the list was of witnesses and exhibits that you have given the United States and whatever you've exchanged with each other as the list, I would appreciate if those were submitted to the Court on or before November 1 so that I can start preparing my hearing notebook, and so forth.

I would also note that this particular date gives the marshals more than 90 days to get these subpoenas served.  So Tuesday of this week you should forthwith move with that, if you anticipate any kind of delay because this is more than 90 days.  I think, as I said, it's almost four months, so you should go ahead and get those out.

The hearing will start on the first day at 11:00 a.m. and probably start at 10:00 a.m. each day thereafter. That gives you time to come in and get set up in the morning and in the courtroom.  It will be in one of the larger courtrooms most likely.  So you will know that closer to the time, but it will start at 11:00 a.m. the first day, and then afterwards we will probably be starting at 10:00 a.m.

Mr. Samuels, I know one of the attorneys was ill. Has that somewhat resolved itself at this point?

MR. SAMUELS:  I'm sorry, Your Honor.  You're speaking of trial counsel in this case?

THE COURT:  Yes.  Trial counsel.

MR. SAMUELS:  Yes.

THE COURT:  The attorneys who need to testify.

MR. SAMUELS:  Yes, Your Honor.  Mr. Hudgins, now Judge Hudgins, is still undergoing treatment.  I did check with him when we initially communicated with the clerk as to his dates of when he undergoes that treatment.  This February date falls well within the gap in his treatment.  He's got a treatment date on January 11th, and then his next treatment date is February 22nd.

There is a three-day period of time after he undergoes the treatment because of the radiation nature of it where he can't be exposed to others, but given when we set this and the likelihood that he would testify in the earlier side of it, his schedule can be accommodated.

I did check, Your Honor, since I'm speaking of this, with the other counsel as well, the other trial counsel.  Mr. Woodward had advised that he had a few matters in February.  Again, I think we can move around those, but if the Court is inclined, and we need the Court to do so, perhaps the Court could reach out, if needed, on his schedule just as the Court might do with one of the experts for the defense.  But I think we can be accommodating, move around that.

THE COURT:  I'm certainly willing to accommodate, and probably most of those hearings are in our court.

20

MR. SAMUELS:  I would think so, Your Honor.

THE COURT:  He practices in state court, too, so I don't know which court or what hearings or what judge or whatever.

MR. SAMUELS:  We will find out, Your Honor, if that's an issue.  Thank you, Judge.

THE COURT:  All right.  I know he has a lengthy trial before me in January.

MR. SAMUELS:  He has one trial that he advised me February 6 to 10th, and that's the one that looks like it could be a federal trial, but I'll find out more details about that, Your Honor.

THE COURT:  It's a long time away and something could happen with those trials.

MR. SAMUELS:  Always could, Your Honor.

THE COURT:  Is there anything else now regarding the evidentiary hearing?

MR. SAMUELS:  Not at this time, Your Honor, from the United States.

THE COURT:  Then the next thing is this memorandum to appoint Ms. Bales as a third attorney that's been represented that she's been significantly involved in petitioner's case and a supporting role, and she works for the same firm as one of the petitioner's existing counsel. I see no reason why she can't continue to participate in a

JODY A. STEWART, Official Court Reporter

supporting role in the case without specifically being appointed a third attorney.

If it comes to trial and she really needs to participate in the trial, I can admit her then.  But I am not going to admit her so that Ms. Peiffer can be away from the case because Ms. Peiffer has been here all along, and she has to stay in the case.

So that representation that she, you know, could be there when Ms. Peiffer isn't there, it's different for the United States.  The United States can have one attorney or who appears, but this is a death penalty case, and we've gone through the appointments.  Ms. Peiffer and Ms. Chavis have both been appointed.  Ms. Peiffer replaced Ms. Brace, who was with the Virginia Capitol Resource Center for years on this case.  We have to have the continuity of the representations.

I'm not going to start appointing third attorneys at this late date.  As I say, nothing prevents Ms. Bales from working on the case.  She's in your office, and she can work on the case.  In terms of being here in court, if we come up to the hearing, and you feel like you need her to examine a witness or whatever, you can renew it then.

But at this juncture I take the motion under advisement, and if it's necessary for the hearing, then I will look at it at that point in time.  As I say, I see

nothing that prohibits her from continuing to work on the case.  Nothing in the law says an attorney in your office can't work with you on a case, and she can continue to work with you.  So you can renew the motion closer to the hearing date, if you would like, Ms. Peiffer, as you get everything ordered and done, and you feel like Ms. Bales is somebody who worked with a witness or something like that and have specific reasons for doing it.  But at this juncture the defendant has two attorneys.  They are attorneys that have been on the case, and he is well and properly represented, and that does not prohibit Ms. Bales from working on a case and, ultimately, if appropriate, being appointed for purposes of the hearing.

Is there anything else that the Court needs to take up this morning, that you know of?

MR. SAMUELS:  Your Honor, not for the government, not that I know of, no, ma'am.

THE COURT:  Either Ms. Peiffer or Ms. Chavis, is there anything further for the Court to take up this morning?

MS. CHAVIS:  May I have a few seconds, Your Honor?

THE COURT:  All right.

MS. CHAVIS:  Your Honor, if I just may add some things about Ms. Bales just for the record.  You've indicated that we can go ahead and renew our motion, and I

JODY A. STEWART, Official Court Reporter

very much appreciate that because, as Your Honor, I'm sure, appreciates, preparing for this evidentiary hearing is a big undertaken, and we've already begun to divide the witnesses, and I think as we mentioned in the motion for appointment, Ms. Bales has been working extensively with one of the expert witnesses.

So as we prepare, Ms. Bales will be -- we already know at least right now that we've asked her to be responsible for examining the one expert, but I may need her help on other witnesses. So I guess I'm just putting that out there to say we will prepare as if -- when we do renew our motion closer to the evidentiary hearing, that it will be very helpful that Ms. Bales is admitted at that time so that she can participate in that examination.

THE COURT: You do understand the rules of the Court, that only one attorney can examine a witness, and that attorney also is in charge of objections and any responses to objections. All three of you, if you are all here, can't be jumping up and down on the examination.

MS. CHAVIS: Yes. Thank you for that reminder, Your Honor. Yes. It could be hard for maybe one of us to keep our mouths closed, yes.

THE COURT: I think you can do it.

MS. CHAVIS: You're right, Your Honor. You're right. I can do it. Thank you.

THE COURT:  Well, renew your motion closer to the hearing date.  Okay.

MS. CHAVIS:  Yes, we will do that.  Thank you.

THE COURT:  I assume that Mr. Runyon will be here until the hearing date, is that what you understand?

MR. SAMUELS:  That is my understanding, Your Honor.

THE COURT:  Then, if there is nothing further, the Court stands in recess until later today.

(Hearing adjourned at 11:53 a.m.)

CERTIFICATION


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.



X_____/s/_____x

Jody A. Stewart

X_____11-2-2022 _____x

Date

JODY A. STEWART, Official Court Reporter