IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | | |
|---|---|---|
| DAVID ANTHONY RUNYON, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Criminal Action No.: 4:08cr16 |
| | ) | Civil Action No. : 4:15cv108 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **CAPITAL § 2255 PROCEEDINGS** |
| Respondent. | ) | |
| | ) | HON. REBECCA BEACH SMITH |

**RESPONSE OF THE UNITED STATES TO PETITIONER'S MOTION FOR WITNESS
TO TESTIFY BY VIDEO CONFERENCE (ECF NOS. 733, 734)**

COMES NOW the United States of America, by and through its attorneys, Jessica D. Aber,

United States Attorney for the Eastern District of Virginia, Brian J. Samuels and Lisa R. McKeel,

Assistant United States Attorneys, and Carrie L. Ward, Trial Attorney for the Department of

Justice, and submits its response to the Petitioner's motion for video testimony of an expert

witness, Dr. James Merikangas ("the motion"). (ECF Nos. 733, 734).    The United States

respectfully opposes the motion because there do not exist compelling circumstances to warrant

taking the testimony of Dr. Merikangas by video conference.

**PROCEDURAL HISTORY AND POSTURE OF THE CASE**

In August 2009, DAVID ANTHONY RUNYON (hereafter "the defendant" or "the

Petitioner") was convicted and sentenced by a federal jury. The jury recommended a sentence of

death for two of the three convictions of Conspiracy to Commit Murder for Hire, in violation of 18

U.S.C. § 1958(a), and Use of a Firearm Resulting in Death, in violation of 18 U.S.C. § 1924(c)(1),

1

(j)(1). The jury recommended a sentence of life for Carjacking Resulting in death, in violation of 18 U.S.C. § 2119. This Court imposed the sentences in December 2009.

The Petitioner appealed to the United States Court of Appeals for the Fourth Circuit, which affirmed his convictions and sentence. *United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021).   The Supreme Court of the United States denied a Writ of Certiorari. Thereafter, the Petitioner filed a motion pursuant to 28 USC § 2255 to vacate his sentence.   After an extensive course of briefing, this Court denied his motion in a comprehensive opinion and order and, also, denied a certificate of appealability.   The Petitioner again appealed to the Court of Appeals, which granted a certificate of appealability on four issues to include the Petitioner's Claim Six, which alleges that his trial counsel provided ineffective assistance by failing to investigate and present mitigating evidence of the Petitioner's contended brain injury and potential mental illness.  (ECF No. 511 and appendices, "Amended 2255").

In support of Claim Six, the Petitioner alleges that his former trial counsel, now Judge Stephen A. Hudgins, appeared in the case too late to effectively investigate and present mitigation;[1] that counsel abandoned an incomplete mental health investigation and presented repetitive lay person testimony; and that a complete psycho-social history and its implications would have added weight to mitigating factors, reduced the weight of aggravating factors, and informed the jurors about Petitioner's lesser moral culpability.  *Id.*

On February 12, 2021, the Court of Appeals affirmed this Court's ruling on all aspects of the Section 2255 opinion and order, save for the limited issue of whether counsel was ineffective in the

---

[1]Although Judge Hudgins (hereafter referred to as "attorney Hudgins" or "Mr. Hudgins") appeared in the case one month prior to the originally scheduled trial date in March 2009, trial counsel successfully obtained two continuances of the trial, from May 2009 to then June 2009. Trial counsel further obtained a continuance of the penalty phase to August 19, 2009.

investigation and presentation of mitigation evidence.   The Court of Appeals remanded this case for the purposes of an evidentiary hearing to resolve the limited question presented by Claim Six. *United States v. Runyon,* 994 F.3d 192 (4th Cir. 2021).

### BACKGROUND

Following the indictment in this case, the Petitioner was initially represented by attorneys Jon Babineau and Lawrence H. Woodward, Jr.   In the latter part of 2008, the defense team was assisted by Dr. Evan Nelson, a board-certified psychologist, Ms. Sheila Cronin, a mitigation specialist, and Mr. Glenn Ford, a defense investigator.   Mr. David Bruck assisted as resource counsel.   During this time period, the Petitioner had also engaged another mental health professional, Dr. Mark Cunningham, who would ultimately provide penalty phase testimony.

On February 5, 2009, Mr. Babineau acted upon Dr. Nelson's recommendation to obtain a neuropsychological evaluation and a Dr. Scott Bender was contacted and retained.   Dr. Bender did review records, consult with then-attorney Hudgins and did submit invoices for payment.   It appears that, at some point, the defense team elected not to utilize Dr. Bender and selected additional experts.   Also in February 2009, Mr. Babineau had to withdraw from the case due to a conflict of interest and Mr. Hudgins was appointed as counsel.   Multiple witnesses with expertise in mental health were appointed to consult with the Petitioner's trial defense team.

In or about June 2009, trial counsel contacted and conferred with Dr. James Merikangas and sought his appointment as a replacement expert for another mental health professional.   The Court approved the appointment of Dr. Merikangas in or about July 2009, following the return of the verdict in the guilt phase of the trial.   Thereafter, Dr. Merikangas conducted an evaluation of the defendant generated a preliminary report, and further recommended certain neurological testing that was done prior to commencement of the penalty phase of the trial.   Dr. Merikangas, in fact, ordered an MRI,

PET, and EEG of the brain be accomplished. (ECF No. 511-2).    In the course of making Claim Six, the Petitioner alleges - without citation or authority- that neurological tests were ordered by Dr. Merikangas, yet, inexplicably, rerouted and withheld from his consideration by trial counsel.

In his 2009 preliminary report Dr. Merikangas noted a history of multiple head injuries, childhood beatings, and current headaches.  Dr. Merikangas further indicated that psychiatric evaluations suggested that, at the time of the crime, the Petitioner was suffering from the side effects and/or withdrawal from experimental drugs administered as a control source in drug trials for pay.  There was no reference or discussion as to which drugs were responsible for this purported condition.

Although the Petitioner has asserted a claim that his trial defense counsel redirected the reports of the MRI and PET scans and failed to provide them to the mental health experts, there is little evidence to support this assertion.   Dr. Merikangas did not provide a final report, nor did he testify at Petitioner's penalty phase proceeding in 2009, and no communications between the trial team members provides insight into this decision.   The United States has not been provided with any billing for Dr. Merikangas that would show his specific dates of service in 2009.

Dr. Merikangas continued to participate in the Petitioner's defense following his conviction and sentence.   In 2015, Dr. Merikangas was asked by habeas counsel to conduct a further clinical evaluation. He viewed the aforementioned neurological testing, and rendered a new report, a document that formed a material basis for the Court of Appeal's decision to remand this issue for an evidentiary hearing. In his 2015 report, Dr. Merikangas abandoned this earlier drug-based diagnosis. In this report, Dr. Merikangas did not discuss or claim that he did not receive the scans and radiology reports prior to trial. (ECF No. 511-2).   Rather, he summarized his earlier work and then noted that, he "reviewed the MRI and PET scans of August 2009. They revealed multiple

4

white matter hyperintensities on the MRI consistent with his history of head injures [sic] and migraine.   The PET scan was non-diagnostic." (ECF No. 511-2).   He reported the following impressions: Petitioner suffered brain damage from age 3, including a 1996 motor vehicle accident and a jail assault (presumably in 2009) that resulted in impaired executive functioning and decision making.   He contended that psychiatric tests suggested paranoid delusions.   He found continued evidence of PTSD, as previously diagnosed, which he claimed accounted for some of his disordered mood and cognition.   He concluded that these symptoms may be the consequence of brain injuries, a functional mood disorder, and PTSD.   Dr. Merikangas concluded that he would have testified at trial that Petitioner suffered from brain damage, disorder of executive functioning, combined with a psychotic thought process.   (ECF No. 511-2, p. 1 and 4).

At the time of trial in 2009, the government also utilized the assistance of two mental health experts, Dr. Paul Montalbano, a forensic psychologist, and Dr. James Patterson, a forensic psychiatrist. Both experts conducted evaluations of the Petitioner prior to trial, and generated reports, which were in turn disclosed to his trial counsel. Of note, Dr. Montalbano found deficiencies in personality functioning, and opined that the Petitioner met criteria for a nonspecific personality disorder.   Dr. Patterson likewise diagnosed a not otherwise specified personality disorder with narcissistic tendencies. Both doctors considered the Petitioner's anecdotes of childhood brain injuries, motor vehicle and training incidents, and accepted as true that he suffered some potential trauma, but observed that his testing and social history did not represent "serious or severe impairments suggestive of significant brain damage or dysfunction" or "serious psychopathology or brain pathology." (ECF No. 276, at 24). In August 2009, the defense team reviewed those reports and, in e-mail correspondence, passed on views that noted that both government experts "were soft on the guy" and there wasn't need for a big attack to be mounted,

turning focus to a defense presentation.

In a set of amended pre-hearing disclosures filed on December 6, 2022, the Petitioner noted that witnesses would testify live or via video conference. (ECF No. 713). The Court entered an order on December 12, 2022, that detailed that the Petitioner would be required to obtain permission for any such testimony via video conference, pursuant to Rule 43(a), which indicates that a court may permit such testimony if compelling circumstances are present and appropriate safeguards in place. (ECF 717).

On January 23, 2023, over a month after the Court issued the aforementioned order and two weeks prior to the February 7, 2023, evidentiary hearing, the Petitioner filed the instant motion, requesting Dr. James Merikangas be authorized for video testimony. The Petitioner requests that, due to COVID related health concerns, Dr. Merikangas be allowed to testify via video conference means, pursuant to Rule 43(a) of the Federal Rules of Civil Procedure. Alternatively, the Petitioner seeks admission of Dr. Merikangas' 2009 and 2015 reports, without the necessity of his testimony.

## ARGUMENT

### I.    THE COURT SHOULD LIMIT EXPERT WITNESSES TO THOSE WHO ARE AVAILABLE FOR ADEQUATE CONFRONTATION

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), the Supreme Court indicated a defendant must establish that counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms. In deciding whether or not counsel was ineffective, this Court is required to "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct." *Id.,* 466 U.S. at 690. "The prejudice inquiry would require us to 'consider the totality of the available mitigation evidence – both that adduced at trial, and the evidence adduced in the habeas proceeding - and reweigh it against the evidence in aggravation.'" *United States v.*

*Runyon*, 994 F.3d 192, 209 (4th Cir. 2021)(citing *Porter v. McCollum,* 558 U.S. 30, 41 (2009)(internal quotations omitted).   "That inquiry, however, cannot be undertaken until we know the evidence 'adduced in the habeas proceeding.'" *Id.*   At the current posture, this matter is set for an evidentiary hearing where the Petitioner will bear the burden to advance his claim.   That burden cannot be satisfied by a last-minute effort to dispense with live testimony on an important witness.

The Petitioner claims that Dr. Merikangas cannot travel due to his advance age and the threat posed by COVID.   In support of this contention, the Petitioner provides a three-line letter from a Dr. Kristin Thomas who notes that "[d]ue to health concerns, it would not be advisable for Mr. Merikangas to travel at this time."   (ECF No. 734-1).   There is no further description as to what the health concerns are or how they could be accommodated.   No health conditions of Dr. Merikangas that would limit his travel are discussed.   No mention is made of any concerns related to COVID-19.

Federal Rule of Civil Procedure 43(a) provides that a witness' testimony must be taken in open court, unless a federal statute, the Federal Rules of Evidence., the Federal Rules of Civil Procedure, or other rules adopted by the Supreme Court provide otherwise.   Fed. R. Civ. P. 43(a). Only for "good cause in compelling circumstances and with appropriate safeguards" may a court permit testimony by video conference as requested by the Petitioner.   *Id.*   The 1937 Advisory Committee Notes that this rule abolishes the practice of setting forth expert opinions by affidavit. The Notes to the 1996 Amendment, in describing the good cause in compelling circumstances, indicate that "[t]he importance of presenting live testimony in court cannot be forgotten.   The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition.   Transmission cannot be justified merely by showing that it is inconvenient for the

witness to attend the trial." *Id.* at 1996 Am. Notes.   The 1996 Amendment Notes further indicate: (1) the preference for deposition over remote transmission so that all parties can be present; and (2) that a party who could reasonably foresee the circumstances offered will have "special difficulty in showing good cause and the compelling nature of the circumstances." *Id.*

Dr. Merikangas was a pretrial expert consultant for the defense team. He remained in communication with trial counsel through and beyond Petitioner's guilt phase verdict; he ordered neurological testing after his initial evaluation and continued to consult in this case post-conviction. However, the specific nature of Dr. Merikangas' role and interactions with trial counsel remain unclear. It seems that his clinical evaluations were not recorded, and any notes regarding the Petitioner's demeanor and affect were not disclosed. Likewise, any raw data and the 2009 MRI imaging were disclosed directly to the experts and have not been reviewed by government counsel.

A robust cross-examination conducted through live testimony is essential to discerning the facts and circumstances underlying Petitioner's claim.   The government's ability to question Dr. Merikangas on his knowledge of the case, his memory of events, his apparent differing diagnoses from 2009 to 2015 and his interactions with trial counsel is paramount to discerning the truths underlying Petitioner's claim. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions." *Cullen v. Pinholster,* 563 U.S. 170, 195 (2011).   Dr. Merikangas will be asked to recall minute facts, conversations and communications from 2009.   It is important for the United States to be able to engage with Dr. Merikangas directly and for the Court to observe his demeanor and recall. Video testimony would impede counsel's ability to review pertinent documents with Dr. Merikangas and refresh his recollection as well as the Court's ability to make necessary credibility determinations on a witness on whom the Petitioner heavily relies upon in

8

support of his existing claim.

The United States submits that the Petitioner has failed to establish good cause and compelling circumstances in this case. "[W]atching an event on the screen remains less than the complete equivalent of actually attending it." *United States v. Lawrence,* 248 F.3d 300,0304 (4th Cir. 2001). In the instant remand, the Court of Appeals relied heavily on Dr. Merikangas' unexamined 2015 report, while specifically noting "*the record remains unclear*" and remanded for an evidentiary hearing "[g]iven that the relevant evidence is murky." *United States v. Runyon,* 994 F.3d 193, 208 (4th Cir. 2021). Dr. Merikangas certainly appears to be an essential and material witness from the Petitioner's perspective to the limited question before the Court. He was retained as an expert consultant, prior to the Petitioner's penalty phase proceeding. He conducted the clinical evaluations and rendered a preliminary report. He ordered the much-discussed 2009 neurological testing. He returned to the case in 2015, revisiting his clinical exams and issuing the primary opinion that resulted in the rehearing. It is essential that the evidence be tested and subjected to the adversarial process. With years of documentation, intermittent emails between counsel and prior trial counsel, and the natural degradation of memory through time and age, video testimony is simply not an adequate substitute. While the natural fear of COVID remains pervasive, this Court has ordered returned to normal operations with modifiable safety precautions in place. In that light, the speculation of risks is not compelling considering the need for enhanced procedural safeguards in a capital proceeding.

The Petitioner's request for accommodation for health reasons is decidedly non-specific. Although Dr. Merikangas's advanced age is certainly a fair consideration, there is nothing further to indicate how he remains at high risk and cannot travel to attend a hearing. Dr. Kristin Thomas, his internist, provided a brief note stating simply that "[d]ue to health concerns, it would not be

advisable for Mr. Merikangas to travel at this time." (ECF No. 734-1).   However, Dr. Thomas does not address the nature of the travel that would be required, nor does she address the Court's safety protocols that remain in place in the courtroom or the adequacy of those protections.

Dr. Merikangas hails from the Washington, D.C., area; thus, this travel is not overly burdensome.   There is no claim that Dr. Merikangas has not been able to travel in the recent past. It appears that Dr. Merikangas is still a licensed and practicing physician on the faculty of the George Washington University School of Medicine and Health Sciences.   *See* *https://apps.smhs.gwu.edu/smhs/facultydirectory/profile.cfm?empName=James%20Merikangas&FacID=2043243508* (visited January 28, 2023).   From the testimony list recently provided to the United States, Dr. Merikangas has remained active in providing deposition and hearing testimony several times throughout 2021 and 2022.   Though many of these locations are noted as "video," it may be that the parties agreed to this practice.   But in a matter such as this, where the evidentiary hearing is meant to develop the record, the United States cannot agree that this expert should not be present to provide testimony.   Precautions can be taken, such as masking, if requested.   Contrary to the claims of the Petitioner, the city of Norfolk is currently at low risk for COVID-19.   *See* https://www.cdc.gov/coronavirus/2019-ncov/your-health/covid-by-county.html (visited January 28, 2023).

Finally, the Petitioner's request for videotaped testimony certainly comes late in the proceedings.   This matter has been pending for some time and was certainly reasonably foreseeable to the Petitioner.   If there were a need to avoid live testimony, the Petitioner could have sought a deposition to preserve Dr. Merikangas' testimony that would have permitted for direct confrontation with exhibits and counsel.   Raising this matter two weeks prior to the hearing, and one month after the Court's order demonstrates that compelling circumstances do not exist.

10

## II.   THE COURT SHOULD NOT PERMIT THE INTRODUCTION OF THE REPORTS WITHOUT THE TESTIMONY OF DR. MERIKANGAS

As to Petitioner's request for an alternative remedy, expansion of the record, the government objects to the manner in which the Petitioner seeks the admission of reports without a sponsoring witness.   Though the Court of Appeals considered the reports of Dr. Merikangas, it also determined that the record was not clear and that a remand was warranted.   Neither report was considered at trial.   The United States has not had the opportunity as to inquire as to the details of either report.   In a situation where the Petitioner claims his counsel erred in not proceeding with a mental health defense and that such error prejudiced him, the record should be clear as to both instances – which requires the testimony of Dr. Merikangas/

Section 2255 Proceedings are a "further step in the movant's criminal case and not a separate civil action." (Rules Governing § 2255 Proceedings, Advisory Committee Notes, Rule 1). Federal Rule of Criminal Procedure, Rule 26.2(a) applies at an evidentiary hearing ordered under these rules. (Rule 8(d)).   "If a party does not comply with a Rule 26.2(a) order to produce a witness's statement, the court must not consider that witness's testimony." *Id*. Once ordered, the court may direct the parties to expand the record by submitting additional materials related to the motion.   "The judge may require that these materials be authenticated." (Rule 7(a)).   That practice should be followed in this hearing absent stipulation / agreement by the parties and the Court.

The United States recognizes that the evidentiary standards are relaxed for purposes of this hearing, as they would be at a penalty phase proceeding.   Additionally, the general discussion of confrontation rights is inapplicable for defense witnesses.   However, the Court should consider the intent and purpose of the rules and the hearing is to provide the tribunal with the best measures to assess the witness' credibility, and "adequately ensure[] that the testimony is both reliable and

subject to rigorous adversarial testing." *See, e.g., Maryland v. Craig*, 497 U.S. 836, 851 (1990). Particularly in a capital case, specialized procedural protections are necessary to ensure fairness, as well as completeness of the record. The Federal Death Penalty act affords stricter protection than the Federal Rules of Evidence. 18 U.S.C. § 3593(c).

While the 2009 report *may* be offered for its consideration by former trial counsel (which would not result in any concession over hearsay or credibility issues), certainly the 2015 report was never viewed by trial counsel. Both reports should be subject to adversarial examination if considered for their truth. This Court certainly has the discretion to accept evidence and may require these materials be authenticated. (Rules Governing § 2255 Proceedings, Rule 1). These reports are not sworn and bear no independent indicia of reliability. Dr. Merikangas clearly relied upon hearsay and other secondary sources, to include undocumented interviews and statements of the Petitioner himself. The United States has not yet been able to challenge the information and/or verify its correctness. (Rule 1(c)). Moreover, the United States has not been able to challenge Dr. Merikangas as to the manner of preparation or any bias issues. Allowing these reports to be introduced in this manner would merely diminish the importance of the evidentiary hearing.

## CONCLUSION

The Court of Appeals remanded this matter for an evidentiary hearing to achieve a clearer record. That requires an examination of the steps taken by trial counsel, their decisions and possible effect of those decisions. But the proposal offered by the Petitioner does not achieve this end because it does not permit for the necessary confrontation, adversarial testing and Court review of the witness or examination of his reports. For the foregoing reasons, the United States respectfully urges this Court to deny the Petitioner's motion for Dr. Merikangas to testify by video conference. In any case, the United States further objects to the admission of these reports for

12

the purposes sought by the Petitioner without a sponsoring witness.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:   /s/_____
      Brian J. Samuels
      Lisa R. McKeel
      Assistant United States Attorneys
      Carrie L. Ward, Trial Attorney,
      Department of Justice
      Attorneys for the United States
      United States Attorney's Office
      Fountain Plaza Three, Suite 300
      721 Lakefront Commons
      Newport News, Virginia 23606
      Phone: (757) 591-4000
      Fax: (757) 591-0866
      Email: Brian.Samuels@usdoj.gov
      Email: Lisa.McKeel@usdoj.gov
      Email: Carrie.Ward@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of January 2023, I electronically filed a true

copy of the foregoing with the Clerk of Court using the CM/ECF system who will send notice to

all filers.


By:    /s/ _____

Lisa R. McKeel
Assistant United States Attorney
Virginia Bar Number: 23652
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Lisa.McKeel@usdoj.gov