IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| DAVID ANTHONY RUNYON, | ) | |
| Petitioner, | ) | No. 4:15-cv-108 |
| | ) | Original Criminal No. 4:08-cr-16-3 |
| v. | ) | |
| | ) | **CAPITAL §2255 PROCEEDINGS** |
| UNITED STATES OF AMERICA, | ) | HON. REBECCA BEACH SMITH |
| Respondent. | ) | |

**RESPONSE OF THE UNITED STATES TO PETITIONER'S MOTION TO EXCLUDE
TESTIMONY OR EVIDENCE THAT VIOLATES PETITIONER'S PROTECTIONS
UNDER THE ATTORNEY-CLIENT PRIVILEGE, THE RULES OF
CONVIDENTIALITY, AND THE DUTY OF LOYALTY (ECF NOS. 731, 732)**

The United States of America, by and through its attorneys of record, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Lisa R. McKeel and Brian J. Samuels, Assistant United States Attorneys, and Carrie Ward, Trial Attorney, United States Department of Justice, respectfully submits its response to the Petitioner's Motion to Exclude Testimony or Evidence that Violates Petitioner's Protections Under the Attorney-Client Privilege, the Rule of Confidentiality, and the Duty of Loyalty, filed on January 23, 2023 (hereinafter "the motion"). (ECF Nos. 731, 732). For the reasons to follow, the United States respectfully requests that the Court deny this motion.

**BACKGROUND**

The background and procedural history of this matter is of course well known to the Court and has been reviewed in recent pleadings filed by the United States and the Petitioner. The United States provides a brief summary herein as relevant to the motion. On October 5, 2015, pursuant to 28 U.S.C. § 2255, petitioner David Anthony Runyon (hereinafter "the defendant" or "the Petioner") filed a motion to vacate, set aside, or correct his sentence ("the Section 2255 motion").

1

Thereafter, the Court ordered the government to respond. (ECF No. 479). Attached as an exhibit to the Section 2255 motion were declarations from defendant's two trial counsel, Lawrence H. Woodward, Jr., and Stephen A Hudgins, who is now a General District Court Judge in York-Poquoson, Virginia. (ECF Nos. 478-5, 478-6). The declaration of Mr. Woodward Woodward indicated that he had discussed the case with current habeas counsel for the Petitioner on September 10, 2015, and that he would be willing to make a further declaration once informed as to the claims being asserted. Mr. Woodward requested to know, but was not advised, as to the claims being made by habeas counsel in the Section 2255 motion. (ECF No. 478-6).

The United States filed its response to the Section 2255 motion on January 11, 2016. (ECF 497). On February 4, 2016, the Petitioner filed an amended Section 2255 motion, adding little to his original motion and containing, as exhibits, the previously-filed declarations from former trial counsel. (ECF No. 511). On March 28, 2016, the Petitioner filed a reply to the United States' original response. (ECF No. 526).

The United States responded to the Petitioner's amended Section 2255 motion on April 22, 2016. (ECF No. 536). On July 7, 2016, the defendant filed his reply to the United States' amended response. (ECF No. 551). This reply included a second declaration from Judge Hudgins as well as entries from Judge Hudgins' calendar in 2009. (ECF Nos. 551-1, 551-4). The second declaration, dated June 22, 2016, contained additional information beyond the first declaration from September 2015. The second declaration contained opinion and comments related to information provided by habeas counsel to Judge Hudgins. As this second declaration was included in the Petitioner's reply brief, the United States did not have the opportunity to investigate the substance of this declaration, how it was prepared or to discuss such declaration in its pleadings

2

before this Court.

On January 19, 2017, the Court filed its opinion denying the Petitioner's Section 2255 motion.  (ECF No. 560). The Court also denied a certificate of appealability.  The Petitioner appealed and the Court of Appeals issued a limited certificate of appealability on four issues, including Claim Six related to the alleged failure to investigate and/or introduce mental health evidence in the selection phase of the trial.  (ECF No. 607).

On February 12, 2021, the Court of Appeals issued an order partially reversing and remanding this case for an evidentiary hearing to determine, pursuant to the Petitioner's Claim Six, whether his counsel was constitutionally ineffective in failing to investigate and present mitigating evidence of brain injury and potential mental illness. *United States v. Runyon*, 994 F.3d 192 (Feb. 12, 2021); (ECF No. 622).  The hearing is set to commence on February 7, 2023, and will focus on whether former trial attorneys Woodward and Hudgins were ineffective and whether prejudice accrued to the defendant as a result of any error.

On November 30, 2021, the Court entered a protective order agreed to by the parties that expressly determined that the petitioner had waived the attorney-client privilege related to the ineffective assistance of counsel claim discussed in the Court of Appeals opinion and as described in Claim Six.  The order provided protections for the information disclosed to the United States and limited for use in the Section 2255 evidentiary hearing.  (ECF No. 652).  Thereafter, counsel for the Petitioner did disclose certain emails and other communications from former trial counsel related to the representation of the petitioner.

On January 24, 2022, the United States moved for an order directing former trial counsel to respond to the Section 2255 allegations.  (ECF No. 658).  The petitioner responded, noting

various objections and requesting various restrictions.  (ECF No. 660).  On March 8, 2022, the Court entered an order permitting former trial counsel to respond to the Section 2255 claims without the requested restrictions.  (ECF No. 666).  The United States thereafter engaged in interviews with both former trial counsel.  Counsel for the United States had a special agent from the Bureau of Alcohol, Firearms and Explosives (BATFE) present who prepared reports of the interviews that were shared with counsel for the Petitioner on June 15, 2022.  In the course of sharing these memoranda, counsel for the United States requested any materials from former trial counsel Jon Babineau and Dr. Evan Nelson related to Claim Six, including notes and billing records.  To date, no interview notes or billing records have been provided from habeas counsel.

In a memorandum order entered on July 28, 2022, the Court provided its reasoning for permitting the United States to interview trial counsel without the petitioner's requested restrictions.  (ECF No. 685, at 6-10).  The Court noted that the restrictions requested by the petitioner were not necessary "to preserve Petitioner's rights or develop the record in this matter." *Id.* at 8.  The Court based its reasoning on the following: (1) the Petitioner's trial counsel, both experienced practitioners, were and are bound by Virginia Rules of Professional Conduct and capable of tailoring their responses to the United States accordingly; (2) the Petitioner waived the protection over attorney-client privilege over information relevant to the claim that his trial counsel failed to adequately investigate and present mental health mitigation evidence; and (3) the United States could not prepare for the evidentiary hearing without first exploring information relevant to Claim Six with trial counsel.  *Id.* at 6 – 10.

The United States understands that counsel for the Petitioner have also engaged in interviews of trial counsel.  No reports of such interviews have been provided to the United States.

In responding to this motion, the United States respectfully requests any statements within the scope of Rule 8(d) of the Rules Governing Section 2255 Proceedings for the United States District Court.

## ARGUMENT

On January 23, 2023, over six months after the United States provided the interview reports and just two weeks prior to the February 7th hearing, counsel for the petitioner filed the motion. Despite its own protective order, the motion outlines a litany of quotes and evidence elicited in the interviews with trial counsel, to include their own discussions with the Petitioner, other witnesses, and their internal strategy discussions as trial counsel assessed the state of the investigation, prior to trial and again prior to the penalty phase proceeding. The Petitioner requests that the Court exclude any testimony from trial counsel that exceeds the scope of the limited waiver of attorney-client privilege, which, the Petitioner claims— without citation to any authority— includes only the performance prong of the *Strickland* inquiry.

The United States has never disputed that trial counsel had a duty, independent of the Petitioner's own wishes, to conduct a reasonably diligent investigation into avenues of potential mitigation. However, that is not the issue at bar. Counsel did conduct a penalty phase investigation, utilizing the assistance of a mitigation specialist, an assigned investigator, at least four mental health experts, and capital resource counsel. As noted in the government's interview with trial counsel, had they found *any evidence* that would support a reasonable mental health defense, they would have brought that to their client's attention. They did preemptively engage in discussions with resource counsel about how to handle that possibility, with a client adverse to their advice.

5

The Petitioner also suggests that a possible impairment may have prevented him from exercising proper judgment. First, the issue is whether counsel investigated *and presented* a satisfactory case in mitigation, language from their own claim that is notably absent from this motion. The plain language of the claim necessarily includes an assessment of trial counsel's strategy, and this Court will determine whether that strategy was reasonable in light of the information that was known, or should have been known, to counsel at the time of trial. Certainly, the views of a client may and must be considered by counsel. Second, there is no surviving claim that the Petitioner was not competent and able to assist in his defense, a constitutional right that extends to the object of his penalty phase strategy. *See, e.g., United States v. Davis,* 285 F.3d 378, 384-85 (5th Cir. 2002)(concluding that a defendant's penalty phase strategy, "attack[ing] the strength of the government's case as to his guilt" was in direct conflict with his counsel's aim to present traditional mitigation evidence.).

At the evidentiary hearing, trial counsel can and will testify as to their roles, their investigations, and what drove their penalty phase strategy, particularly after the jury found the Petitioner guilty of a premeditated murder-for-hire, motivated by pecuniary gain. Trial counsel is best suited to provide these facts and evidence to the Court, outlining exactly what was done in the course of their investigation, how that information informed their risk assessments in determining what evidence to present to the jury, how that was determined through consultations with their client, and ultimately, how these circumstances informed their chosen strategy. The only other source of this information is the Petitioner himself— who notably has put his communications at issue by discussing the matter with his counsel, Ms. Cronin, as well as a litany of mental health professionals in the course of his post-conviction investigations.

6

Counsel further claims that the Petitioner's opinion of his own mental health and his desire to plead not guilty (and his denials of committing the crime) are not relevant. But such denials would have come out in the course of any mental health evidence that sought to explain why the defendant did what he did, since his experts relied upon the Petitioner's own assertions about the nature of the case, his relationship with the codefendants, in reaching their findings. The risk of putting those experts on the stand, then allowing them to be cross-examined as to the basis of their findings, would render them entirely uncredible before his jury.

Indeed, the Petitioner continues to repeat his conspiracy theories and loose assertions of innocence to his current experts, to include those that examined him in 2015 and Dr. Nadkarni, who evaluated him in 2022. His repeated denials, after a jury found him to be a "cold blooded killer" according to his own expert, Dr. Evan Nelson, would certainly inform trial counsels' strategic assessments of a mental health defense, facts that well apply to the prejudice aspect of the *Strickland* claim, as the Court now weighs all known evidence in aggravation against the "new" evidence impacting mental health. "It is the defendant's prerogative, not counsel's, to decide on the object of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence." *McCoy v. Louisiana,* 138 S.Ct. 1500, 1505 (2018).

The Petitioner also objects to the opinion of his mother being expressed by counsel. However, those statements directly evidence the scope of counsels' investigation: how it impacted their risk assessment of using potentially antagonistic witnesses — either to corroborate his anecdotal claims of childhood dysfunction and trauma, or as social character witnesses— and how that information was conveyed and discussed with the client. "Counsel, in any case, must still develop a trial strategy and discuss it with [the] client." *Id.,* at 1509. Much like *McCoy*, the

Petitioner was competent,  engaged with his counsel, and participated in his own defense. As was his constitutional right, the Petitioner was adamant in his refusals to admit any modicum of guilt, he would not allow his family to be "dishonored" by discussing their dysfunction, and often said he would prefer a death sentence to life in prison— a scenario specifically protected in *McCoy*, finding a constitutional right of a capital defendant to elect the object of his own defense.[1]

"[A] petitioner who claims ineffective assistance of counsel in a habeas petition waives the protection of attorney-client privilege over information that is relevant to those claims." *LaBorde v. Virginia*, No. 1:10cv493, 2011 WL 2358510, at *2 (E.D.Va. June 9, 2011); *see Courtade v. United States*, 243 F. Supp. 3d 699, 702 (E.D. Va. 2017); *see also United States v. Nicholson,* 611 F.3d 191, 217 (4th Cir. 2010); *United States v. Pinson*, 584 F.3d 972, 977-78 (10th Cir. 2009) ("When a habeas petitioner claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications."); *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003); *Johnson v. Alabama*, 256 F.3d 1156, 1179 (11th Cir. 2001) ("[T]here should be no confusion that a habeas petitioner alleging that his counsel made unreasonable strategic decisions waives any claim of privilege over the contents of communications with counsel relevant to assessing the reasonableness of those decisions in the circumstances."); *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967) ("[W]here, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue.").

---

[1]Although *McCoy* focuses heavily on the rights of a capital defendant in the guilt/innocence phase of trial, the Court found error when counsel again conceded guilt during the penalty phase of his trial when urging mercy in view of the client's mental and emotional issues. *McCoy v. Louisiana,* 138 S.Ct. at 1503.

For petitioners bringing ineffective assistance claims in federal court, "the attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). The United States understands that the waiver of any privilege is not limitless and relates to the communications that are subject of the particular claim of ineffective assistance and to the Section 2255 proceeding. *See Courtrade*, 243 F. Supp. 3d at 702; Fed. R. Evd. 502(a). The inquiry made by the United States will focus on a response to Claim Six of the Section 2255 motion, where the Petitioner has challenged his counsel's conduct. The decision as to what is relevant and necessary to resolve these questions is for the Court, but the answers assuredly cannot be discerned in the limited vacuum the Petitioner has proposed. Trial counsel must be able to testify as to the scope of their investigation, their communications with their client, and how that information informed their strategy. That information, holistically, defines whether the investigation was in fact conducted with a reasonable standard of care.

Moreover, the Court has already imposed sufficient limits on trial counsels' cooperation. (ECF No. 685). The Local Rules of this Court establish that, with limited exception, the Virginia Rules of Professional Conduct ("VRPC") govern the "ethical standards relating to the practice of law" in cases before this court. E.D. Va. Crim. R. 57.4(1); E.D. Va. Civ. R. 83.1(1). VRPC 1.6(a) prohibits the disclosure of information protected by the attorney-client privilege except in limited circumstances. VRPC 1.6(b) permits an attorney to disclose privileged information "[t]o the extent [the] lawyer reasonably believes necessary ... to comply with ... a court order" or "to respond to allegations in any proceeding concerning the lawyer's representation of the client." Id. 1.6(b) (1)–(2).

9

Former trial counsel are skilled and experienced lawyers and certainly well familiar with their responsibilities under the Virginia Rules of Professional Conduct. It is not the job of habeas counsel to stand in for former trial counsel in this regard. Moreover, the Agreed Protective Order entered by the Court on November 30, 2021 (ECF No. 652) certainly provides protection to the defendant for any disclosures by former trial counsel. Such order even contemplates interviews with witnesses. *Id.*

Of course, the Petitioner, in his original and amended Section 2255 motions, raised a host of claims about his trial counsel's performance and submitted declarations from former trial counsel. Certainly, there can be no privilege still attaching to those subjects about which current habeas counsel have questioned former trial counsel that are included in such filed declarations, to the extent those issues colored their penalty phase investigation and strategy. But the Petitioner appears to view the waiver of privilege as very limited indeed, such that any inquiry beyond the alleged failure to investigate adequately and introduce his alleged brain injury and mental illness exceeds the scope of the waiver of attorney-client privilege. Such an approach would eviscerate the adversarial nature of this process, if trial counsel cannot be questioned regarding the facts and circumstances at the time of trial, and also those facts and circumstances surrounding their late-stage declarations. The Court is entitled to learn whether trial counsel were prepared for their interviews, whether their recollections were refreshed with any documentation from their working files, whether they were informed of the nature of the claim, or if they did they take part in drafting their declarations, possibly ignoring relevant evidence by deliberate omission.

The problem with the Petitioner's narrow approach is that it does not contemplate that former trial counsel may have made a strategic decision to forego the limited mental health

10

information then available, in order to pursue a mitigation presentation that was focused on different aspects of the defendant's character, record and/or circumstances of the offense. *See e.g., Meyer v. Branker*, 506 F.3d 358, 372 (4th Cir. 2007) ("There are many strategically valid reasons why defense counsel . . . may decide not to offer mental health mitigation testimony: it may not be persuasive; it may appear to be a 'flight into theory' without proper grounding in the facts of the case . . . .") For example, what if, as appears likely from certain other materials reviewed in the disclosures received to date, a mitigation strategy based on mental health was abandoned as a conflict to the guilt phase strategy and/or other penalty phase strategies. The United States should be permitted to make such an inquiry, through trial counsel and other relevant witnesses. There are necessarily two prongs to establishing ineffective assistance of counsel, performance and prejudice, and both are subject to investigation and challenge in the adversarial process. "[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." *Strickland v. Washington,* 466 U.S. 668, 61 (1984).

The Petitioner has made his former counsels' decision points relevant to his claim, and questions regarding performance and strategy are well within the purview of Claim Six. But the remedy for an unlikely over-disclosure is not walling the United States from an effective investigation, it is the Court's protective order that prevents improper use of material that may, in fairness, rest in privilege. The Agreed Protective Order certainly provides all the protection needed in terms of the use of any information from such interviews. The United States should be permitted to make inquiry of former trial counsel in preparation for such hearing and after receiving certain

discovery from current habeas counsel. *See Lonchar v. Thomas*, 517 US 314, 326 (1996) (district courts retain substantial discretion in the conduct of 2255 cases).

Simply put, the Petitioner's proposed limitations serve only to undercut the Fourth Circuit's remand for an evidentiary hearing. The record on whether his trial counsel were ineffective was "murky" and the facts unclear. That premise demands that the evidence submitted in support of his claim be robustly challenged through the adversarial process. The Petitioner offers no citation or authority to counter this proposition and certainly provides this Court no basis to assume that *Strickland's* prejudice prong is exempt from the rule. The role of a trial defense attorney is challenging, subjective, and ever evolving as a strategy adapts to the jury, the investigation, and the evidence that will be presented in rebuttal. The Court must assess that performance "considering all the circumstances." *Strickland*, 466 U.S. at 689. The Court cannot determine whether an arguably deficient performance was prejudicial, without that full context. This Court, as in any hearing, will thus take relevant evidence. Counsel will argue its impact and import, and the Court will be empowered to make an informed decision as to whether counsel were in fact effective in their representation.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Petitioner's motion to exclude or otherwise limit trial counsels' testimony.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY


By:                 /s/
    Lisa R. McKeel
    Assistant United States Attorney
    Brian J. Samuels
    Assistant United States Attorney
    Carrie Ward, Trial Attorney, Department of Justice
    Attorney for the United States
    United States Attorney's Office
    Fountain Plaza Three, Suite 300
    721 Lakefront Commons
    Newport News, VA 23606
    Ph:  (757) 591-4000
    Fax: (757) 591-0866
    Email: Lisa.McKeel@usdoj.gov

13

CERTIFICATE OF SERVICE

I certify that on January 30, 2023, I electronically filed a copy of the foregoing with the

Clerk of the Court using the CM/ECF system who will send notice to all filers.


By:        /s/
Brian J. Samuels
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: 757-591-4000
Fax: 757-591-0866
Email: Brian.Samuels@usdoj.gov

14