IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | | |
|---|---|---|
| DAVID ANTHONY RUNYON, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Criminal Action No.: 4:08cr16 |
| | ) | Civil Action No.: 4:15cv108 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **CAPITAL § 2255 PROCEEDINGS** |
| Respondent. | ) | |
| | ) | HON. REBECCA BEACH SMITH |

**RESPONSE OF THE UNITED STATES TO PETITIONER'S MOTION TO EXCLUDE
EVIDENCE UNRELATED TO THE *STRICKLAND* INQUIRY (ECF NOS. 729, 730)**

COMES NOW the United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Brian J. Samuels and Lisa R. McKeel, Assistant United States Attorneys, and Carrie L. Ward, Trial Attorney for the Department of Justice, and submits its response to the Petitioner's Motion to Exclude Evidence Unrelated to the *Strickland* Inquiry ("the motion"). (ECF Nos. 729,730). For the reasons to follow, the United States respectfully submits that the motion should be denied. The United States is entitled to present evidence in rebuttal to the Petitioner's case. The evidence and testimony to be provided through government experts goes to the heart of the Petitioner's claim that he suffered prejudice due to a claimed failure to investigate and/or present mental health evidence at the penalty phase of his trial in 2009.

**PROCEDURAL HISTORY AND POSTURE OF THE CASE**

The Court is certainly familiar with the history and posture of this capital case. In August

1

2009, DAVID ANTHONY RUNYON (hereafter "the defendant" or "the Petitioner") was convicted and sentenced by a federal jury. The jury recommended a sentence of death for two of the three convictions of Conspiracy to Commit Murder for Hire, in violation of 18 U.S.C. § 1958(a), and Use of a Firearm Resulting in Death, in violation of 18 U.S.C. § 1924(c)(1), (j)(1).    The jury recommended a sentence of life for Carjacking Resulting in death, in violation of 18 U.S.C. § 2119. This Court imposed the sentences in December 2009.

The defendant appealed to the Court of Appeals, which affirmed both the convictions and the sentence. *United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021).    The Supreme Court denied a Writ of Certiorari. Thereafter, the Petitioner filed a motion pursuant to 28 USC § 2255 to vacate his sentence.    After extensive briefing by the parties, this Court denied his motion and also denied a certificate of appealability.    The Petitioner next appealed to the Court of Appeals, which granted a certificate of appealability on four issues to include Petitioner's Claim Six, which alleged that his trial counsel provided ineffective assistance by failing to investigate and present mitigating evidence of the Petitioner's brain injury and potential mental illness.   (ECF No. 511 and appendices, "Amended 2255").

In support of Claim Six, the Petitioner alleged that his counsel appeared in the case too late to effectively investigate and present mitigation; that counsel abandoned an incomplete mental health investigation and presented repetitive lay person testimony; and that a complete psycho-social history and its implications would have added weight to mitigating factors, reduced the weight of aggravating factors, and informed the jurors about Petitioner's lesser moral culpability.

On February 12, 2021, the Court of Appeals affirmed this Court's ruling on all but the limited issue of whether counsel was ineffective in the investigation and presentation of mitigation evidence, and thus vacated and remanded Claim Six to this Court to hold an evidentiary hearing to resolve this

limited question.   *United States v. Runyon,* 994 F.3d 192 (4th Cir. 2021).

The Court of Appeals observed that the record was unclear as to whether trial counsel made a strategic choice to forego using mental health information or that reasonable judgments supported limitations on any addition investigation.   Beyond the performance issue, the Court of Appeals noted that the record also precluded a determination that the Petitioner was prejudiced, which would require a court to consider and weigh the mitigation evidence – both that adduced at trial and that adduced in the habeas proceedings   - against the evidence in aggravation.

Although the scope of the evidentiary hearing is focused on trial counsel's alleged failures to investigate and present evidence in mitigation, specifically evidence of the Petitioner's purported mental defects, he has filed a motion to prohibit the United States from presenting any evidence in rebuttal, a prohibition which "may include, but is not limited to, the government's use of previously undeveloped or unavailable expert testimony to rebut the prejudice prong of the Petitioner's ineffective assistance of counsel claim." ) (ECF No. 730, at 1).

## BACKGROUND

Originally, the Petitioner was upon indictment represented by attorneys Jon Babineau and Lawrence H. Woodward, Jr.   As of late 2008, the defense team was assisted by Dr. Evan Nelson, a board-certified psychologist, Ms. Sheila Cronin, a mitigation specialist, and Mr. Glenn Ford, a defense investigator.   Mr. David Bruck assisted as resource counsel and Dr. Mark Cunningham, another mental health professional, had also been retained.   On February 5, 2009, Mr. Babineau acted upon Dr. Nelson's recommendation to obtain a neuropsychological evaluation and Dr. Bender was contacted and retained.   Dr. Bender reviewed records, met with Stephen A. Hudgins (after his appointment to the case) and submitted invoices for payment.   In February 2009, Mr. Babineau severed his relationship due to a conflict of interest and Mr. Hudgins was appointed as

3

counsel. This was approximately one-month from the then scheduled trial date of March 13, 2009. Mr. Hudgins obtained a continuance first to May 2009, and then to June 30, 2009. He also obtained a one-month continuance of the penalty phase, which commenced on August 19, 2009.

Prior to and subsequent to Mr. Hudgins' appointment, multiple witnesses with expertise in mental health were appointed to consult with the Petitioner's trial defense team:

**1. Dr. Evan Nelson.**

Despite the change in counsel, Dr. Nelson remained in contact with the trial defense team through the verdict, prepared a two-page letter that summarized his findings in February 2009 and suggested mitigation strategy, and continued to consult with trial counsel through and after the Petitioner's date of conviction. Counsel "did not believe his opinions were favorable to the defense" and trial counsel moved away from Dr. Nelson and his opinions, transitioning focus of the mitigation investigation to Dr. Allan Mirsky and Dr. James Merikangas. (Hudgins' declaration, ECF No. 511-5). However, into the summer of 2009, Dr. Nelson was still communicating with trial counsel. Mr. Hudgins informed Dr. Nelson of the guilty verdict on July 17, 2009, and obtained feedback in the course of additional communications that will be presented at the evidentiary hearing.

**2. Dr. Allan Mirsky**

Dr. Allan Mirsky (a neuropsychologist), was retained in or about June 2009. He conducted a pretrial neuropsychological evaluation of the Petitioner on June 26, 2009, and generated a preliminary report. His report indicated that the Petitioner had some superior to very superior cognitive skills. Dr. Mirsky found exceptions in (i) sustained attention (continuous performance tasks, especially visual) – indicative of dysfunction in a brainstem-cortical system

4

responsible for maintaining alertness; and (ii) attention and manual dexterity, consistent with some mild, diffuse brain damage.   Dr. Mirsky found that the test results and reported symptoms merited further intensive neurological investigation, triggering counsels' request to appoint Dr. Merikangas (approved shortly after the jury's guilty verdict was announced) (ECF No. 511-20).

In 2015, Dr. Mirsky conducted another clinical evaluation and found that the Petitioner's testing performance was generally consistent with the testing administered in 2009.   (ECF No. 511-35).   He again found symptoms consistent with a diagnosis of post-traumatic stress disorder ("PTSD") and found a likely comorbid diagnosis of brain damage and schizophrenia.   He indicated that the Petitioner's marked impulsiveness is a noted characteristic of frontal lobe injury, wherein an individual may not appreciate the consequences of his actions.   Noting that Petitioner reported a 2009 prison assault (while awaiting the instant trial) that resulted in a right head injury that left lingering tinnitus in his right ear, Dr. Mirsky concluded that the testing was consistent with significant damage to the right side of the brain, as well as a psychotic disorder.   He noted that it was possible that the injuries contributed to the development of a psychotic disorder. (ECF No. 511-35, at 6).   Dr. Mirsky did not reference or incorporate the August 2009 MRI or PET scans ordered by Dr. Merikangas in either of his reports.

### 3. Dr. James Merikangas

Dr. Merikangas was contacted and consulted in early June 2009, but was not appointed until after the guilty verdict in July.   In July 2009, Dr. Merikangas conducted a pretrial clinical examination of the Petitioner, and subsequently ordered an MRI, PET, and EEG of the brain be accomplished. (ECF No. 511-2).   The MRI and PET scans were ordered by Dr. Merikangas, with instructions to return findings to the ordering clinician.   Pending results of these tests, Dr. Merikangas generated a preliminary report, and his impressions noted a history of multiple head

injuries, childhood beatings, and current headaches.  Dr. Merikangas further indicated that psychiatric evaluations suggested that, at the time of the crime, the Petitioner was suffering from the side effects and/or withdrawal from experimental drugs administered as a control source in drug trials for pay.  Dr. Merikangas further contended that the Petitioner expressed grandiose wishful thinking or delusions and had clearly impaired executive functioning suggestive of frontal lobe brain impairment.  Despite the records of the many drug studies of which the Petitioner was involved having been provided to the Petitioner and his trial counsel in discovery, Dr. Merikangas noted no specific "experimental" drugs in his 2009 preliminary report.

Although Petitioner has asserted a claim that his trial defense counsel redirected the reports of the MRI and PET scans and failed to provide them to the mental health experts, there is little evidence to support this assertion.  Dr. Merikangas did not provide a final report, nor did he testify at Petitioner's penalty phase proceeding, and no disclosed communications between the trial team members provides insight into this decision.  Despite requests for production, the United States does not have billing information for Dr. Merikangas that would shed further light on the time period of his involvement in 2009.

In his 2015 report, Dr. Merikangas does not discuss or claim that he did not receive the scans and radiology reports prior to trial. (ECF No. 511-2).  Interestingly, he also makes no mention of the experimental drug theory that was at the heart of his 2009 preliminary report. Rather, he summarizes his earlier work and then notes that, he "reviewed the MRI and PET scans of August 2009. They revealed multiple white matter hyperintensities on the MRI consistent with his history of head injures [sic] and migraine.  The PET scan was non-diagnostic." (ECF No. 511-2).  He reported the Petitioner suffered brain damage from age 3, including a 1996 motor vehicle accident and a jail assault (presumably in 2009).  He claimed this resulted in impaired executive

6

functioning and decision making and that psychiatric tests suggested paranoid delusions.  He found continued evidence of PTSD, as previously diagnosed, which he contended could account for some disordered mood and cognition.   He noted that the symptoms could be the consequence of brain injuries, a functional mood disorder, and PTSD.   Dr. Merikangas contended he would have testified at trial that Petitioner suffered from brain damage, disorder of executive functioning, combined with a psychotic thought process.   (ECF No. 511-2, at 1 and 4).

    **4.**    **Drs. Montalbano and Patterson**

At the time of trial, the United States utilized the assistance of two mental health experts, Dr. Paul Montalbano, a forensic psychologist, and Dr. James Patterson, a forensic psychiatrist. Both experts conducted evaluations of the Petitioner, prior to trial, and generated reports, which were in turn disclosed to his trial defense counsel. Of note, Dr. Montalbano found deficiencies in personality functioning, and opined that the Petitioner met criteria for a nonspecific personality disorder.   Dr. Patterson likewise diagnosed a not otherwise specified personality disorder with narcissistic tendencies.   Both doctors considered the Petitioner's claimed anecdotes of childhood brain injuries, motor vehicle and training incidents, and accepted as true that he suffered some potential trauma, but noted that his testing and social history did not represent "serious or severe impairments suggestive of significant brain damage or dysfunction" or "serious psychopathology or brain pathology." (ECF No. 276, at 24).   In August 2009, the defense team reviewed those reports and circulated comments that both experts "were soft on the guy" and there wasn't need for a big attack to be mounted, turning focus away from mental health claims in the defense sentencing presentation.

    **5.**    **Additional Expert Witnesses**

In addition to the additional testing and evaluations done by Drs. Mirsky and Merikangas,

Petitioner also sought a 2022 clinical evaluation and expert opinion from Dr. Siddartha Nadkarni, a neuropsychiatrist. Dr. Nadkarni was identified, by name only, as a potential witness in Petitioner's Amended Witness List. His report and curriculum vitae were provided through counsel on January 3, 2023.[1]

On or about August 29, 2022, the government provided notice of intent to use Dr. Daniel Martell, a clinical psychologist and Dr. Geoffrey Aguirre, a neurologist. Habeas counsel provided Dr. Aguirre with the "background packet" and confirmed this mirrored the information provided to all known experts. Dr. Martell, having reviewed the same materials, stated that he generally agreed with Dr. Mirsky's report, noting that the Petitioner's reported history of brain trauma was largely anecdotal, and the 2009 brain scan indicating white matter hyperintensities would have been an objectively corroborating data point. This opinion was disclosed to habeas counsel, with an invitation to interview Dr. Martell.

On November 28, 2022, Dr. Martell confirmed the conversation with habeas counsel, and stated in follow-up that literature on neuroradiological and neuropsychological findings in blast injury cases does support findings of white matter hyperintensities on brain scans, and deficits similar to the Petitioner's on neuropsychological testing.[2] In fairness, the United States agreed to sever its consultation relationship with Dr. Martell, in order to facilitate open interviews and discussions with habeas counsel. Habeas counsel has indicated an intent to use Dr. Martell as an additional expert witness at the hearing, with disclosures forthcoming although not yet received.

---

[1] Dr. Nadkarni's 8-page curriculum vitae includes a list of publications, the most recent dated 2017. It does not identify any cases in which he has testified or publications authored.

[2] The United States expects that Dr. Martell will also acknowledge that he is neurologist or neuroradiologist. As such, while he frequently encounters brain imaging and radiology reports, the generation of his own reports of such imaging is not properly within his expertise.

On January 6, 2023, government counsel disclosed Dr. Aguirre's preliminary report, noting that the Petitioner's relevant January 3, 2023, disclosures would be reviewed and incorporated as appropriate. On January 20, 2023, Dr. Aguirre's final report and curriculum vitae, compliant with Rule 16 disclosures, was provided to habeas counsel.   In line with all known experts involved in this case, Dr. Aguirre accepted as true that the Petitioner likely suffered some episodes of mild brain trauma or potentially concussive events.   Dr. Aguirre's review and report focused heavily on the 2009 brain scan imaging and corresponding reports, as well as the information generated by the experts employed by both parties at trial, the Petitioner's 2015 evaluations and reports, and Dr. Nadkarni's 2022 report.   *See attached* Jan. 19, 2023, Report - Gov. Ex. 1.   Because trial counsel withdrew its notice of intent to present mental health evidence prior to the commencement of the penalty phase, Dr. Aguirre was the first government expert to consider and advise on the evidentiary value of the 2009 brain scans as a neurologist.

At this time, the United States intends to introduce the pretrial reports of Drs. Montalbano and Patterson (ECF Nos. 276, 277), and they have been identified as witnesses who may testify substantively as to their 2009 opinions.   However, Drs. Montalbano and Patterson's relevance is substantively that of fact witnesses: their opinions were disseminated to trial counsel and considered in the decision to forego a mental health strategy during the penalty phase proceeding. Those pretrial reports and anticipated testimony should likewise be considered as known evidence in aggravation, in this Court's assessment of potential prejudice.

Likewise, the government intends to introduce Dr. Aguirre's report, curriculum vitae, and testimony regarding the inconsistencies in the Petitioners' collective expert reports and opinions, as well as provide context and qualitative assessment of the evidence, to include the 2009 brain scan imaging and companion radiology report, as well as the 2015 testing, evaluations, and expert

reports. Although the government will seek to exclude the testimony and opinions proffered by Dr. Narkarni, Dr. Aguirre has reviewed those materials and will likewise testify in rebuttal thereto, if necessary.

## ARGUMENT

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court indicated a defendant must establish that counsel's representation as deficient because it fell below an objective standard of reasonableness under prevailing professional norms. In deciding whether or not counsel was ineffective, this Court is required to "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct." *Id.,* 466 U.S. at 690.

The Petitioner's motion to preclude any government evidence that would serve to rebut his own evidence adduced at the evidentiary hearing defies the mandate of the Court of Appeals. "The prejudice inquiry would require us to 'consider the totality of the available mitigation evidence – both that adduced at trial, and the evidence adduced in the habeas proceeding -  and reweigh it against the evidence in aggravation.'" *United States v. Runyon*, 994 F.3d 192, 209 (4th Cir. 2021)(citing *Porter v. McCollum,* 558 U.S. 30, 41 (2009)(internal quotations omitted). "That inquiry, however, cannot be undertaken until we know the evidence 'adduced in the habeas proceeding.'" *Id.* The issue was not remanded due to overwhelming evidence in support of Petitioner's claim. Rather, it was due to the inadequacy of the record, which necessarily should include that evidence known to trial counsel, as well as the potential evidence in aggravation, necessary to allow the Court to reach an informed determination whether there was error, and whether any such error was substantially prejudicial.

10

In a Section 2255 evidentiary hearing, the government has a right, on pain of possible forfeiture, to adduce evidence in rebuttal to the defendant's presentation. *See Smith v. Richert*, 35 F.3d 300, 305 (7th Cir. 1994) (citing *Boykins v. Wainwright*, 737 F.2d 1539, 1545-46 (11th Cir. 1984)). To the extent the upcoming hearing contemplates evidence that the parties could have introduced at the Petitioner's capital penalty trial, relevance remains a threshold concern. The Federal Rules of Evidence generally apply to evidentiary proceedings pursuant to 28 U.S.C. §2255. *United States v. Francischine,* 512 F.2d 827, 829 (5th Cir. 1975). Relevance remains a gatekeeping analysis, despite the liberal evidentiary provision of the Federal Death Penalty Act, 18 U.S.C. § 35939(c). *See United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010). Relevance has the same meaning under § 3593(c) as it does under Federal Rule of Evidence 401. *Lujan*, at 854 (citing *United States v. McVeigh*, 153 F.3d 1166, 1212-13 (10th Cir. 1998)); *see also United States v. Basham*, 561 F.3d 302, 331-32 (4th Cir. 2009). Specifically, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the [information]." Fed. R. Evid. 401.

The information obtained through Dr. Montalbano and Dr. Patterson was disclosed to trial counsel, factoring into and informing their strategic decision to forego a mental health strategy in the penalty phase of the trial. As to Dr. Aguirre, it would seem the Petitioner has improperly relied upon the Rules Governing Section 2254 Proceedings, which have heightened restrictions in the scope of any federal evidentiary hearing, leaving the substantive criminal questions to state jurisdictions. *See, e.g.,* (Rule 7, Rules Governing § 2254 Proceedings, expanding the record). That is certainly not the case in Section 2255 proceedings, which are an extension of the underlying criminal case. (Rule 6, Advisory Committee Notes, Rules Governing § 2255 Proceedings). "It is

11

less likely that the court will feel the need to expand the record in a § 2255 proceeding than in a habeas corpus proceeding, because the trial (or sentencing) judge is the one hearing the motion (See Rule 4) and should already have a complete file on the case in his possession. (Advisory Committee Notes, Rule 7, Rules Governing § 2255 Proceedings).  However, because the trial counsel withdrew its notice of intent to present mental health evidence, the record is naturally silent as to the government's evidence in rebuttal, and specifically evidence rebutting the 2009 brain scans and radiology reports. That information and evidence must be adduced in this habeas proceeding.

The challenged evidence that the United States intends to introduce is relevant to the ineffective assistance claim.  Such evidence should assist the Court in determining whether trial counsel acted on the basis of sound information and whether the omission of any mental health evidence likely prejudiced the verdict.  Once remanded to an evidentiary hearing, a Court should "not consider omitted mitigation evidence in a vacuum."  *United States v. Barrett,* 797 F.3d 1207, 1232 (10th Cir. 2015) (citing *Wilson v. Trammell,* 706 F.3d 1286, 1305 (10th Cir. 2013) ("[W]e must consider not just the mitigation evidence that defendant claims was wrongfully omitted, but also what the prosecution's response to that evidence would have been.")(additional internal citations omitted)).

In *Barrett*, the Tenth Circuit remanded a capital habeas case for an evidentiary hearing for precisely the same reason as the Court of Appeals has in the instant case: to determine whether counsel failed to adequately investigate and present mental health evidence at his penalty phase proceeding.  In so ordering, the Tenth Circuit found that "additional *current* mental health evidence could have been offered by the government once Defendant opened the door to such evidence." *Barrett*, 797 F.3d at 1232. Also as in this case, the government's experts and the

12

defendant's own first tier experts would be disclosed and utilized in rebuttal, discussing antagonistic comorbid diagnoses such as bipolar disorder, narcissism, and psychopathic tendencies. When assessing whether any possible error was prejudicial, this court should rightly be presented with such rebuttal expert testimony, which "can be devastating." *Id.*

The Court should prevent the defendant's effort to restrict what can be considered in aggravation. Without seeking leave of the Court, the defendnat submitted to additional psychological evaluations in 2015 and again in 2022. Those doctors, to include Dr. Martell and Dr. Nadkarni, had no relevance to the claims of ineffective assistance, yet remain on Petitioner's witness lists. The United States has the right to rebut the 2009 brain imaging and radiology reports, Drs. Mirsky and Merikagnas' 2015 final reports, as well as any approve "new" evidence of mental health that the Court deems relevant and admissible at the hearing. Notably, Dr. Aguirre, a neurologist, is the only identified health professional with the requisite expertise to provide insights into the meaning and value of the brain imaging and corresponding radiology reports. He will be able to provide an expert opinion necessary to aid the fact finder in determining the materiality of such evidence. Accordingly, as the Court needs to do a complete review of the government's evidence, the defendant's motion seeking to limit that evidence should be denied.[3]

## CONCLUSION

For the foregoing reasons, the United States respectfully urges this Court to deny the Petitioner's motion to exclude government's evidence in aggravation or rebuttal, to include the reports of trial experts Dr. Patterson and Dr. Montalbano, as well as the recent report and testimony

---

[3]For example, had the imaging reports been produced to the United States at the time of the penalty phase, the United States could have retained an expert to review and discuss the significance – the same tasks Dr. Aguirre is performing currently.

of Dr. Geoffrey Aguirre.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:      /s/

Brian J. Samuels
Lisa R. McKeel
Assistant United States Attorneys
Carrie L. Ward, Trial Attorney,
Department of Justice
Attorneys for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Brian.Samuels@usdoj.gov
Email: Lisa.McKeel@usdoj.gov
Email: Carrie.Ward@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of January 2023, I electronically filed a true copy of the foregoing with the Clerk of Court using the CM/ECF system who will send notice to all filers.

By: /s/
 Lisa R. McKeel
 Assistant United States Attorney
 Virginia Bar Number: 23652
 Attorney for the United States
 United States Attorney's Office
 Fountain Plaza Three, Suite 300
 721 Lakefront Commons
 Newport News, Virginia 23606
 Phone: (757) 591-4000
 Fax: (757) 591-0866
 Email: Lisa.McKeel@usdoj.gov

15