IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | | |
|---|---|---|
| DAVID ANTHIONY RUNYON, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Criminal Action No.: 4:08cr16 |
| | ) | Civil Action No. :4:15cv108 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **CAPITAL § 2255 PROCEEDINGS** |
| Respondent. | ) | |
| | ) | HON. REBECCA BEACH SMITH |

## <u>UNITED STATES' EVIDENTIARY HEARING MEMORANDUM</u>

The United States, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Brian J. Samuels and Lisa R. McKeel, Assistant United States Attorneys, and Carrie L. Ward, Trial Attorney for the Department of Justice, respectfully submits this memorandum for the Court's review, which addresses some of the issues - both factual and legal - that may arise at the evidentiary hearing in this Section 2255 matter, set to commence on February 7, 2023.

This memorandum includes a preview and discussion of the witnesses and exhibits that may be offered by the parties. By separate motion, the United States has moved *in limine* to exclude the testimony of Ms. Barrett – one of the Petitioner's identified experts. Another other expert witness-related issue that may arise is whether the Petitioner may introduce the testimony and report of Dr. Siddartha Nadkarni, a newly employed expert that introduces what the United States submits are irrelevant opinions in an untimely manner. Thus, as set forth herein, the United States also provides notice to the Court and habeas counsel that it will object to the proposed testimony of Dr. Nadkarni as contained in his report and letters to the Petitioner's counsel.

1

Additionally, since January 13th, the Petitioner has filed a series of motions and supporting memoranda.  (ECF Nos. 725, 726, 729 – 734, 737, 739, 741).   The United States has endeavored to respond to a number of these filings in a separate and timely fashion (prior to the 14-day requirement).  (ECF Nos. 738, 740, 742).   But as the most recent motions pertain to matters that directly implicate proceedings at the evidentiary hearing, the United States will endeavor to address those motions herein.

### BACKGROUND

The background of this case, both factual and procedural, is exceedingly well known to the Court, which has presided over this case in its various postures for nearly fifteen years.  This history has been summarized in a number of recent pleadings.  In 2007, the Petitioner, DAVID ANTHONY RUNYON, engaged in a murder-for-hire plot to kill Cory Allen Voss, a United States Naval officer, for money.  The Petitioner traveled from West Virginia to kill Mr. Voss.  The Petitioner shot Mr. Voss five times at point blank range as the two men sat in the victim's pickup truck.  The Petitioner contrived to make the murder look like a random act of violence, a carjacking and/or ATM robbery.  However, as the jury found, this was a thoroughly planned execution the preparation and concealment of which started before and continued long after the actual killing of Cory Allen Voss.  The Petitioner conspired with his co-defendants, CATHERINA VOSS and MICHAEL DRAVEN, to murder Mr. Voss to obtain an expected life insurance payout and avoid apprehension.

The indictment was returned on February 13, 2008.  (ECF No. 3).  The Petitioner proceeded to trial nearly eighteen months later in the Summer of 2009.  The United States sought the death penalty in this matter and the long delay between indictment and trial accounted for a comprehensive mitigation investigation.  At trial, the Petitioner was convicted of three of the five

initial charges.  After a penalty phase proceeding during which extensive information, both aggravating and mitigating, was presented to a qualified jury, the Petitioner was sentenced to death on two of his three convictions.  An appeal followed that resulted in the convictions and sentence being affirmed by the Court of Appeals in February 2013.  (ECF No.  382).

The Petitioner then filed a habeas motion under 28 U.S.C. § 2255 on October 5, 2015, along with an amended motion on February 4, 2016 – nearly seven years ago.  (ECF Nos. 478, 511).  That motion was denied by this Court on January 19, 2017.  (ECF No. 560).  The Petitioner appealed again to the Court of Appeals, which granted a certificate of appealability as to four of eighteen claims of error.  Following briefing and oral argument, the Court of Appeals remanded the case for an evidentiary hearing only as to Claim Six of the Section 2255 motion – alleging that trial counsel provided ineffective assistance by failing to investigate and present mitigating evidence of a brain injury and potential mental illness and such inadequacy prejudiced his defense. (ECF Nos. 619, 620).

The case returned to this Court in or about August 2021, some twelve years after the penalty phase that is the focus of Claim Six commenced.  Over the last eighteen months, numerous status hearings have been held and pleadings have been filed concerning discovery and the scope of the evidentiary hearing.  The United States understands that the Petitioner, who has submitted a witness list, identifying over twenty lay, expert and attorney witnesses, estimates that the hearing will take approximately two to three weeks.

The United States submits that the scope of the evidentiary hearing should be limited to; 1) whether trial counsel exercised a reasonable standard of care in investigating the evidence concerning the defendants purported brain injury and potential mental illness, and 2) whether the decision to forgo the introduction of such evidence at the penalty phase proceeding prejudiced the

3

defense.  Though the temptation to revisit and criticize a defense strategy that did not prove successful may be strong, particularly with the benefit that years of resources and effort makes possible, the Fourth Circuit in its opinion did caution that "[l]ooking in hindsight to what decisions trial counsel made and why is to be sure, a perilous activity, readily subject to historical revisionism. Moreover, in fulfilling his duty to investigate, it must be recognized that counsel need not have investigated 'every conceivable line of mitigating evidence'". *United States v. Runyon*, 994 F. 3d 192, 207 (4th Cir. 2021) (citing *Williams v. Stirling*, 914 F.3d 302, 313 (4th Cir. 2019).

The United States submits that trial counsel conducted reasonable investigations into the Petitioner's purported brain injury and potential mental illness prior to the penalty phase of the trial and any further investigation given the evidence that they found was unnecessary. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation". *United States v. Runyon* at 207 (quoting *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

Thus, the scope of the hearing on the performance prong should be limited to evidence known to trial counsel that would have resulted in decisions made or actions taken, not evidence adduced six or seven or many more years after trial.[1]  With regard to the scope of the evidence, the Fourth Circuit stated in *Runyon*, "In conducting this inquiry, we 'consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further'". *United States v. Runyon* at 207 (citing *Wiggins. v. Smith*, 539 U.S. 510, 527

---

[1] The United States understands that following the evidentiary hearing there may be the opportunity for post-hearing briefing and provides just an overview of the pertinent legal framework that may be expanded upon at a later date.

(2003)).  To satisfy this inquiry, the evidence adduced at the habeas proceeding should include only that information that Petitioner's counsel knew or reasonably should have pursued at the time of their investigation, as well as evidence appropriate in rebuttal thereto.  The Government's objections, below, identify evidence that falls beyond the limited scope of the hearing, as well as evidence that is untimely, unnecessary, and irrelevant to this Court's inquiry or does not contain necessary indicia of reliability.

Even a finding of deficient performance will not end the inquiry, as the Court would then have to consider any prejudicial impact – reweighing the mitigating evidence (old and purportedly new) against the case in aggravation.  The United States will argue that given the substantial planning and premeditation, any foregone mental health evidence would have had no impact on the outcome of the trial for the Petitioner.

## UNITED STATES' WITNESSES AND EXHIBITS

At the evidentiary hearing, the United States intends to present the following witnesses and exhibits.  The United States recognizes that the Court has set forth a schedule for this hearing wherein certain witnesses will be scheduled to testify in a particular order.  (ECF No. 685).  As the Petitioner has made the habeas claim, he has the burden of proof and will proceed first in calling any witnesses.

### A.  Witnesses

The list of witnesses that the United States may call testify was filed with the Court on November 1, 2022.  (ECF No. 699-1).  The United States anticipates that the Petitioner may call a number of these identified witnesses to testify in his case; thus, it may not be necessary for the United States to recall such witnesses in rebuttal.  This would include attorneys Jon M. Babineau, Lawrence H. Woodward, Jr., and Judge Stephen A. Hudgins, and mental health professionals Drs.

Paul Montalbano, Daniel Martell and Raymond Patterson.  In fact, the only potential witnesses identified by the United States that does not overlap with the Petitioner's list are Drs. Geoffrey Aguirre and Paul Montalbano.  The report of Dr. Montalbano that was issued in 2009 was unsealed nearly seven years ago, in March 2016.  (ECF Nos. 277, 519).  The United States has provided recently received disclosures from Dr. Montalbano, although the United States is not yet certain whether it will be necessary to call Dr. Montalbano.  The report from Dr. Aguirre and his disclosures have been provided to counsel for the Petitioner.  The United States would observe that it has not received reciprocal disclosures from certain of the Petitioner's experts, including Dr. Siddartha Nadkarni.

**B.  Petitioner's Request for Early Jencks Act Materials  (ECF Nos. 739, 741)**

On January 30, 2023, the Petitioner filed a motion requesting early production of Jencks Act materials, pursuant to 18 U.S.C. § 3500.  (ECF Nos. 739, 741).  The Petitioner requests all such materials by February 2, 2023. *Id.*  While the United States certainly recognizes its obligation to provide any such materials (indeed, Rule 8 of the Rules Governing Section 2255 Proceedings requires such disclosure by any party that offers a witness) the Petitioner already has the reports of the experts tendered by the United States, as well as reports of interview from trial counsel.  The rule applies to a party after direct examination by its terms, and the United States anticipates that most of its examinations will be via cross-examination.  Yet the United States did disclose the above-referenced materials.  It is further unclear what the Petitioner believes he is lacking in a case where he bears the burden of proof, will present his case first and has tendered a list of some

6

twenty-odd witnesses. In any case, the United States has and will continue to comply with the Jencks Act requirements.

The United States observes that Rule 8 incorporates Rule 26.2(a) – (d) and (f) of the Federal Rules of Criminal Procedure. The United States has not received any production of materials from the Petitioner – outside of exhibits and some initial discovery productions – that relate to any Jencks Act materials. Accordingly, the United States makes a reciprocal request for any additional Jencks Act materials falling within the ambit of Rule 8 that are in the possession of the Petitioner.

### C. Exhibits – United States

Also on November 1, 2022, the United States filed a proposed exhibit list. (ECF No. 699-2). Upon further review and in preparing for the hearing, the United States has determined that some of these exhibits are either not necessary or appropriate. Additionally, the United States has determined that certain other documents should be included for the review by witnesses or the Court's consideration. The United States, as an exhibit to this memorandum provides the attached updated exhibit list. Gov't Ex. 1.

The exhibits to be offered by the United States largely relate to: (1) select pleadings in the case that are certainly part of the record, but will be marked for identification / admission through witnesses; (2) exhibits from the 2009 trial; (3) emails and correspondence between counsel, staff and experts that was provided in Petitioner's disclosures after the remand in this case; and (4) the report of the government's experts – both in 2009 and the recent report of Dr. Aguirre.

### D. Petitioner's Request for Additional Discovery (ECF No. 737).

On January 27, 2023, the Petitioner filed a motion for discovery. (ECF No. 737). The Petitioner seeks three categories of information from the United States: (1) any reports, opinions, notes and records of communications from Dr. Daniel Martell and any favorable evidence relating

to Dr. Martell; (2) notes of interviews with Runyon's trial counsel and any communications; and (3) an updated witness and exhibit list. *Id.* To address item (3), the United States has herein discussed its planned witnesses and exhibits and provides an updated exhibit list as an attachment to this memorandum.

With respect to the request for information related to Dr. Martell, the United States is aware of its obligation to disclose any favorable evidence – which is why the United States identified Dr. Martell's opinions as potentially favorable to the Petitioner, made Dr. Martell – at the time an expert consultant for the United States – available and released Dr. Martell as a government expert to facilitate those discussions. The United States understands that Dr. Martell may testify for the Petitioner, although no such expert disclosures have been provided by the Petitioner to date. Dr. Martell provided no written report to the United States prior to being retained by the Petitioner.

With respect to the request for any notes with the interviews of the Petitioner's trial counsel, such request is unwarranted. The United States provided the reports of interview that were prepared after meeting with trial counsel in March 2022. The Petitioner now demands, without any authority, the notes of counsel from the United States. The United States submits that any such materials are work product to which the Petitioner is not entitled. This is the reason the United States had interview reports prepared. To the extent there is any daylight between those interview reports and the declarations obtained through habeas counsel, this will certainly be the subject for examination at the evidentiary hearing. Additionally, to the extent habeas counsel note concern about the attorney-client privilege, the Court and formal trial counsel can certainly address and safeguard any such risk during the evidentiary hearing. To this end, the United States also

8

refers to its prior response to the Petitioner's motion concerning attorney-client privilege *See also* (ECF No. 740).

## PETITIONER'S WITNESSES AND EXHIBITS

### A.    Witnesses

The United States has reviewed the proposed witness list from the Petitioner.  On January 20, 2023, the United States moved *in limine* to exclude the testimony of Ms. Jean Barrett, who would proposedly testify as to the performance prong of the *Strickland* inquiry.  (ECF No. 723).  The United States has also noted its objection to the testimony by video conference (as opposed to in-court testimony) of Dr. James Merikangas.  (ECF No. 738).  There are other witnesses the significance of which to the limited purpose of the evidentiary hearing is not entirely clear to the United States and may be the subject to objection for relevance at the hearing.  Based on the information at hand, however, the United States provides the following discussion of issues that may arise at the hearing.

### 1.  Declarations and Expert Reports

It appears as if the Petitioner may propose to introduce testimony via declaration or expert report, without a live sponsoring witness.  While the United States understand certain declarations or reports may be offered for limited purposes (e.g., the impact of an expert report on trial counsel who reviewed the report) and the United States may agree to the authenticity of such declarations and expert reports, the United States has advised habeas counsel that it will generally object to the practice of substituting declarations and expert reports for live testimony.

The Federal Rules of Evidence, including the rules regarding the inadmissibility of hearsay, apply in habeas proceedings. *See* Fed. R. Evid. 1101(d) (listing exceptions to applicability of the rules and not including postconviction proceedings); *see also United States v. Scott*, 576 Fed. App'x 409, 415 (5th Cir. 2014) (finding Rule 606(b) foreclosed movant's argument

9

in § 2255 proceeding); *Salazar v. Dretke*, 419 F.3d 384, n.28 (5th Cir. 2005) (recognizing that Federal Rules of Evidence apply to § 2254 habeas corpus proceedings); *United States v. Francischine*, 512 F.2d 827, 829 (5th Cir. 1975) (stating in dicta that Federal Rules of Evidence apply in § 2255 proceeding).

Certainly, the Court will may make credibility determinations that are important to the claim at issue by reviewing witness testimony. This is the purpose of the evidentiary hearing In this case, many of the anticipated declarations are simply sworn and unwitnessed. There is no information regarding who prepared the documents, how the information was determined, and whether the declarant had the opportunity to review any information prior to committing to the substantive contents therein. Additionally, many of the declarations attached to Petitioner's amended Section 2255 brief contain multiple examples of hearsay, and third party hearsay. While the rules may be relaxed, the rules of evidence still apply and that information cannot be sufficiently reliable to consider as substantive proof of a material fact. *See* (ECF No. 511 and attachments).

### 2. Dr. Nadkarni

One of the Petitioner's identified witnesses is Dr. Siddartha Nadkarni, who has not previously testified or consulted in connection with this matter. At the time of initial disclosure of witness lists, the Petitioner did not provide further detail in that filing as to the nature and substance of Dr. Nadkarni's testimony. Counsel for the petitioner later provided to the United States a report of Dr. Nadkarni, dated November 9, 2022, as well as two letters from Dr. Nadkarni to counsel for the Petitioner, and a copy of his curriculum vitae. Presumably, the petitioner proposes to call Dr. Nadkarni as a new expert witness, although full expert disclosures have not been received.

While the Petitioner does not specify on which topics Dr. Nadkarni would testify or provide an explanation as to the grounds for admissibility of his report, Dr. Nadkarni's report and letters

to counsel provide some indication as to the proposed substance of his testimony.  Dr. Nadkarni is a neuropsychiatrist and epileptologist, who apparently was retained by counsel for the Petitioner. In a September 22, 2022, letter to counsel for the Petitioner, Dr. Nadkarni indicated that his initial review of the petitioner's record led him to believe that the Petitioner has had several head injuries and episodes of unawareness or unconsciousness.[2] Dr. Nadkarni also mentioned that the Petitioner has deficits in sustained attention on neuropsychological testing, and a pattern of academic underperformance.

Dr. Nadkarni's report, dated November 9, 2022, goes into greater detail regarding his assessment of the Petitioner.  Gov't Ex. 2.  In addition to his review of records from this case, Dr. Nadkarni bases his conclusions on a medical interview and examination of the petitioner conducted on July 25, 2022, during which he aimed to "evaluate Mr. Runyon from a Neuropsychiatric perspective."  *Id.* at 4.  In fact, the majority of Dr. Nadkarni's ten-page report sets forth his notes from this 2022 examination of the Petitioner.[3]  Therein, Dr. Nadkarni describes the Petitioner's symptoms of "present illness," as well as "active brain injury symptoms," which appear to be based on anecdotal information provided by the Petitioner regarding his current condition.  *Id.* at 4–7. Specifically, Dr. Nadkarni describes "nocturnal episodes" purportedly experienced by the Petitioner, which he categorizes as "seizures."  *Id.* at 4.  This is the first mention of the Petitioner experiencing seizures; such symptoms were not discussed in any of the several earlier evaluations of the Petitioner in this case.  It is unclear when the Petitioner purportedly began to experience

---

[2] The United States does not attach the letters between Dr. Nadkarni and counsel, but provides a summary of their relevant portions.

[3] The United States has not been provided with a recording of that interview, and Dr. Nadkarni's notes on the interview appear to be a rough summary (*i.e.*, not a verbatim transcript).

these possible seizures and why he failed to disclose them during prior interviews with medical experts.

Dr. Nadkarni's report goes on to memorialize his impressions of the Petitioner from the 2022 examination, including the Petitioner's present appearance, mental status, mood, affect, thought content and process, and so forth. *Id.* at 7–8. Based on that examination, as well as his review of case materials and results from an MRI conducted in 2018 and a CT scan from 2017, Dr. Nadkarni opines that the Petitioner "has several areas of his brain that are not functioning properly and that produce several identifiable symptom clusters for several diagnoses," and that "many of these diagnoses, both psychiatric and neurologic either stem directly from his head injuries or are greatly exacerbated by brain injuries." *Id.* at 8. Such diagnoses include: (1) Traumatic Brain Injuries with chronic sequelae; (2) Post-Traumatic Stress Disorder; (3) Cyclic Mood Disorder, namely Schizoaffective Disorder, Bipolar Type; (4) Migraines, Post-Traumatic; (5) Organic Personality Syndrome; (6) Frontal Lobe Syndrome; and (7) R/O Epilepsy, likely focal. *Id.* Dr. Nadkarni further opines that neuropsychological testing "revealed a right-left brain split that is significant, with right hemisphere functioning being significantly lower than left hemisphere functioning," as well as frontal lobe damage. *Id.* at 9.

Dr. Nadkarni ultimately concludes that "Mr. Runyon is severely brain injured and suffers from chronic sequelae of these injuries including major psychiatric syndromes and marked frontal lobe dysfunction," and that the petitioner's "brain abnormalities and psychiatric difficulties constitute a severe mental or emotional disturbance." *Id.* at 9–10. Notably, Dr. Nadkarni further opines that, "as a result of brain dysfunction and psychiatric difficulties, Mr. Runyon's capacity to conform to the requirements of law was significantly impaired at the time of the crime." *Id.* at 10.

In a subsequent letter to counsel for the Petitioner, dated November 23, 2022, Dr. Nadkarni raised the prospect of the Petitioner suffering from epileptic seizures. He requested EEG monitoring, with the goal of confirming that epileptic events likely contributed to brain injury that impacted the Petitioner's functioning at the time of the crime. Dr. Nadkarni opined that, if the petitioner has developed epilepsy, that condition could be "an exacerbating condition" that would have a magnifying effect on the deficits from other head injuries.

In reviewing these materials and understanding that Dr. Nadkarni will not likely testify during the first week of the evidentiary hearing so there will be time to address this issue more fully during the hearing, the United States provides notice to the Court and counsel that it will object to the testimony and report of Dr. Nadkarni because such information is not relevant. To the extent his testimony would have any probative value, its minimal value would be substantially outweighed by a danger of wasting time and needlessly presenting cumulative and redundant evidence. Furthermore, the Court should exclude his testimony as untimely because Dr. Nadkarni's report - rendered over seven years after the statute of limitations ran on the Petitioner's § 2255 claim - appears to introduce novel theories of relief. The Court should not permit this attempt at what certainly appears to be late expert shopping.

### a. The Testimony of Dr. Nadkarni is Not Relevant

The opinions of Dr. Nadkarne, which are based on a 2022 examination of the Petitioner and reports from medical testing conducted in 2017 and 2018, have no bearing on the narrow ineffective assistance of counsel claim currently before the Court. The Federal Rules of Evidence generally apply to evidentiary proceedings under 28 U.S.C. § 2255. *Avalos v. United States*, No. 1:10-cr-134, 2014 U.S. Dist. LEXIS 182633, at *4 n.2 (E.D. Va. Aug. 19, 2014) (citing Fed. R. Evid. 1101(e)). Thus, although the upcoming Section 2255 hearing concerns the presentation of

13

evidence at a capital penalty phase proceeding, relevance remains a threshold concern, despite the liberal evidentiary provision of the Federal Death Penalty Act, 18 U.S.C. § 3593(c). *United States v. Basham*, 561 F.3d 302, 331–32 (4th Cir. 2009). Relevance has the same meaning under § 3593(c) as it does under Federal Rule of Evidence 401. *Id.* at 332. Specifically, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Here, the report and proposed testimony of Dr. Nadkarni are not relevant to the specific issue before the Court: whether the petitioner's counsel provided ineffective assistance of counsel "by failing to investigate adequately his brain injury and potential mental illness and introduce such evidence in mitigation during the penalty phase of trial." *Runyon*, 994 F.3d at 204. Specifically, the Fourth Circuit instructed this Court to conduct an evidentiary hearing on the issues of: (1) whether the defendant's trial counsel made the strategic choice, after a reasonable investigation, not to further investigate and present evidence regarding potential brain damage and mental illness, and (2) if the Court finds that counsel's failure to further investigate and develop such evidence was not the result of a strategic decision made after a reasonably limited investigation, whether that failure "prejudiced the defense." *Id.* at 207–09. To establish that his trial counsel's assistance was deficient, the Petitioner must demonstrate that counsel made errors so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court "must not set aside sentences due to ineffective assistance of counsel absent manifest incompetence that falls outside 'the wide range of reasonable professional assistance' permissible under the Constitution." *Runyon*, 994 F.3d at 217–18 (quoting *Strickland*, 466 U.S. at 689).

14

The Petitioner's trial counsel retained the services of a neuropsychologist and a neuropsychiatrist, neither of whom was Dr. Nadkarni, and both of whom examined the Petitioner and submitted preliminary reports in 2009. Then in 2015, in support of his Section 2255 motion, the Petitioner presented further evidence from four medical experts related to his claim that his trial counsel was deficient in failing to further investigate his potential brain injury and mental illness and to present such evidence during the penalty phase. Apparently still not satisfied with the numerous existing opinions about his mental health and brain injuries, the Petitioner now seeks to introduce another neuropsychiatrist into the mix.

Thus, the Petitioner evidently aims to use the evidentiary hearing to present opinion testimony that is neither relevant nor timely for the sole purpose of expanding and improving upon existing theories. Dr. Nadkarni's proposed expert opinion, rendered over thirteen years after the trial in this case, is based on present-day evaluations and other materials not available to trial counsel or to habeas counsel at the time they filed the motion, such as results from an MRI conducted in 2018 and from a 2017 CT scan.

The Court of Appeals did not remand this case to determine if trial counsel could have presented a stronger case given the advantages of infinite resources, infinite time, and infinite hindsight. Dr. Nadkarni's evaluations of the Petitioner's present state do not provide any insight regarding mitigation evidence that was available to counsel at the time of the defendant's trial. The record does not reflect that counsel would have had reason to have retained or presented testimony of Dr. Nadkarni, given the numerous other experts retained by counsel at trial and in support of the petitioner's Section 2255 motion in 2015. Therefore, the putative testimony of Dr.

15

Nadkarni appears to be not relevant as to the ultimate question of whether the petitioner's trial counsel was constitutionally ineffective, and the United States objects as such.[4]

### b.   The Court Should Exclude the Testimony of Dr. Nadkarni as Untimely

Second, even if the Court concludes that the proposed testimony of Dr. Nadkarni is relevant to the narrow issue before the Court, the United States objects to his testimony as an attempt to introduce novel, statutorily time-barred theories.

The Antiterrorism and Effective Death Penalty Act of 1996 imposes a one-year period of limitations in which federal prisoners may file motions to vacate, set aside, or correct their sentence.  28 U.S.C. § 2255(f); *United States v. Segers*, 271 F.3d 181, 184 (4th Cir. 2001). The limitations period begins when the conviction becomes final—*i.e.*, on the date the Supreme Court denies a defendant's petition for a writ of certiorari from direct appeal.  *Segers*, 271 F.3d at 184. This statue of limitations bars untimely amendments that add new claims to § 2255 motions. *United States v. Pittman*, 209 F.3d 314, 315–16 (4th Cir. 2000).  Petitioners may, however, make untimely amendments that relate back to existing Section 2255 claims.  *See Mayle v. Felix*, 545 U.S. 644, 664 (2005) (holding amendments relate back only if "the original and amended petitions state claims that are tied to a common core of operative facts"); *Pittman*, 209 F.3d at 317–18 (finding that relation back is not permitted when the new claims are based on events separate in "both time and type" from the original claims).

In this case, the Petitioner's conviction became final on October 6, 2014, when the Supreme Court denied his petition for a writ of certiorari, *Runyon*, 574 U.S. 813, and the Petitioner timely

---

[4] To the extent the Court finds any portion of Dr. Nadkarni's testimony to be relevant, it is needlessly cumulative and redundant.  *See* Fed. R. Evid. 403.  The only portions of Dr. Nadkarni's report and proposed testimony that could be at all probative merely parrot the aspects of the Petitioner's previously presented expert reports.

filed his Section 2255 motion on October 5, 2015.  ECF No. 478.  Now, over seven years later, the Petitioner may not insert a new theory into the case that does not share "a common core of operative facts" with his timely filed motion.  *See Mayle*, 545 U.S. at 650, 664 (holding that a new habeas claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth").  Through the report and proposed testimony of Dr. Nadkarni, the Petitioner apparently intends to do just that.  Dr. Nadkarni's report and letters to counsel for the petitioner set forth novel theories, such as the proposition that epileptic events likely contributed to brain injury that impacted the Petitioner's functioning at the time of the crime.[5]  The petitioner has been examined by numerous medical experts throughout the course of this matter, including other neuropsychiatrists, and this is the first mention of the petitioner potentially having epilepsy.

The Court should not permit the Petitioner to present a new theory at this late juncture of his post-conviction litigation, over eight years after his conviction became final.  Dr. Nadkarni's report does not strictly replicate the findings of other experts (which would be unnecessarily cumulative and a waste of time, as addressed above).  His report appears to build upon the findings of prior experts that are advantageous to the Petitioner, ignore their unhelpful conclusions, and improperly diverge into new territory.  The Petitioner appears to attempt to engage in untimely

---

[5] It fully appears that this opinion of Dr. Nadkarni touches on the issue of the Petitioner's guilt, and to the extent it does, it is undoubtedly beyond the scope of the narrow issue before this Court on remand: whether the petitioner's counsel "failed to provide him with effective assistance, in violation of the Sixth Amendment, by failing to investigate adequately his brain injury and potential mental illness and introduce such evidence in mitigation during the *penalty* phase of trial." *Runyon*, 994 F.3d at 204 (emphasis added).

expert shopping and to introduce a new Section 2255 claim.  Thus, the United States submits that the report and testimony of Dr. Nadkarni is time barred.[6]

### B.  Exhibits

### 1.  Transcripts

The Petitioner has selected dozens of excerpts of the trial transcript, from the guilt and penalty phase and including arguments of counsel and the instructions of the Court, to be offered as exhibits. Some of these proposed exhibits are multiple pages; others are just a single page.  The United States understands that in the context of a Section 2255 proceeding, where the case has been remanded, that this Court may take into consideration the record in this matter.  But the United States objects to the consideration of isolated pieces of the trial transcript that may be taken out of context.  Additionally, this piecemeal approach is cumbersome and unnecessary before a tribunal that has presided over the entire trial.

### 2.  Correspondence

The Petitioner has also selected various items of correspondence (in the form of letters and emails) from trial counsel, experts and investigators.  Assuming that the Petitioner has at least one of the parties as a witness to the correspondence, the United States will largely agree to the admission of such exhibits.

---

[6]It is also worth noting that the United States will not open the door to new mental health testimony.  Dr. Merikangas and Dr. Mirsky both provided preliminary reports in 2009. Dr. Mirsky did not review the brain imaging and radiology report at issue, and Dr. Merikangas did not drastically change his opinions in line with that evidence.  As such, the reports of Dr. Montalbano and Dr. Patterson, provided to counsel before the penalty phase proceeding, remain relevant and persuasive.  Dr. Aguirre, a neurologist, is the first government expert with opportunity to review the brain imaging and radiology report. His anticipated testimony is specific to that evidence, and will provide this court qualitative and quantity driven context to consider and understand the import of the scans, or lack thereof.

.

**3.   Expert Background Packets Including Social History and Petitioner's Letters/Notes**

The Petitioner also apparently seeks to introduce various background information provided to its experts that include significant hearsay from the Petitioner's family, friends and colleagues and the Petitioner himself.  The United States will object to such exhibits.  There are also certain writings and notes of the Petitioner, to which the United States will object.

The United States reserves the right to offer other objections based on relevance, scope or evidentiary reasons.

**CONCLUSION**

The United States respectfully submits this memorandum for the Court's consideration of these matters that may arise in the course of the evidentiary hearing.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY


By:   /s/_____
Brian J. Samuels
Lisa R. McKeel
Assistant United States Attorneys
Carrie L. Ward, Trial Attorney
Attorneys for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Brian.Samuels@usdoj.gov
Email: Lisa.McKeel@usdoj.gov
Email: Carrie.Ward@usdoj.gov

19

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of January, 2023, I electronically filed a true copy of the foregoing with the Clerk of Court using the CM/ECF system who will send notice to all filers.

By:    /s/
       Brian J. Samuels
       Assistant United States Attorney
       Virginia Bar Number: 65898
       Attorney for the United States
       United States Attorney's Office
       Fountain Plaza Three, Suite 300
       721 Lakefront Commons
       Newport News, Virginia 23606
       Phone: (757) 591-4000
       Fax: (757) 591-0866
       Email: Brian.Samuels@usdoj.gov