**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | | |
|---|---|---|
| | ) | |
| David Anthony Runyon, | ) | |
| Petitioner, | ) | Original Criminal No. 4:08-cr-16-3 |
| | ) | Original Civil No. 4:15-cv-108 |
| v. | ) | **Capital § 2255 PROCEEDINGS** |
| | ) | |
| United States of America, | ) | HON. REBECCA BEACH SMITH |
| Respondent. | ) | |
| | ) | |
| | ) | |

**Petitioner's Response to the Motion in Limine of the**
**United States to Preclude Testimony of Jean D. Barrett, Esq.**

On November 1, 2022, Petitioner David Runyon filed his Amended Pre-Hearing Disclosures, ECF No. 698-1, listing expert Jean Barrett, Esq., as a witness. Pursuant to an agreement between the parties, Petitioner complied with the requirements of Federal Rule of Criminal Procedure 12.2 and the newly amended Rule 16 on January 3, 2023. On that day, Runyon disclosed Barrett's Curriculum Vitae and Report. (*See* Attachment A). As Runyon has informed the government, no case list or publications were included in the information provided on January 3, 2023, because there was no information to provide regarding Barrett in those areas. *Id.*

**BACKGROUND**

The government's motion describes its positions regarding information provided by experts retained by Runyon's Sentencing Counsel prior to trial. *See* Mot. in Limine of United States to Preclude Testimony of Jean Barrett, Esq., at 4–8, ECF No. 728 [hereinafter Gov. Mot.]. Because these descriptions are not relevant to the issue before the Court regarding the

1

government's motion to preclude Barrett's testimony and the government's legal arguments, Petitioner will not restate the evidence presented in support of his § 2255 Motion or preview the testimony that will be presented at the upcoming evidentiary hearing in this Response. However, there are several necessary points of clarification:

1. **Dr. Bender:** The government alleges that Dr. Bender's role in the case was "somewhat unclear," references his payment invoice, Gov. Mot. at 4, and suggests he could "possibly" have "unfavorable opinions," Gov. Mot. at 12. The invoice, however, shows that Dr. Bender only reviewed records, only met with counsel *prior* to reviewing the final records received, on March 30, 2009, and did no work on Runyon's case after May 1, 2009. *See* Gov. Mot. Ex. 728-4 at 8.[1] On June 9, 2009, Sentencing Counsel Hudgins filed a motion with the Court requesting a change in expert to Dr. Mirsky, representing: "Counsel has previously requested the appointment of Scott Bender, Ph.D. to perform neuropsychological testing on defendant Runyon. Dr. Bender's services have not been accessed to the [sic] point since we have not been able to acquire the medical records that would make his testing more complete." Supp. Mot. for Psychiatrist and to Change the Designation of the Neuropsychologist Expert Previously Approved by the Court, ECF No. 206 (June 9, 2009). Sentencing Counsel thus described Dr. Bender's limited and short role, and that he did not complete his work on the case in order to form an opinion.

2. **Dr. Nelson:** As the government acknowledges, Gov. Mot. at 4, Dr. Nelson informed Sentencing Counsel Hudgins that neuropsychological deficits were "a defining element

---

[1] Counsel note the government's attached filing is not properly redacted and contains Dr. Bender's personal information.

2

of [Runyon's] personality and behavior" and "that would be relevant to mitigation if there is a death penalty hearing." Dr. Nelson recommended a neuropsychological evaluation of Runyon given his history of losing consciousness, sagging on the right side of his face, and repeated failures to achieve at a level commensurate with his intellectual ability. *See* Gov. Mot. Ex. 728-3. Counsel then sought the appointment of experts in that field, but that requested information was never provided to Dr. Nelson to consider. *See* Pet'r's Reply to Resp. of the United States to Mot. to Vacate, Set Aside, or Correct Sentence, ECF No. 526 at 31 n.12 (Mar. 28, 2016).

3. **Dr. Mirsky:** Dr. Mirsky discusses the results of scans, and why a reading as "normal" would not indicate that Runyon did not have brain damage, in a letter to Sentencing Counsel Hudgins dated September 18, 2009. Amended Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, ECF No. 511, Ex, 22.

4. **Dr. Merikangas:** The government describes that the MRI and PET scans were "ordered by Dr. Merikangas, with instructions to return findings to the ordering clinician." Gov. Mot. at 6. The government then argues that, "[a]lthough petitioner has asserted a claim that trial defense counsel redirected those reports and failed to provide them to the mental health experts, there is little evidence to support this assertion." Gov. Mot. at 7. While Runyon alleges, and will further show at the upcoming hearing, sentencing counsel did not provide the scans to Dr. Merikangas, the government has concocted the idea that counsel "redirected" the scans. The government omits mention of the docket entries in which Sentencing Counsel Hudgins filed a motion on August 14, 2009, requesting that the Court "allow the PET scan and MRI test results and films to be released directly to counsel from either the healthcare provider, the Portsmouth

Sheriff's Office, or the United States Marshall's [sic] Service so that getting the materials to the defense expert can be expedited." Mot. to Release Test Results to Counsel, ECF No. 275 (Aug. 14, 2009). This Court granted that motion the same day. There is no indication in the record that the scans were ever provided to Dr. Merikangas or Dr. Mirsky prior to trial.

The government also argues, without citation or discussion, that the reports of the experts "did not and does not explain what Ms. Barrett asserts they do— namely, the defendant's intentional killing of Cory Voss in a murder for hire plot." Gov. Mot. Ex. at 8. This artificially limits both Barrett's opinion and the appropriate legal standard. Barrett has described that the information not investigated and presented by Sentencing Counsel would help explain, "not only Mr. Runyon's involvement in the killing of Cory Voss, *but also* his peripatetic lifestyle which the Government dwelled on repeatedly to damaging effect." Gov. Mot. Ex. 728-1 at 1–2 (emphasis added). As Barrett further opines, with proper investigation, counsel could have "offer[ed] context to Mr. Runyon's behavior in connection with the offense, with his estrangement from family and friends, his volatility, his emotional detachment and his inability to maintain both a steady job and a steady relationship." *Id.* at 3. And, the Supreme Court of the United States has repeatedly held that evidence need not have a direct nexus to the crime to be mitigating. *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 535 (2003) ("Petitioner thus has the kind of troubled history we have declared relevant to assessing a defendant's moral culpability."); *Penry v. Lynaugh,* 492 U.S. 302, 319, (1989) ("Evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background . . . may be less culpable than defendants who have no such excuse."); *Eddings v. Oklahoma,* 455 U.S. 104, 112 (1982) (describing that consideration of life history is a

4

"part of the process of inflicting the penalty of death"); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) ([T[he Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. . . ."; *cf. Tennard v. Dretke*, 542 U.S. 274, 287 (2004).

## ARGUMENT

The Federal Rules of Evidence have a "liberal thrust" and take a "general approach of relaxing the traditional barriers to 'opinion' testimony," with the idea that "sensible triers of fact" can "evaluate conflicts." *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988); Jack Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631 (1991)). The Rules do not require—as the government suggests—that expert testimony be "necessary" or "required" in order to be admissible, Gov. Mot. at 8, 9, 12. Instead, expert testimony is admissible so long as it "help[s] the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). Barrett's testimony meets this liberal standard and should be admitted.

To evaluate Runyon's claim of ineffective assistance of counsel, the Court must determine whether trial counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). This "performance" prong of the *Strickland* test is necessarily linked to the practice and expectations of the legal community: "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.*; *see also Padilla v. Kentucky*, 559 U.S. 356, 366 (2010). The government argues that Barrett's testimony should be excluded because "a federal judge is certainly 'qualified to understand the legal analysis required by *Strickland*'" (quoting *Bonin v. Calderon*, 59 F.3d 815,

838 (9th Cir. 1995)). Runyon does not argue that this Court needs an expert to explain the legal standard under *Strickland*. However, the anticipated testimony will go to the *factual* question of what the prevailing norms for capital representation were at the time of the 2009 trial and whether counsel's decisions were reasonable under that standard of care. *See* Gov. Mot. at 9 (acknowledging that "the question before the Court is simply one of fact and reasonableness"); *see also Strickland*, 466 U.S. at 698 ("[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact."). The Fourth Circuit has explicitly recognized that such expert testimony, while "not supplant[ing] the test [for effective assistance of counsel]," "can aid in objectively ascertaining the range of competency normally expected of attorneys practicing criminal law." *See Marzullo v. Maryland*, 561 F.2d 540, 545 (1977); *but see* Gov. Mot. at 10 (arguing that expert testimony on prevailing norms is not relevant because "*Strickland*'s performance inquiry is an objective standard").

The government argues that this expert testimony would not assist this Court because the Court is "assuredly familiar" with the American Bar Association Standards, pointing out that in *Wiggins v. Smith*, the Supreme Court cited these standards to determine "what is reasonable." Gov. Mot. at 13 (quoting *Wiggins*, 539 U.S. at 524). Runyon does not disagree with the government's position that these standards are important guides to determining what is reasonable. However, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel . . .". *Strickland*, 466 U.S. at 688–89. In fact, in *Wiggins*, the Petitioner presented expert testimony like that at issue here, *see* Brief for Petitioner at 11, *Wiggins*, 539 U.S. 510 (2003) (No. 02-311), available at https://www.jenner.com/a/web/3hdqZbMyC9haeLaKAXpHeE/4HRMZQ/Wiggins_v_Smith_Bri BriefforPetitio.pdf?1319828189, and the Supreme Court remarked that counsel's conduct fell

6

short of *both* the American Bar Association Standards *and* "the professional standards that prevailed in Maryland in 1989," *Wiggins*, 539 U.S. at 524.

Capital cases specifically involve "extraordinary complexity and demands" and require "a significantly greater degree of skill and experience on the part of defense counsel [] than [] noncapital case[s]." American Bar Association, Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 2 (rev. ed. 2003); *see also McFarland v. Scott*, 512 U.S. 1256, 1257 (1994) (Blackmun, J., dissenting) (the "unique, bifurcated nature of capital trials" and the "complexity and fluidity of the law" make capital cases more "difficult to litigate than ordinary criminal trials"); American Bar Association Task Force on Death Penalty Habeas Corpus, Towards a More Just and Effective System of Review in State Death Penalty, at 50 (1990) (noting that capital defense lawyers "must not only be able to deal with the most serious crime—homicide—in the most difficult circumstances, but must also be thoroughly knowledgeable about a complex body of constitutional law and unusual procedures that do not apply in other criminal cases"); American Bar Association, Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 1.1, cmt. (rev. ed. 2003) (counsel must "be aware of specialized and frequently changing legal principles, scientific developments, and psychological concerns").

In recognition of the complex nature of capital litigation and the specialized knowledge required to represent capital defendants, federal courts evaluating claims of ineffective assistance of counsel in capital cases routinely admit and rely on expert testimony about the standard of care that prevailed in the capital defense community at the time of trial. *See, e.g.*, *Wiggins*, 539 U.S. at 524; *Gray v. Branker*, 529 F.3d 220, 235 (4th Cir. 2008) (citing testimony from petitioner's "expert in the practice of criminal law"); *Marshall v. Cathel*, 428 F.3d 452, 469 (3d Cir. 2005) (crediting expert testimony from both the petitioner and the state about the standards of care that prevailed

at the time of trial); *Hale v. Gibson*, 227 F.3d 1298, 1319 (10th Cir. 2000) (quoting expert testimony on trial counsel's failure to challenge jurors, though finding no ineffectiveness); *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997) (citing *Strickland* expert in support of finding of ineffectiveness); *Siripongs v. Calderon*, 35 F.3d 1308, 1314–16 (9th Cir. 1994) (relying on *Strickland* expert's declaration in remanding for evidentiary hearing on ineffective assistance of counsel); *Middleton v. Dugger*, 849 F.2d 491, 494 (11th Cir. 1988) ("[A]n attorney who has handled numerous murder and capital cases . . . testified as an expert that trial counsel had conducted insufficient background investigation into Middleton's case to uncover possible mitigating evidence."); *Elledge v. Dugger*, 823 F.2d 1439, 1445 n.9, *opinion withdrawn, in part, on other grounds*, 833 F.2d 250 (11th Cir. 1987) ("Testimony from lawyers normally will be necessary to establish what the reasonable level and quality of investigation would be."); *Pickens v. Lockhart*, 714 F.2d 1455, 1467 (8th Cir. 1983) (relying on the expert testimony of "an Atlanta attorney with considerable experience in the trial and appeal of capital cases"). Prosecutors have also employed experts on the prevailing professional norms in ineffective assistance of counsel litigation. *See, e.g.*, *Marshall*, 428 F.3d at 469; *Bugh v. Mitchell*, 329 F.3d 496, 514 (6th Cir. 2003); *Murtishaw v. Woodford*, 255 F.3d 926, 948 (9th Cir. 2001); *Mayo v. Henderson*, 13 F.3d 528, 532 (2d Cir. 1994).

In the analogous context of civil actions for attorney malpractice, expert testimony concerning the standard of care is ordinarily not only permitted, but required:

> **The application of th[e] definition of care or of fiduciary duties [in legal malpractice cases] usually involves situations and requirements of legal practice** unknown to most jurors and **often not familiar in detail to judges.** Accordingly, **a plaintiff alleging professional negligence or breach of fiduciary duty ordinarily must introduce expert testimony concerning the care reasonably required in the circumstances of the case and the lawyer's failure to exercise such care.** Such expert testimony is unnecessary when it would be plain to a nonlawyer or is established as a matter of law that the lawyer's acts constitute

> negligence (for example, when a lawyer allegedly let the statute of limitations expire or withdrew without notifying a client) or breach of fiduciary duty. A defending lawyer may also introduce expert evidence on what constitutes care in the circumstances of the case . . . .

Restatement (Third) of the Law Governing Lawyers, § 52, comment g (March 2015 Update) (emphasis added). This is so even if a judge is trying the case without a jury, because the judge's generalized knowledge of the practice of law does not necessarily extend to the questions of specialized expertise at issue in the particular case, and in any event is not set forth on the record and is not subject to testing by cross-examination. *See, e.g.*, *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 481 (3d Cir. 1979); 5 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice, § 33.16 at 127–28 (5th ed. 2000). Just as an expert lawyer's opinion in a civil legal malpractice case is helpful to the trier of fact, an expert lawyer's opinion in a post-conviction case is helpful to the trier of fact.

Nonetheless, the government argues that Barrett's testimony should be excluded because she "played no role in the defendant's case and has no personal knowledge as to the factors influencing counsels' investigative and trial strategies." Gov. Mot. at 10. However, experts are permitted to express opinions based on facts of which they do not have personal knowledge. *See* Fed. R. Evid. 703 ("*An expert may base an opinion on facts or data in the case that the expert has been made aware of* or personally observed.") (emphasis added); Fed. R. Evid. 602 ("This rule [that a witness may testify to a matter only if they have personal knowledge of it] does not apply to a witness's expert testimony under Rule 703."); *see also id.*, advisory committee's note ("The reference to Rule 703 is designed to avoid any question of conflict between the present rule and the provisions of that rule allowing an expert to express opinions based on facts of which he does not have personal knowledge.").

The government also argues that Barrett's testimony should be excluded because her opinion "subverts the role of the Court and seeks to answer the ultimate question, whether counsel was ineffective and whether petitioner was prejudiced by any finding of deficient performance." Gov. Mot. at 12. But "an opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Such a rule would be "unduly restrictive" and would "generally serve[] only to deprive the trier of fact of useful information." Fed. R. Evid. 704, advisory committee's note (citing 7 Wigmore §§ 1920, 1921; McCormick § 12).

The testimony of Jean Barrett is relevant and admissible, because it will assist the Court in determining whether trial counsel's actions were reasonable under the prevailing norms for the specialized field of capital defense in 2008 and 2009. The Court, of course, is capable of determining the appropriate weight to be given this expert testimony. However, the testimony should not be excluded altogether.

## Conclusion

For the foregoing reasons, Runyon requests that the Court deny the government's motion, and permit Runyon to present testimony from Jean D. Barrett, Esq., in support of his claim of ineffective assistance of counsel.

Should the Court grant the government's motion, Runyon requests the opportunity to proffer live testimony from Barrett at the evidentiary hearing for purposes of preserving the appellate record.

Respectfully Submitted,

/s/Elizabeth J. Peiffer
Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

/s/Dana C. Hansen Chavis
Dana C. Hansen Chavis, *pro hac vice*
Asst. Federal Community Defender
Federal Defender Services of Eastern Tennessee
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Dana_Hansen@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

/s/Nancy Hernandez
    Nancy Hernandez
    Paralegal, Capital Habeas Unit
    nancy_hernandez@fd.org

12