**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

DAVID ANTHONY RUNYON,               )
    Petitioner,                              )  Original Criminal No. 4:08-cr-16-3
                                             )  Original Civil No. 4:15-cv-108
    vs.                                      )  **CAPITAL § 2255 PROCEEDINGS**
                                             )
UNITED STATES OF AMERICA,            )  HON. REBECCA BEACH SMITH
    Respondent.                              )
                                             )

**REPLY IN SUPPORT OF PETITIONER'S MOTION FOR
WITNESS TO TESTIFY BY VIDEO CONFERENCE**

This Court should allow Dr. Merikangas to testify by contemporaneous video transmission pursuant to Federal Rule of Civil Procedure 43(a). Shortly after Mr. Runyon filed his initial motion for Dr. Merikangas to testify remotely, Dr. Merikangas contracted COVID, and according to his internist, his recovery "is far from over." Attachment A. Given his age and the time needed to fully recover from COVID, good cause is established for Dr. Merikangas to testify remotely. If this Court finds that good cause has not been established, the Court should allow Mr. Runyon to submit Dr. Merikangas's prior reports and sworn statement in lieu of testimony.

**A. Mr. Runyon has established good cause and compelling circumstances**

Federal Rule of Civil Procedure 43(a) permits the Court to receive testimony by contemporaneous transmission from a different location, for good cause in compelling circumstances. Testimony by transmission from a different location may be warranted if the witness is unable to attend trial for reasons such as illness or accident, and he is able to testify from a different location. *See* 1996 Notes of the Advisory Committee on Rules. "District courts have typically concluded that COVID-19-related health concerns justify requests to testify

1

telephonically or through audiovisual means, despite one party's objections." *Martinez v. Cont'l Tire the Ams., LLC*, No. 1:17-cv-00922, 2022 U.S. Dist. LEXIS 112380, at *3 (D.N.M. June 24, 2022). This is especially so when the witness has "a serious medical condition that places him at increased risk of complications from COVID-19." *See Sherrod v. VNA*, No. 5:17-cv-10164, 2022 U.S. Dist. LEXIS 59316, at *11–12 (E.D. Mich. Mar. 30, 2022). Dr. Merikangas, who is eighty-three years old, recently contracted COVID. Dr. Yamamoto Thomas, his internist of twenty years, explains travel for testimony is contraindicated:

> He recently had COVID and although he is currently NOT contagious his recovery is far from over. He just turned negative on antigen test and is still in the window for COVID rebound illness from Paxlovid so he has a 30% chance of being contagious in the next week and having COVID again. He recently had significant spine surgery and was in recovery for that when he got COVID. This illness set back his rehab from spine surgery by a month.

> Due to his age and Ischemic Heart Disease, he requires a full 30 days, at least, for recovery from COVID illness to ensure he has no complications including but not limited to stroke, since he has a history of afib, blood clot, and pneumonia. He is not safe for travel as he needs time to recover from COVID. Travelling now would jeopardize his recovery from COVID and his spine surgery.

Attachment A.

Dr. Merikangas is recovering from an illness; he is in a high-risk category because of his age, his pre-existing conditions, and his history of afib, blood clot, and pneumonia. He is also undergoing a delayed recovery from significant spine surgery. There is a thirty percent chance that he will have COVID again within the next week, which will further expose him to complications from COVID as well as harm his ability to achieve a full rehabilitation from his spine surgery. He notifies the Court of these complications in a timely manner. This is sufficient to establish good cause and compelling circumstances for testimony by videoconference under Federal Rule of Civil Procedure 43(a).

As the government points out, Dr. Merikangas is an "important witness." Resp. of United States to Pet'r's Mot. for Witness to Testify by Videoconference, at 7, ECF No. 738 [hereinafter Gov. Resp.].[1] His testimony will provide relevant evidence supporting both *Strickland* prongs of Runyon's Claim 6. Trial counsel retained Dr. Merikangas, a neuropsychiatrist, in Mr. Runyon's case, but failed to provide Dr. Merikangas with all the information he requested and simply ceased communicating with him. Dr. Merikangas ordered brain scans but counsel did not provide those scans to Dr. Merikangas. When, in 2015, Dr. Merikangas finally reviewed the 2009 MRI at habeas counsel's request, he identified white matter hyperintensities indicative of brain damage. Dr. Merikangas's testimony is relevant to demonstrating Mr. Runyon was a brain-damaged individual at the time of the crime, and that trial counsel acted unreasonably in not providing the MRI to him or discussing with Dr. Merikangas the findings of his examination of Mr. Runyon. His testimony is necessary, and good cause and compelling circumstances exist to permit him to testify remotely.

**B. This motion is timely**

Dr. Merikangas's COVID diagnosis and his ongoing recovery process is a recent occurrence. Undersigned counsel learned over two weeks ago about Dr. Merikangas's health concerns and planned to ask the government's position on Dr. Merikangas's appearance by video at a conference call the parties had scheduled for January 19, 2023. However, on that date, none of the government's three attorneys were present for the scheduled call. Undersigned counsel then requested the government's position by email but did not receive a response. With the hearing date

---

[1] The government wrongly claims that the Fourth Circuit remanded this case for an evidentiary hearing to clarify Dr. Merikangas's findings, noting the Fourth Circuit found the record was "unclear" and the evidence was "murky." Gov. Resp. at 9 (quoting *United States v. Runyon,* 994 F.3d 193, 208 (4th Cir. 2021)). But, when read in context, those quotes clearly refer to the record on whether *trial counsel* made a reasonable decision not to pursue potentially mitigating evidence after a reasonable investigation. *Runyon,* 994 F.3d at 208.

approaching, counsel could not wait longer for a response from the government and filed the instant motion. Under the circumstances, the motion was timely filed.

Runyon did not move to depose Dr. Merikangas because Runyon had no objection to presenting his testimony via videoconference. Once counsel for Runyon learned that Dr. Merikangas needed to testify by videoconference, the government was informed. To the extent that the government found videoconference testimony to be inadequate for their needs, they could have moved to depose Dr. Merikangas.

**C. Contemporaneous video transmission will not prevent adequate cross-examination**

The government argues it will not be able to conduct a "robust cross-examination" via contemporaneous video transmission because it will not be able to use documents if Dr. Merikangas testifies remotely. Gov. Resp. at 8. However, the relevant documents may be sent to Dr. Merikangas via FedEx in a sealed envelope to ensure he does not review them prior to his testimony, and he can then review hard copies of documents as the government asks him to do so. Alternatively, the government can share a screen with Dr. Merikangas and display the documents for Dr. Merikangas's review. Either of these methods will allow Dr. Merikangas to review any document the government establishes is appropriate for consideration during the hearing.

The government cites a case from over twenty years ago to argue that video testimony is not "equivalent" to in-court testimony. Gov. Resp. at 9 (quoting *United States v. Lawrence*, 248 F.3d 300, 304 (4th Cir. 2001)). However, in more recent times and with the advent of improved technology, testimony via video has become a more acceptable substitute for in-person testimony where, as here, there are compelling circumstances for its use. Courts in this district have allowed remote testimony by a forensic expert before, including at the government's request. *See, e.g.*,

*United States v. Keith Brent Duncan,* No. 4:11-cr-112, ECF No. 32 (Mar. 28, 2013) (unopposed motion to permit three government forensic psychologists to testify remotely because of scheduling demands); *United States v. Carissa Brown,* No. 2:20-cr-1, ECF No. 53 (Dec. 18, 2020) (unopposed notice by government of intent to offer testimony of forensic psychologist by remote video in a competency proceeding).

The government also repeatedly makes reference to the need for "enhanced procedural safeguards" because this is a capital case. Gov. Resp. at 9, 12. The government misrepresents the caselaw on this point. The Supreme Court has held that "heightened procedural protections" are accorded to "*capital defendants*," in light of the seriousness of the penalty they are facing—not to the government. *Monge v. California*, 524 U.S. 721, 733 (1998) (emphasis added); *see also, e.g.*, *Eddings v. Oklahoma*, 455 U.S. 104, 117–18 (1982) (O'Connor, J., concurring) ("Because sentences, of death are 'qualitatively different' from prison sentences, this Court has gone to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake.") (citation omitted). The point of these enhanced procedural protections is to ensure "reliability in the determination that death is the appropriate punishment in a specific case." *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Barring Dr. Merikangas—a key witness for Mr. Runyon in this case—from testifying altogether, as the government suggests, would work against that goal.

**D. This Court should receive as substantive evidence in this hearing Dr. Merikangas's opinions and sworn declaration**

Alternatively, Mr. Runyon asks that the Court receive Dr. Merikangas's prior reports—items which are already in the court record—in lieu of live or video testimony. *See* Attachment B,

2009 & 2015 reports. As the government has already acknowledged, "the Court may consider additional exhibits and information already in the record." Notice, at 2, ECF No. 699. The government argues that the reports should not be included because they are "unsworn," Gov. Resp. at 12. Mr. Runyon also requests that the Court receive Dr. Merikangas's sworn statement, attached to this Reply. *See* Attachment C.

The government claims that Dr. Merikangas's reports have no independent indicia of reliability. Gov. Resp. at 14. However, Dr. Merikangas's education and qualifications, as well as the fact that his conclusions align with those of other experts, including the government's experts, constitute indicia of reliability. Government expert Dr. Aguirre agrees the MRI scans reveal white matter hyperintensities, and government experts Drs. Montalbano and Patterson both reported on Mr. Runyon's numerous head injuries, *see* Mem. Order at 4, ECF No. 278 (finding "substantial agreement" among the experts in this case that Runyon "suffered some head trauma in his past"). Like Dr. Merikangas's examination, the neuropsychological testing administered by Drs. Montalbano and Mirsky and the examination performed by Dr. Nadkarni revealed Mr. Runyon's neurological deficits. As government-expert-turned-defense-expert Dr. Dan Martell will explain, the expert reports all tend to converge around the history of head trauma, abnormal test results, and the findings of white matter hyperintensities, and all of this is consistent with medical literature on the effects of blast injuries. Accordingly, Dr. Merikangas's reports are reliable and worthy of consideration by this Court.

Mr. Runyon is entitled to present Dr. Merikangas's reports and sworn statement as part of his proof in this case. U.S. Const. amends. V, VI, VIII, XIV; *Ross v. Moffitt,* 417 U.S. 600, 616 (1974); *Green v. Georgia,* 442 U.S. 95, 97 (1979) (relevant mitigating evidence should not be excluded by rote application of a hearsay rule). The Supreme Court has long upheld admission of

evidence other than live testimony at sentencing. *Williams v. New York,* 337 U.S. 241, 246 (1940) (the sentencing judge may consider many "types of evidence" in setting punishment). The controlling standard for admission of evidence at capital sentencing is that it be relevant, which includes any evidence that has a tendency to support a life sentence. *See Tennard v. Dretke,* 542 U.S. 274, 284–85 (2004); *id.* at 285 ("[A] State cannot bar 'the consideration of … evidence if the sentencer could reasonably find that it warrants a sentence less than death.'" (quoting *McCoy v. North Carolina,* 494 U.S. 433, 441 (1990))).

In *Green v. Georgia,* the Supreme Court reversed the sentence of a capital defendant where the court refused to admit relevant mitigation under the state's hearsay rules. 442 U.S. 95, 97 (1979) ("Regardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment. The excluded testimony was highly relevant to a critical issue in the punishment phase…" (citing *Lockett v. Ohio*, 438 U.S. 586, 604–05 (1978) (plurality opinion))); *see also Holmes v. South Carolina*, 547 U.S. 319, 331 (2006) (the exclusion of third-party culpability evidence under state evidentiary rules violated defendant's right to a fair trial). The Supreme Court has explained:

> "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane* [*v. Kentucky,* 476 U.S. 683, 690 1986)]…(quoting *California v. Trombetta,* 467 U.S. 479, 485...(1984); citations omitted). This right is abridged by evidence rules that "infring[e] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" [*United States v.*] *Scheffer*, [523 U.S. 303, 308 (1998)]…(quoting *Rock v. Arkansas,* 483 U.S. 44, 58, 56… (1987)).

*Holmes*, 547 U.S. at 324–25; *see also Chambers v. Mississippi,* 410 U.S. 284, 302–03 (1973) (due process protects a criminal defendant's right to present a defense). The Court regards the

unrestricted scope of mitigating evidence necessary to "be sure that the sentencer has treated the defendant as a 'uniquely individual human bein[g]' and has made a reliable determination that death is the appropriate sentence." *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989) (quoting *Woodson*, 428 U.S. at 304, 305) (alteration in original).

Excluding relevant evidence from these proceedings would undercut Mr. Runyon's ability to prove his ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), and would violate the Eighth Amendment's requirements of individualized consideration, *Tennard*, 542 U.S. at 274; *McCoy*, 494 U.S. at 441; *Penry*, 492 U.S. at 319, and heightened reliability, *Woodson*, 428 U.S. 280; *see also Payne v. Tennessee,* 501 U.S. 808, 822 (1991) ("We have held that a State cannot preclude the sentencer from considering 'any relevant mitigating evidence' that the defendant proffers in support of a sentence less than death.... [V]irtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances." (quoting *Eddings*, 455 U.S. 104)).

### E. Mr. Runyon does not assert sentencing counsel "redirected" the reports of the MRI and PET scans

While not relevant to the motion pending before the Court, Mr. Runyon must clarify a factual misrepresentation in the government's responsive pleading. The government claims "Petitioner has asserted a claim that his trial defense counsel redirected the reports of the MRI and Pet scans …." Gov. Resp. at 4. The government does not provide a citation for this theory, and it is unsupported by the facts of this case. Mr. Runyon does not assert trial counsel "redirected the reports of the MRI and Pet scans." Docket entries show that Sentencing Counsel Hudgins filed a motion on August 14, 2009, requesting that the Court "allow the PET scan and MRI test results and films to be released directly to counsel from either the healthcare provider, the Portsmouth Sheriff's Office or the United States Marshall's [sic] Service so that getting the materials to the

defense expert can be expedited." Mot. to Release Test Results to Counsel, ECF 275 (Aug. 14, 2009). The Court granted that motion the same day. The record rebuts the "redirecting" theory, and it is a straw man intended to divert this Court from the critical issue in this case: whether trial counsel conducted a constitutionally adequate investigation. *Strickland,* 466 U.S. at 790–91.

**F. Conclusion**

For these reasons, the motion to allow Dr. Merikangas to testify via video should be granted. In the alternative, the Court should admit his reports and sworn statement (Attachments B and C) as substantive evidence in this proceeding.

Respectfully Submitted,

/s/Elizabeth J. Peiffer
Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

/s/Dana C. Hansen Chavis, *pro hac vice*
Dana C. Hansen Chavis
Asst. Federal Community Defender
Federal Defender Services of Eastern Tennessee
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Dana_Hansen@fd.org

# CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, I have electronically filed the foregoing **Reply** with the

Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF)

to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax (202) 305-9779
Carrie.Ward@usdoj.gov

/s/Nancy Hernandez
Nancy Hernandez
Paralegal, Capital Habeas Unit
nancy_hernandez@fd.org