## Declaration of James R. Merikangas, MD

My name is James R. Merikangas, MD.  I am a medical doctor with Board and Specialty Certifications as follows:  American Board of Psychiatry and Neurology, Diplomate, Certified in Psychiatry; American Board of Psychiatry and Neurology, Diplomate, Certified in Neurology; and Diplomate, American Academy of Pain Management.

I have written two reports on David Runyon. The first report was written on August 5, 2009, and was preliminary in nature. The second report was written on September 25, 2015.  I incorporate the substance of those reports into this declaration.  I also address other matters related to my interactions with trial counsel.

At the request of trial counsel, I conducted a neurological examination of Mr. Runyon at the Portsmouth City Jail on 7/29/2009.  On examination he was a 5'3" tall slight of build Korean American left-handed male in no acute distress. His blood pressure was elevated at 170/102, and his pulse was 100. His head circumference was abnormally small at 57 1/2 cm. He had multiple scars on his head and face from trauma, including an automobile accident that rendered him unconscious and contributed to his PTSD. His right forehead does not wrinkle with facial expression and his right lip sags from a peripheral nerve injury, which may be congenital or the result of beatings he sustained in childhood. There is a lump on the vertex of his scalp from trauma. His cranial nerves, including sense of smell were normal except as noted above. His deep tendon reflexes were symmetrically increased at 3+ and his palmomental and Babinski reflexes were absent. The distal phalanges of the thumbs were hyper-extensible. Gait, strength coordination and tone were normal, as was his sensory examination

Because of his history of multiple head injuries, beatings in childhood, and severe headaches, I ordered an MRI scan of the brain and a PET scan of the brain.

In 2009, my impression was that Mr. Runyon was suffering from delusions or had grandiose wishful thinking. I found he had impaired executive functioning suggestive of frontal lobe brain impairment. I prepared a brief report, dated August 5, 2009.

I did not hear anything further from Mr. Runyon's attorney. Mitigation investigator Sheila Cronin was my main contact with the trial defense team.  Although I ordered the MRI and the PET scan, I never saw the images. A disk of the scans was not in my file.  The first time I saw the imaging was when habeas counsel subsequently provided a copy to me.

If I had been called to testify in 2009, I would have testified that Mr. Runyon was a brain damaged individual with migrainous headaches and a disorder of executive functioning with symptoms suggestive of a psychotic thought process.

The significance of Mr. Runyon's impaired executive functioning is that he lacks inhibition. He is less able to control his thinking and he is more impulsive in making decisions which leads to bad

Page 1 of 5

Attachment C

judgment. Another consequence of Mr. Runyon's impairment is gullibility. He is more likely to fall prey to designing others.

In 2015, Mr. Runyon's habeas counsel contacted me. Habeas counsel provided an exhaustive collection of records, including:

1.    Affidavit of Sheila M. Cronin;
2.    Social history of David Runyon, prepared by Sheila Cronin, dated August 8, 2009;
3.    Memo to counsel—report of telephone call to attorneys Babineau and Woodward re: David Harold Runyon (adoptive father) dated August 21, 2008;
4.    David Dombrowski (biological father) trial testimony;
5.    Suk Cha Runyon (mother) trial testimony;
6.    Mark Runyon (brother) trial testimony;
7.    Suk Cha Runyon medical records;
8.    David Dombrowski progress notes dated March 9, 2009, from VA clinic;
9.    Charles Ferguson, high-school friend, interview dated April 4, 2009, and trial testimony;
10.   Robert Lockwood, childhood friend, interview dated June 14, 2009, and trial testimony;
11.   Michael Grbic, friend of David, and Michael's parents Andro and Sharon Grbic;
12.   Kansas Department of Corrections, employee records;
13.   Letter from former employer, Premiere Palace;
14.   Letter from David Runyon about his voluntary re-enlistment in the Army;
15.   Thomas Preston, Army friend, interview dated October 4, 2008;
16.   Scott Linker, former brother-in-law interview and trial testimony;
17.   Robert and Debbie Seeger, friends, interview dated November 9, 2008;
18.   Larry Eaglebear, Army friend, interview dated November 22, 2008, and trial testimony;
19.   Edgar Hannaman, Army supervisor, interview;
20.   Maria Runyon, ex-wife, interview dated April 26, 2008, and trial testimony;
21.   Robin and Jim Carol, friends of former wife Maria and David, interview dated April 27, 2008;
22.   Captain Jeffrey Harris, Fayetteville, Georgia, Police Department; David's supervisor, interview dated August 31, 2008;
23.   Fayetteville Police Department employment records, including disciplinary records;
24.   Robin Carroll, friend of Maria Runyon, interview dated January 27, 2009;
25.   Thomas Kumorowski, friend and coworker, interview dated June 10, 2009, and trial testimony;
26.   Phyllis Provost, PhD., friend, ex-wife of Thomas Kumorowski interview dated June 14, 2009, and trial testimony;
27.   Police affidavit from Maria Runyon regarding February 7, 2001, domestic violence incident;
28.   David Runyon's resume;
29.   Virginia Pina, former girlfriend, interview dated December 27, 2008, and trial testimony
30.   Handwritten letter from David to Sarah, his girlfriend at the time of his arrest (estimated the letter was written around 2006-2007);
31.   Chad Costa, friend, interview dated April 8, 2009;

Attachment C

32. Clinical trial drug list, compiled by mitigation specialist, Sheila Cronin, dated April 8, 2009;
33. Statement of George Koski, who sold David a gun;
34. School records;
35. Medical records;
36. Military records;
37. Mental health evaluations, summary of prior testing;
38. Preliminary report of Evan Nelson, PhD.;
39. Raymond Patterson, MD, evaluation;
40. Paul Montalbano, PhD, evaluation
41. Allan Mirsky, PhD, preliminary report;
42. James Merikangas, MD, preliminary report;
43. Presentence report—physical and mental health excerpt;
44. David Runyon writings from journal 2006-2007;
45. Memos on pre-trial interviews with David Runyon;
46. David Runyon pre-trial correspondence;
47. Court records: guilt phase, eligibility phase, and penalty phase closing arguments; and
48. Direct appeal opinion-facts of the case section.

On September 24, 2015, I examined Mr. Runyon at the Federal Prison in Terre Haute, Indiana. He was alert, oriented and cooperative. He reported that he was receiving Zoloft 50 mg per day since March. He complained of tinnitus in his right ear, reportedly caused by a concussion in 2009 when he was assaulted in jail. He reports severe headaches mainly on the left side of his forehead with sharp pain behind his left eye. Pressure to that area relieves the pain. His blood pressure was 100/80 and his pulse was 80 and regular. His face was asymmetrical with his lip drooping down on the right and with slight ptosis of the left eye. On examination of the cranial nerves: I, he could distinguish cloves and vanilla. II, Pupils round, regular and reactive to light and accommodation. Discs and fundi appeared normal. He was myopic. III, IV, VI, Extraocular movements full and symmetrical, Opticokinetic nystagmus intact. V, VII, trouble closing right eye independent of the left. Left brow and forehead wrinkled and right did not. Left lip raised more than right. VIII, weber to the left, acuity reduced on the right. IX, X, XII, normal. High round palate was noted.

Deep tendon reflexes were abnormal. Biceps 4+ on right, 3+ on left. Triceps 3+ on right, 2+ on left. Brachioradialis 3+ on right, 2+ on left. Both ankles and Patellar reflexes 4+ with ankle clonus right greater than left. Plantar reflexes down-going, Palmomental negative. Romberg was positive with falling back and to the right. Abdominal reflexes diminished on the left lower quadrant. No drift of the outstretched arms. Sensory examination intact to vibration, with some hyperaesthesia of the left sole of the foot. He was right-handed. Examination of the left shoulder suggested a torn rotator cuff. MRI of that joint was recommended. A 5-hour glucose tolerance test was also recommended for the evaluation of his mental state, which could reveal reactive hypoglycemia that would impinge upon his ability to have rational thought.

Attachment C

I reviewed the MRI and PET scans of the brain done in August 2009. They revealed multiple white matter hyperintensities on the MRI consistent with his history of head injuries and migraine. The PET scan was non-diagnostic.

Mr. Runyon suffered brain damage from age 3, exacerbated by an auto accident on November 9, 1996, that resulted in a personality and mood change. He had an additional head injury when assaulted in jail. His brain injury has resulted in impaired executive functioning and decision making. His psychological testing suggests paranoia and delusions. He also has a history of post-traumatic stress disorder (PTSD) diagnosed previously. PTSD may account for some of his disordered mood and cognition. The paranoia and delusions may represent a formal thought disorder, which may be a consequence of his brain injuries, mood disorder, and PTSD. Mr. Runyon's history of PTSD affects his perceptions and ability to function in everyday life.

Mr. Runyon suffers delusional, grandiose thinking. This means he has an impaired view of his circumstances or life situations. He is vulnerable to being taken advantage of and manipulated.

Mr. Runyon suffers impaired executive thinking. This means his ability to assess his situation and respond with logical choices and actions is impaired. Mr. Runyon makes impulsive decisions and lacks the cognitive flexibility to think his decisions through.

Mr. Runyon's brain damage, mood disorder, formal thought disorder, and PTSD each individually affects his daily functioning; combined they form a severe mental and emotional disturbance. Nothing I have reviewed about the offense for which Mr. Runyon was convicted is inconsistent with my findings.

Persons with brain impairments like Mr. Runyon are easily susceptible to being taken advantage of because they lack judgement, and their perception of reality is often skewed. In Mr. Runyon's case, for example, he was told that the victim was molesting his own children. While a non-brain damaged individual may be able to rationally examine and dismiss this sort of allegation, Mr. Runyon's impairments prevent him from easily doing so.

The fact that the offense was seemingly planned and premeditated is not inconsistent with what we know about brain impairment. The concept of impulsivity is often misunderstood by laypersons. When neuropsychiatrists with expertise in traumatic brain injury talk about impulsivity they are referring to a broad group of symptoms. It refers not only to hasty decision-making but also to the inability to be able to weigh all the information and make a logical, reasoned decision. It also sometimes refers to the inability to change course: the consequence of such impulsive decision-making and poor judgment is that once Mr. Runyon determined a course of action, he was unlikely to adjust or change his trajectory. This behavior is consistent with the trial evidence of Mr. Runyon's immediate adoption and pursuit of an ill-conceived plan. Importantly, independent of its impact on Mr. Runyon's alleged behavior regarding his role in the crime, this evidence and interpretation is essential to an accurate understanding of his individual character and life experiences.

Page 4 of 5

Attachment C

While my 2015 report is more detailed than my 2009 preliminary report, I would have easily reached the same conclusions in 2009 if I had been provided the MRI scans. The images on the 2009 MRI indicate that Mr. Runyon is brain damaged. The MRI reveals white matter hyperintensities which corroborate this finding of brain damage and are consistent with a history of head injuries. But it is important to note that people with brain damage can have normal MRI scans. In this case, there is a wealth of independent evidence demonstrating Mr. Runyon is a brain damaged person apart from the MRI. As I stated in 2009 based on the evidence available at that time, "he clearly has impaired executive functioning suggestive of frontal lobe impairment." The abundance of additional evidence provided to me by habeas counsel supports and confirms my preliminary conclusion from 2009.

I recommended to habeas counsel a five-hour glucose tolerance test. The test would detect when Mr. Runyon has reactive hypoglycemia. If he does suffer from hypoglycemia, that would be an additional factor that impinges upon his ability to have rational thought. If that test had turned out negative, it would not have affected my conclusion that Mr. Runyon suffers brain damage.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on the ___2___ day of February, 2023.

_____
James A Merikangas, M.D.

Page **5** of **5**

Attachment C