**Declaration of Evan S. Nelson, Ph.D., ABPP, CSOTP**

1. I am a Licensed Clinical Psychologist in the Commonwealth of Virginia with an office in Midlothian, Virginia.

2. I have worked on over 13,000 cases. I do not have an independent memory of David Runyon's case, other than the fact that he earned some of his income by being a subject in medical research. The information in this Declaration is based upon my limited review of records described. I have not been retained as an expert in postconviction proceedings, and I did not perform a comprehensive review of the files in this case post-trial.

3. In 2008, I was hired by attorney Jon Babineau to evaluate his client, David Runyon. Mr. Babineau was removed from the case due to a conflict, and was replaced by attorney Steve Hudgins. Mr. Hudgins did not communicate with me much about the case and my involvement in the case fizzled out.

4. I recommended that Mr. Babineau obtain a neuropsychological evaluation of David Runyon. In a letter dated December 2, 2008, I advised: "Given his reported history of losing consciousness, a long-standing problem with sagging on the right side of his face (a potential soft neurological sign), and repeated failures to achieve at a level commensurate with his intellectual ability, it is plausible that neuropsychological deficits are a defining element of his personality and behavior. If so, that would be relevant to mitigation if there is a death penalty hearing."

5. In a two-page letter dated February 2, 2009, I summarized my preliminary assessment of the case for Mr. Babineau. This was not a final report. My final, comprehensive reports typically comprise 30-100 pages. In the letter, I noted that the "data collection process is still ongoing," and "[i]t remains to be seen if neuropsychological deficits contributed to why Mr. Runyon had such poor achievement in school, work, and relationships." I requested Mr. Babineau to, "continue to send me more information as the various collateral witnesses around the country are located." In this letter I referred to Mr. Runyon as a "pathological narcissist." After a review of some materials, I realized I misused the term pathological narcissist to describe David Runyon. I should have described him as an egocentric person. An egocentric person is immature and self-focused, like an adolescent.

6. If I had received additional relevant information, such as neuropsychological testing, other medical records, witness statements, and other social history information, I would have considered it when forming my final opinions, advising and consulting with attorneys, and writing a final report. My typical process would have been to return to meet with and continue an evaluation of the defendant once I had obtained all of the information in the case.

7. When I am retained as a social history witness, I testify to the formative factors in a person's life and explain, based on my expertise, the significance of such factors.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on the __6__ day of February, 2023.

_Evan S. Nelson, Ph.D._

_____
Evan S. Nelson, Ph.D., ABPP, CSOTP