**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

|  |  |  |
|---|---|---|
| | ) | |
| DAVID ANTHONY RUNYON, | ) | |
| Petitioner, | ) | Original Criminal No. 4:08-cr-16-3 |
| | ) | Original Civil No. 4:15-cv-108 |
| vs. | ) | **CAPITAL § 2255 PROCEEDINGS** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | HON. REBECCA BEACH SMITH |
| Respondent. | ) | |
| | ) | |

**RESPONSE TO UNITED STATES' EVIDENTIARY HEARING MEMORANDUM**

PETITIONER, DAVID ANTHONY RUNYON, files this pleading to address several misstatements and errors in the government's Evidentiary Hearing Memorandum, Doc. 743.

**I.     Timeliness of disclosures**

Sprinkled throughout the government's pleading are accusations and insinuations that Mr. Runyon's counsel has not timely complied with pre-hearing discovery. Doc. 743 at 6, 7. This is inaccurate. In fact, it is the government that has consistently failed to comply with agreed-upon disclosure deadlines, in ways that harm Mr. Runyon's ability to fully and fairly litigate his *Strickland* claim on remand.

On November 17, 2022, the parties filed a Joint Proposed Scheduling Order with this Court reflecting a joint agreement that expert witness information pursuant to Rule 16 of the Federal Rules of Criminal Procedure would be exchanged no later than December 2, 2022. Doc. 707 at 1. The agreement included a catchall provision that any remaining disclosures would be exchanged by December 30, 2022. Though the Court never entered the proposed order, both parties agreed to abide by this schedule.

As the December 30, 2022, deadline approached, it became clear that not all disclosures would be exchanged. On December 26, 2022, the government contacted undersigned counsel to say that Dr. Geoffrey Aguirre would not be able to meet the agreed-upon disclosure date, but he could provide his report by January 3, 2023. Undersigned counsel agreed to alter the schedule to make the final day to exchange expert disclosures January 3, 2023. Mr. Runyon's counsel complied with this deadline. Then, at 9:05 pm on January 3, Mr. Runyon's counsel emailed the government noting that they still had not received anything. On January 4, 2023, the government replied and informed counsel that "Dr. Aguirre said last night that his report is coming soon…" Attachment A. Two days later, the government forwarded an unsigned Microsoft Word document from Dr. Aguirre (dated January 4, 2023), referring to it as a "'draft' report." Attachment B. Finally, on January 20, 2023, more than two full weeks after even the amended deadline, the government provided to undersigned counsel Dr. Aguirre's signed report and disclosures which revealed significant new information and new arguments of the government's case.

Similarly, Mr. Runyon repeatedly sought information about government experts Drs. Montalbano and Patterson. The government suggested that they should not be treated as expert witnesses and Rule 16 expert disclosures were unnecessary because they were "strictly fact experts." Attachment C. Undersigned counsel continued to inquire about the substance of their proposed testimony. Last week, on January 31, 2023 (28 days after the disclosure deadline), the government sent Mr. Runyon's counsel the curriculum vitae and caselists for Drs. Montalbano and Patterson.[1]

---

[1] This issue has since been resolved. On February 2, 2023, the parties agreed that Drs. Montalbano and Patterson are fact witnesses and have agreed on a stipulation; based on that stipulation, it was agreed there is no need for Drs. Patterson and Montalbano to testify. The stipulation states that both of those doctors provided expert reports for the government before the penalty phase of trial

2

It is simply incorrect to suggest that Mr. Runyon's counsel has not complied with the agreed-upon disclosure schedule or that the government "has not received reciprocal disclosures from certain of the Petitioner's experts, including Dr. Siddartha Nadkarni." Doc. 743 at 6. Mr. Runyon's counsel complied with the agreement between the parties despite the lack of reciprocal timeliness. In fact, on January 20th when the government provided the long-overdue Aguirre report, Mr. Runyon's counsel noted that all of his experts' disclosures were provided on or before January 3, 2023, and specifically asked the government: "is there something you think you have not received?" Attachment D. Because undersigned counsel received no response, it is surprising to see the government now impugning counsel's diligence in a filed pleading.

## II.   Additional discovery

In a previously-filed motion, Doc. 737, Mr. Runyon requested reports, notes, and any communication related to Dr. Daniel Martell, as well as notes and information from the government's interviews with Mr. Runyon's trial counsel. The government objected.

### A.  Information related to trial counsel meetings

The government's position is that Mr. Runyon is only entitled to the interview reports created by the federal agent after the government meeting with trial counsel. Doc. 743 at 8. According to the government, "[t]o the extent there is any daylight between those interview reports and the declarations obtained through habeas counsel, this will certainly be the subject for examination at the evidentiary hearing." *Id.* This assertion is insufficient to resolve Mr. Runyon's request for several reasons.

---

and that trial counsel received those reports. Because these witnesses will not testify as experts at the hearing, and because the parties have stipulated to the content of their testimony as fact witnesses, Mr. Runyon's counsel has not raised an issue as to the untimeliness of the government's expert disclosures. The parties plan to offer an oral stipulation to the Court.

First, upon information and belief, the government has met with trial counsel Stephen Hudgins multiple times—as recently as last week, and for several hours at a time. Mr. Runyon has only received a report from one single occasion of meeting with him.[2] Mr. Runyon is entitled to discover the substance of *each* of these pre-hearing preparatory meetings.

Second, the government's suggestion that the only means Mr. Runyon has of discovering the substance of these conversations is through examination on the witness stand ignores its duty under both the law and Department of Justice policy, a duty which covers not only exculpatory information but also any potential impeachment evidence. *Giglio v. United States*, 405 U.S. 150, 154 (1972). Any and all conflicting statements, no matter how minor, must be disclosed.

In 2010, after the failure to disclose exculpatory information undermined the prosecution of a high-profile case, the Department of Justice issued a nation-wide memorandum (the "Ogden Memo") regarding criminal discovery. Several key points in that memo are relevant here. The Memo made clear, for example, that "[m]aterial variances in a witness's statements should be memorialized, even if they are within the same interview, and they should be provided to the defense as *Giglio* information." https://www.justice.gov/archives/dag/memorandum-department-prosecutors. Furthermore, even though trial preparation meetings generally do not need to be memorialized, "prosecutors should be particularly attuned to new or inconsistent information disclosed by the witness" and "if the new information represents a variance from the witness's prior statements, prosecutors should consider whether memorialization and disclosure is necessary consistent with" its *Giglio* duty. *Id.* The Ogden Memo also instructs that, in most cases, "the format of the information does not determine whether it is discoverable.... information that the prosecutor

---

[2] The report is from March 29, 2022. Mr. Runyon received an additional report from an interview on the same day of trial counsel Lawrence Woodward.

receives during a conversation with an agent or a witness is no less discoverable than if that same information were contained in an email." *Id.* Finally, the Memo made clear that DOJ policy encourages prosecutors "to provide discovery broader and more comprehensive than the discovery obligations." *Id.*

### B.  Information regarding Dr. Martell

The government's pleading suggests that its disclosure of Dr. Martell's favorable position highlights its awareness and willingness to comply with its *Brady* obligations. Doc. 743 at 8. In fact, the government still has not discharged that obligation. In mid-November, on a phone call with the government, Mr. Runyon's counsel was informed that counsel should call Dr. Martell and interview him because he is favorable to the case. No other details about this disclosure have ever been provided.

As discussed above, the government's *Brady* duty is greater than simply encouraging counsel to speak to a witness because he could be favorable. Dr. Martell was hired by the government in early 2022 and Mr. Runyon's counsel sent him the MRI in May 2022. What constitutes *Brady* evidence in this situation is the particular statements and the context of those statements: What exactly did Dr. Martell tell the government? Who was present? What did they ask him that elicited the exculpatory answers? What evidence was he reviewing? Did he make any comments about the strength and substance of the government's case? Of the government's witnesses or their reports? The Ogden Memo lists what a prosecutor should review to ensure all such discovery is properly disclosed. The list includes; agency files, investigative files, files of related civil proceedings, case-related communications, agent notes, witness meetings and interviews etc. https://www.justice.gov/archives/dag/memorandum-department-prosecutors.  In this case, Mr. Runyon was only informed that Dr. Martell could be helpful. The government should

be required to disclose the actual substance of the actual *Brady* and *Giglio* issue.

### III.    Dr. Nadkarni

The government objects to the proposed testimony of Dr. Nadkarni claiming that it is irrelevant and untimely. These arguments are based on a misunderstanding of the law and the facts in this case.

### A.  Relevance

The government argues that Dr. Nadkarni's testimony is irrelevant because Dr. Nadkarni was not retained by trial counsel and Mr. Runyon had other expert opinions in his § 2255 motion. Doc. 753 at 15 ("The record does not reflect that counsel would have had reason to have retained or presented testimony of Dr. Nadkarni, given the numerous other experts retained by counsel at trial and in support of the petitioner's Section 2255 motion in 2015."). This argument misses the mark. First, the scope of the prejudice analysis in a *Strickland* claim is not limited solely to what evidence trial counsel collected or which experts they may have hired. In fact, the opposite is true: the crux of such an analysis is determining what trial counsel could and would have done differently if they were constitutionally effective. *See, e.g.*, *Rompilla v. Beard*, 545 U.S. 374, 390–93 (2005) (discussing all the follow-up and further fact development effective trial counsel would have likely conducted). The question in Mr. Runyon's case is not limited to the direct effect of Dr. Merikangas's MRI opinion: the question is what would constitutionally effective counsel have done once they were informed the MRI did reveal organic brain damage. Dr. Nadkarni's testimony provides part of that answer.

Moreover, Dr. Nadkarni was hired by § 2255 counsel, in part, because of the age and health of the other experts in this case. Counsel had serious concerns about the ability of all of his experts to be available to testify at a hearing. Dr. Merikangas in is in his 80s, and as this Court is aware,

Dr. Dudley retired from practice and is no longer available to testify. Dr. Nadkarni's testimony therefore is not duplicative, as the government alleges, but rather is an important piece of the *Strickland* prejudice proof.

B. **Timeliness**

On the same pages of the pleading where the government argues Dr. Nadkarni's testimony is "cumulative and redundant," the government asks this Court to exclude it because it is a "novel" theory. Doc. 743 at 16. Mr. Runyon is not presenting a new or novel theory. Dr. Nadkarni's opinion relates directly to the issue of whether Mr. Runyon has brain damage, a ground for relief which was pled in his initial § 2255 motion. This Court should reject the government's attempt to improperly limit the scope of the Fourth Circuit remand.

Respectfully Submitted,

/s/Elizabeth J. Peiffer
Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

/s/Dana C. Hansen Chavis, *pro hac vice*
Dana C. Hansen Chavis
Asst. Federal Community Defender
Federal Defender Services of Eastern Tennessee
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Dana_Hansen@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2023, I have electronically filed the foregoing **Response** with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax (202) 305-9779
Carrie.Ward@usdoj.gov

/s/Nancy Hernandez
  Nancy Hernandez
  Paralegal, Capital Habeas Unit
  nancy_hernandez@fd.org

8