**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

DAVID ANTHONY RUNYON,       )
      Petitioner,           )      Original Criminal No. 4:08-cr-16-3
                         )      Original Civil No. 4:15-cv-108
      vs.                 )
                         )      **CAPITAL § 2255 PROCEEDINGS**
UNITED STATES OF AMERICA,   )
      Respondent.        )      HON. REBECCA BEACH SMITH
                         )

### MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR ATTORNEY BALES TO WITHDRAW

DAVID ANTHONY RUNYON, by and through counsel, Susanne Bales, (hereinafter "Bales") of Federal Defender Services of Eastern Tennessee, Inc. (FDSET), renews her motion that the Court allow her to withdraw from representing Mr. Runyon as counsel of record in this case. She has been directed to seek this withdrawal by her Federal Defender because a conflict of interest prevents her from ethically continuing with her representation in Mr. Runyon's case. In addition, her withdrawal would serve the interests of justice. *Martel v. Clair*, 565 U.S. 648, 652 (2012). In support of this request, Mr. Runyon states as follows:

Mr. Runyon is an indigent federal prisoner, sentenced to death. ECF No. 313. As such, he is entitled to appointment of counsel for the development and presentation of claims for relief pursuant to 28 U.S.C. § 2255. *See* 18 U.S.C. § 3599(c). On November 10, 2014, the Court appointed counsel, Michele Brace, a staff attorney with the Virginia Capital Representation Resource Center (VCRRC). ECF No. 410. After her appointment, Brace filed a renewed motion to for the appointment of co-counsel, Mot. Appoint Counsel, ECF No. 432 (Mot.). Brace sought

the appointment of FDSET, with Dana Hansen Chavis, supervising attorney for that office, appearing; Brace noted that Chavis was prepared to assign assistant federal public defender Bales to assist in the case. *Id.* at 8, ECF No. 433. The motion sought Chavis' appointment. Mot., ECF No. 432.

On May 22, 2015, Chavis and Bales each filed an application to appear *pro hac vice*. ECF Nos. 436 (Chavis), 437 (Bales). Chavis' application was granted, Order, ECF No. 438, and Bales's was denied, Order, ECF No. 439. The Court's June 3, 2015, Order, ECF No. 439, noted that Brace's motion did not ask that Bales be appointed, and provided no information about her qualifications and no justification for appointing third counsel. Order at 2–3, ECF No. 439.[1] The Court advised that, if there was a specific reason for third counsel, the Court should be notified. (*Id.* at 3, n. 3). The Court indicated that Chavis and Brace were free to work with colleagues on the case, including Bales.

On October 12, 2022, Mr. Runyon filed a motion for the appointment of Bales as counsel. Mot. Appointment Co-Counsel, ECF No. 691. After argument, the Court took the motion under advisement and directed Petitioner to renew the motion should the need arise. Order at 2, ECF No. 695. Mr. Runyon renewed the motion, and it was granted in part.

The evidentiary hearing began on February 7, 2023. On Day 5 of the hearing, the Government informed the Court that Ms. Chavis provided a copy of proposed **Exhibit 167** to the Government that morning. The Government notified Ms. Chavis that it had never received the document. The Government explained to the Court that the proposed exhibit was relevant to the

---

[1] FDSET, like most federal public defender offices, customarily seeks the appointment of the office as a single entity as its lawyers, paralegals and others collaborate extensively. In this instance, Ms. Chavis, and not FDSET as a whole, was appointed to appear for Mr. Runyon.

testimony of the trial attorneys and had not been provided. (*See* Tr. at 973–74). Ms. Chavis informed the Court that she did not recollect having disclosed the document, but that she did not have a way of confirming that without access to a computer. (*Id.* at 974). The document was not offered into evidence.

The next day, Ms. Bales notified the Court that Mr. Runyon's counsel had discovered that additional materials had not been disclosed and that counsel was reviewing files to facilitate a complete and accurate disclosure. The Court directed counsel to report back to the Court later in the day, answering the questions of: how many documents had not been disclosed, how long it would take to accomplish a complete disclosure, and how the search for discoverable material was being conducted. When counsel reported back to the Court, counsel reported there was not a comprehensive list of disclosed materials. Counsel asked for additional time to investigate and complete the disclosures. The Court ordered various disclosure deadlines and directed the parties to report to the Court at 4 pm on February 15, 2023, if the disclosures had not been accomplished.

On February 15, 2023, the Court convened a hearing to assess the status of the production of documents from Petitioner's counsel. Once it determined that the documents had not been produced, the Court inquired as to what progress had been made. Ms. Bales informed the Court progress had been made but the disclosures were incomplete. She also informed the Court that she had been locked out of the hotel room where attorneys on the case were working from a shared hotspot and that she could not access the files. (*Id.* at 1040–41).

Next, the Court inquired of Ms. Chavis, who explained that she believed their failure to provide the discoverable documents was due to an oversight due to file naming that made two of the files appear to be duplicates. (Tr. Ms. at 1042–43). Ms. Chavis also informed the Court that, because her co-counsel were "accusing [her] of misconduct," she had changed the lock in the room

with the hotspot that contained access to the files and computer.  (*Id.* at 1043). By doing this, Ms. Chavis intended "to protect my own records that are contained within the room because of the false accusations that are being leveled against me by my own co-counsel and that I can no longer trust them." (*Id.* at 1045).  Ms. Chavis further stated that a legal assistant was told to contact Mr. Chavis, the investigator working on Mr. Runyon's case, in order to gain access to the room. (*Id.*)[2] Based on this questioning, the Court observed, "[t]here is obviously a breakdown in the petitioner's team." (*Id.* at 1048).  In open court, Ms. Chavis moved to withdraw from representing Mr. Runyon. (*Id.* at 1052).  The Court conducted a colloquy of Mr. Runyon.  (*Id.* at 1052–56) and then granted the motion.  The Court also appointed Bales as counsel for Mr. Runyon.

After a short recess, Ms. Bales informed the Court that she was instructed by her supervisor and the federal defender that she needed to withdraw as well because of the allegations that had been presented to the Court.  She argued that her continued representation would not be in the best interest of her client.  (*Id.* at 1059).  Although the Court allowed Ms. Chavis to withdraw from her representation of Mr. Runyon, the Court declined to grant Ms. Bales's motion.  (*Id.* at 1063).  The Court ordered Ms. Bales to file any motion to withdraw by February 17, 2023.  (*Id.* at 1064).

### Law and Argument

Under the local rules of this Court, Section II of Part Six of the Rules of the Virginia Supreme Court govern the ethical responsibility of lawyers. *See* L.R. 83.1(J). Under those rules, and the Tennessee Rules of Professional Conduct, Ms. Bales is conflicted from further representation of Mr. Runyon.

---

[2] Mr. Chavis has since been removed from any involvement with Mr. Runyon's case.

Courts are charged with upholding "the ethical norms embodied in the Code of Professional Responsibility." *See United States v. Miller*, 624 F.3d 1198, 1201 (3rd Cir. 1980). Under those rules, because they work together in the same organization, the potential conflict created by Ms. Chavis is imputed to Ms. Bales and she must be permitted to withdraw. Stated another way, Ms. Bales is tainted by the potentially unethical conduct of Ms. Chavis (and possibly other FDSET employees) and can no longer effectively represent Mr. Runyon. As a death- sentenced prisoner, he deserves more.

An attorney who is or was professionally associated with an attorney in the same firm is presumed to be "tainted," that is, "to have learned the confidences of all of the firm's clients." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982). *See NCK v. Bregman*, 542 F.2d 128 (2nd Cir. 1976) (holding that co-counsel may be presumed tainted upon showing of "possibility" of that co-counsel received client confidences). *See also Laskey Bros. of W. Va. v. Warner Bros. Pictures, Inc.*, 224 F.2d 824, 826 (2nd Cir. 1955). A presumption of taint can be shown by "substantial communications, joint preparation for litigation or the apparent receipt of confidences." *Baker v. Bridgestone/Firestone*, 893 F. Supp. 1343, 1364 (N.D. Ohio 1988).

## I.    Ms. Chavis's conflict is imputed to Ms. Bales under Rule 1.10 of the Virginia State Bar.

Rule 1.10(a) bars the representation of lawyers associated in a firm when the lawyer knows or reasonably should know that any one of them practicing alone would be prohibited from doing so.[3] The prohibition is premised on the duty of loyalty to the client: "Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the

---

[3] Rule 1.10 of the Tennessee Rules of Professional Conduct similarly applies.

rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." *See* Comment [2].

Federal Defender Services of Eastern Tennessee, Inc. functions as a law firm. In fact, Comment [1b] to the Rule states as much: "Lawyers employed in the same unit of a legal service organization constitute a firm, but not necessarily those employed in separate units." Ms. Chavis and Ms. Bales worked together in the office's capital habeas unit for many years; for a large portion of that time, Ms. Chavis was Ms. Bales's immediate supervisor. Ms. Bales has been an integral part of the FDSET team, working together with Ms. Chavis with the same investigators and supporting staff. Further, efforts to understand why the disclosures were not properly made involves several members of the FDSET staff, ranging from an investigator to paralegals to attorneys.

The conflict must be imputed to the entire FDSET office. The demanding nature of habeas work requires extensive collaboration. Members of the capital habeas unit work closely with one another on a daily basis on all aspects of each case. They engage in regular staff meetings to brainstorm issues. Paralegals, attorneys, and investigators obtain and organize file documents. When a major pleading deadline approaches, attorneys and paralegals work together to finalize the work product. As a result, a conflict involving Ms. Chavis necessarily must apply to the entire office.

To ensure compliance with bar standards given the unusual situation arising here, FDSET has consulted with legal experts in professional ethics. Lucian Pera, Esq. is one of the nation's leading ethics practitioners. The ABA Center for Professional Responsibility has awarded him the Michael Franck Award, their highest honor for work in the field of ethics and professional

responsibility. According to Mr. Pera, under Rule 1.10 of both the Virginia and Tennessee rules of professional conduct, all attorneys associated with FDSET have a conflict of interest and must not participate in Mr. Runyon's case from this point forward. Specifically, he is of the opinion that withdrawal by FDSET attorneys is mandatory, or they could run afoul of Tennessee's ethical rules governing attorneys.[4]   FDSET also consulted with an attorney who served on the Board of Professional Responsibility of the Supreme Court of Tennessee who also concluded that withdrawal was necessary.

Accordingly, the taint from Ms. Chavis's potentially unethical conduct is imputed to Ms. Bales and she should be allowed to withdraw. FDSET initiated an external investigation into her actions to determine the appropriate response. While such an investigation is pending, Ms. Bales simply cannot represent Mr. Runyon.

## II.      Ms. Bales's representation will be materially limited under Rule 1.7(a)(2) of the Virginia State Bar and she has a conflict of interest.

Likewise, Rule 1.7(a)(2) bars Ms. Bales's continued representation of Mr. Runyon. Under that Rule, a conflict of interest exists where "there is a significant risk that that representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." L.R. 1.7(a)(2). The internal investigation into Ms. Chavis's potentially unethical conduct may limit Ms. Bales's representation of Mr. Runyon in other ways. Ms. Bales made the initial allegation that Ms. Chavis may have engaged in unethical conduct. Ms. Bales will be required to speak about her allegations against a co-worker and former supervisor as part of the external investigation, but also, potentially, to the Tennessee Board of Professional Responsibility. Under Rule 8.3 of the Tennessee Rules of

---

[4] Counsel anticipates submitting Mr. Pera's written findings as soon as they are received.

Professional Conduct, FDSET may be required to report Ms. Chavis's potentially unethical conduct.

Any serious consequences that may flow from by Ms. Chavis's potentially unethical conduct should not be borne by Mr. Runyon. This Court has rightly taken the allegation seriously; however, it must also consider the continued harm to Mr. Runyon and Ms. Bales by allowing her representation of him to continue. Mr. Runyon, as a death-sentenced client, must receive the most effective representation at every stage of the legal process.

WHEREFORE, Attorney Bales of the Federal Defender Service of Eastern Tennessee requests that she be permitted to withdraw from further representation of Mr. Runyon.

Respectfully Submitted,

/s/Susanne Bales, *pro hac vice*
Susanne Bales
Asst. Federal Community Defender
Federal Defender Services of Eastern Tennessee
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Susanne_Bales@fd.org