IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

DAVID ANTHONY RUNYON,                    )
                                         )
            Petitioner                   )
                                         )
      v.                                 )          Criminal Action No.: 4:08cr16
                                         )          Civil Action No. :4:15cv108
UNITED STATES OF AMERICA,                )
                                         )          **CAPITAL § 2255 PROCEEDINGS**
            Respondent.                  )
                                         )          HON. REBECCA BEACH SMITH

**RESPONSE OF UNITED STATES TO MOTION TO WITHDRAW AS COUNSEL**

NOW COMES the United States of America, by and through its attorneys, Jessica D. Aber,

United States Attorney for the Eastern District of Virginia, Brian J. Samuels and Lisa R. McKeel,

Assistant United States Attorneys, and Carrie L. Ward, Trial Attorney for the Department of Justice,

and responds to attorney Bales' Motion to Withdraw. (ECF No. 788).   Under the Virginia Rules of

Professional Conduct, given the status of the proceedings, a showing of good cause should be made

and a consideration of the impact on Mr. Runyon.   Inherent in such showing is the determination of

a conflict of interest.   A discovery dispute, in and of itself, is not enough, and the petitioner has

offered somewhat of a mixed message as to the reasons for the lack of recent disclosure of documents.

(ECF No. 788, 789).   The record should be better developed.   Thus, the United States submits that

the Court should conduct a more fulsome inquiry to determine the existence, nature and impact of a

conflict of interest prior to making a decision on counsel's motion to withdraw.

1

## BACKGROUND AND PROCEDURAL HISTORY

In August 2009, David Anthony Runyon (hereinafter "the petitioner") was convicted and sentenced to death by a jury after pleading not guilty to the charges against him. The jury recommended a sentence of death for two of the three convictions of Conspiracy to Commit Murder for Hire, in violation of 18 U.S.C. § 1958(a), and Use of a Firearm Resulting in Death, in violation of 18 U.S.C. § 1924(c)(1), (j)(1). The jury recommended a sentence of life for Carjacking Resulting in Death, in violation of 18 U.S.C. § 2119. This Court imposed the recommended sentences in December 2009.   Thereafter, the defendant appealed his convictions and sentence to the Court of Appeals, which affirmed. *United States v. Runyon*, 707 F.3d 475 (4th Cir. 2013). The Supreme Court denied a Writ of Certiorari.

On November 5, 2014, this Court appointed Michele Brace of the Virginia Capital Representation Resource Center ("VCRRC") to represent the defendant in anticipated proceedings pursuant to 28 U.S.C. § 2255. (ECF Nos. 410 and 411).   On May 20, 2015, Ms. Brace filed a Motion to Appoint Counsel, namely Dana Hansen Chavis, supervisor of the Capital Habeas Unit of the Federal Defender Services of Eastern Tennessee, Inc. ("FDSET") (ECF No. 432).   On May 22, 2015, this Court granted the motion for the appointment of Ms. Chavis. (ECF No. 435).   On May 22, 2015, Ms. Chavis then filed a Motion to appear Pro Hac Vice, (ECF No. 436), which this Court granted. (ECF No. 438).   Susanne Bales, another FDSET attorney, also sought appointment at this time, which was denied, but the Court did indicate that Ms. Chavis could certainly coordinate and work with her FDSET

2

colleagues on this matter.    (ECF Nos. 437, 439).    FDSET was not appointed as an entity for purposes of representation of the petitioner.    (ECF No. 788-2).

On October 5, 2015, the petitioner filed a motion pursuant to 28 USC § 2255 to vacate his sentence, asserting eighteen grounds for relief. (ECF No. 478).    This Court denied his motion and denied a certificate of appealability on January 19, 2017.    (ECF No. 560).    The petitioner again appealed to the Court of Appeals, which granted a certificate of appealability on four issues to include a portion of the petitioner's Claim 6.    The relevant portion of this claim alleges that trial counsel provided ineffective assistance by failing to investigate and present mitigating evidence of a brain injury and potential mental illness and that such error prejudiced the defense.    (ECF No. 511 and appendices).    On February 12, 2021, the Court of Appeals affirmed the District Court's ruling on all issues, but vacated and remanded the aforementioned portion of Claim 6 to this Court to hold an evidentiary hearing to resolve factual questions related to the claim.    *United States v. Runyon,* 994 F.3d 192 (4th Cir. 2021).

A key component of the portion of Claim 6 is that trial counsel abandoned an incomplete mental health investigation by failing to provide the petitioner's expert, Dr. James Merikangas, with MRI and PET scans that had been ordered prior to the penalty phase of the trial.    The petitioner has contended that trial counsel essentially stopped communicating with Dr. Merikangas after he provided a preliminary report on August 5, 2009, and never shared the brain imaging scans with Dr. Merikangas.

On January 27, 2022, the parties entered a joint scheduling and discovery order that the Court endorsed.    (ECF Nos. 656 and 657).    On March 21, 2022, the petitioner filed a motion for discovery. (ECF No. 670). On July 28, 2022, the Court denied the petitioner's motion.    On January 27, 2023, the petitioner filed a second motion for discovery. (ECF No. 737).    On July 30, 2023, the petitioner filed

3

a motion for the early production of Jencks material.  (ECF No. 739).    On February 6, 2023, and February 8, 2023, the Court denied the petitioner's motions. (ECF Nos. 767 and 775).

Prior to the commencement of the evidentiary hearing, Ms. Bales moved again to be appointed Pro Hac Vice to the case.  The Court granted this motion in part, limited to a set of designated witnesses.  (ECF Nos. 725, 726, 751).  Ms. Bales had appeared at various pre-hearing status conferences in this matter, and previously handled portions of the matter before the Court of Appeals, including the oral argument.  The full extent of her involvement prior to the onset of the evidentiary hearing is not certain.  It does not appear that she was involved in the production of discovery to the United States prior to recent events.

On January 31, 2023, the United States filed an Evidentiary Hearing Memorandum.  (ECF No. 743). In that memorandum, the United States addressed the petitioner's motion for the early production of Jencks materials. Specifically, the United States advised this Court that the materials had already been produced. The United States noted, however, that the petitioner had not disclosed such materials and made a reciprocal request. (ECF No. 743, p.7).   On February 6, 2023, the petitioner responded by disputing the United States' claims of untimely discovery disclosure and accused the United States of failing to comply with the agreed upon disclosure deadlines. (ECF No. 771).

The evidentiary hearing commenced on February 7, 2023. The petitioner, bearing the burden of proof, called witnesses to testify including, trial counsel (now) Judge Stephen Hudgins, Jon Babineau and Lawrence Woodward. Also called to testify were lay witnesses Maria Runyon, Mark

Runyon, David Dombrowski, Wren Fleming, Scott Linker, Tiffany Linker, Deborah and Robert Seeger, Jeffrey Harris and Sheila Cronin.

On the morning of February 13, 2023, Ms. Chavis left two documents on the courtroom table of the attorneys for the United States that had not been produced previously in discovery or as part of any Jencks material. At minimum, these documents were Jencks material for Sheila Cronin and Judge Hudgins. At the end of the day of testimony, the United States alerted the Court that it was concerned that discovery had not been provided in a complete or timely manner. The Court questioned the petitioner's counsel about the matter. Ms. Chavis acknowledged giving the document to the United States prior to the start of the hearing, but was uncertain whether it been produced previously. In any event, Ms. Chavis relayed to the Court that the petitioner did not introduce the document because the United States objected.

On February 14, 2023, prior to the start of the court day, Ms. Bales approached the attorneys for the United States and advised that there were documents that were discoverable regarding Dr. Merikangas' testimony that had not been produced to the United States and that counsel was working on the production. When the Court opened for the day, Ms. Bales disclosed to the Court that certain documents had not been disclosed to the United States and that their office was working to produce the documents. The Court questioned petitioner's counsel and adjourned until 5:00 p.m., for the petitioner's counsel to report to the Court about the status of the production. At 5:00 p.m., Ms. Bales disclosed that they did not possess a record to determine what had previously been disclosed to the United States and that they did not know how long it would take to produce the documents, but that counsel was working diligently on the matter. At the end of the hearing, the Court ordered petitioner's

5

counsel to produce all discoverable and Jencks documents to the attorneys for the United States and set a deadline of February 15, 2023, by 3:30 p.m.

Although documents continue to be produced and reviewed by the petitioner's counsel,[1] just the initial production of documents on February 14, 2023, establishes, at minimum, that: (1) trial counsel did have communications with Dr. Merikangas after he had completed his August 5, 2009, preliminary report and this communication included Dr. Merikangas' recommendation that a mental health defense not be utilized; and (2) that Dr. Merikangas had, in fact, received and reviewed the MRI and PET scans of the petitioner that had been conducted prior to the onset of the penalty phase.   These two facts alone have significant impacts on the integrity of Claim 6 and also run contrary to certain information tendered in pleadings, declarations and examinations that have been presented to the Court.   The reason for such material non-disclosures has not been fully addressed.

On February 15, 2023, Ms. Chavis emailed the Court and parties that she could not meet the Court's deadline for production and/or answer the government's questions regarding discovery, due to allegations of fraud by her co-counsel.   The Court then convened a hearing to assess the status of the discovery production.   Ms. Bales took the lead in addressing the Court, candidly conceding that the task was likely much larger than anticipated.   She explained that, due to Ms. Chavis' actions earlier that day, the team had been unable to access its physical workspace or the internet.

Ms. Chavis addressed the matter with the Court, explaining her belief that files had been overlooked due to possible file-naming issues and the mistaken belief that the undisclosed items were

---

[1] Indeed, disclosures have occurred on an almost daily basis since February 14, 2023, and the United States has not fully reviewed or assessed these disclosures.   The United States intends to address the impact and potential remedies for such late disclosures in a separate pleading.

duplicates.[2]   She admitted to having prevented her colleagues accessing the defense files, which she characterized as her own.   Ms. Chavis explained that her co-counsel were leveling "false accusations" against her. (ECF No. 788-2, p. 4).

After hearing from all three of Runyon's counsel, to include Ms. Peiffer, the Court observed that there was a breakdown in the petitioner's team and suggested that the petitioner be consulted as to whether Ms. Chavis should move to withdraw.   Ms. Chavis then moved to withdraw from representation and all parties, including the petitioner, agreed to Ms. Chavis' release.   The Court recessed so that remaining habeas counsel could consult with their client.   Upon return, Ms. Bales entered an oral motion to withdraw from her representation, citing the general advice of her supervisor and the possibility of an imputed conflict.   The Court denied the motion, appointing Ms. Bales to a full role in the team but took the matter under advisement pending briefing.   The Court stressed that "good cause" would be a substantial consideration in evaluating the request to withdraw.   On February 17, 2023, Ms. Bales moved to withdraw, and this response follows.

DISCUSSION

**A. The petitioner's motion to withdraw raise certain questions as to a conflict of interest.**

In her motion to withdraw, Ms. Bales contends that a conflict of interest prevents her continuing representation of the petitioner in this matter.   The motion reviews that Ms. Bales sought to withdraw on February 15, 2023, upon instructions by her supervisors due to "allegations that had been presented to the Court."   She further argued at that time that continued representation would not be in the best interest of her client, but no discussion was provided of the impact on the petitioner on

---

[2] This dual file naming issue is further discussed in the petitioner's Status Update Regarding Petitioner's Discovery Disclosures (ECF No. 789), filed on February 17, 2023.

losing his counsel.  (ECF No. 788-2, p.4).  At the February 15, 2023, hearing, the United States requested briefing in the expectation that additional details would be provided that would result in a more developed record.  As the Court and counsel well know, this matter has proceeded for a significant length of time and substantial progress has been undertaken by all parties toward the resolution of this matter that impacts not only the petitioner, but the reputations of trial counsel and the victims of this crime.

But the motion to withdraw provides little additional detail – only indicating that Ms. Bales is "tainted by the potentially unethical conduct of Ms. Chavis."  (ECF No. 788-2, p.5).  The motion refers to a "presumption of taint" but without details as to what that taint is and how it is imputed to Ms. Bales and continued representation.   Although the motion refers generally to the manner in which FDSET works its habeas cases, there is no specificity to the circumstances at hand.  Additionally, there are no details as to any internal investigation and how Ms. Bales attempting to correct any disclosure problems materially limits her ongoing representation of the petitioner.

The United States of course recognizes Mr. Runyon's right to effective and conflict-free representation, but the withdrawal of Ms. Bales will certainly come at a cost to the proceedings and their resolution.  If that step proves necessary, it should be based on a more developed record that may include an ex parte inquiry to which the United States would not object.   Accordingly, for the reasons to follow and recognizing Mr. Runyon's statutory entitlements under 18 U.S.C. § 3599(c) and (e), the government takes no position at this time on Ms. Bales' personal request to withdraw from ]the representation.   The government notes, however, that the indistinct factual record underlying Ms. Bales' request warrants further development.

Part of the uncertainty in the record is that, on the same day this motion to withdraw was filed,

8

the petitioner also submitted a Status Update Regarding Petitioner's Discovery Disclosures.   (ECF No. 789).   This pleading appears to make the case that this non-disclosure was inadvertent, the result of similarly named folders of trial counsel files on a secure computer drive.   (ECF No. 789, p. 2). There is no reference to allegations of misconduct or conflicts in this Status Update.   The explanation appears to mirror that provided by Ms. Chavis.

In the course of the February 15, 2023, hearing, Ms. Bales did reference a conversation with Ms. Chavis about certain documentation related to Dr. Merikangas that should have been disclosed to the United States.   But a review of the transcript describing this exchange is difficult to parse.   Given the documents produced, it is unclear to the United States what documentation is being discussed and what alleged misconduct has been identified.   More needs to be done here to develop the record and confirm or dispel the existence of a conflict of interest.

In view of the above-referenced concerns, the United States provides the following authority for the Court's consideration.

**B.    Standard of Review**

A corollary to the right of effective assistance of counsel is the right to counsel not fettered by conflicts. *United States v. Williams*, 81 F.3d 1321,1324 (4th Cir.1996). Under *Wheat v. United States*, 486 U.S. 153, 160 (1988), when a district court detects potential conflicts of interest, "that court must take whatever steps are necessary to ascertain whether the conflicts warrant separate counsel." *Williams*, 81 F.3d at 1324 (4th Cir.1996) (quoting *Wheat,* 486 U.S. at160).   Moreover, "the right to counsel is secondary in importance to the Court's duty to maintain the highest standards of professional conduct to insure and preserve trust and integrity in the bar." *United States v. Franklin*, 177 F. Supp. 2d 459, 464 (E.D. Va 2001).   The possibility of a conflict of interest does not necessarily

9

impinge on a defendant's constitutional rights.   *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980).   There must be an actual conflict of interest that adversely affects counsel's performance.   *Fullwood v. Lee*, 290 F.3d 663, 689 (4th Cir. 2002).

Under *Wheat*, district courts possess broad discretion to determine if counsel's representation is conflict free.   *See Williams*, 81 F.3d at 1324 (upholding disqualification of lawyer who represented significant potential government witness); *Hoffman v. Leeke*, 903 F.2d 280,288 (4th Cir. 1990).   The Fourth Circuit has indicated that counsel has an actual conflict when he actively represents conflicting interests.   *Burket v. Angelone*, 208 F.3d 172, 185 (4th Cir. 2000); *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991).   Even if a conflict does exist, a criminal defendant may waive the right to conflict-free representation.   *Cuyler*, 446 U.S. at 347.   The court, however, may reject a waiver of the defendant's conflict of interest. See *Wheat* 486 U.S. at 160; *Williams*, 81 F.3d at 1324.

"[C]onflicts also arise when a lawyer must choose between representing a client's interests and implicating herself in her own serious misconduct. Lawyers 'cannot reasonably be expected to make' arguments advancing a client's claim that, in essence, 'denigrate their own performance'. *Christeson v. Roper*, 574 U.S. 373, 378, 135 S.Ct. 891, 190 L.Ed.2d 763 (2015). A 'significant conflict of interest' arises when an attorney's 'interest' is at odds with his client's strongest argument-i.e., that his attorneys have abandoned him.'" *United States v. Glover*, 8 F.4th 239, 246-247 (4th Cir. 2021) (quoting *Maples v. Thomas*, 565 U.S. 266, 285-86 &, 132 S. Ct. 912, 181 L.Ed.2d 807(2012)).

A federal court's power to disqualify counsel stems from its inherent authority to supervise the conduct of lawyers appearing before it.   *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980); *see, e.g., Ausherman v. Bank of America Corp.*, 212 F. Supp. 2d 435, 444 (D. Md. 2002)

10

(acknowledging the courts' inherent authority to sanction attorneys). A Court's ruling on such a motion is reviewed for abuse of discretion. *Shaffer v. Fresh Farm, Inc.*, 966 F.2d 142, 145 (4th Cir. 1992). Although the inquiry is complex and requires consideration of many factors, the tribunal may, in its discretion, order counsel to continue representation notwithstanding a finding of good cause. Va. Rules Prof'l Conduct, Rule 1.16(c); *see, e.g.*, *Oxendine v. United States*, no. 5:11-cv-174, 2013 WL 1320790, *1, n.1 (W.D.N.C. Apr. 1, 2013) (applying good cause standard to motion for withdrawal).

In its evaluation of Ms. Bales' request to withdraw, the Court should consider the best interests of the petitioner, Ms. Bales (as an individual and as a representative of her client), judicial economy, and any possible tactical motivations improperly underlying the motion. *See generally Bonetati v. Moran,* 2015 WL 3824137, at *3 (C.D. Cal., June 18, 2015).

### C. The Virginia Rules of Professional Conduct apply in this instance.

Ms. Bales, and FDSET, claim consideration under Tennessee's Rules of Professional Conduct (Tn. Rules of Prof'l Conduct). According to Tennessee's Rule 8.5(b)(1), "the rules of professional conduct to be applied shall be … for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise." However, this Court's Local Civil Rule 83.1(J) states, "The ethical standards relating to the practice of law in civil cases in this Court shall be Section II of Part Six of the Rules of the Virginia Supreme Court [adopting the Va. Rules of. Prof'l Conduct] as it may be amended or superseded from time to time." *See also* E.D. Va., L.Crim.R. 57.4(J) (substantially the same).[3]

---

[3]   In support of her motion Ms. Bales submitted an advisory opinion on the question of imputation (ECF No. 788-3) that refers to an undisclosed memorandum of facts. The United States suggests

Under Virginia's rules, a conflict of one attorney in FDSET is likely is imputed to other members of the office. Va. Rule 1.10(a).   Again, this prompts a more fact specific determination of any conflict at issue.   Such conflicts may also be waived by the client.   Va. Rule 1.10(d).

### D. Evaluation of Mr. Bales' motion to withdraw contemplates the totality of the circumstances.

The Virginia Rules concerning conflicts of interest center on conflicts between clients:

> Relevant factors in determining whether there is a potential conflict include the duration and intimacy of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arise and the likely prejudice to the client from the conflict if it does arise. The question is often one of proximity and degree.

Va. Rule 1.7, Comment 26.   As such, the rule provides only general guidance for a unique situation like the one at hand.

Federal courts have routinely refused to implement a *per se* rule that if one attorney is disqualified for ethical violations, all co-counsel must be similarly disqualified.   *See, e.g., Akerly v. Red Barn System,* 551 F.2d 539 (3d Cir. 1977).   "The court emphasized the need for a careful analysis of all facts and circumstances surrounding the controversy."   *Id*. at 543.   Here, very little information openly describes the scope of Ms. Chavis' potential conflict.   While the motion to withdraw references allegations of unethical conduct, Ms. Chavis claimed that the dispute focused on an inadvertent lack of production based on duplicate file names, which is also referenced in the petitioner's Status Update.   (ECF No. 789).

---

the Court review the memorandum, ex parte, to determine the foundation of the advisory opinion. If appropriate, the Court should disclose the memo to the United States so that it can make a more fully informed response to the withdrawal request.

If the allegations are that Ms. Chavis committed a fraud, which carries an inference of specific intent. (Fed.R.Crim.P., Rule 60), her release was appropriate, because "an attorney who faces criminal or disciplinary charges for his or actions in a case will not be able to pursue the client's interests free from concern for his or her own."  *United States v. Lacerda,* 929 F.Supp.2d 349, 360-61 (citing *United States v. Merlino*, 349 F.3d 144 (3d. Cir. 2003) (citing *United States v. Greig*, 967 F.2d 1018, 1022-23 (5th Cir. 1992).  The court in *Lacerda* properly denied co-counsel's motion to withdraw from the representation based wholly on an imputed conflict, after the representation had commenced (and noting co-counsel had detailed knowledge of the facts in the case and competently represented the client at an earlier oral argument).  *Id.*  But this is not entirely clear due to dearth of information provided in the motion to withdraw.

Virginia Rule of Professional Conduct 1.6(c) requires prompt disclosure of attorney misconduct, although the duty of loyalty to the client may require the delay of full revelations   (i.e., the scope of Ms. Chavis' actions) until the conclusion of a proceeding.  *See* Va. Rule 1.6 (Comment 14. "[A] lawyer does not violate this Rule by delaying in reporting attorney misconduct for the minimum period of time necessary to protect a client's interests. For example, a lawyer might choose to postpone reporting attorney misconduct until the end of litigation when reporting during litigation might harm the client's interests.").

Va. Rule Prof'l Conduct, Rule 1.16 addresses withdrawal from representation:  "[W]here representation has commenced, [a lawyer] shall withdraw from the representation of a client if the representation *will* result in violation of the rules… or other law."  Rule 1.6(a)(1)(Emphasis added).  However, there are a multitude of exceptions that require consideration as to whether there will be a material adverse effect on the interests of the client.  "The court may wish an explanation for the

13

withdrawal." (Rule 1.16, Comment 3). "In any court proceeding, counsel of record shall not withdraw except by leave of court after compliance with notice requirements pursuant to applicable Rules of Court. In any other matter, a lawyer shall continue representation notwithstanding good cause for terminating the representation, when ordered to do so by a tribunal." Va. Rule, 1.16(c).

Generally, client conflicts arise early in the representation. But when the representation is nearly complete, there is a presumption that Mr. Runyon will be harmed by his long-term counsel's departure. The Court should first find a reasonable likelihood of actual prejudice, particularly to the client, before ordering disqualification. *Realco Services, Inc. v. Holt,* 479 F. Sup. 867, 879 (E.D. Pa. 1979)(citing *Akerly*, F.2d at 543). Considering the posture of this case, Ms. Bales' long-term relationship with Mr. Runyon, her involvement in this case at the Court of Appeals (including oral argument), and her innate knowledge of the case—this Court should engage in further inquiry to determine whether withdrawal on the basis of an imputed or actual conflict will result in possible prejudice to Mr. Runyon. The United States certainly agrees that counsel should provide diligent and competent representation to the petitioner and this determination is a matter that should be assured.

In this case, as referenced above, the United States lacks a complete understanding of Ms. Bales' role and her compliance with the various rules that guided, or at least should have guided, her actions. Given that much of this information remains behind the veil of Ms. Bales' relationship with her client and the facts of the non-disclosure, the United States declines to take a position on the propriety of her actions, much less the extent to which her exposure to allegations of professional misdeeds might conflict her now or in the future. Accordingly, the United States declines to take a position on the request to withdraw at this time, while noting the considerations that should inform the decision including the determination of the existence and nature of any conflict. Should the Court,

14

following appropriate factual development, disclose or order disclosure of further details concerning Ms. Bales' actions, the United States stands ready to comment further.

## CONCLUSION

Based on the foregoing reasoning and authority the United States respectfully submits that there be further development of the alleged conflict and the impact, if any, on Ms. Bales' performance and any prejudice to the petitioner.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:      /s/_____

Brian J. Samuels
Lisa R. McKeel
Assistant United States Attorneys
Carrie L. Ward, Trial Attorney
Attorneys for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Brian.Samuels@usdoj.gov
Email: Lisa.McKeel@usdoj.gov
Email: Carrie.Ward@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of February, 2023, I electronically filed a true

copy of the foregoing with the Clerk of Court using the CM/ECF system who will send notice to

all filers.

By:   /s/
      Lisa R. McKeel
      Assistant United States Attorney
      Virginia Bar Number: 23652
      Attorney for the United States
      United States Attorney's Office
      Fountain Plaza Three, Suite 300
      721 Lakefront Commons
      Newport News, Virginia 23606
      Phone: (757) 591-4000
      Fax: (757) 591-0866
      Email: Lisa.McKeel@usdoj.gov