IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | | |
|---|---|---|
| DAVID ANTHIONY RUNYON, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Criminal Action No.: 4:08cr16 |
| | ) | Civil Action No. :4:15cv108 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **CAPITAL § 2255 PROCEEDINGS** |
| Respondent. | ) | |
| | ) | HON. REBECCA BEACH SMITH |

### RESPONSE OF UNITED STATES TO STATUS UPDATE
### REGARDING PETITIONER'S DISCLOSURES

The United States, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Brian J. Samuels and Lisa R. McKeel, Assistant United States Attorneys, and Carrie L. Ward, Trial Attorney for the Department of Justice, respectfully submits this response to the Petitioner's Status Update Regarding Discovery Disclosures (ECF No. 789), filed on February 17, 2023. In so doing, this pleading provides an initial response to the Court's February 14, 2023, request that the United States undertake a review of the impact of such disclosures on pleadings, declarations and the course and scope of the evidentiary hearing. This pleading focuses on issues pertaining to the MRI and PET scans ordered by Dr. James Merikangas in August 2009 and the petitioner's claim that these were not provided for review by trial counsel, a claim that cannot survive in view of the recently produced disclosures.[1]

---

[1] The production of materials also relates to other witnesses, including Shelia Cronin and Dr. Mark Cunningham. For example, Dr. Cunningham testified at the penalty phase that he never interviewed the Petitioner, and the recent disclosures raise questions to this representation. A review of the materials with respect to this concern is not yet complete.

## BACKGROUND

### I.    Scope of Claim 6

The Court of Appeals granted a certificate of appealability as to four of the petitioner's eighteen claims brought forth in his Amended § 2255 Motion (ECF 511).  The sole surviving claim is simply: Whether trial counsel provided ineffective assistance by failing to investigate and present mitigating evidence of Runyon's brain injury and potential mental illness.[2]  *United States v. Runyon,* 994 F.3d 192, 197 (4th Cir. 2021).

Central to this surviving claim is whether trial counsel abandoned an incomplete mental health investigation.  The petitioner's counsel has repeatedly advanced the contention— to include pleadings to the Court of Appeals, in oral argument and to this Court— that trial counsel failed to provided defense neurological expert, Dr. James Merikangas, with MRI and PET scans that would have revealed brain damage had these scans been reviewed in August 2009.

Habeas counsel provided declarations from former trial counsel that made mention of the scans.  Without showing attorney Stephen A. Hudgins his file, habeas counsel prepared and filed a declaration that stated:  "I filed with the court preliminary reports from Dr. Merikangas and Dr. Mirsky.  Dr. Merikangas wanted brain scans of Runyon. I do not remember the results of the scans. I cannot remember why Dr. Merikangas and Dr. Mirsky did not testify in the penalty phase." (ECF No. 511-5, para. 6).

---

[2]  Petitioner originally presented this as part and parcel of a much larger claim, ("Claim 6", ECF 551, Case #4:08-cr-00016).  Counsel Rendered Ineffective Assistance By Failing To Investigate And Present Mitigating Evidence Regarding Runyon's Psycho-Social History, Brain Damage And Mental Health.  The Court of Appeals declined to certify those portions of the claim— specifically allegations of ineffective assistance in investigating or presenting Petitioner's "Psycho-Social History." (ECF No. 607).

The "mandate rule" forbids "a lower court from relitigating issues that were decided by a higher court, whether explicitly or by reasonable implication, at an earlier stage of the same case." *Ellis v. United States*, 313 F.3d 636 (1st Cir. 2002).

In his reply brief, the petitioner provided Mr. Hudgins' second declaration, again prepared by the petitioner's habeas team to state:

> I still do not remember the result of the scans. David Runyon's current attorneys informed me that a radiologist reported a 'normal brain MRI.' This report would not have supplied me with enough information to make a decision to cease investigation of David Runyon's mental health or social history. I understand the difference between a radiologist's reading and a neuropsychiatrist's/neurologist's reading of such scans.
>
> David Runyon's current attorneys informed me that Dr. Merikangas recently read the film from the 2009 scans and that one scan revealed brain damage. This is the type of information I would have been looking for at the penalty phase. (ECF No. 551-1).

These type of representations concerning the brain scans were referenced throughout the Court of Appeals' opinion ordering remand, with the intimation that, if true, trial counsel may have been ineffective for not providing such scans to the defense expert:

- The brain scans that Dr. Merikangas ordered were in fact provided to Hudgins, along with a radiologist's report that the scans were 'normal.' But Hudgins recognized, as he later stated, that readings by a neuropsychiatrist, rather than a radiologist, were necessary. Yet, he never provided the scans to Dr. Merikangas, as Dr. Merikangas had requested, nor to Dr. Mirsky."

- Dr. Merikangas, who had requested but never received Runyon's brain scans, conducted a review of those scans in 2015. He reported that "[t]hey revealed multiple white matter hyperintensities ... consistent with [Runyon's] history of head injuries and migraine," which, in Dr. Merikangas's opinion, "resulted in impaired executive functioning and decision making." He also reported that Runyon exhibited signs of paranoia and delusions, which could be "a consequence of his brain injuries, mood disorder, and [pos-traumatic stress disorder]." Dr. Merikangas stated that had he testified at trial, he "would have testified that in [his] expert opinion [Runyon] was a brain damaged individual with migrainous headaches and a disorder of executive functioning with symptoms suggestive of a psychotic thought process."

- When told that Dr. Merikangas in fact reviewed the 2009 scans in 2015 and identified brain damage, Hudgins responded, "This is the type of information I would have been looking for at the penalty phase." He said the same thing about the Army records that had been uncovered. Most significantly, he stated that he could not "remember why Dr. Merikangas and Dr. Mirsky did not testify in the penalty phase."

*United States v. Runyon,* 994 F.3d at 205-207.

## II.     Scope of the Present Evidentiary Hearing

### A.     Evidence properly within scope of the  mandate.

Once the evidentiary hearing began on February 7, 2023, habeas counsel's direct examinations of both Mr. Hudgins and Mr. Woodward focused on the purported failure to provide scans to Dr. Merikangas. For example, on direct examination, habeas counsel showed Mr. Hudgins a variety of documents, noting that Dr. Merikangas ordered an MRI and PET scan of Mr. Runyon. Asking the witness to read aloud, counsel elicited that he requisitioned those scans on July 30, 2009, "MRI scan of brain.  Reason is several brain injuries.  Please return CD images to Dr. Merikangas." (TR. Vol. 1, p. 87, Referencing DE 93).  Counsel then referenced a motion filed and approved by this Court on August 14, 2009, authorizing release of the scans directly to trial counsel. (ECF Nos. 274, 275).  However, counsel then presented Defense Exhibit (DE) 158 to the witness—a portion of Mr. Hudgins' invoice worksheet— first produced to the government on February 6, 2023.  The witness read aloud an entry for August 17, 2009, "to jail for med scans, scans to marshal." (TR. Vol. 1, p. 88).  Mr. Hudgins testified that he was unsure of the meaning and stated, "[my] file might indicate more detail on that." (TR Vol. 1, p. 88).  Counsel elicited that this same document reflected a "TC" or telephone call with Dr. Merikangas on August 11 and 13, 2009. (TR Vol. 1, p. 89).  Habeas counsel refused to show trial counsel their files, either prior to or during testimony, to capitalize on the witnesses' inability to recall. This elicited, by inference, that the files, in habeas counsels' possession, were silent on this issue as to whether the brain imaging were ever considered and properly investigated.[3]

---

[3]  As an example, Ms. Chavis had the following interaction with Mr. Hudgins:

A.   I haven't had access to my file, and so I haven't seen such things.  It's possible.
Q: All right.  I'm not asking you to try to – I'm just asking, based on your memory, if you remember or not.
(TR Vol. 1, p. 37).

Additionally, habeas counsel provided the Declaration of James R. Merikangas, M.D., signed by Dr. Merikangas, under penalty of perjury, on February 2, 2023.  This declaration was obtained and submitted to the Court by habeas counsel in support of a motion for Dr. Merikangas' alternative testimony, i.e., by remote means, or declaration alone. (ECF No. 754-3).  In this declaration, Dr. Merikangas swears, in pertinent part, that after examining Mr. Runyon and forming initial impressions:

> I prepared a brief report, dated August 5, 2009.
>
> I did not hear anything further from Mr. Runyon's attorney.  Mitigation investigator Shelia Cronin was my main contact with the trial defense team.  Although I ordered the MRI and the PET scan, I never saw the images.  A disk of the scans was not in my file.  The first time I saw the imaging was when habeas counsel subsequently provided a copy to me.

(ECF No. 754-3, p.1).

In the pleading related to this declaration, habeas counsel emphasized these claims by Dr. Merikangas related to the scans, habeas counsel represented that:

> His testimony will provide relevant evidence supporting both Strickland prongs of Runyon's Claim 6. Trial counsel retained Dr. Merikangas, a neuropsychiatrist, in Mr. Runyon's case, but failed to provide Dr. Merikangas with all the information he requested and simply ceased communicating with him. Dr. Merikangas ordered brain scans but counsel did not provide those scans to Dr. Merikangas.  When, in 2015, Dr. Merikangas finally reviewed the 2009 MRI at habeas counsel's request, he identified white matter hyperintensities indicative of brain damage. Dr. Merikangas's testimony is relevant to demonstrating Mr. Runyon was a brain-damaged individual at the time of the crime, and that trial counsel acted unreasonably in not providing the MRI to him or discussing with Dr. Merikangas the findings of his examination of Mr. Runyon. His testimony is necessary, and good cause and compelling circumstances exist to permit him to testify remotely."

(ECF No. 754, p. 3).

---

Q: Well, Judge Hudgins, if these records were found in your – within your case files, would you have not reviewed them?
A: I would have, but I don't know what was in my case file.  Nobody has shown it to me. I'm surprised. Do you have my case file?
Q: Yes.
(Vol I, EH 2-7-2023, TR 64-65).

In the alternative to video testimony, habeas counsel sought leave for Dr. Merikangas's reports to be considered (including the aforementioned declaration) and the record expanded. This motion was conditionally granted in part, and Dr. Merikangas was prepared to testify via remote means on February 14, 2023, prior to the present adjournment.

**B. Evidence improperly exceeding the scope of the mandate.**

Throughout the course of the evidentiary hearing, habeas counsel elicited evidence that exceeded the proper scope of the limited issue on remand. Following the attorneys, the petitioner presented multiple lay witnesses: Maria Runyon (petitioner's ex-wife), Wren Fleming (stepson), Debbie and Robert Seeger (prior neighbors), Mark Runyon (brother), David Dombrowski (biological father), and Sheila Cronin (the defense trial team's mitigation specialist). Often, witnesses were asked about information pertaining to Mr. Runyon's psycho-social history, or transgenerational and cultural history. The government objected frequently as beyond the scope, and the Court agreed. For example, after such an objection during Mr. David Dombrowski's testimony regarding generational trauma, the Court asked habeas counsel whether the scope of the claim was limited to evidence of brain injury and mental illness. Counsel agreed but requested permission to elicit the information in order to "make a record."

Under the mandate rule, "a lower court generally is bound to carry the mandate of the upper court into execution and may not consider the questions which the mandate laid at rest." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (cleaned up). "Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" *Juniper v. Hamilton*, 529 F.Supp.3d 466, 482 (E.D. Va., March 29, 2021)(Internal citations omitted). The mandate rule "prohibits [a district court] from altering 'rulings impliedly made by the appellate court.'" *Id.* "Thus, the mandate rule would ordinarily prevent the Court

from reconsidering its previous dismissal of any of [Petitioner's] amended claims that he did not appeal and the Fourth Circuit did not remand." *Id.* The "mandate rule" prohibits the Court for granting an expansion of the record beyond the claim, or considering such evidence when the claim has been decided by the higher court. *Ellis v. United States*, 313 F.3d 636 (1st Cir. 2002).

### C. Status of Pre-Hearing Discovery

On November 15, 2021, following the remand of this case, the first status conference was held with this Court, with orders to submit a joint scheduling order. Over time, various motions were filed before this Court, although discovery generally proceeded informally and with minimal disputes. The Court entered an agreed-upon discovery order on January 27, 2022 (ECF No. 657), which provided in part:

> Complete production of discovery matters relevant to the claim of ineffective assistance of counsel. Counsel shall specifically provide all matters contained in the trial counsel file as related to trial defense counsel's investigation, strategy, and failure to present mitigation as set forth in Petitioner's Habeas Claim 6, to include documents related to relevant communications with any expert consultants, mitigation consultants, and potential expert witnesses, as well as materials provided to or otherwise relied upon by mitigation and expert consultants and potential expert witnesses.

(ECF No. 657). *Agreed Pre-Evidentiary Hearing Scheduling Order.* On July 28, 2022, the Court further ordered, "[A]ny discovery requested must bear on an aspect of the two-pronged *Strickland* inquiry." (ECF No. 685, at 14).

Beyond those orders, the petitioner has continuously sought additional information from the United States, but also insisted that it has met and satisfied its own discovery obligations.[4] On

---

[4] In repeated pleadings, habeas counsel averred that they had adhered to their obligations, even while accusing the government of violating the rules. For example, in his Response to the United States' Evidentiary Hearing Memorandum (ECF No. 771), Petitioner's counsel stated:

> Sprinkled throughout the government's pleading are accusations and insinuations that Mr. Runyon's counsel has not timely complied with pre-hearing discovery . . . This is inaccurate. In fact, it is the

7

March 21, 2022, petitioner filed his First Motion for Discovery and to Protect his Ability to Assert Attorney Client Privilege and Confidentiality of Work Product (ECF No. 670), which was denied with direction to comply with pre-hearing disclosure obligations. (ECF No. 685).  On October 18, 2022, the Court set the order to begin this hearing on February 7, 2023. (ECF No. 695).  Neither party sought continuances and the hearing so began.

Disclosures continued and both parties exchanged witness and exhibit lists. On January 27, 2022, Petitioner filed a Second Motion for Discovery (ECF No. 737). On January 30, 2023, he filed a Motion for Early Production of Jencks Material (ECF No. 739). On February 2, 2023, Petitioner filed a Motion to Expand the Record (ECF No. 753), which he supplemented on February 6, 2023 (ECF No. 763).  As referenced, the petitioner also sought to present the testimony of Dr. James Merikangas by video conference and filed pleadings in support.  (ECF Nos. 733, 754).  On February 6, 2023, the petitioner filed a Second Motion to expand the Record (ECF No. 769).

### III. The Evidentiary Hearing and Discovery of Non-Disclosure of Documents

#### A.  Procedural Background

On February 7, 2023, the evidentiary hearing commenced.  The petitioner, bearing the burden of persuasion, began his presentation of evidence.  Habeas counsel moved for witness

---

government that has consistently failed to comply with agreed-upon disclosure deadlines, in ways that harm Mr. Runyon's ability to fully and fairly litigate his *Strickland* claim on remand.

(ECF No. 771, p.1).  In this same pleading, the Petitioner insisted he had complied with disclosure requirements and further suggested that the United States "ignore[d] its duty under both the law and Department of Justice policy, a duty which covers not only exculpatory information but also any potential impeachment evidence." *Id.* at p. 4.  The Petitioner cited the Ogden Memo in an effort to project scrutiny on the conduct of the United States, all while Petitioner had held back significant evidence – not only from the United States in preparation for this hearing, but from this Court and the Court of Appeals in continuing to insist that trial counsel had abandoned the mental health investigation and failed to provided Dr. Merikangas with the brain scans – assertions that now appear utterly untrue and impossible to reconcile with the Petitioner's position.

sequestration, which was granted. Following Mr. Dombrowski's testimony, the Court issued an order, precluding parties from sharing any testimony with potential witnesses, to include expert witnesses.

Habeas counsel noticed the court of potential scheduling concerns, identifying a plan to call Dr. Merikangas, via remote means, on February 14, 2023. Ms. Barrett would testify on February 16, 2023, and Dr. Martell on February 21, 2023, and acknowledging large periods of time where witnesses would not be available to testify. Due to a scheduling conflict, Dr. Cunningham would testify on February 23, 2023. The government offer and was granted permission to call its rebuttal expert, Dr. Aguirre, out of turn, and he was thus scheduled for February 22, 2023.

The United States had some concerns with late produced material even prior to the start of the evidentiary hearing when the petitioner disclosed his amended exhibit list on February 3, 2023 (ECF No. 758), which included a reference to DE 158 – the billing records of trial counsel Hudgins. These records had never been disclosed to the United States but reflect conversations with Dr. Merikangas past the date of his August 5, 2009 report – in apparent contradiction to the February 2, 2023 declaration.

The concerns of the United States were further increased when, on February 13, 2023, habeas counsel produced DE 167 to the United States for the first time. This exhibit is an email communication from trial counsel's file, reflecting scheduling concerns with Dr. Mark Cunningham, an expert who did testify as a risk assessment expert at Mr. Runyon's penalty phase proceeding. At the end of the court day on February 13, 2023, the United States raised issue of late-disclosed materials to the Court.

9

On February 14, 2023, Ms. Bales notified the Court and counsel that additional materials were discovered and seem to bear indicia of materiality and relevant to their experts, Dr. Merikangas and Dr. Cunningham. Habeas counsel proposed "rolling disclosures" and the Court ordered disclosures completed by 3:30 p.m. (EST) on February 15, 2023.  Ms. Bales did provide a selection of materials not previously provided, recovered after utilizing a "key word search" of their electronic files. Several of these raised immediate concerns, indicating that Petitioner's longstanding claim that his mental health experts did not receive his "brain scans" was not accurate.

For example, contrary to many representations about Dr. Merikangas and the scans, the following documents have been provided:

- A titled <u>Memo To File</u> from attorney Hudgins that reflects an August 13, 2009, telephone conference with attorney Woodward and Dr. Merikangas.  According to this document, Dr. Merikangas relayed he did not believe that the defense was in a good position to present a mental health defense as it would result in the Government presenting its mental health picture.  Dr. Merikangas indicated that the examination of Mr. Runyon was not abnormal and that Mr. Runyon was not truthful.  Dr. Merikangas indicated that unless there was something glaring in the MRI or PET scan, he did not recommend a mental health defense and, even if there was a defect shown in the scans or testing, it would be a risk the defense counsel would have to weigh as to whether or not to present a mental health defense absent a very bad injury or defect.

- Billing records from attorney Woodward that reflect an entry entitled "Memo to file regarding Dr. Merikangas interview" on August 13, 2009; and an entry entitled "Memo to file regarding mental health evidence/interview with Dr. Merikangas" on August 16, 2009.  To date, neither of these memos have been found and produced.

- Two invoices from Dr. Merikangas to attorney Hudgins, both reflecting the August 2009 time period; one of which reflects "MRI and PET 8/17/2009 Review" for two hours at $100 per hour accompanied by a court reimbursement invoice signed by Dr. Merikangas that has the written description of "review of MRI and PET scans"; and the other invoice of which reflects "MRI and PET 8/17/2009" also for two hours at $100 per hour.

(*See attached* Exhibit "A").

At a hearing on February 15, 2023, Ms. Bales acknowledged challenges in accessing their case files, and requested additional time to complete their due diligence. Government counsel reiterated that the "key word" searching, utilizing the "OCR" system was how Ms. Chavis had handled original disclosures in the first place and undoubtedly contributed to the errors, requesting that habeas counsel (i) complete a visual page-by-page review of their files; and (ii) turn over all documents relevant to the claim, not just those relevant to certain witnesses.

Since this time, habeas counsel have produced over 800 pages of materials in almost daily productions. Counsel for the United States has not completed its review of these productions. There are some gaps in billing records and other incomplete email chains, the results of the key word searching process. Even the page by page production that began on February 20th, is cumbersome, including just individual pages. Nonetheless, the documents produced reveal that Dr. Merikangas did, in fact, receive and review the 2009 brain imaging scans and discussed those results with trial counsel. His 2015 report and newest declaration, dated February 2, 2023, directly contradicts these records. But the documents are clear that: One, Dr. Merikangas did talk with trial counsel after the brief report he prepared on August 5, 2009. Two, Dr. Merikangas advised trial counsel that he should not testify because Mr. Runyon did not have defects and had lied to him. Three, Dr. Merikangas did review the MRI and PET scans – indeed, he billed two hours at $100 per hour for this work.

Not only could trial counsel not be questioned about this, habeas counsel has persisted at every stage of these proceedings – from the initial habeas motion, to the briefing at the Court of Appeals, to oral argument, to this current hearing, that trial counsel never gave the scans to Dr. Merikangas and stopped communicating with him. The breadth and import of this action, and the concealment of material facts, is fatal to the heart of the brain injury claim. This failure to disclose

is evidence of clear discovery violations and this pleading further addresses whether certain remedies are appropriate at this stage.[5]

Among the more documents also provided are emails and billing records that certainly fall within the scope of the discovery orders at issue or, at least, within the confines of the Jencks Act. And it appears that the search is still ongoing and will not be completed in the next week.  (ECF No. 789).   It is quite difficult to understand how these disclosures were not made given the length of time the petitioner's counsel had been involved in the case.  Although the petitioner, in his recent status filing (ECF No. 789) appears to offer some explanation of duplicate file names that confused the process, the number of undisclosed files, and their prima facie materiality, undoubtedly constitute a material breach of the petitioner's disclosure obligations, and Fed.R.Crim.P. 16 as well as Fed.R.Civ.P. 37 address just this situation.

### B.  Status of Ongoing Discovery and Request for Remedies

Government counsel, recognizing the need for urgency to turn over materials specific to the pending experts, Dr. Merikangas and Dr. Cunningham, still requested (i) that counsel cease the "key word" search approach, and review page by page; and (ii) turn over all materials relevant *to the claim*.  On February 15, 2023, government requested, and this Court agreed, that any desire to withhold information for privilege or other reasons, should be submitted for in camera review.  In the productions received to date, there are noticeable gaps in the materials.  For example, Mr.

---

[5] Upon further review and development of the disclosure issue, as well as a consideration of the evidence produced to date at the hearing, the United States reserves the right to request that this matter be resolved by a judgment on partial findings.  It now fully appears that the evidence presented by habeas counsel has done nothing to further their claims of the first prong in the *Strickland* inquiry.  Notwithstanding the ongoing discovery/disclosure concerns and even under a partial production of previously undisclosed materials, it is clear that trial counsel was assuredly not deficient in their performance.  If trial counsel are found to have been effective in their performance, there is no legal mechanism to further inquire into whether a lack of error resulted in prejudice.  If the claim, thus fails, a judgment on partial findings, ruling that trial counsel were not deficient in their performance, may well be appropriate pursuant to F.R.Civ.P., Rule 52(c).

Hudgins' fulsome billing records, other than those included in DE 158, have not been provided. Mr. Woodward's have been provided piecemeal, and Dr. Cunningham's billing and time records, prior to January 2009, were just provided on February 19, 2023.

The government does not waive its right to any outstanding discovery, but even the evidence revealed to date is compelling that trial counsel was not deficient in their performance and that representations made in pleadings and declarations offered are contrary to this late disclosed evidence. At this time, the proper lens to evaluate these issues is through the discovery rules and appropriate remedies or sanctions. Any proposed significant delay to allow habeas counsel to proceed in a voluminous review of the materials may be unnecessary and should be unwarranted, considering the current posture at this hearing. Petitioner was all but done with evidence related to deficient performance. After taking testimony from all three trial counsel, their investigation and strategy was well presented and clear that they were not deficient, despite the lack of now available documents that would have exonerated them from these allegations.

Counsels' failures to comply with the Court's prehearing orders is governed by Fed. R. Civ. P., Rule 37(b). This Court should assume that any materials not yet disclosed are "lost" for purposes of this evidentiary hearing and prevent Petitioner from supporting his claim with the untimely disclosures. (Rule 37(b)(2)(A)(ii)). This is addressed as an appropriate remedy at Fed. R. Crim. P., Rule 16(d)(2) as well.

Although the government is entitled to far more, the evidence that began to be produced since February 14, 2023, makes clear that further sanctions may cause more harm than good, create untenable delays, and are frankly unnecessary to answer the Fourth Circuit's limited question. The truth-seeking function of this hearing will be wholly satisfied by consideration of the evidence presented to date and those materials produced by the petitioner (including Ex. A and others

identified by the government), which clearly absolve trial counsel from any claim of deficient performance.

A district court's discretion to address remedies for discovery violations is not limitless. *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995) (citation omitted). The Fourth Circuit requires district courts to consider a four-part test when determining appropriate discovery sanctions. *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001); *see also S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). District courts must consider: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Belk*, 269 F.3d at 348.

Acting in bad faith encompasses a party's disregard of its obligations under the Federal Rules of Civil Procedure and willful conduct where the party "clearly should have understood [its] duty to the court but nonetheless deliberately disregarded it." *Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*, No. 1:10cv1011 (LMB/JFA), 2011 WL 2560096, at *7 (E.D. Va. June 3, 2011), *report and recommendation adopted*, 2011 WL 2559806 (E.D. Va. June 27, 2011) (internal quotation marks and citation omitted).

In this inquiry, the Court considers the "materiality of the evidence" that the noncomplying party failed to produce. *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2 at 92. The documents withheld from the government, and the Court, are more than material, they are claim dispositive. Dr. Merikangas' billing records note that he did in fact review the brain imaging on August 17, 2009. Counsel Woodward's invoices show telephone calls with Dr. Merikangas on August 13, and memoranda to file on August 13 and 16, 2009 (Habeas counsel is still searching for Mr.

14

Woodward's memoranda). However, a memorandum to file from attorney Hudgins regarding the August 13, 2009, call with Dr. Merikangas, documents that Dr. Merikangas strongly advocated against pursuing a mental health strategy, unless the brain scans were significant, while still highlighting the risks inherent with a mental health strategy in this case.

With Ms. Chavis' withdrawal from her representation, and Ms. Bales' apparent forthrightness in bringing the issues to the government's attention, the need for deterrence is arguably lessened in this case. *See, e.g., Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 765 (E.D. Va. 2014) ("Continued contumacious behavior and abuse of the Courts . . . cannot be tolerated. And with discovery's important role in modern litigation, deterrence is greatly needed."). Although there is a need to ensure a general deterrence and encourage other recalcitrant parties to proactively comply with their discovery obligations.

The government's proposal is the least drastic sanction available. Although this Court has indicated that habeas counsel may have the opportunity recall certain witnesses, the government would suggest that there are a multitude of reasons why that would be unnecessary and possibly improper. As noted, the evidenced adduced by habeas counsel, to date, was designed to forward their claim of deficient performance by ignoring these bad facts. Nonetheless, that effort was drastically undermined by trial counsels' ability to recall their investigative steps, internal discussions, and strategies. To the points where their memories could not be refreshed, they asked to review their files and often said that information would be in their files, assertions we now know to be to unequivocally true.

Habeas counsel has had this information about the brain scans since at least 2015. Had the files been properly reviewed, this claim would not have been raised, and certainly would not have been remanded by the Fourth Circuit. The evidence is no longer "murky" and no further

15

disclosures will change this landscape.  Trial counsels are entitled to finality with their obvious vindication.  They need not be subject to further examination, when the now available contents of their file show with an absolute certainty that they pursued every available avenue of investigation, up to and through the penalty phase proceeding.

The government is entitled to proceed with the information in hand, and requests this Court allow parties to do so.  *Cf. Silvestri v.Gen. Motors Corp.*, 271 F.3d 583, 590-95 (4th Cir. 2001) (affirming a district court's imposition of sanctions "for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct").

## CONCLUSION

The United States respectfully submits that the Court should give this late-disclosed material substantive weight and consideration in support of the testimony of trial counsel, yet preclude the petitioner from using such materials for purposes of advancing his claim.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY


By:   /s/_____
Brian J. Samuels
Lisa R. McKeel
Assistant United States Attorneys
Carrie L. Ward, Trial Attorney
Attorneys for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Brian.Samuels@usdoj.gov
Email: Lisa.McKeel@usdoj.gov
Email: Carrie.Ward@usdoj.gov

16

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of February 2023, I electronically filed a true

copy of the foregoing with the Clerk of Court using the CM/ECF system who will send notice to

all filers.


By:   /s/_____
      Brian J. Samuels
      Assistant United States Attorney
      Virginia Bar Number: 65898
      Attorney for the United States
      United States Attorney's Office
      Fountain Plaza Three, Suite 300
      721 Lakefront Commons
      Newport News, Virginia 23606
      Phone: (757) 591-4000
      Fax: (757) 591-0866
      Email: Brian.Samuels@usdoj.gov