# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NEWPORT NEWS DIVISION

DAVID ANTHONY RUNYON,

      Petitioner

      v.

UNITED STATES OF AMERICA,

      Respondent.

Case No. 4:15-cv-108

Initial Criminal No. 4:08-cr-16-3
CAPITAL § 2255 PROCEEDINGS
HON. REBECCA BEACH SMITH

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY ELIZABETH PEIFFER TO WITHDRAW DUE TO UNFORESEEN PERSONAL CIRCUMSTANCES AND FOR LEAVE TO SEEK *PRO HAC VICE* ADMISSION AND SUBSTITUTION OF *PRO BONO* COUNSEL**

For the reasons set forth below and pursuant to 18 U.S.C. § 3599(e), Petitioner David Anthony Runyon and undersigned counsel, Elizabeth Peiffer, move for Ms. Peiffer's withdrawal and for leave to seek *pro hac vice* admission and substitution of attorneys from Covington & Burling LLP ("Covington") in these proceedings.

Several weeks after Mr. Runyon filed his Motion for Appointment of Counsel, *see* ECF Nos. 802 & 803, Ms. Peiffer's mother was suddenly diagnosed with Stage IV breast cancer, which has metastasized to other parts of her body including her bones, lungs, and liver.[1] Significant uncertainties regarding treatment and prognosis remain, but medical consultations and other

---

[1] Although Ms. Peiffer's mother was preliminarily diagnosed on April 28, that diagnosis was not immediately confirmed by an oncologist, and the treatment and care plan remained uncertain pending further medical evaluation. *See* Ex. A, Sealed Decl. of Elizabeth Peiffer ¶¶ 3-7 (hereafter, "Peiffer Decl."). It now is clear that Ms. Peiffer's mother will need substantial and ongoing care, and that Ms. Peiffer needs to be available to serve as a caregiver during treatment. Undersigned counsel endeavored to consult with Mr. Runyon, notify the United States, and file this Motion as soon as practicable in light of these fluid and evolving circumstances.

developments in recent days have made clear that Ms. Peiffer's responsibilities as a caregiver will prevent her from continuing to competently perform her role as counsel for Mr. Runyon and will create conflicts of interest between her responsibilities to care for her mother and those as counsel to Mr. Runyon.

In light of this unexpected change in circumstances, and for the reasons explained in more detail below, Ms. Peiffer respectfully requests leave to withdraw and be dismissed as counsel in these proceedings, and Mr. Runyon respectfully renews his request to be represented in this matter on a *pro bono* basis by substitute counsel from Covington, led by Peter Swanson and Nicholas Xenakis.

Counsel have consulted with Mr. Runyon on this matter, who supports the requested substitution. Counsel also notified counsel for the United States on June 5 of their intent to file this Motion. Counsel for the United States responded on June 7 to state that they had not had a chance to confer internally concerning this Motion and may not be able to do so until the week of June 12.

## I.    Recent Unforeseen Changes In Ms. Peiffer's Personal Circumstances Require Her To Withdraw From This Litigation.

As laid out more fully in the attached sealed declaration, on April 28, 2023, Ms. Peiffer's 75-year-old mother fell while walking down a hallway in her home. A series of medical tests, X-rays, and CT scans conducted after that fall revealed that Ms. Peiffer's mother has Stage IV breast cancer that has metastasized to bones in her hip, spine and ribs, as well as to each of her lungs and her liver. Peiffer Decl. ¶¶ 3-7.

Ms. Peiffer's mother's medical condition has left her unable to move safely without assistance and has highlighted the need for substantial accommodations at her home. *Id.* ¶¶ 8-12.

Although Ms. Peiffer's mother has begun treatment, it will be at least three to four months before the effectiveness of that treatment can be assessed. *Id.* ¶ 14. These unanticipated and very serious developments have made significant demands on Ms. Peiffer's time, attention, and availability, and she has determined that it will be difficult for her to make plans or commitments for the foreseeable future due to her mother's unpredictable medical situation. *Id.* ¶¶ 4, 9-18. She has concluded, after consulting with counsel for the Virginia State Bar, that she is required to withdraw. *Id.* ¶ 18.

> **A.      The Law and Governing Professional Rules Support Ms. Peiffer's Motion.**

In light of these developments, and in the absence of an extended continuance, "there is a significant risk that [Ms. Peiffer's] representation of [Mr. Runyon] will be materially limited by . . . a personal interest of [Ms. Peiffer]," namely, her interest in caring for her mother. *See* Va. R. Prof. Conduct 1.7(a)(2). Ms. Peiffer's "loyalty to [Mr. Runyon] is also impaired" because her responsibility to care for her mother will prevent her from "carry[ing] out an appropriate course of action for [Mr. Runyon]." *See* Va. R. Prof. Conduct 1.7, cmt. 8. Thus, Ms. Peiffer has a "concurrent conflict of interest," and continued representation of Mr. Runyon would violate her duties under the Virginia Rules of Professional Conduct. *See* Va. R. Prof. Conduct 1.7(a).

Ms. Peiffer is also unable to provide competent and diligent representation to Mr. Runyon in this death penalty case in accordance with her duties under Virginia Rules of Professional Conduct 1.1 and 1.3(a). "Competent handling of a particular matter includes . . . adequate preparation." *See* Va. R. Prof. Conduct 1.1, cmt. 5. As this Court has recognized, this case is complex, and there is significant outstanding discovery. *See* Order at 2, ECF No. 810. Further, "[t]he required attention and preparation [in a case] are determined in part by what is at stake[.]" *See* Va. R. Prof. Conduct 1.1, cmt. 5. As a death penalty case, this matter requires the most

heightened attention and preparation. *See* Order at 2, ECF No. 810. Ms. Peiffer's caretaking obligations will prevent her from adequately preparing for the continued hearing and will make it difficult to reliably arrange travel and court appearances, particularly when it comes to the presentation of witnesses over multiple days. Peiffer Decl. ¶¶ 11-18.

Continued representation under these circumstances therefore would violate Rules 1.1, 1.3(a), and 1.7(a)(2) of the Virginia Rules of Professional Conduct, necessitating Ms. Peiffer's withdrawal. *See* Va. R. Prof. Conduct 1.16(a)(1); *see also id.*, cmt. 1 ("A lawyer should not . . . continue representation in a matter unless it can be performed competently, promptly, without improper conflict of interest and to completion."). Continued representation under these circumstances—particularly in the absence of substitute counsel—would also deprive Mr. Runyon of his rights as a person facing the punishment of death. *See* U.S. Const. amends. 5, 6, 8.

Because of these evolving developments and circumstances beyond her control, Ms. Peiffer no longer has the capacity to competently and diligently represent Mr. Runyon pursuant to 18 U.S.C. § 3599 and in accordance with her ethical duties. Peiffer Decl. ¶ 18. In these circumstances and due to Ms. Peiffer's unavailability, it is in the "interests of justice" to allow Ms. Peiffer to withdraw from this case and to provide Mr. Runyon with substitute counsel. *See Martel v. Clair*, 565 U.S. 648, 658 (2012) (holding that "interests of justice" standard applies to motions for substitution under 18 U.S.C. § 3599); *Christeson v. Roper*, 574 U.S. 373, 377 ("[A] motion for substitution should be granted when it is in the 'interests of justice.'"); *see also* 2/22/2023 Tr. at 1099, 1105 (applying "interests of justice standard" to motion to withdraw).

## II.    In Light Of These Unexpected Changed Circumstances, Mr. Runyon Renews His Request To Be Represented By *Pro Bono* Counsel From Covington.

As a result of the unexpected developments described in Section I—which arose after Mr. Runyon filed his Motion for Appointment of Counsel and evolved in material ways after the Court

granted that Motion in part—Mr. Runyon respectfully renews his request to be represented in these § 2255 proceedings by *pro bono* counsel from Covington. At the time this Court previously "advise[d] that the court does not intend to appoint, nor to otherwise admit pro hac vice, any additional attorneys," Mr. Runyon was represented by appointed counsel Ms. Peiffer, who joined Mr. Runyon's legal team in November 2021, with the appointment of Kathryn Ali to join as "second counsel." ECF No. 810 at 2. Now, however, Ms. Peiffer is no longer able to competently fulfill her obligations as appointed counsel for Mr. Runyon, and Mr. Runyon therefore seeks permission for substitute *pro bono* counsel from Covington to represent him as counsel of record.

**A. Designating More Than One Attorney to Serve as Counsel of Record is Critical.**

Because he is an indigent person under a sentence of death who lacks the funds to hire an attorney or to pay any costs related to the prosecution of a proceeding under 28 U.S.C. § 2255, Mr. Runyon is entitled to the appointment of counsel to assist him in litigating his motion for relief pursuant to 28 U.S.C. § 2255. *See* 18 U.S.C. § 3599(a)(2); *McFarland v. Scott*, 512 U.S. 849, 854–57 (1994). If Ms. Peiffer is permitted to withdraw from the litigation, Mr. Runyon will be represented only by Ms. Ali, who has been appointed solely for the limited "purpose of moving the case forward on the one issue now before the court for an evidentiary hearing," ECF No. 810 at 2.

This is a complex proceeding. Indeed, in appointing Ms. Ali, the Court determined that "[g]iven the seriousness of the capital penalty in this case, the amount of discovery yet to be completed, and the complexity of the case," it was appropriate for Mr. Runyon to have more than one counsel of record. *See* ECF No. 810 at 1–2. That ruling was—and is—manifestly correct. The claim remanded for further proceedings—trial counsel's failure to investigate and present evidence of Mr. Runyon's psycho-social history, brain damage, and mental health—involves complicated

5

scientific, factual, and legal issues, including several neurological and psychological evaluations of Mr. Runyon, the facts concerning trial counsel's mitigation investigation, and whether trial counsel's conduct comported with prevailing professional standards. The record in this case is voluminous—spanning hundreds of thousands of pages—and the continued evidentiary hearing will involve numerous expert and lay witnesses.

Further, the withdrawal of Tennessee counsel and Ms. Peiffer's unavailability leave Mr. Runyon without *any* counsel who has worked on the case for more than a few months. While Ms. Ali is working diligently to learn the case, she is new to this long-running litigation. And unfortunately, due to issues created by prior, now-withdrawn counsel, much of the time dedicated so far by Mr. Runyon's team has necessarily been focused on attempting to right the ship on discovery and document production issues, thus limiting their ability to focus on preparing for the continued evidentiary hearing. Mr. Runyon should not have to bear the consequences of his former counsel's conduct, especially given that this is a capital case and may be his last opportunity to present evidence.

This situation stands in stark contrast to counsel for the United States, who have been involved in this case for more than fifteen years—since Mr. Runyon's original trial—and at least three of whom (Mr. Samuels, Ms. McKeel, and Ms. Ward, who is appearing *pro hac vice*) have suggested they intend to appear at the June 16 status conference and otherwise appear to be actively engaged in the litigation. This disparity is particularly notable given that it is Mr. Runyon who bears the burden of proof in this proceeding.

Permitting additional, substitute counsel to appear would also be consistent with this District's Criminal Justice Act ("CJA") Plan, which directs that "[d]ue to the complex, demanding, and protracted nature of death penalty proceedings, the court should consider appointing at least

two attorneys" to represent prisoners pursuing 28 U.S.C. § 2255 post-conviction petitions in federal death penalty cases. *See* United States District Court for the Eastern District of Virginia Criminal Justice Act Plan § XIV.E.2 (approved Nov. 6, 2019) (hereafter, "E.D. Va. CJA Plan").[2] *See also* ECF No. 803 at ¶ 5 (noting that this District's CJA Plan is consistent with Guide to Judicial Policies and Procedures, which recommends appointment of "at least two counsel" for § 2255 proceedings in capital cases, 7 Guide to Judicial Policies and Procedures, ch. VI, § 6.01(A)(2), as well as CJA Plans of many (if not most) other courts).[3] And it would align with the uniform practices of every court currently handling a § 2255 proceeding involving an indigent federal capital defendant, every one of which has two or more counsel, with the sole exception being where a large institutional Capital Habeas Unit is handling the case, in which instance three or more lawyers from the Capital Habeas Unit usually assist. *See* ECF No. 803 at 3–4 & n.5.

### B. Permitting Covington *Pro Bono* Attorneys to Serve as Counsel of Record Will Facilitate An Orderly And Efficient Completion of This Proceeding.

Here, attorneys from Covington led by Mr. Swanson and Mr. Xenakis are prepared, with the Court's permission, to step in as *pro bono* counsel for Mr. Runyon in light of Ms. Peiffer's change in circumstances and resulting request to withdraw, and need only to be admitted to the District *pro hac vice*.[4]

Although the Court has discretion to control its courtroom, there is a general presumption that well-qualified attorneys will be granted *pro hac vice* admission absent some compelling

---

[2] *Available at* https://www.vaed.uscourts.gov/sites/vaed/files/EDVA%20CJA%20PLAN.pdf (last visited June 5, 2023).

[3] It should be noted that counsel appointed pursuant to § 3599 are responsible not only for litigating § 2255 proceedings, but also for "all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant." 18 U.S.C. § 3599(e).

[4] The proposed Covington team includes, in addition to Mr. Swanson and Mr. Xenakis, Santiago Zalazar, Eric O'Brien, Meaghan Ryan, and Tyler VanderMolen.

reason. *Cf., e.g., A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-CV-15, 2015 WL 13733927, at *4 (E.D. Va. Nov. 18, 2015), *report and recommendation adopted in part*, No. 2:15CV015, 2016 WL 184397 (E.D. Va. Jan. 15, 2016) (acknowledging that "[i]t is up to each individual court to set its own standard" for "approving or denying an attorney's *pro hac vice* admission," but citing cases suggesting that there must be some legitimate, specific basis for denial, such as "uncivil behavior or abusive language by an attorney;" "an attorney's impact on judicial economy," as in a situation "where a party's out-of-state counsel has continually thwarted the progress of the litigation;" or where there have been "conflicts of interest or clear-cut violations of the rules"). [5]

Here, no such reason exists, and significant considerations weigh in favor of permitting *pro hac vice* admission. The Covington team is well-qualified to represent Mr. Runyon in this § 2255 proceeding, and the individual lawyers satisfy all requirements for admission *pro hac vice* to this Court. *See* Ex. B, Decl. of Peter J. Swanson ¶¶ 4-6 (hereafter, "Swanson Decl."). Both Mr. Swanson and Mr. Xenakis have experience in criminal matters, including death penalty matters, and Mr. Xenakis previously worked as a federal public defender in this District. *See* ECF No. 803 at ¶¶ 14-16 (describing the experience of Covington team members with respect to complex litigation, expert-heavy cases involving extensive document review, and death penalty and post-

---

[5] Other federal courts employ an even stronger presumption, holding that "[a]bsent a showing of unethical conduct rising to a level that would justify disbarment, the court ***must admit*** the attorney" seeking pro hac vice admission. *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997) (emphasis added) (citing *In Re Evans*, 524 F.2d 1004 (5th Cir. 1975)); *see also Sanders v. Russell*, 401 F.2d 241, 245 (5th Cir. 1968) (while "district courts have broad discretion in prescribing requirements for admission to practice before them," they lack discretion to "limit[] the number of pro hac vice appearances"); *id.* at 246 ("It is difficult to see how the concern of the District Court in decorum, dignity, competency, good character or amenability to service and discipline is served by a numerical limitation . . . lack of necessity— in the judge's view—simply is not and cannot be a proper basis for exclusion [of additional out-of-district counsel] . . . The trial court cannot substitute its judgment for that of the litigant in the choice or number of counsel that the litigant may feel is required to properly represent his interests.") (cleaned up).

conviction matters).[6] Covington has agreed to represent Mr. Runyon on a *pro bono* basis, and it does not intend to seek reimbursement from the Court for its fees or costs incurred in connection with such representation. Swanson Decl. ¶ 3. Counsel for Mr. Runyon have conferred with Geremy Kamens, the Federal Public Defender for the Eastern District of Virginia, who has recommended Covington as capable and available to assist in litigating Mr. Runyon's § 2255 proceedings at no cost to the Court, a factor this District's CJA Plan specifically instructs that the Court "should consider." *See* E.D. Va. CJA Plan § XIV.E.4 ("When appointing counsel in a capital § 2255 matter, the court should consider the recommendation of the Federal Public Defender, who will consult with the Federal Capital Habeas § 2255 Project.").

The only reason the Covington lawyers cannot simply enter their appearances and join Mr. Runyon's team as counsel of record without first seeking permission is that they are not admitted to practice before this Court. But this should not be a barrier to their ability to represent Mr. Runyon, who has selected the Covington team members as his *pro bono* counsel of choice. On the contrary, this is precisely why the process for *pro hac vice* admission exists.

This District's CJA Plan expressly contemplates foreign lawyers serving as counsel of record in § 2255 proceedings like this one. Although the CJA Plan requires CJA panel members in *non-capital* cases to be "members in good standing of the federal bar of this district and the Fourth Circuit Court of Appeals" and "maintain an office in this district," E.D. Va. CJA Plan IX.C.3.a & b, no such requirement exists for counsel seeking appointment in capital § 2255 proceedings. To the contrary, the CJA Plan expressly permits "[o]ut of district counsel" to be

---

[6] During his tenure with the Office of the Federal Public Defender for the Eastern District of Virginia, Mr. Xenakis was admitted to practice *pro hac vice* before this Court. Mr. Xenakis is also admitted as a member of the bar of the United States Court of Appeals for the Fourth Circuit, on which he served as a law clerk, and argued cases in that Court while a member of the Office of the Federal Public Defender.

appointed "in capital § 2255 cases to achieve high quality representation together with cost and other efficiencies."[7] *Id.* at XIV.E.6.

"High quality representation," cost reductions, "and other efficiencies" are precisely what Covington offers here. The Court is aware of the discovery issues that arose during the February 2023 hearing. As described in the Memorandum in Support of the Motion to Appoint Counsel, ECF No. 803, attorneys and litigation support staff from Covington, in conjunction with Mr. Runyon's counsel of record, have been working diligently to address these issues and conduct an efficient and reliable review of the voluminous case files transferred from prior counsel.

To date, Mr. Runyon's current counsel have received a total of seventy bankers boxes with tens of thousands of files as well as a hard drive containing 126 GB of data, including over 187,000 files, and a flash drive containing 14.2 GB of data, including nearly 9,000 files, from former counsel. The paper and electronic files received from former counsel were disorganized and required Mr. Runyon's current counsel to conduct a preliminary review of these files to identify a narrower set of materials requiring potential disclosure under the Court's discovery order. That review was conducted promptly, resulting in the identification of roughly 900 documents from fifty-seven of the bankers boxes and roughly 4,300 files from the hard and flash drives.[8] Covington attorneys, along with Mr. Runyon's counsel of record, have made significant progress regarding the necessary document-by-document review of the roughly 900 paper documents to identify materials that require production, and they completed a production to the government on May 31,

---

[7] Covington counsel are not seeking formal CJA appointment in this case but the same principles apply to retained *pro bono* counsel.

[8] As described in Petitioner's Status Report and Proposed Schedule, ECF No. 808, Mr. Runyon's former counsel sent fifty-seven bankers boxes on April 6, 7, and 10, 2023. The review of these fifty-seven boxes identified nearly 900 documents that are potentially relevant to Claim 6 and require further review. On May 2, 2023, Mr. Runyon's counsel received an additional thirteen bankers boxes from Mr. Runyon's former counsel. The review of the files from the thirteen additional boxes is ongoing and may result in additional files that require further review.

10

2023. Covington plans to enlist a dedicated team of attorneys to complete an expedited first-level review of the remaining roughly 4,300 electronic files. Covington attorneys and staff already have dedicated hundreds of hours to Mr. Runyon's case, and the firm has covered a number of out-of-pocket expenditures related to document scanning, storage, and production. Covington will continue to provide expertise, cost reductions, and other efficiencies to ensure the timely identification and production of relevant information to the government.

Permitting Covington *pro bono* lawyers to formally appear in the case would help to ensure both that this litigation can move forward efficiently and that Mr. Runyon is adequately represented in his § 2255 proceedings. Absent admission *pro hac vice*, the role that Covington attorneys can play in this case and the ability of counsel to expeditiously proceed to an evidentiary hearing will be limited in significant ways. For example:

- Based on the hearing record and documents reviewed to-date, it appears that there are at least five expert witnesses and several lay witnesses relevant to Mr. Runyon's ineffective assistance of counsel claim who were disclosed prior to the February 2023 hearing but who have not yet testified due to the interruption of proceedings. If Ms. Ali is the only lawyer permitted to formally appear and examine witnesses and present evidence, the lion's share of witness and exhibit preparation work will necessarily fall on her, which would unduly limit her ability to prepare for the hearing and could slow these proceedings down considerably. Among other things, it would significantly limit the number of witnesses who could be prepared during any particular day (whereas, if multiple counsel are permitted to examine witnesses, multiple witnesses could be prepared simultaneously on parallel tracks). Permitting multiple attorneys to present evidence and examine witnesses will help facilitate an orderly and efficient presentation to the Court.

- Likewise, if Ms. Ali is the sole counsel of record, she will be solely responsible for arguing any discovery or other disputes that may arise in the coming months, which will detract from her ability to prepare witnesses and otherwise prepare for the upcoming hearing.

- Permitting attorneys from Covington to serve as counsel of record will also ensure that they can assist with and appear on any briefing concerning both discovery-related issues and the ultimate merits of Mr. Runyon's remaining claim.

- To the extent the United States seeks to depose any of Mr. Runyon's witnesses, a ruling that precludes any attorney other than Ms. Ali to prepare any such witnesses and defend their depositions will be inefficient for similar reasons. For example, this would prevent the counsel team from being able to proceed with multiple depositions on parallel tracks.

- Permitting attorneys from Covington to serve as counsel of record would mean that Covington counsel are officially speaking for Mr. Runyon and subject to the Court's authority, and thus presumably would give the United States more confidence and trust in dealing with Covington concerning outstanding discovery disputes, hearing logistics, and other issues. *See, e.g.*, *Belue v. Leventhal*, 640 F.3d 567, 576–77 (4th Cir. 2011) (noting that "pro hac vice attorneys are 'held to the same professional responsibilities and ethical standards as regular counsel,' particularly in this modern era where "[t]he legal profession has become a national one, and justice in any true sense must transcend the parochial . . .") (citation omitted).

These considerations are particularly weighty here given that Mr. Runyon has selected and retained Covington as his *pro bono* counsel. The principles underlying the Sixth Amendment support honoring his selection.

The Sixth Amendment protects the right of a non-indigent defendant to select the counsel of his choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006); *Wheat v. United States*, 486 U.S. 153, 159 (1988). The Amendment also guarantees indigent defendants like Mr. Runyon the right to be represented by qualified, chosen counsel "willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–625 (1989). Because this choice is the very "root meaning of the constitutional guarantee," *Gonzalez-Lopez*, 548 U.S. at 147–48, the Supreme Court has instructed that when a defendant is denied qualified counsel of his choice, it is a structural constitutional violation and does not matter whether a subsequent trial has otherwise been fair. *Id.* at 146 ("[The Sixth Amendment] commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best."). Under the current

circumstances, refusing to permit Mr. Runyon's counsel of choice to fully participate in his representation would also deprive Mr. Runyon of the care and attention he and his case deserve given that he is facing the punishment of death. *See* U.S. Const. amends. 5, 6, 8.

Mr. Runyon understands that this right is not unlimited. But Supreme Court precedent makes clear that none of those limitations applies to his choice of the Covington lawyers to represent him. Mr. Runyon has not chosen counsel who lacks bar membership, has a conflict, is unwilling to carry on the representation, or fails the ethical standards of profession. *See Wheat*, 486 U.S. at 159–60. On the contrary, Covington's attorneys are members in good standing of their respective bars, have already signed a representation agreement with Mr. Runyon and begun work on his case, and are free from ethical conflicts and disciplinary history.

That the members of the Covington team are out-of-state attorneys should not interfere with Mr. Runyon's choice of counsel. *See, e.g.*, *United States v. Ensign*, 491 F.3d 1109, 1114–15 (9th Cir. 2007) ("We have held that a defendant's right to the counsel of his choice includes the right to have an out of-state lawyer admitted pro hac vice.") (internal quotations omitted); *Fuller v. Diesslin*, 868 F.2d 604, 607 (3d Cir. 1989) ("[W]e conclude that the right to counsel pro hac vice is encompassed analytically within the right to counsel of choice, and as such should be examined within the analytic framework generally employed in right to counsel of choice cases."). Out-of-district admission in this case will not "hinder the efficacious administration of justice." *United States v. Panzardi Alvarez*, 816 F.2d 813, 817–18 (1st Cir. 1987). Once again, the opposite is true: the Covington attorneys possess the requisite resources to professionally and efficiently review and disclose discovery as well as the courtroom experience to conduct the evidentiary hearing in an efficient and orderly manner.

**CONCLUSION**

For the foregoing reasons, Ms. Peiffer respectfully requests that the Court grant her request to withdraw from this litigation, and Mr. Runyon respectfully requests that the Court grant leave for the Covington lawyers to file *pro hac vice* motions and be substituted as counsel of record in this litigation.

Dated: June 7, 2023                     Respectfully Submitted,

/s/ Elizabeth J. Peiffer

Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

Kathryn M. Ali, VSB No. 97966
Ali & Lockwood LLP
300 New Jersey Avenue N.W., Suite 900
Washington, D.C. 20001
Telephone (202) 651-2475
katie.ali@alilockwood.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

/s/ Kathryn M. Ali