IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

DAVID ANTHONY RUNYON, )
)
    Petitioner )
)
v. )    Criminal Action No.: 4:08cr16
)    Civil Action No. :4:15cv108
UNITED STATES OF AMERICA, )
)    **CAPITAL § 2255 PROCEEDINGS**
    Respondent. )    HON. REBECCA BEACH SMITH
)

### UNITED STATES RESPONSE TO PETITIONER'S MOTION TO COMPEL DISCOVERY (ECF Nos. 828, 829)

NOW COMES the United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Lisa R. McKeel and Brian J. Samuels, Assistant United States Attorneys, and Carrie L. Ward, Trial Attorney for the Department of Justice, and responds to David Anthony Runyon's (hereinafter "petitioner") Motion to Compel Discovery. (ECF Nos. 828, 829). The United States submits that this motion should be denied.

SUMMARY OF ARGUMENT

In his motion, the petitioner seeks the disclosure of unspecified records pertaining to two rebuttal experts that the United States retained in 2009, in anticipation of the penalty phase of the trial that were properly noticed to the petitioner at that time. After additional testing, however, the petitioner did not pursue a mental health defense at the penalty phase that would have implicated these rebuttal experts. The petitioner did not provide more than preliminary reports from his own experts at that time. As such, the two rebuttal experts in question, Dr. Daniel Martell (a psychologist and neuropsychologist) and Dr. Michael Batipps (a neurologist), did not testify at the penalty phase and provided no reports to the United States. Dr. Martell, in fact, confirmed these

1

facts to then-habeas counsel in February 2023, expressly stating in a letter to Ms. Dana Chavis that he "only reviewed test data at that time and did not produce a report or testify. I no longer recall working on this case at that time, or what my opinions were, if any." Government Exhibit 1.

This Court has already addressed a motion for similar relief. On January 27, 2023, in advance of the commencement of the evidentiary hearing, the petitioner filed a motion for discovery seeking, among other categories of information, any reports, opinions, notes and records of communications from Dr. Martell and any favorable evidence relating to Dr. Martell. ECF No. 737. The United States responded to this request in its evidentiary hearing memorandum (ECF No. 743), identifying that Dr. Martell had opinions that were favorable to the petitioner and that Dr. Martell had been released as a government expert. In ruling on this motion for discovery, this Court found that the United States had produced the requested information. ECF No. 775.

The petitioner contends, however, that because these experts were contracted and, in the case of Dr. Martell, paid under the contract in 2009, that this means that work must have been done and opinions rendered that must be disclosed. The petitioner seems to suggest, without directly saying as much, that Dr. Martell must have rendered similar favorable opinions back in 2009.[1] Notwithstanding Dr. Martell's statement that he produced no report in 2009 and did not remember if he even rendered an opinion at that time, it is far from unusual for a rebuttal expert to spend time (and bill for it) preparing for testimony that may not be needed by reviewing the work of other experts. But merely reviewing the work of other experts does not equate to disclosable information. And the chronology of this matter preceding the penalty phase portion of the trial further establishes that as the reports and opinions of any defense experts were not even final at

---

[1] One reason why the petitioner has not expressly suggested as much is because the materials Dr. Martell reviewed in 2022 (and which formed the basis for his opinion) were not available to be reviewed in 2009. It was not until 2022 that Dr. Martell reviewed the brain scans that were obtained in 2009.

the start of the penalty phase, it would stand to reason that rebuttal experts of the United States could not form opinions on expert product they had yet to review.

The United States submits that it has met its disclosure obligations and the petitioner has not established otherwise. Therefore, this motion should be denied.

<u>PROCEDURAL POSTURE</u>

The procedural history of this case is extensive and well known to the Court and counsel. The United States provides this abridged overview, relevant to the petitioner's motion for discovery for his remaining Section 2255 claim. On June 16, 2008, this Court entered an order relating to mental health evidence, requiring petitioner to file written notice should he chose to present such evidence in his defense pertaining to guilt or punishment. The Court further ordered that the government's experts could examine the petitioner. ECF No. 65. On December 12, 2008, the petitioner filed notice of his intent to present mental health evidence in the penalty phase of the trial. ECF No. 135. The United States initially contracted with two experts, Dr. Paul Montalbano and Dr. Raymond Patterson, each of whom examined the petitioner in 2009. Pursuant to the Court's Order, the reports of these experts were filed under seal at the appropriate time. ECF Nos. 276, 277. The petitioner subsequently filed supplemental notices of additional retained experts. ECF Nos. 177, 230.

After the guilt phase verdict, on July 20, 2009, the petitioner filed notice with the Court that he intended to introduce evidence related to mental health during the penalty phase through expert witnesses Dr. Allan Mirsky, Dr. Mark Cunningham and Dr. James Merikangas. ECF No. 248. Also on July 20, 2009, the psychological evaluations from two of the petitioner's noticed experts- Dr. Mirsky (in preliminary form) and Dr. Cunningham- were filed with the Court. ECF No. 246. The preliminary report of Dr. Merikangas was not filed until August 6, 2009; indeed Dr. Merikangas was not appointed by the Court until July 22, 2009, and did not examine the petitioner until July 29, 2009.

3

ECF No. 278.

As a result of the jury's guilty verdict and the supplemental notices filed by the petitioner, in late July 2009, the United States contracted with psychologist/neuropsychologist Dr. Daniel Martell and neurologist Dr. Michael E. Batipps to assist and present expert testimony, if necessary, as potential rebuttal experts to the anticipated testimony of Drs. Merikangas and Mirsky. On August 6, 2009, the United States provided the curriculum vitae of Drs. Martell and Batipps to trial counsel. ECF No. 829-1. But the petitioner sought leave to present supplemental reports of its experts, which was granted by the Court on August 17, 2009. ECF No. 278. The petitioner was given until August 20, 2009, to present additional supplemental reports.

On August 19, 2009, the penalty phase of the trial began. In his case, the petitioner presented only the testimony of Dr. Cunningham (which related more to developmental factors of the petitioner that would result in a claimed lessened risk of violence in prison). As has been developed throughout the course of the recent evidentiary hearing, the petitioner elected not to proceed with any additional mental health evidence. Materials not disclosed until February 2023 show this to be due, in part at least, to the recommendation of its own expert Dr. Merikangas. ECF No. 793-1. The jury ultimately returned a verdict on August 27, 2009, recommending a sentence of death on Counts 1 and 5 of the Indictment and rejecting the mitigators offered by Dr. Cunningham. ECF No. 291.

The petitioner's conviction and sentence were affirmed by the Court of Appeals. His subsequent Section 2255 petition was denied by this Court, but on appeal, one claim was remanded for an evidentiary hearing. Following the remand, the government again contacted Dr. Martell to provide a consult and review defense matters from Drs. Mirsky and Merikangas and other experts. Noting that a primary point in petitioner's claim involved the assertion that trial counsel withheld brain imaging from his experts and failed to adequately investigate mental health, Dr. Martell

4

opined that— if he had reviewed the brain imaging at the time of trial— he would say it could objectively corroborate petitioner's claim of traumatic brain injury. Although he caveated this opinion by noting that he was not a neuroradiologist and this opinion was outside his realm of expertise, petitioner was notified of his potentially favorable opinion and Dr. Martell was instructed to discuss the case freely with habeas counsel. The United States further requested that Dr. Martell search his archive files for any records relevant to this case, and produce them to the government, although no such records were received. The United States understands that habeas counsel made this same request of Dr. Martell, prior to the onset of the evidentiary hearing.

On January 27, 2022, the parties agreed to a pre-evidentiary scheduling and discovery order. ECF No. 656. On January 27, 2022, this Court entered the Order. ECF No. 657. Specifically, it was ordered that all discoverable material would be produced by January 31, 2022, and all motions relating to discovery filed by February 21, 2022. ECF No. 657. On February 18, 2022, this Court extended the deadline to March 7, 2022. ECF No. 663. On March 4, 2022, the Court again extended the deadlines to March 21, 2022. ECF No. 665. On March 21, 2022, the petitioner filed his first motion for discovery. ECF No. 670. The United States responded opposing the motion. ECF 672. On July 28, 2022, the Court denied the petitioners motion for discovery after conducting a hearing. ECF No. 685.

On January 27, 2023, the petitioner filed a second motion for discovery "for the production of materials relating to Dr. Daniel Martell…." ECF No. 737. The United States responded. ECF No. 743. On February 8, 2023, notably this Court "DENIED the motion to the extent it sought the United States' attorney-work-product and FOUND that the United States had already produced the remainder of the motion's requests." ECF No. 775.

The petitioner subsequently provided notice that Dr. Martell may testify as an expert

5

witness in the instant evidentiary hearing, purportedly satisfying obligations under F.R.Cr.P., Rule 16 and *Jencks,* and included Dr. Martell's report, dated February 3, 2023 (GX-1). Of note, Dr. Martell stated:

> I was originally retained as a consultant in this matter by the United States Attorney's Office at the time of trial in 2009, **but only reviewed test data at that time and did not produce a report or testify.** I no longer recall working on this case at that time, or what my opinions were, if any.

> I was retained again as a consultant by the United States Attorney's Office in January of 2022 during the course of the current proceedings. However, as my opinions turned out to be more favorable to the defense, I have been subpoenaed by them to testify, and subsequently in January 2023 I was released by the USAO.

(GX-1). Dr. Martell did not meet, examine, or test Mr. Runyon. *Id.* He reviewed medical notes, brain images, and reports from both government and defense expert witnesses, to include the current, and seemingly false information from Dr. Merikangas, the petitioner's proposed expert trial witness. Dr. Martell did not review the brain scans from 2009 or 2018 until 2022 when they were provided by the petitioner's counsel. While he noted that the materials available to him at the time of trial, expressly listing the raw neuropsychological test data of Drs. Montalbano and Mirsky, would have supported the same opinions expressed, at no point does Dr. Martel indicate that he rendered those opinions – which appear based on the aforementioned recently reviewed brain scans, testing in 2009 and 2015 and certain post-2009 dated literature – in 2009.

The evidentiary hearing convened on the remanded partial Claim 6 commenced on February 7, 2023. Multiple witnesses have already testified on behalf of the petitioner, including trial counsel Hudgins, Woodward and Babineau. The evidentiary hearing was interrupted, however, after approximately one week due to uncovered late disclosures from prior habeas counsel. Such late disclosures were in violation of this Court's issued discovery order of January 27, 2022, the very order that the petitioner refers to in support of his request for materials. ECF

No. 657.

A lengthy delay in the proceedings has now resulted.  The evidentiary hearing is not set to reconvene until November 1, 2023.  Following multiple extensions that culminated in a status hearing held on June 16, 2023, the petitioner has been given until August 31, 2023, to produce any additional disclosures to the United States that are relevant to Claim 6.  ECF No. 820. To date, the United States has received three productions from the petitioner, including just one small production of 32 pages since the June 16th status hearing.[2]

The Court's orders from the status hearing also resulted in the petitioner proceeding directly to the Court of Appeals, seeking first an interlocutory appeal related to the denial of a motion to withdraw by Ms. Elizabeth Peiffer and then mandamus relief related to the sought involvement of other counsel pro hac vice.  ECF No. 821.  The latter request has been denied by the Court of Appeals.  ECF Nos. 825, 826.  The former remains pending, but the petitioner's motion for a stay in this Court during the pendency of the interlocutory appeal has been denied.

The orders related to mandamus and the denial of the stay were entered on July 24, 2023.  ECF Nos. 825, 826, 827.  The next day, July 25, 2023, counsel for the petitioner sent counsel for the United States a request for additional information concerning Drs. Martell and Batipps with a deadline for a response by July 28, 2023.  ECF No. 829-7.  The United States advised the following day, July 26, 2023, that counsel for the United States and its paralegal were preparing for trial, were on leave and/or had various appointments that made the July 28, 2023, deadline difficult.  ECF No. 829-7.  Counsel for the petitioner advised on July 30, 2023, that a motion for discovery

---

[2] The United States received a production on June 1, 2023, consisting of approximately 315 pages (some redactions); a second production on June 15, 2023 of 437 pages (300 fully redacted); and on July 21, 2023 a last production 32 pages.  The United States understands additional productions will follow with small batches of documents.

would be filed.

DISCUSSION

In support of his present motion, the petitioner first claims that no records of either expert have been produced. The petitioner acknowledges that the notices and curriculum vitae of both experts were produced in 2009. (ECF No. 829-1). The petitioner further states that "it is highly improbable that the government would have formally disclosed experts to the defense and the court without having an understanding of the opinions the experts were likely to offer at trial – opinions the experts could not have formed without doing at least some work on the case." (ECF No. 829, p.3).

This latter assertion, which is at the heart of the petitioner's contention that more must be out there, reveals a lack of understanding of the evolving process of the petitioner's experts at the time of trial and the penalty phase. As this Court well knows, the petitioner obtained the services of Drs. Mirsky and Merikangas later in the proceedings. Although these experts had prepared preliminary reports in late July and early August 2009, both experts qualified their reports based on yet to be accomplished brain scans. Accordingly, the petitioner sought permission to supplement his expert reports based on these scans. Certainly, the experts of the United States could not be prepared to provide rebuttal opinions without knowing the substance of the petitioner's expert reports. As these reports were never finalized, Drs. Batipps and Martell produced no reports.

The chronology of the events leading up to the penalty phase of the trial is set forth in this Court's order of August 17, 2009 (just two days prior to the commencement of the penalty phase). ECF No. 278. This order permitted the defense to supplement mental health reports based, largely upon, neurological testing that was not completed until August 14, 2019. The order explains that

Dr. Merikangas was not even appointed until July 22, 2009, and that the preliminary reports of Drs. Mirsky and Merikangas were not filed until July 20, 2009, and August 6, 2009 respectively. Importantly, it was the defense and its experts that termed these "only preliminary reports." ECF No. 278, p. 3. The Court's order goes through the tests and conclusions of defense and determined that additional time for the defense to supplement its expert reports was warranted. The defense was given until August 20, 2009, to file supplemental reports. *Id.* at p. 10. The United States was also given unspecified time to review and respond. But, importantly, none of these deadlines came into furition. No supplemental defense reports were filed and, as such, the rebuttal experts of the United States never had cause to make or render opinions.

The petitioner alleges that he is in receipt of new information from Dr. Martell and provided portions of invoices dating back to 2009 (which were apparently provided by Dr. Martell), (ECF No. 829-5), as well as a portion of email chains between trial defense counsel and resource counseling discussing the notice of the potential rebuttal experts. ECF 829-2. Based thereon, petitioner infers that there must be additional information relevant to these experts; that these experts must be relevant to the limited claim on remand; and that the United States had and has an obligation to disclose certain documents, to include administrative contracting forms and related attorney work product. The United States disagrees that invoices, or even an expert's initial contract, fall within the scope of a discovery order that focuses on disclosures of brain injury and mental illness. To the knowledge of the United States, the petitioner has not provided any of the contractual or payment information a number of its experts. But this information as to what Dr. Martell accomplished in 2009 is specifically provided in his own 2023 report, which revealed his 2009 role in the case, his review of test data (which is explained to be the raw test results of Drs. Mirsky and Montalbano), his lack of report, testimony, or memory of any opinions. And this is

9

hardly surprising given the more fulsome review Dr. Martel did in 2022-2023.  G-1.

While the United States initially retained Dr. Martell as a consultant in 2009 (which was disclosed to trial counsel at that time), he never prepared a report or testified at any phase of the trial, in large part because the petitioner did not proceed with a mental health defense that would have required Dr. Martell's response in rebuttal testimony.  The United States engaged Dr. Martell again in 2022 in response to some of the issues raised in Claim 6.  When Dr. Martell's opinion proved favorable to the petitioner, the United States disclosed this finding to then-counsel for petitioner on November 14, 2022, who thereafter retained Dr. Martell.

The petitioner points to no missing information beyond speculation that there must be more "there" there.  Importantly, with regard to Dr. Martell, the petitioner previously requested very similar relief on January 27, 2023, and this Court denied same at the start of the February evidentiary hearing. ECF Nos. 737, 775.  Regarding Dr. Batipps, the United States also contracted with him in 2009 as a potential rebuttal witness after the petitioner filed notice of his intent to present mental health evidence in the penalty phase of the trial. Dr. Batipps also did not testify at trial, nor did he produce a report to the United States. Therefore, he has nothing to do with the current evidentiary hearing that is focused on a claim of ineffective assistance of counsel.

The petitioner's supposition that there must be additional material to be disclosed for Drs. Martell and Batipps is rebutted by his own exhibits to the instant motion.  As noted in an August 11, 2009 email, it's unclear "how Merikangas, a neurologist, would be rebutted by Martell, a psychologist." ECF 829-2.[3]  David Bruck (resource counsel) further noted in the e-mail string that we have "tons of material on Martell's checkered history as a government expert."  *Id.*  The discussion further included that it was "[a]wfully hard to think through how to defend the defense

---

[3] It should be noted that the United States does not recall receiving the email that is marked as ECF No. 89-2.  There is no bates number on this email as there have been on prior emails of the same time-period.

evidence without knowing even what Merikangas's findings are going to be." *Id.* If petitioner's own trial and resource counsel were unaware of the potential findings of Dr. Merikangas, then how could a rebuttal expert expected to be?

Although there is no obligation, in this post-conviction posture, for the United States to seek out evidence outside of its immediate custody and control, the United States has made every reasonable attempt to ensure full disclosures have been made, without forcing petitioner to provide a statement of relevance or necessity. The United States has made every attempt to ensure that the substantive information is in the hands of habeas counsel, going so far as to release its own expert to work unfettered with the petitioner's team.

Despite having full access to Dr. Martell, the petitioner does not directly assert— beyond the general claims of inference and "common sense"— that additional information exists. Nonetheless, any information regarding trial defense counsel's mental health investigation, to include research and preparation for potential rebuttal experts should be in trial counsel files, which is in habeas counsels' possession. To the extent the petitioner speculates that more remains, it would presumably be within Dr. Martell's possession, who is now contracted and consulting with the petitioner's habeas team and has provided his files to the petitioner's counsel. In short, the information is in the petitioner's hands and the substantive evidence is already in their custody and control. The petitioner provides this Court with no authority, statutory or otherwise, to demand more. Indeed, Dr. Martell affirms this, claiming he provided no report and does not remember what opinions he had, if any.

In 2009, the United States met its discovery obligations regarding rebuttal witnesses, as evidenced by the petitioner's own motion and exhibits. The Fourth Circuit has explained that "[r]ebuttal evidence is defined as evidence given to explain, repel, counteract, or disprove facts

given in evidence by the opposing party.  That which tends to explain or contradict or disprove evidence offered by the adverse party." *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001) (internal quotation marks and brackets omitted) (§ 2255 relief granted on other issues).  At the time, Rule 16(a)(1)(G) was explicitly applicable only to expert testimony offered in the government's case-in-chief and not rebuttal experts. *See United States v. Beilharz,* 378 F. App'x 363, 365 (4th Cir. 2010) (affirming the admission of rebuttal expert testimony recognizing that "[r]ebuttal witnesses are a recognized exception to all witness disclosure requirements.").  At the time of trial, the government was not obligated to produce more, and there is no evidence or assertion that it failed in its duties at the time of trial.    To the government's knowledge, nothing more remains that would be subject to disclosure, and the burden lies squarely on the petitioner to specifically allege any material errors that would require further discovery at this late stage.

The petitioner further claims that he has not received records related to Dr. Martell related to his retention as an expert in the pending Section 2255 proceedings.  ECF No. 829, p.5.  Dr. Martell prepared no report for the United States related to his retention in 2022, but the United States disclosed his opinions and released him so that he could serve as a defense expert in this case.  Clearly Dr. Martell, who is currently retained by the petitioner, has not provided any such records.  The United States described this opinion and disclosure history further in its response to one of petitioner's many pre-hearing pleadings.  ECF No. 742 at p.8.  This was affirmed by the petitioner in his own discovery motion, (ECF No. 737), in which he stated that the government had provided information as to Dr. Martell on November 14, 2022.  The petitioner went on to request the exact same relief he currently requests.

In the alternative, the petitioner moves for discovery of documents under Rule 6 of the Rules Governing Section 2255 Proceedings.    But, as with prior discovery motions of the

12

petitioner, no good cause has been established. The petitioner has not established that any speculative favorable opinions regarding brain damage or mental health even existed. Dr. Martell cannot even remember if he formed an opinion, and it is clear even from the petitioner's own exhibits that all he reviewed was test data. And this test data did not include the brain scans and other more recently accomplished reporting that was provided to Dr. Martell – these were not made available until 2022.

An evidentiary hearing does not entitle petitioner to unconstrained discovery, and this request seeks information far afield from the limited claim of ineffective assistance counsel that remains before this court. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 117 S.Ct. 1793 (1997). Once an evidentiary hearing is ordered, granting discovery is left to the discretion of the court, discretion to be exercised where there is a showing of good cause why discovery should be allowed." (Rules Governing § 2255 Proceedings, Rule 6. Advisory Notes). There is a "general admonition against federal prisoners to use discovery in habeas proceedings as a fishing expedition." *United States v. Cuya,* 964 F.3d 969, 974 (11th Cir. 2023). An evidentiary hearing is not a license to "retry" those issues that were disposed of or denied in petitioner's other claims.

To the extent the petitioner speculates there were procedural failures on the part of the United States, he (a) fails to identify any evidence other than by inference and claims of "common sense"; and (b) forgets that the petitioner's evidentiary claims were disposed of and denied by the Fourth Circuit. The limited issue before this Court is whether trial defense counsel were ineffective in its mental health investigation. The petitioner's discovery motion is an attempt to retry issues that have been disposed of and are, necessarily, irrelevant to this proceeding. For instance, the

13

petitioner claims this information is appropriately sought because the "penalty phase government experts' opinions as to whether Runyon was brain damaged are relevant to this Court's determination of the strength of Runyon's evidence of brain damage and the impact it would have had on the jurors." (ECF 829 at 10-11).  That is a bridge too far, and invites this Court to allow *post hoc* review of the trial level experts, something that makes little sense considering Dr. Merikangas remains available, provided his present-day reports and affidavits, and advised counsel not to release his opinions to government's trial experts or present a mental health defense.

The petitioner also cites to *Dung The Pham v. Terhune*, 400 F.3d 740 (9th Cir. 2005) to minimize his burden to establish "good cause" with specificity.  That argument is misplaced, and the facts in that case highlight the deficiencies that lie herein. In *Dung The Pham*, the petitioner presented ample scientific evidence that required additional forensic testing and evidentiary review.  Specifically, the petitioner requested laboratory notes (a question of completeness) to determine whether a common error in gunshot residue analysis was an issue in his case.  If true, the evidence would tend to exculpate the petitioner while inculpating a potential second shooter. The court thus found that petitioner met his prima facie burden and, if true, the prejudice would not be immaterial under a *Brady* analysis, due to a material, scientific error on the part of a government actor.

That is not the case here.  Rather, the petitioner raises a speculative question of whether, if given the information from his own experts at the time of trial, government rebuttal experts may have had a favorable opinion, ignoring the chronological break in logic— at this stage, discovery is not warranted "where the petitioner provides no specific evidence that the requested discovery would support his habeas corpus petition." *Hirschfeld v. Comm'r of the Div. of Parole,* 215 F.R.D. 464 (S.D.N.Y, May 8, 2003).  In this case, if such evidence was available to show documents

14

would be favorable to his claim, the petitioner has ample resources to make the requisite showing.

Dr. Martell is the best source of information to establish some factual predicate that the government

failed in its burdens.  With free and unfettered access, it is telling that the petitioner is unable to

raise a specific claim of missing disclosures much less make an argument that any such information

would be material, with the witness himself available should they make a showing of relevancy

for his testimony.[4]

CONCLUSION

This effort to obtain additional information is not a new tactic by the petitioner.  Continuing

up to and through the initial days of the evidentiary hearing the petitioner continued to file similar

attempts for discovery and motions to expand the record. *See, e.g.*, ECF Nos. 737, 739, 753, 763 and

769.  Although perhaps more timely in nature, this appears to be an additional effort to obtain

unspecified and unwarranted materials.  The United States respectfully requests that this motion be

denied.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:  _____/S/_____

Brian J. Samuels
Lisa R. McKeel
Assistant United States Attorneys
Carrie L. Ward, Trial Attorney
Attorneys for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300

---

[4] On March 21, 2022, the petitioner similarly sought production of recorded communications between the United States and Drs. Patterson and Montalbano as well as depositions and documentary discovery from these experts. (ECF No. 670).  The Court denied this motion, finding the petitioner unable to establish the necessary good cause for discovery for these experts who had actually provided reports. (ECF No. 685).  It is even more unfounded when all the petitioner offers is unfounded speculation and has direct access to Dr. Martell.

721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Brian.Samuels@usdoj.gov
Email: Lisa.McKeel@usdoj.gov
Email: Carrie.Ward@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2023, I electronically filed a true

copy of the foregoing with the Clerk of Court using the CM/ECF system who will send notice to

all filers.


By:    _____/S/_____
       Lisa R. McKeel
       Assistant United States Attorney
       Virginia Bar Number: 23652
       Attorney for the United States
       United States Attorney's Office
       Fountain Plaza Three, Suite 300
       721 Lakefront Commons
       Newport News, Virginia 23606
       Phone: (757) 591-4000
       Fax: (757) 591-0866
       Email: Lisa.McKeel@usdoj.gov