IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

DAVID ANTHONY RUNYON,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Petitioner　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　)　Criminal Action No.: 4:08cr16
　　　　　　　　　　　　　　　　　　)　Civil Action No. :4:15cv108
UNITED STATES OF AMERICA,　　　　)
　　　　　　　　　　　　　　　　　　)　**CAPITAL § 2255 PROCEEDINGS**
　　　　　　Respondent.　　　　　　　)　HON. REBECCA BEACH SMITH
　　　　　　　　　　　　　　　　　　)

**UNITED STATES RESPONSE TO PETITIONER'S NOTICE OF SUPPLEMENTAL AND REVISED DECLARATION OF EXPERT (ECF No. 854)**

NOW COMES the United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Lisa R. McKeel and Brian J. Samuels, Assistant United States Attorneys, and Carrie L. Ward, Trial Attorney for the Department of Justice, and responds and objects to Petitioner's Notice of Supplemental and Revised Declaration of James R. Merikangas, M.D. (ECF Nos. 854, 854-1). For the reasons set forth below, and as evidenced by Dr. Merikangas's most recent revised declaration (ECF No. 854-1), Petitioner's desire to prepare his remaining witnesses with materials obtained that resulted in the suspension of evidentiary hearing undermines the truth-seeking function of this proceeding.[1] These same concerns underlie the expressed objection of the United States to Petitioner's Motion for Leave to Disclose Witness Testimony to Experts (ECF Nos. 847, 848).

---

[1] The United States has raised concerns with the scope of the hearing and the proposed Petitioner experts in prior pleadings and during the evidentiary hearing. (ECF No. 859). For efficiency and convenience to the Court and counsel, the United States does not repeat those arguments herein.

BACKGROUND

As is well known to the Court, Dr. Merikangas was originally retained as one of several of Petitioner's pretrial mental health consultants, billed as an expert in neuropsychiatry. This Court approved his appointment in or about July 2009, and he conducted an evaluation of Mr. Runyon ("the Petitioner"), generated a preliminary report, and further recommended certain neurological testing that was done prior to commencement of the penalty phase of the trial. He ordered an MRI, PET, and EEG of the brain. (ECF No. 511-2). In the course of his habeas petition, Petitioner alleged that these neurological tests, ordered by Dr. Merikangas, were not provided to, or otherwise deliberately withheld from, his consideration by trial counsel. This assertion was a primary basis for the Petitioner's claim that his trial counsel failed to fully investigate and present an available mental health defense.

In his 2009 preliminary report Dr. Merikangas noted a history of multiple head injuries, childhood beatings, and current headaches, all reported anecdotally by Petitioner himself. Dr. Merikangas further indicated that psychiatric evaluations suggested that, at the time of the crime, the Petitioner was suffering from the side effects and/or withdrawal from experimental drugs administered as a control source in drug trials for pay. There was no reference or discussion as to which drugs were responsible for this purported condition.

Although the Petitioner asserted a claim that his trial defense counsel failed to provide the reports of the MRI and PET scans to the mental health experts, there was little evidence to support this assertion at the time of filing his Section 2255 motion for relief. Dr. Merikangas did not provide a final report, nor did he testify at Petitioner's penalty phase proceeding in 2009, and no communications between the trial team members provided insight into this decision to evidence this claim. The United States was not provided with any billing for Dr. Merikangas that would

2

show his specific dates of service in 2009.

Dr. Merikangas continued to participate in the Petitioner's defense following his conviction and sentence. In 2015, Dr. Merikangas was asked by habeas counsel to conduct a further clinical evaluation. He viewed the aforementioned neurological testing and rendered a new report, a document that formed a material basis for the decision of the Court of Appeals to remand this issue for an evidentiary hearing. In his 2015 report, Dr. Merikangas abandoned his earlier drug-based diagnosis.

In this 2015 report, Dr. Merikangas did not discuss or claim that he did not receive the scans and radiology reports prior to trial. (ECF No. 511-2). Rather, he summarized his earlier work and then noted that, he "reviewed the MRI and PET scans of August 2009. They revealed multiple white matter hyperintensities on the MRI consistent with his history of head injures [sic] and migraine. The PET scan was non-diagnostic." (ECF No. 511-2). He reported the following impressions: Petitioner suffered brain damage from age 3, including a 1996 motor vehicle accident and a jail assault (presumably in 2009) that resulted in impaired executive functioning and decision making. He contended that psychiatric tests suggested paranoid delusions. He found continued evidence of PTSD, as previously diagnosed, which he claimed accounted for some of his disordered mood and cognition. He concluded that these symptoms may be the consequence of brain injuries, a functional mood disorder, and PTSD. Dr. Merikangas concluded that he would have testified at trial that Petitioner suffered from brain damage, disorder of executive functioning, combined with a psychotic thought process. (ECF No. 511-2, pp. 1 and 4).

Following the remand and just prior to the onset of the evidentiary hearing, prior habeas counsel provided a supplemental declaration signed by Dr. Merikangas, under penalty of perjury, on February 2, 2023. This declaration was submitted in support of a motion for Dr. Merikangas'

3

alternative testimony, i.e., by remote means, or declaration alone. (ECF No. 754-3).   In this declaration, Dr. Merikangas avers, in pertinent part, that after examining the Petitioner and forming initial impressions:

> I prepared a brief report, dated August 5, 2009.
>
> I did not hear anything further from Mr. Runyon's attorney.  Mitigation investigator Shelia Cronin was my main contact with the trial defense team.  Although I ordered the MRI and the PET scan, I never saw the images.  A disk of the scans was not in my file.  The first time I saw the imaging was when habeas counsel subsequently provided a copy to me.

(ECF No. 754-3, p.1).

> In the pleading related to this declaration, habeas counsel emphasized these claims by Dr.

Merikangas related to the scans, habeas counsel represented that:

> His testimony will provide relevant evidence supporting both *Strickland* prongs of Runyon's Claim 6. Trial counsel retained Dr. Merikangas, a neuropsychiatrist, in Mr. Runyon's case, but failed to provide Dr. Merikangas with all the information he requested and simply ceased communicating with him. Dr. Merikangas ordered brain scans but counsel did not provide those scans to Dr. Merikangas.  When, in 2015, Dr. Merikangas finally reviewed the 2009 MRI at habeas counsel's request, he identified white matter hyperintensities indicative of brain damage. Dr. Merikangas's testimony is relevant to demonstrating Mr. Runyon was a brain-damaged individual at the time of the crime, and that trial counsel acted unreasonably in not providing the MRI to him or discussing with Dr. Merikangas the findings of his examination of Mr. Runyon. His testimony is necessary, and good cause and compelling circumstances exist to permit him to testify remotely."

(ECF No. 754, p. 3).   Dr. Merikangas was prepared to testify via remote means, following this Court's ruling on the Motion, on February 14, 2023, prior to the present adjournment.

As has been discussed in various prior pleadings, the evidentiary hearing was suspended when the United States learned discovery violations had been committed by prior habeas counsel that certainly related to Dr. Merikangas, among others.  *See e.g.*, (ECF No. 859, pp. 6-8, 11-12). Prior counsel provided certain documents, beginning in February 2023, that had previously been withheld from the United States, as well as former trial counsel Hudgins, in the course of preparing

his declarations and evidentiary hearing testimony and the Court of Appeals.  Contrary to many representations by habeas counsel regarding Dr. Merikangas and the scans, the newly disclosed evidence revealed the following documents: (ECF No. 793-1)[2]

- A titled <u>Memo To File</u> from attorney Hudgins that reflects an August 13, 2009, telephone conference with attorney Woodward and Dr. Merikangas.  According to this document, Dr. Merikangas relayed he did not believe that the defense was in a good position to present a mental health defense as it would result in the Government presenting its mental health picture.  Dr. Merikangas indicated that the examination of Mr. Runyon was not abnormal and that Mr. Runyon was not truthful.  Dr. Merikangas indicated that unless there was something glaring in the MRI or PET scan, he did not recommend a mental health defense and, even if there was a defect shown in the scans or testing, it would be a risk the defense counsel would have to weigh as to whether or not to present a mental health defense absent a very bad injury or defect.

- Two invoices from Dr. Merikangas to Mr. Hudgins, both reflecting the August 2009 time period; one of which reflects "MRI and PET 8/17/2009 Review" for two hours at $100 per hour accompanied by a court reimbursement invoice signed by Dr. Merikangas that has the written description of "review of MRI and PET scans"; and the other invoice of which reflects "MRI and PET 8/17/2009" also for two hours at $100 per hour.

- Billing records from Mr. Woodward that reflect an entry entitled "Memo to file regarding Dr. Merikangas interview" on August 13, 2009; and an entry entitled "Memo to file regarding mental health evidence/interview with Dr. Merikangas" on August 16, 2009.  To date, neither memo has been found or produced.

These documents reveal that Dr. Merikangas did, in fact, receive and review the 2009 brain imaging scans and had subsequent discussions with trial counsel before the onset of the presentencing proceeding. These records directly contradict Petitioner's claim to this Court and the Fourth Circuit.  These records directly contradict Dr. Merikangas's 2015 report and February 2, 2023 declaration.[3]  The contemporaneous records demonstrate that Dr. Merikangas did review

---

[2]The United States submits that these documents, and other late documents produced should be accepted as substantive evidence by the United States.  The United States should not be expected to bear the authentication burden (made more difficult by the passing of Judge Hudgins) when these documents were not disclosed until Judge Hudgins and other witnesses had already testified.

[3] Even the most recent October 2, 2023, declaration of Dr. Merikangas, while purporting to address the billing records and the memorandum document the attorney call, does not fully address the substance of these newly

the MRI and PET scans (indeed, he billed $200 for this work), that Dr. Merikangas talked with trial counsel after the brief preliminary report he prepared, advising them that he should not testify because Petitioner did not have defects and had lied to him.  Obviously, these newly disclosed documents would be relevant in any examination of Dr. Merikangas at the evidentiary hearing, because they cut so strongly against his prior declaration and the claims in the Section 2255 petition alleging a failure of trial counsel to provide the scans to Dr. Merikangas.

The evidentiary hearing commenced on February 7, 2023.  On February 14, 2023, in the course of a discussion on the disclosure of new materials and what they encompassed, the United States requested that "any new materials not be discussed with any witnesses until we get a handle on what they are."  (Tr. at 998, line 13).  This request was made in connection with specific discussions about remaining witnesses, including Dr. Merikangas.

As the hearing continued and just prior to a lengthy recess for the Petitioner to determine the extent of the non-disclosures, the United States renewed its motion for restrictions on the disclosure of newly discovered documents to witnesses, stating:

> MR. SAMUELS:  That's fine, Your Honor.  May I make one last request, that is whatever is found, that it not be shared with witnesses until we've had a chance to review it.  That may be inappropriate at this stage.  I'd just like the chance to review the records first.
>
> THE COURT:  I grant that motion.  That's only fair.  One of the extreme sanctions is that they can't use them at all.
>
> MR. SAMUELS:  Yes, ma'am.
>
> THE COURT:  So, I mean, that's an appropriate *Jencks* Act or lack of discovery production.  You can't use the documents.  So, in any event, no, they can't be shared, they have to go to counsel, and if appropriate, and you've got some argument over them, you're going to have to get copies to the Court.

(Tr. at 1003, lines 8-16).

---

provided documents or explain the clear contradictions with the early declarations.

Petitioner's counsel was and is certainly clear on the Court's other imposed restrictions of sharing witness testimony with his experts.  Indeed, these known restrictions formed the basis for Petitioner's motion to share witness testimony with his experts.  (ECF No. 847).  Notwithstanding the above order of the Court and with no notice to the United States, the Petitioner has obtained a Supplemental and Revised Declaration of James R. Merikangas, M.D., on and dated October 2, 2023 ("the revised declaration").  (ECF Nos. 854, 854-1).  The revised declaration was filed some eight months after the first supplemental declaration, and less than two weeks after Judge Stephen Hudgins passed away.

DISCUSSION

In the revised declaration, Dr. Merikangas claims that he prepared his February 2023 supplemental declaration after reviewing his 2009 and 2015 reports, but not his billing records. He claims he recently reviewed such billing records in September 2023.  He also claims that in September 2023 he reviewed records from attorneys Hudgins and Woodward, reporting discussions of which he claims to have no memory.  Dr. Merikangas claims to have a clear memory, however, of how billing records were prepared and submitted.  Dr. Merikangas purports to stand by his previously expressed opinion that the Petitioner is brain damaged.  (ECG No. 854-1).  Other than claiming no memory, he does not address any of the substance of Judge Hudgins's August 13, 2009, Memorandum to File, relaying his advice that he not be called to testify or the discrepancies between his supplemental declaration (claiming that he had no contact with trial counsel after the scans and never received the scans) and the records disclosed in February 2023 (establishing that he did have contact with the attorneys and reviewed the scans).  There is no information provided as to who prepared this revised declaration or what specific communications were had with Dr. Merikangas leading up to its preparation.

The United States objects to this revised declaration being considered for any purpose. Given the claim-dispositive significance of the February disclosures and the documents produced at various times through August 31, 2023, as well as the Court's order recounted above, the Petitioner should have, at minimum, sought leave of the United States before showing Dr. Merikangas these new documents. The United States would have insisted these be shown to Dr. Merikangas on the witness stand, given his prior under oath February 2, 2023, declaration. It is this effort at clear revisionism that prompted the United States' concerns with any disclosure to witnesses of the late provided discovery. And the Court recognized this, acknowledging that a remedy for a discovery violation is that the party that committed the violation not be permitted to benefit from it. But that is exactly what the Petitioner has done here – by attempting to shape and revise Dr. Merikangas's declaration to fit the newly disclosed facts, while still maintaining an opinion favorable to the Petitioner. The declaration was apparently produced and obtained after trial counsel's passing, who was misled in his prior declarations and his direct examination in February by the failure of prior habeas counsel to disclose that such records were in his files. This leaves the United States unable to present Judge Hudgins testimony in likely rebuttal to the declaration of Dr. Merikangas.

The United States contacted counsel for Petitioner after the revised declaration was filed and understands that Petitioner's counsel does not view showing Dr. Merikangas the late-disclosed discovery to be a violation of this Court's order because his disclosure obligations were completed on August 31, 2023. Respectfully, the United States submits that the intent of the Court's ruling was to prevent witness testimony to be shaped by the late-disclosed discovery without a fair opportunity for both sides to consider such impact. This is exactly what has occurred with the revised declaration of Dr. Merikangas.

Similarly, this same concern prompts the United States' expressed objection to the Petitioner sharing witness testimony with any remaining witnesses. On September 26, 2023, Petitioner filed his motion to disclose documents to remaining witnesses. (ECF N0. 847). Contrary to Petitioner's overbroad reading of Federal Rule of Evidence 615, there is no brightline rule excepting experts from a Court order of sequestration. The rule requires that witnesses should be excluded upon request or on the Court's own volition, an action "long recognized as a means of discouraging and exposing fabrication, inaccuracy, and collusion." *Advisory Committee Notes, Rule 615.* Petitioner bears the burden of showing that the exception under F.R.E. 615(3) applies, and that the witness' presence is "essential to the presentation of his cause." *United States v. Olofson,* 63 F.3d 652 (7th Cir. 2009). The purpose of Rule 615 is to avoid confusion and avoid the risk of fabrication or collusion.

In light of the significant discovery violations, *Jencks* violations, and present sequestration violations, this Court is well justified in maintaining appropriate limits to protect its truth-seeking function. A requirement that witnesses address new information on the record is the least restrictive means to ensure that the Court is presented with a fulsome view of the evidence, untainted by the series of Petitioner's errors that have plagued the course of this hearing.

For the foregoing reasons, the United States objects to the revised declaration of Dr. Merikangas and the Petitioner's further efforts to provide its remaining witnesses with the testimony of the witnesses to date prior to the continuation of the evidentiary hearing on November 1, 2023.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY


By:             /s/
Brian J. Samuels
Assistant United States Attorney
Virginia State Bar No. 65898
Lisa R. McKeel
Assistant United States Attorney
Carrie L. Ward, Trial Attorney
Department of Justice
Attorneys for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Brian.Samuels@usdoj.gov
Email: Lisa.McKeel@usdoj.gov
Email: Carrie.Ward@usdoj.gov

10

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of October 2023, I electronically filed a true

copy of the foregoing with the Clerk of Court using the CM/ECF system who will send notice to

all filers.


By:         _____/s/_____
            Brian J. Samuels
            Assistant United States Attorney
            Virginia Bar Number: 65898
            Attorney for the United States
            United States Attorney's Office
            Fountain Plaza Three, Suite 300
            721 Lakefront Commons
            Newport News, Virginia 23606
            Phone: (757) 591-4000
            Fax: (757) 591-0866
            Email: Brian.Samuels@usdoj.gov

11