IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | | |
|---|---|---|
| DAVID ANTHONY RUNYON, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Criminal Action No.: 4:08cr16 |
| | ) | Civil Action No. :4:15cv108 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **CAPITAL § 2255 PROCEEDINGS** |
| Respondent. | ) | HON. REBECCA BEACH SMITH |
| | ) | |

**UNITED STATES MOTION IN LIMINE
TO EXCLUDE DEFENSE REBUTTAL EXPERT**

NOW COMES the United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Lisa R. McKeel and Brian J. Samuels, Assistant United States Attorneys, and Carrie L. Ward, Trial Attorney for the Department of Justice, and respectfully requests that this Court prevent the Petitioner from presenting an expert witness that: (1) presents a novel claim not relevant to the Section 2255 motion that improperly expands the scope of Petitioner's case-in-chief;  and (2) is not a proper rebuttal witness to the evidence presented by the United States.  In light of the evidence adduced in the course of the evidentiary hearing, the opinions of Dr. Michael Lipton, a neuroradiologist, are not relevant to the claim at issue and do not serve to rebut testimony presented by the United States. This Court should exclude his proposed testimony and report.[1]

---

[1] As discussed further herein, the Petitioner may claim that this objection was waived.  This is not correct.  The United States objected to each of the post hoc experts employed by the Petitioner, which would have also impacted Dr. Lipton.  Additionally, the United States could not mount the proper objection to relevancy (related to the claim at issue) or rebuttal without first hearing from the testimony of the Petitioner's witnesses and that of Dr. Aguirre.

1

## BACKGROUND

On appeal from the denial of Runyon's motion for collateral relief, the Court of Appeals remanded for an evidentiary hearing to determine whether trial counsel provided ineffective assistance by failing to investigate and present mitigating evidence of Runyon's brain injury and potential mental illness. *United States v. Runyon,* 994 F.3d 192, 197 (4th Cir. 2021).[2]  In its ruling, the Court of Appeals relied heavily upon assertions that trial counsel abandoned an incomplete mental health investigation by failing to provide the petitioner's neuropsychiatrist, Dr. James Merikangas, with MRI and PET scans that he had ordered prior to the penalty phase of the trial. Petitioner contended that trial counsel essentially stopped communicating with Dr. Merikangas after he provided a preliminary report on August 5, 2009, and never shared the brain imaging scans with Dr. Merikangas. (ECF No. 511-2).  The Petitioner further contended that "[b]rain scans in August 2009 revealed multiple white matter hyperintensities consistent with Runyon's history of head injuries and migraine. Merikangas report, 9/23/15, p. 4, Ex. 2." (ECF No. 511, p. 53).  Of note, however, there has never been an expressed claim in the Section 2255 motion that the Petitioner experienced prejudice because his trial counsel did not have a neuroradiologist at hand to further read and interpret the MRI images.  (ECF No. 511).

The evidentiary hearing commenced on February 7, 2023.  In the course of the hearing, serious discovery violations on the part of the Petitioner came to light, including the failure to disclose certain trial counsel files that strongly contradict the remanded claim. The Court continued the hearing, and two members of the Petitioner's habeas counsel team were permitted to withdraw from representation. The Court also ordered sequestration of the witnesses, to

---

[2] When the Court of Appeals recently affirmed the denial of attorney Elizabeth Peiffer's motion to withdraw it once again identified the sole issue on remand: "whether trial counsel provided ineffective assistance by failing to investigate and present mitigating evidence of Runyon's brain injury and potential mental illness."  (ECF No. 855 at 3-4.)

include expert witnesses.[3]

On February 5, 2023, habeas counsel provided the resume of Dr. Michael Lipton, an expert habeas counsel claimed to have retained in rebuttal to Dr. Aguirre. On or about February 19, 2023, habeas counsel provided a copy of Dr. Lipton's report, with a list of his prior testimony. (Ex. 1). This was after a pause in the proceedings due to the discovery violation, and there was no opportunity to raise any immediate objection with the Court.

On October 6, 2023, the United States filed a separate motion in limine to limit and/or exclude the testimony of several proposed defense experts. (ECF No. 859). The Court denied the motion on October 27, 2023, (ECF No. 873) and Dr. James Merikangas (neurologist and neuropsychiatrist), Dr. Daniel Martell (neuropsychologist), and Dr. Siddartha Nadkarni (neuropsychiatrist and epileptologist), testified in Petitioner's case-in-chief. Each of these experts testified as to their ability to read and interpret the MRI scans done on August 13, 2009

In response, the United States recalled Lawrence Woodward, Jr. (trial counsel) for further cross-examination, and Dr. Geoffrey Aguirre (neurologist and behavioral neurologist) to testify.[4] Petitioner confirmed his intent to call one witness in rebuttal, Dr. Michael Lipton, a neuroradiologist. At the conclusion of the hearing day on November 8, 2023, the United States rested and noted its objections to Dr. Lipton's proposed testimony.

DISCUSSION

Petitioner now seeks, some fourteen years after the conclusion of the trial in 2009, to do what no expert recommended either at that time or since, including within the statutory

---

[3] Although Petitioner shared Dr. Aguirre and Dr. Lipton's materials with their experts, to include Drs. Merikangas and Nadkarni, the United States was unable to consult with Dr. Aguirre in the interim period. As such, materials were not provided to him until November 1, 2023, after seeking and obtaining the Court's approval to do so.

[4] Drs. Nadkarni and Merikangas each testified beyond the limits of their written reports, opining as to conclusions not contained in their disclosures. With the Court's approval, Dr. Aguirre was provided some insight into these opinions, and testified to rebut their conclusions.

3

investigative period within Section 2255, which expired in 2015; specifically, he desires to expand the scope of his remanded claim to demand the expertise of a neuroradiologist, now insisting that the quality of the MRI scan was at issue.  This is countermanded by the testimony of his own experts, Drs. Martell, Nadkarni, and most expressly through Dr. Merikangas's declarations, opinions, and testimony. There is now clear evidence, elicited through Petitioner's own questioning, that every expert ably read the scans.[5]

**1.  A Failure to Seek an Expert in Neuroradiology is Beyond the Scope of the Claim**.

The purported failure to consult with a neuroradiologist is a novel claim and has not been raised in Petitioner's briefings to this Court or the Fourth Circuit, nor was the issue raised in any of Petitioner's mental health experts' various declarations or reports.[6] Additionally, all of the Petitioner's experts testified over the past week that they were able to read and interpret the 2009 MRI imaging, identify white matter hyperintensities, and provide the Court with their impressions, thus, negating the relevance or necessity of a corroborating expert.

The crux of Dr. Lipton's testimony as a neuroradiologist goes to whether Dr. Merikangas was effective in his advice and opinion. Dr. Merikangas ordered the brain imaging (GX No. 61), but did not specify a need for a neuroradiologist.  In 2015, Dr. Merikangas reviewed both the MRI images and the PET scans. He made no findings regarding the quality of the MRI imaging and noted the PET scans were non-diagnostic. (Pet. Ex. 21).  However, he did not indicate whether the images were insufficient, and made no recommendations as to whether they should

---

[5] What's more, the evidence adduced following Petitioner's discovery violations show a memorandum to trial counsel's file, that Dr. Merikangas advised against pursuing a mental health defense in the penalty phase, corroborated by three independent billing records (Dr. Merikangas, Mr. Woodward, and Mr. Hudgins), as well as an email from Ms. Cronin, that the evidence was insufficient to present a mental health defense.

[6] Dr. Merikangas, in his September 25, 2015 report, states: "I reviewed the MRI and Pet scans of the brain done in August 2009.  They revealed multiple white matter hyperintensities on the MRI consistent with his history of head injures [sic] and migraine."  Dr. Nadkarni, in his November 9, 2022 report, also states "An MRI from 2009 shows multiple white matter hyperintensities consistent with David Runyon's history of head injuries."

have been redone at the time of trial.[7]  Petitioner may now be unsatisfied with Dr. Merikanagas' pretrial opinions, but there is no due process right to an effective expert witness, and his fallacies bear little impact in assessing the performance of counsel.  *See, e.g., Joseph v. Angelone*, 184 F.3d 320, 327 (4th Cir. 1999).

Dr. Merikangas's failure to identify a need for an expert in neuroradiology, either in 2009 or even 2015, does not further the present claim. *Stokley v. Ryan*, 659 F.3d 802, 814 (9th Cir. 2011) (any error of the expert is not a basis for ineffective assistance of counsel, citing *Sims v. Brown*, 425 F.3d 560, 585-86 (9th Cir. 2005). As such, Petitioner's trial counsel were not ineffective for structuring his case on the basis of the expert opinions and advice received at the time. *See, e.g., Smith v. Cockrell*, 311 F.3d 661, 676 (5th Cir. 2003); *Walls v. Bowersox*, 151 F.3d 827, 835 (8th Cir. 1998); *Sidebottom v. Delo*, 46 F.3d 744, 753 (8th Cir. 1995).  Counsel's duty to investigate "does not include the duty to look under every conceivable rock for potential evidence." *Runyon*, 994 F.3d at 192.  If Petitioner's own expert failed to educate and inform his counsel of a need for new imaging, or the assistance of a neuroradiologist, then that failure would negate the core of the claim. "In any effectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all of the circumstances." *Runyon*, ___ (citing *Andrus v. Texas,* 140 S. Ct. 1874, 1881 (2020)(quoting *Wiggins v. Smith¸*539 U.S. 10, 521 (2003)).  To the extent Dr. Lipton's opinion may shed light in this case, it would only serve to highlight whether Dr. Merikangas was, himself, ineffective.  The ineffective assistance of an expert is not the claim at bar.

As the Court observed, Dr. Lipton's testimony may impugn the testimony of Dr. Merikangas (and Petitioner's other experts) by identifying technical concerns with the 2009

---

[7]  Despite requests to share the imaging, the PET scans were never shared with other defense or government experts in this case.

scans. However, that inevitably requires this Court to conclude that the multiple expert opinions identifying white matter hyperintensities in those scans did not go deep enough. If the scans were illegible in 2009, and Dr. Merikangas failed to notify trial counsel of a need for new scans or a neuroradiological consult, then counsel cannot be ineffective in those circumstances. Petitioner elicited specific testimony from every expert that the scans, while imperfect, were legible and allowed each to reach conclusions to a reasonable medical certainty. The testimony is thus irrelevant to the performance prong of the *Strickland* inquiry.

To the extent Dr. Lipton's testimony may inform the prejudice prong, its weight is rendered immaterial by this testimony. Petitioner must show that he was prejudiced by counsel's deficient performance, in that it is "reasonably likely" that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Harrington v. Richter*, 131 S. Ct. 770, 791-92 (2011) (citing *Strickland*, 466 U.S. at 696). "The likelihood of a different result must be substantial, not just conceivable." *Id.* (citing *Strickland*, 466 U.S. at 693). The burden is on the Petitioner to affirmatively prove prejudice. *Strickland*, 466 U.S. at 693. In a case involving failure to investigate mitigation evidence, prejudice occurs when "the likelihood of a different result if the [missing] evidence had gone in is 'sufficient to undermine confidence in the outcome' actually reached at sentencing." *Rompilla*, 545 U.S. at 393 (quoting *Strickland*, 466 U.S. at 694). The Petitioner cannot show prejudice with a new type of doctor/evidence when not one of his experts – either in their reports or on the witness stand claimed that the services of a neuroradiologist should have been sought in *this* case.

Additionally, "a lower court generally is bound to carry the mandate of the upper court into execution and may not consider the questions which the mandate laid at rest." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (cleaned up). "Few legal precepts are as firmly established

as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" *Juniper v. Hamilton*, 529 F.Supp.3d 466, 482 (E.D. Va., March 29, 2021) (internal citations omitted).  Necessarily, a § 2255 petitioner cannot meet his burden by presenting procedurally defaulted claims, time-barred claims, or claims outside the scope of permissible review.

According to Dr. Lipton's report, the 2009 brain scans were degraded, or otherwise of poor quality, and were read by an unqualified diagnostic radiologist.  Beyond the white matter hyperintensities, Dr. Lipton has identified other abnormalties that were not included in the scope of the Petitioner's claim.   This impermissible expansion touches upon an issue that is uncontested.  All experts accepted as true that Mr. Runyon presented with a history of at least one or more concussive head injuries (some with limited documentation and others largely the result of self-reports).  Each expert further found that the 2009 brain imaging showed evidence of white matter hyperintensities.

The question raised in the Section 2255 motion (Claim 6) was always whether Dr. Merikangas had the opportunity to review the scans he ordered and consult with trial counsel. Since signing his 2015 declaration, Dr. Merikangas has maintained that he was able to review the imaging, identify abnormalities, and ultimately opine as to his impressions. When asked about the 2009 radiology report, he testified that he not recall ever seeing the document.  However, he testified that it would not have mattered.  As a neurologist, it is his habit to read the imaging that he ordered himself, and he would not rely on a radiology report.  Although Dr. Merikangas tried to hedge in his testimony as to whether he, in fact, read the scans in 2009, his billing records affirmatively establish that he did so.

In 2015, Dr. Merikangas's report and declaration did not identify any deficiencies in the scans, nor did he suggest that new scans would have been appropriate at the time of trial. (Petitioner's Exhibit 21). The evidence elicited through Dr. Merikangas, Petitioner's neuropsychiatrist consultant at all stages of his proceedings, clearly indicates that he was responsible for the mental health investigation. In his testimony, he accepted his responsibility to advise and consult with trial counsel. Dr. Merikangas acknowledged that he ordered the brain scans. There was no evidence elicited to determine whether he should have required the support of a neuroradiologist in 2009. He claimed that he never received, or did not recall, receiving the diagnostic radiology report. Nonetheless, he denied its relevancy or materiality, stating that— as is his habit— he would not rely upon a radiology report and reviews brain images and relies upon his own expertise. He further testified that is how he reached his conclusions, to a reasonable medical certainty, after reviewing the scans in 2015.

Dr. Nadkarni testified that he was able to read the 2009 brain imaging and identified multiple points of white matter hyperintensities, which he found indicative of injury. When asked specifically about the quality of the scans, he testified that he could ably read the images and came to his conclusions to a reasonable medical certainty.

Each of the Petitioner's experts were asked about whether a neuroradiologist could better read scans and if they ever consulted with one. Notably, however, no expert was asked if there was a need to consult with a neuroradiologist in *this* case. No expert testified that they recommended this course of further review. No expert report referenced a need for a neuroradiologist. And again, Dr. Merikangas was not asked whether new scans would have been appropriate, nor was he asked whether he should have consulted with a neuroradiologist. Petitioner's claim rests on Dr. Merikangas's testimony that the scans evidenced brain injury and

8

long-standing brain dysfunction, to a reasonable degree of medical certainty. Impugning his opinion with questions that intimated the need for further review would have hampered the very foundation of the claim – that the retained expert at the time of trial saw damage in the scans.

Despite sharing the reports of Drs. Aguirre and Lipton's with their neurologists, habeas counsel reserved the conclusion of this inquiry for Dr. Aguirre, who provided additional testimony in this vein. On cross-examination, he agreed that a neuroradiologist would be better skilled than a diagnostic radiologist in reading brain imaging. He agreed that he often consults with neuroradiologists in his practice. However, if there were a hypothetical disagreement between his own interpretation and that of a neuroradiologist, particular regarding subtle impressions, he would defer to his own conclusions and proceed upon his own expertise.

And the Petitioner can find no further support in his pleadings for evidence of this nature. In support of his Section 2255 motion, Petitioner attached a declaration from trial counsel Hudgins that stated, "I filed with the court preliminary reports from Dr. Merikangas and Dr. Mirsky. Dr. Merikangas wanted brain scans of Runyon. I do not remember the results of the scans. I cannot remember why Dr. Merikangas and Dr. Mirsky did not testify in the penalty phase." (ECF No. 511-5,¶ 6). Before obtaining the declaration, Petitioner's § 2255 counsel did not provide Mr. Hudgins with access to his own files, which contained the recently disclosed contradictory documents.

> In a second declaration, again prepared by then habeas counsel, Mr. Hudgins stated:

> I still do not remember the result of the scans. David Runyon's current attorneys informed me that a radiologist reported a 'normal brain MRI.' This report would not have supplied me with enough information to make a decision to cease investigation of David Runyon's mental health or social history. I understand the difference between a radiologist's reading and a neuropsychiatrist's/neurologist's reading of such scans.

> David Runyon's current attorneys informed me that Dr. Merikangas recently read

the film from the 2009 scans and that one scan revealed brain damage.  This is the type of information I would have been looking for at the penalty phase.

(ECF No. 551-1).

These representations echoed in the Court of Appeals' opinion, with the intimation that trial counsel may have been ineffective for not providing such scans to the defense expert:

- The brain scans that Dr. Merikangas ordered were in fact provided to Hudgins, along with a radiologist's report that the scans were 'normal.' But Hudgins recognized, as he later stated, that readings by a neuropsychiatrist, rather than a radiologist, were necessary. Yet, he never provided the scans to Dr. Merikangas, as Dr. Merikangas had requested, nor to Dr. Mirsky." *United States v. Runyon,* 994 F.3d 192, 205 (4th Cir. 2021).

- Dr. Merikangas, who had requested but never received Runyon's brain scans, conducted a review of those scans in 2015. He reported that "[t]hey revealed multiple white matter hyperintensities ... consistent with [Runyon's] history of head injuries and migraine," which, in Dr. Merikangas's opinion, "resulted in impaired executive functioning and decision making." He also reported that Runyon exhibited signs of paranoia and delusions, which could be "a consequence of his brain injuries, mood disorder, and [post-traumatic stress disorder]."  Dr. Merikangas stated that had he testified at trial, he "would have testified that in [his] expert opinion [Runyon] was a brain damaged individual with migrainous headaches and a disorder of executive functioning with symptoms suggestive of a psychotic thought process."

When told that Dr. Merikangas reviewed the 2009 scans in 2015 and identified brain damage, Hudgins responded, "This is the type of information I would have been looking for at the penalty phase." *Id.,* at 205-207.  It is inapposite to now say, that the conclusions of Dr. Merikangas — which met Petitioner's prima facie burden to secure a new hearing— are now unreliable due to the quality of the images themselves.  The claimed inadequacy or unreliability of the scans, which somehow did not prevent any of the Petitioner's experts from reviewing and interpreting the scans, was never a claim presented.  The Petitioner cannot use a purported rebuttal witness to add a claim otherwise barred by the one-year period to file a Section 2255 motion.

**2. Dr. Lipton's anticipated testimony is an improper expansion of Petitioner's case-in-chief, not proper to rebut Dr. Aguirre.**

Even should the Court find that the testimony of Dr. Lipton would somehow be relevant to the Petitioner's claim, it is still not proper rebuttal testimony to the witness called by the United States. Rebuttal evidence is defined as "[e]vidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party. That which tends to explain or contradict or disprove evidence offered by the adverse party." *United States v. Stitt,* 20 F.3d 878, 897 (4th Cir. 2001)(Citing, Black's Law Dictionary 1267 (6th ed.1990)). Although the Federal Rules of Evidence do not strictly apply to penalty phase hearings in capital cases, cases interpreting the proper scope of rebuttal are instructive by analogy. *Cf. United States v. Chandler,* 996 F.2d 1073, 1090 (11th Cir.1993) ("Although the Federal Rules of Evidence do not govern the admissibility of evidence during a [capital] sentencing hearing it is helpful to refer to the definition of relevant evidence from the Federal Rules."). For example, in *United States v. Curry,* 512 F.2d 1299 (4th Cir.1975), the court held that there must be a nexus between the purported rebuttal evidence and the evidence that the purported rebuttal evidence seeks to rebut. *See id.* at 1305 ("Where the prosecution seeks through its own rebuttal witnesses to challenge the defendant's evidence of his own good general reputation it is limited to showing his bad general reputation.").

The Federal Rules of Civil Procedure further define rebuttal evidence as "evidence ... intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." *Preston v. Grimes,* 2021 WL 1320721 (D.C. W.Va., April 8, 2021)(citing Fed. R. Civ. P. 26(a)(2)(D)(ii); see also *United States v. Byers,* 649 F.3d 197, 213 (4th Cir. 2011) ("Rebuttal evidence is defined as evidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party" or "that which tends to explain or contradict or disprove evidence offered by the adverse party"). "Permissible rebuttal evidence

11

also includes evidence unavailable earlier through no fault of the plaintiff." *Allen v. Prince George's Cnty., Md.*, 737 F.2d 1299, 1305 (4th Cir. 1984).

Furthermore, a party "may not use rebuttal as an attempt to introduce evidence that he should have introduced in his case-in-chief." *Steele v. Kenner,* 129 F. App'x 777, 780 (4th Cir. 2005). "The plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief." *Wise v. C. R. Bard, Inc.*, No. 2:12-cv-01378, 2015 WL 461484, *2 (S.D. W. Va. Feb. 3, 2015). In the context of expert opinions, the Federal Rules of Civil Procedure define rebuttal evidence as "evidence ... intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed.R.Civ.P. 26(a)(2)(D)(ii). "[A] party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." *Noffsinger v. Valspar Corp.,* No. 09 C 916, 2011 WL 9795, at *6 (N.D.Ill. Jan. 3, 2011) (citing *Peals v. Terre Haute Police Dep't,* 535 F.3d 621, 630 (7th Cir.2008)).

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by "knowledge, skill, experience, training, or education" can provide testimony if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue[.]"  Fed. R. Civ. P. 26(a)(2)(D)(ii). The rebuttal expert's testimony is only proper as long as it addresses the same subject matter that the initial experts address and does not introduce new arguments. *See Meyer Mfg. Co. v. Telebrands Corp.*, No. 2:11-cv-03153, 2013 WL 3242209, at *2 (E.D. Cal. June 20, 2013); *see also General Elec. Co. v. Wilkins*, 1:10-cv-00674, 2012 WL 5398407, at *2-3 (E.D. Cal. Nov. 2, 2012).

Thus, the testimony of Dr. Lipton is only proper to the extent it rebuts evidence offered by the United States.  Dr. Michael Lipton, M.D., PhD, FACR, is an offered expert in the performance and clinical interpretation of brain imaging studies. To the extent his report reviews the 2009 MRI imaging, his opinions are cumulative or improper bolstering to the testimony already elicited from the myriad of mental health experts in this case.[8] Whether the 2009 images yielded evidence of white matter hyperintensities is not a point of contention.  The remainder of his report attempts to expand the claim by going deeper into the 2009 images and discusses matters involving impermissible evidence, such as the 2018 radiology reports, or a substantive discussion of Dr. Aguirre's findings— improperly beyond the scope of a neuroradiologist's expertise, as discussed below.  As such, this is not proper rebuttal testimony, which must somehow counteract the United States' case. The very fact that Petitioner's experts all discussed a neuroradiologist demonstrates how this testimony merely serves as an indirect means for the Petitioner to advance his case, beyond the strictures and notice requirements of his case-in-chief.

### 3. Dr. Lipton cannot properly challenge or impeach Dr. Aguirre's substantive opinions.

Dr. Lipton, a neuroradiologist, lacks the expertise necessary to address Dr. Aguirre's substantive opinions regarding a brain abnormality's likely impact on behavior and cognition. As elicited in Petitioner's case-in-chief, a neuroradiologist is focused on the diagnosis of brain anomalies through specialized imaging.  The neurologist— the ordering physician— relies upon the skill, training, and expertise of the neuroradiologist to ably *perform* the imaging itself.  The neuroradiologist may be particularly skilled in reading the imaging, as is a neurologist. However, the neurologist further relies upon those images, and possibly the reports, to

---

[8] Petitioner further seeks to show Dr. Lipton demonstrative images that were not shown to any other expert in testimony.  This is certainly not proper rebuttal to allow Dr. Lipton to render opinions on images in testimony that were not shown to any other expert.

holistically assess a clinical patient, marry those potential defects with noted behavioral deficits, to diagnose a dysfunction, and develop a treatment plan. In this case, the Petitioner shared Dr. Aguirre's report with his experts— to include two neurologists, Dr. Merikangas and Dr. Nadkarni. They each testified, at least generally, regarding their opinions on his findings and conclusions, all reached without the consult of a neuroradiologist. While experts may differ in their ultimate conclusions, a neuroradiologist is simply inadequate to serve as the "tiebreaker" and discuss behavioral consequences of injuries, once identified in a radiological scan.

As Dr. Lipton's report exceeds the scope of Dr. Aguirre's opinions and opines on matters that seek to enhance or expand upon Petitioner's expert opinions, this is not proper rebuttal evidence. Although Dr. Aguirre was questioned about the hypothetical possibility of using a neuroradiologist in *some* cases – this was a general line of inquiry that was not at all related to *this* case. Dr. Lipton's projected testimony does not "explain, repel, [or] counteract" the testimony of Dr. Aguirre; it is simply not proper rebuttal. Instead, it is an apparent "attempt to introduce evidence that he should have introduced in his case-in-chief." *Steele,* 129 F. App'x at 780 (4th Cir. 2005).

**4. The objection to Dr. Lipton was not ripe until the conclusion of Dr. Aguirre's cross-examination.**

Finally, the United States anticipates that the Petitioner may claim this objection has been waived. Habeas counsel has been granted great deference in the presentation of their case. The expert testimony in its case-in-chief exceeded the boundaries of their written reports, which did not reference any need for a neuroradiologist. This left a substantial question as to whether the evidence would align into a relevant area, requiring the testimony of Dr. Lipton to assist the fact finder. It did not. Whether the scans yielded evidence of anomalies is not contested. Dr.

14

Aguirre's opinions diverged at the substantive discussion as to whether the Petitioner suffers a resulting dysfunction, making a neuroradiologist improper to rebut the United States' evidence.

Waiver is the intentional relinquishment or abandonment of a known right. Federal Rules of Criminal Procedure, Rule 12(b), contemplates those pretrial motions that must be raised, or risk waiver. Federal Rule of Civil Procedure, Rule 26(a)(2)(D)(ii) discusses the requirements in disclosing rebuttal expert witnesses. Rule 26(a)(3)(B) identifies a 14-day timeline for objections to materials under Rule 26(a)(3)(A)(iii), or risk waiver. That provision is inapplicable here, considering the rebuttal posture of the proposed evidence. First, the nature of the evidence elicited in defendant's case-in-chief expanded the nature of the expert testimony regarding the scans and Mr. Runyon's mental health, each addressing data points at the time of trial in 2009, during examinations conducted in 2015, and incorporating data from radiology notes dated 2018. Second, Rule 26(a)(3)(B) expressly allows continuing objections to admissibility when based on Federal Rules of Evidence 402 and 403. Accordingly, this objection was properly made on November 8, 2023, a full six days before Dr. Lipton was scheduled to testify.

## CONCLUSION

Based on the foregoing reasoning and authority, this Court should preclude the Petitioner from presenting irrelevant and improper rebuttal testimony in this evidentiary hearing.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:     _____/s/_____

Brian J. Samuels
Assistant United States Attorney
Virginia State Bar No. 65898
Lisa R. McKeel
Assistant United States Attorney

15

Carrie L. Ward, Trial Attorney
Department of Justice
Attorneys for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Brian.Samuels@usdoj.gov
Email: Lisa.McKeel@usdoj.gov
Email: Carrie.Ward@usdoj.gov

16

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of November 2023, I electronically filed a true copy of the foregoing with the Clerk of Court using the CM/ECF system who will send notice to all filers.

By:  _____/s/_____
Brian J. Samuels
Assistant United States Attorney
Virginia Bar Number: 65898
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Brian.Samuels@usdoj.gov