**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

DAVID ANTHONY RUNYON

    Petitioner,

    v.

UNITED STATES OF AMERICA

    Respondent.

Case No. 4:15-cv-108

Initial Criminal No. 4:08-cr-16-3

CAPITAL § 2255 PROCEEDINGS
HON. REBECCA BEACH SMITH

**PETITIONER'S RESPONSE TO THE UNITED STATES' ORAL MOTION TO**
**EXCLUDE PETITIONER'S EXPERT WITNESS DR. MICHAEL L. LIPTON**

At the close of court on November 8, seven days after the evidentiary hearing resumed, the United States—for the first time and without prior notice to Petitioner—moved to exclude Petitioner's final witness, Dr. Michael L. Lipton, a neuroradiologist who will rebut the opinion testimony of the government's witness Dr. Aguirre concerning Mr. Runyon's 2009 MRI. The government's attempt to exclude this critical evidence via a surprise, last-minute oral motion is improper for at least two reasons.

*First*, the government waived its argument to bar Dr. Lipton, who was first disclosed to the government in February 2023, by failing to raise it at any time before the resumption of the hearing, including in its omnibus motion *in limine* filed on October 6, 2023 (ECF 859, "Omnibus Motion"). To exclude Dr. Lipton's testimony after all other witnesses have testified would unfairly prejudice Petitioner, as Petitioner relied on his ability to call Dr. Lipton to rebut Dr. Aguirre, and released his other expert witnesses at the conclusion of their testimony on the presumption that Dr. Lipton

would be permitted to offer his opinions in rebuttal.

*Second*, Dr. Lipton's planned testimony is relevant and important evidence in this proceeding and will be completed in less than one day. A brain imaging specialist, Dr. Lipton will explain that Mr. Runyon's 2009 MRI shows encephalomalacia—a permanent loss of brain volume—resulting from a traumatic brain injury. *See* Exhibit A (Lipton Report).[1] The government offers no legitimate basis to prevent the Court from hearing this crucial testimony refuting the government's assertion that Mr. Runyon's 2009 MRI is normal, and the prejudice from granting this request in a case where Petitioner has been sentenced to death would be manifest. The government's untimely request to exclude Dr. Lipton should be denied.

## ARGUMENT

### I.      The Government Has Waived Its Objection to Dr. Lipton's Testimony.

As a matter of equity, a party may not unreasonably delay pursuit of legal rights of which it is aware, where the delay causes prejudice to the other party. *See Crutchfield v. U.S. Army Corps of Eng'rs*, 192 F. Supp. 2d 444, 463 (E.D. Va. 2001). Here, despite having been on notice of Dr. Lipton's opinions since February 2023, the government declined to raise any challenge to his testimony before the resumption of the evidentiary hearing, instead waiting until after all of Petitioner's other expert witnesses, and all of the government's witnesses, had testified and been released. The government's effort to sandbag Mr. Runyon—in a proceeding for which he bears the burden to offer evidence that could spare his life—is the very definition of prejudice.

Petitioner first provided notice of his intent to call Dr. Lipton as a rebuttal witness on

---

[1] Dr. Lipton's report appears on Petitioner's exhibit list as Exhibit 200. Petitioner also attaches it here as Exhibit A for the Court's convenience.

February 5, 2023—before the evidentiary hearing began—and Petitioner provided Dr. Lipton's report to the government on February 19, 2023. For the next ***nine months***, the government was silent as to any objection to Dr. Lipton's testimony. It was not until November 8—more than a week after the evidentiary hearing restarted, and following the completion of all other witness testimony—that the government first raised this challenge, without any prior notice to Petitioner.

The government's decision to sit on its rights regarding Dr. Lipton is particularly remarkable given that the government sought to exclude nearly all of Petitioner's other experts before the hearing resumed. On October 6, 2023, the government filed its Omnibus Motion, in which it moved to exclude Drs. Daniel Martell, Mark Cunningham, Siddhartha Nadkarni, and Jean Barrett. ECF 859. The motion did not include *any* reference to Dr. Lipton, even though the government's November 8 remarks about Dr. Lipton's testimony raised similar arguments about "relevance and necessity" as in its unsuccessful Omnibus Motion. *Id.* at 3; *see also id.* at 13–22 (arguing Drs. Martell, Nadkarni, and Cunningham "no longer have a role to play in this case" in light of the government's (inaccurate) characterization of the facts concerning Dr. Merikangas's work before trial). In the government's remarks on November 8, the government offered no explanation for why it did not or could not have challenged Dr. Lipton's testimony in the Omnibus Motion, which the Court considered and denied.

The government's untimely request, if granted, would substantially prejudice Petitioner. Petitioner structured his case, and examined the government's witnesses, based on a planned presentation of evidence that included testimony from Dr. Lipton.[2] For example, had the Court

---

[2] Because Dr. Lipton was not available during the latter part of the week of November 6, the Court accommodated a request by Petitioner to hear his testimony on November 14, and Dr. Lipton (continued…)

struck Dr. Lipton's testimony before the hearing resumed, Petitioner may have asked different questions of the government's expert, Dr. Aguirre, and may have decided to re-call other witnesses in rebuttal to Dr. Aguirre rather than releasing them from further obligations to testify.

**II.    Dr. Lipton's Testimony Is Relevant and Important to Petitioner's Claim.**

The government's challenge to Dr. Lipton's testimony also fails on the merits. In its November 8 remarks, the government suggested that Dr. Lipton should be excluded because, as a neuroradiologist, his opinions are not relevant to Petitioner's ineffective assistance of counsel claim. This is wrong.

   *A.    Dr. Lipton's Testimony Is Highly Relevant to Petitioner's Claim.*

Dr. Lipton is a neuroradiologist—the only such expert on either party's witness list. In contrast, Drs. Nadkarni, Merikangas, and Aguirre are neurologists. While they are capable of reading brain MRIs, their testimony uniformly established that neuroradiologists have greater expertise at reading brain scans due to their specialized training and the fact that they review orders of magnitude more brain scans than do neurologists. Even government expert Dr. Aguirre admitted that he generally defers to and relies on a neuroradiologist's reading of a brain scan. A neuroradiologist's review of the scans is especially relevant in this case because the neurologists, including Dr. Aguirre, generally agreed that Mr. Runyon's 2009 MRI suffered from quality issues, as the 2009 MRI report itself acknowledges. Indeed, Dr. Nadkarni testified that *only* neuroradiologists are qualified to issue official reports on brain scans; Dr. Aguirre testified that he refers out all imaging for patients to a neuroradiology clinic; and all three neurologists (including

---

reserved time on his schedule and made travel arrangements accordingly. Throughout these scheduling discussions, the government was silent as to any objection to Dr. Lipton's testimony.

Dr. Aguirre) testified that they frequently consult with and often defer to the findings of neuroradiologists.[3] *See also* Ex. A at 2 ("[F]indings of the type present in Mr. Runyon are often not identified or reported by general radiologists," rather neuroradiologists are necessary.).

Dr. Lipton is the most qualified expert to read the scans, and he has opined and will testify that Mr. Runyon's 2009 MRI reveals "bifrontal encephalomalacia (localized loss of brain volume)."[4] Ex. A at 2. He will further testify that the "areas of encephalomalacia are most likely sequelae of traumatic brain contusion." *Id.* This finding is critical, as it supplies further evidence that Petitioner had a serious brain injury at the time of the crime. According to Dr. Lipton, it is not surprising that other doctors, including the diagnostic radiologist who issued the 2009 MRI report (whose specialty is breast imaging), failed to recognize the encephalomalacia because "findings of the type present in Mr. Runyon['s scans] are often not identified or reported by general radiologists." *Id.*

Dr. Lipton will also refute several of Dr. Aguirre's assertions regarding brain MRIs and traumatic brain injury. For example, Dr. Lipton directly refutes Dr. Aguirre's statement that "[i]f Mr. Runyon had sustained a focal or diffuse brain injury sufficient to produce a lasting change in behavior, then this MRI scan would be expected to reveal an abnormal finding" as "plainly erroneous." *Id.* at 3. Dr. Lipton instead explains that "[a]bnormal MRI findings *may* occur following substantial traumatic injury, but the absence of imaging findings does not substantiate

---

[3] The government's delay in raising its objection to Dr. Lipton's testimony also has resulted in the parties needing to submit emergency-style briefing on a substantive issue in the case without the benefit of the transcript of the proceedings since November 1, further compounding the prejudice.

[4] Dr. Lipton has also opined and will testify, consistent with all of the neurologists who testified, that he sees white matter hyperintensities on Mr. Runyon's 2009 MRI scan. *See* Ex. A at 2.

the absence of TBI pathology." *Id.* at 3. More to the point, however, Dr. Lipton will testify that Mr. Runyon's 2009 MRI scan *does* reveal a markedly abnormal finding. *Id.* at 2–3.

Testimony similar to evidence that Dr. Lipton will provide is relevant to the proceeding before the Court because it would have been introduced at sentencing had trial counsel performed a "thorough investigation." *See Strickland v. Washington*, 466 U.S. 668, 690 (1984). Trial counsel's billing records show that they never communicated with Dr. Merikangas (or Dr. Mirsky) after the scans were performed or after Dr. Merikangas would have had an opportunity to review the scans. Had they done so, trial counsel would have learned that Dr. Merikangas identified white matter hyperintensities on the 2009 MRI scan, that the "normal" reading of the scan by the diagnostic radiologist should be given little to no weight, and that a neuroradiologist would have a superior ability to read the scans. Given Dr. Merikangas's testimony that he regularly consulted with and relied on neuroradiologists—about which the other two neurologists who testified offered similar testimony—had he discussed the scans with trial counsel, it is probable that the next step in the investigation would have been to consult with a neuroradiologist like Dr. Lipton.

Even if trial counsel had not retained a neuroradiologist at that point, they surely would have done so once the government sought to rebut Dr. Merikangas with evidence similar to the testimony presented by Dr. Aguirre. On August 6, 2009, the government disclosed not only Dr. Martell as a testifying expert but also Dr. Michael Batipps, a neurologist. *See* Pet. Ex. 176. Had trial counsel continued their investigation into Mr. Runyon's brain damage and carried that investigation to its reasonable conclusion, they likely would have retained a neuroradiologist like Dr. Lipton to rebut Dr. Batipps.

Petitioner should be permitted to present Dr. Lipton's testimony, as the government has

been aware he has planned to do since February 2023. That is particularly so given that this is a bench matter, and the Court is capable of affording Dr. Lipton's testimony the appropriate weight based on the arguments and evidence that have been presented.[5]

        B.        *The Government's Arguments Regarding Dr. Lipton's Testimony Are Unavailing.*

In its remarks on November 8, the government argued that Dr. Lipton's testimony is irrelevant because there is no claim that a neuroradiologist should have looked at the scans. In response, the Court cited Judge Wilkinson's opinion dissenting from the remand of this habeas case stating that "[t]he duty to investigate does not include the duty to look under every single rock," and that strategic decisions by counsel are "virtually unchallengeable." *United States v. Runyon*, 994 F.3d 192, 219 (4th Cir. 2021) (Wilkinson, J., dissenting from remand) (internal quotation marks and citations omitted). However, only strategic choices "*made after thorough investigation of law and facts relevant to plausible options*" are given such deference. *Strickland*, 466 U.S. at 690 (emphasis added). Here, Petitioner's argument is (and has been from the beginning) that: (a) trial counsel cut short their investigation into Mr. Runyon's brain injury, mental health, and psycho-social history, before they took the steps necessary to understand the evidence they had supporting this powerful potential mitigation case, and (b) had trial counsel adhered to their "duty to make reasonable investigations," *Strickland*, 466 U.S. at 691, either through further discussions with Dr. Merikangas or by responding to the government's efforts to rebut his testimony, they would have retained a neuroradiologist, such as Dr. Lipton. Enlisting such an expert did not require "look[ing] under every conceivable rock for potential evidence,"

---

[5] To the extent the Court is inclined to grant the government's request to exclude Dr. Lipton, Petitioner is prepared to present an oral proffer from Dr. Lipton on November 14.

*Runyon*, 994 F.3d at 219 (Wilkinson, J., dissenting from remand), but rather taking the next reasonable step in a thorough investigation and defense of Mr. Runyon's case based on and following from "the quantum of evidence already known to counsel," *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). *See also Strickland*, 466 U.S. at 691.

Finally, as it did in the Omnibus Motion, the government in its November 8 remarks made mention of the discovery issues caused by prior habeas counsel that arose in February. *See* ECF 859 (arguing that the Court "should take a stricter view [of expert testimony] in light of the discovery irregularities that led to habeas counsel's withdrawal and the ongoing postponement of proceedings"). Those discovery issues have no bearing on the issue at hand. Dr. Lipton was noticed as a rebuttal expert in February, and the government has been aware of habeas counsel's intention to call him since that time. The government never previously requested exclusion of Dr. Lipton as a sanction for the discovery violations, nor would there be any legal or factual basis for such a sanction. The Court previously determined that, "given the capital sentence in this case, it is imperative that any sanction not impede Petitioner's ability to present his claim[.]" ECF No. 799 at 2–3. That ruling was correct, and requires denial of the government's request.

## CONCLUSION

For the foregoing reasons, the government's untimely challenge to Dr. Lipton's testimony should be denied.

Dated: November 13, 2023                    Respectfully Submitted,

                                            /s/      *Kathryn M. Ali*
_____

                                            Kathryn M. Ali, VSB No. 97966
                                            Ali & Lockwood LLP

8

300 New Jersey Avenue N.W., Suite 900
Washington, D.C. 20001
Telephone (202) 651-2475
katie.ali@alilockwood.com

Robert Lee, VSB No. 37410
Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434)817-2970
Fax (434) 817-2972
roblee@vcrrc.org
epeiffer@vcrrc.org

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

/s/        *Kathryn M. Ali*