986

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

- - - - - - - - - - - - - - - - - - - -
                                        )
UNITED STATES OF AMERICA,               )
                                        )
  v.                                    )   CRIMINAL ACTION NO.
                                        )   4:08cr16
DAVID ANTHONY RUNYON,                   )
                                        )
        Defendant.                      )
                                        )
                                        )
        AND                             )
                                        )
DAVID ANTHONY RUNYON,                   )
                                        )
        Petitioner,                     )   CIVIL ACTION NO.
                                        )   4:15cv108
  V.                                    )
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        Respondent.                     )
                                        )
- - - - - - - - - - - - - - - - - - - -

TRANSCRIPT OF PROCEEDINGS

DAY 6

Norfolk, Virginia

February 14, 2023

BEFORE:   THE HONORABLE REBECCA BEACH SMITH
          United States District Judge

JODY A. STEWART, Official Court Reporter

987

APPEARANCES:

                UNITED STATES ATTORNEY'S OFFICE
                By:   Brian Samuels
                      Lisa R. McKeel
                      Assistant United States Attorneys
                           And
                DEPARTMENT OF JUSTICE
                By:   Carrie L. Ward
                      Counsel for the United States

                FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE
                By:   Dana C.H. Chavis
                      Helen Susanne Bales
                      Assistant Federal Community Defender
                           And
                VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER
                By:   Elizabeth J. Peiffer
                      Counsel for the Defendant

(Hearing commenced at 12:06 p.m.)

THE CLERK:  In case number 4:15cv108, David Anthony Runyon, petitioner, versus United States of America, respondent, and case number 4:08cr16, United States of America versus David Anthony Runyon.

Mr. Samuels, Ms. McKeel, and Ms. Ward, is the government ready to proceed?

MR. SAMUELS:  The government is ready.  Good afternoon, Judge.

THE COURT:  Good afternoon.

THE CLERK:  Ms. Bales, Ms. Peiffer, Ms. Chavis, is the defendant ready to proceed?

MS. BALES:  Yes, Your Honor.

THE COURT:  Good afternoon.

Counsel, I understand through our IT representative that Dr. Merikangas is ready to testify via Zoom, and I assume that's the first witness that you're going to call?

MS. BALES:  Your Honor, we have a matter we need to take up before we call Dr. Merikangas.

THE COURT:  All right.

MS. BALES:  If I can approach.  Your Honor may recall, yesterday Mr. Samuels expressed a concern that he had received a document for the first time yesterday, and mentioned that there was an outstanding *Jencks* motion.  So when we went back to our rooms yesterday, we investigated

that and discovered that it had not been disclosed.  That prompted us to do a more robust search of our electronic files, and we realized that there are matters that are responsive to the government's request and to the discovery order that have not been disclosed.

We have notified the government of this matter, and want to do everything we can to correct this problem.  In fairness to the government, we don't think that Dr. Merikangas should be presented today because some of the undisclosed materials are relevant to Dr. Merikangas.

We ask the Court to reschedule Dr. Merikangas, hopefully for a later day this week or one day next week, and we take this very seriously, that there are some records that have not been disclosed.  We would suggest that we do a rolling disclosure and give the government the materials as we discover them.

I'm reluctant to promise that we could have the materials by, you know, today.  It may be possible that we are confident in our production of the materials by tomorrow morning.  So that's where we stand, Your Honor.  And we apologize to the Court and to the government for this.  It is a very serious matter.

The disclosures seem to be related to the two experts that trial counsel worked with pre-penalty phase, so that would be Dr. Merikangas and Dr. Cunningham.  We are

JODY A. STEWART, Official Court Reporter

990

reviewing the electronic files to make sure that we disclosed everything for Dr. Cunningham, and hopefully his testimony would go on as anticipated next week.

So we do ask that the Court continue the hearing today to let us comply with our disclosure responsibilities.

THE COURT:  Don't you have your materials electronically organized by expert and by what you gave to that expert?  This is what I don't understand, is why you don't have your materials organized.  If you've got them stored electronically, how in the world, you just haphazardly have thrown them in, or are they by person, or are they by expert?

I mean, it's hard for the Court to understand in this day and time of electronic storage of documents.  I would say that one thing I did check on last night, because I wanted to have the ECF numbers, I wanted to make it clear because Ms. Chavis made a statement yesterday "because you couldn't bring your computer in," or something like that with the documents.

I want to note that the approval for each side was the exact same, and it's the standard that this Court gives. Each side was allowed a laptop computer with a docking station.  The docking station would be for electronic power, and the only thing you can't have is Wi-Fi access.  You can't have Wi-Fi access.  The United States has utilized a

JODY A. STEWART, Official Court Reporter

computer where they properly scanned their documents, and those documents come up very quickly, and the witnesses are analyzed.

You all somehow arrived here, you didn't have your documents scanned, and what you're using is a projector system with documents out of a notebook, and that's one of the reasons it's taking so long. The attorney turns, looks at the notebook, flips some pages, opens it up, puts it up on the screen, flips the pages around.

I'm not saying that you can't use the projector system, but it was the original way we gave documents, and so certainly you've got approval to use it. You can use the projector system. But nothing inhibited the petitioner from scanning the documents onto their computer and presenting it the way the United States has.

Yes, IT checks your computers to be sure that they don't have recording capabilities, all of the things that are prohibited by court rules, recording capability and Wi-Fi access so you can't be researching during the middle of trial.

But both sides, and the ECF numbers, they are sealed because we seal these documents. The government's access is at Document 765, and it's two pages. Excuse me, that's Ms. Peiffer. That's the petitioner's access. I asked my law clerk to put the other one in.

992

Did you not put the government's in?

THE LAW CLERK:  No, Your Honor.

THE COURT:  Well, I wish you would have.

It's the exact same document.  Do you have the number, at least, so I can put that on the record, because I know I did the same for both sides.

It's a voluminous docket.  If someone has it, you can hand it up to me or the clerk can give it to me.

MR. SAMUELS:  Your Honor, I have the approval.  It doesn't have the number on it, but I'm happy to tender that.

THE COURT:  Ms. Armstrong, find the number for me, please.  It's a voluminous docket.  It would have been somewhere in the 700s.

Here it is.  I have the electronic device approval for the United States.  I have it as ECF number 744.  It's much more helpful if I could look at these.  744 is the Electronic Device Authorization, one laptop on behalf of the United States, and 745 was their device authorization, which they are entitled to for their space that they rent in the building.

But in terms of court, their authorization is the same as it was for Ms. Peiffer.  Somehow there were two.  I think there was a mistake on one, they couldn't get that one right.  So it looks like there was one on 746 on 2-2, and then they came back with the docking station, I believe, and

JODY A. STEWART, Official Court Reporter

993

that was 765.

MS. BALES:  Your Honor, we acknowledge the Court's authorization for us to bring a computer in.

THE COURT:  Let me finish.  I want to be sure the record is straight.  I want it to be clear today because of a remark that was made yesterday, is that both the United States and the petitioner received the same authorization for evidence presentation here in court, which was to have a laptop for evidence presentation and documents could be scanned onto it.  There is also the projector system.

I don't know exactly what went awry, but I know when the petitioner's counsel arrived here to go through things, and I'd have to go back to my chambers and the chambers file, you didn't have a proper cord, or a proper docking station, or a proper something.  IT had to set you up with what we have here.

As a result, I don't know why you haven't scanned.  You've got a laptop.  Ms. Chavis said we've got it back in the hotel room, we don't have it here.  Well, nobody prevented you from bringing it here.  Nobody prevented you from scanning it onto your computer.

I would also note that if you haven't listed it as an exhibit, nobody has put any caveats on your listing of exhibits.  So you've had equal opportunity in terms of electronic presentation of evidence in the courtroom, and,

994

in fact, our IT department had made it possible for the petitioner to actually go forward, because they didn't have the right equipment.

MS. BALES:  Yes, ma'am.

THE COURT:  I'll tell you when I'm through.

The other thing that has been equal is you could have listed exhibits.  So if you haven't listed an exhibit, then you haven't listed an exhibit.  If you've left something back in your hotel room, you haven't scanned it on your computer, and you haven't listed it as an exhibit, you're out of luck.

So as far as I'm concerned, there was very poor preparation in terms of document presentation.  If anybody could sit here through this, you would realize how long it has taken to present documents, going through notebooks, pulling them out of the notebook, checking the pages, putting them on a projector and standing there looking around at them.

So it's been grueling in terms of evidence presentation for the Court, but I've endured it, and I will continue to endure it.  I'm finding it's either a lack of experience or a lack of preparation.  I don't know what is occurring here.  But I did want to get on the record today that everyone had equal access, and there was an implication that it wasn't.  It was equal.  It was made available to

995

everybody.  I signed the approvals.  I don't control whether you know how to get the right equipment.  When you came into IT on Monday of last week and IT, I know, had to do certain things.  I've got that on record in my chambers.  So that's where we are.

So now you're saying you've got to go back to your hotel and go through documents because you haven't presented the proper documents in discovery, and you don't have them organized in a fashion on your computer by expert, by what you gave.  Don't you know what you gave to the expert or what the expert used?

MS. BALES:  Your Honor, the trial attorney file is almost 22,000 pages.  We received it from them, and once we receive it, we scan it into an electronic database, and we have that on two different systems.  We conducted electronic searches and disclosed what we found, but we believe there was a problem with the electronic search process, and that accounts for the incomplete disclosure.  But we are undertaking that process right now.  We have some staff that is back at the hotel right now conducting that search related to Dr. Merikangas and Dr. Cunningham.

THE COURT:  They are two key witnesses.

MS. BALES:  They are, Your Honor, and we apologize.

THE COURT:  The Court is looking forward to hearing them, and hearing what they have to say.

JODY A. STEWART, Official Court Reporter

Let me hear from Mr. Samuels.  This is the second time, is it not, or is this the third?

MR. SAMUELS:  I'm not certain.  I'm sorry.

THE COURT:  We had one yesterday with Ms. Cronin that had not been, that was a *Jencks* material.

MR. SAMUELS:  I think, Your Honor, the problem stems from when we had started and came back on remand, and we had asked for the relevant portions of the attorney files.  That's where all these e-mails come from that the Court has seen either on our system or on the projector, and that's where a number of these other documents come from. There were selections made, I guess, based on searches, to give us those materials, but, clearly, we didn't get them all.

Clearly, we didn't get some materials that not only would seem to be relevant to Dr. Merikangas and Dr. Cunningham, but if there were exchanges with counsel or exchanges with Ms. Cronin, we don't know what we don't have, Your Honor.  We relied on *habeas* counsel to provide us with those documents, and that's why it was a concern yesterday when I got that e-mail and did not recognize that that was something we had not received in discovery, and it was not something that we were able to talk to Mr. Hudgins about.

THE COURT:  It was something that you had or had not?

JODY A. STEWART, Official Court Reporter

MR. SAMUELS:  We had not received it, Your Honor.

THE COURT:  Okay.

MR. SAMUELS:  We had not received it, and I think that's what prompted the review.  I will tell the Court that, for example, as well, Your Honor, this was Defendant's Exhibit 158, these billings records for Judge Hudgins. These were included in the defense exhibits, but until I think we got their exhibits on Monday before we started the hearing, we hadn't seen these either, and that was a concern.

So, you know, we didn't make an issue of that because we had them, but it is a concern in terms of what we don't have.  I don't know whether it's 10 documents.  I don't know whether it's 100 documents or a binder full of documents.  So it's hard for me to say what we need in terms of preparation other than we need the documents.  We were certainly ready to go with Dr. Merikangas today.  I don't want to see a long delay on this if the documents can be prepared and provided.  I hope we can proceed quickly.

But I would ask, if the *habeas* counsel is going to go back and look for documents relevant to the claim, that it shouldn't just be limited to Dr. Merikangas and Dr. Cunningham.  If there are documents with trial counsel related to Ms. Cronin, for example, we should be seeing those as well.

JODY A. STEWART, Official Court Reporter

Of course, as the Court recalls, Judge Hudgins, Mr. Woodward, they did not see their trial files in advance as some of the other witnesses did. So a lot of what they testified here in the court is after having the opportunity to see some of these records, either when we provided them the opportunity to review the records in advance, that was with respect to Judge Hudgins, or just being able to look at the records on the stand and see how it refreshed their recollection of what occurred.

So I appreciate Ms. Bales letting us know. She let us know right when we came into court this morning about 11:30. It's difficult to say how much of an imposition this is until we know the scope of it. But I certainly think that any new materials should not be discussed with any witnesses until we get a handle on what they are.

I do think that if there is going to be any delay, it should be a very brief delay because next week we have, as I understand it, Dr. Martell is set for Tuesday. We had arranged for Dr. Aguirre for Wednesday, and he will go out of order, but it fits in so we don't lose the day. I would hope maybe his counsel could get their arms wrapped around this today and that we could be prepared to go forward.

THE COURT: We could go forward with Dr. Merikangas tomorrow, couldn't we?

MR. SAMUELS: That would be fine, Your Honor, as

long as we have the materials.  Again, if it's ten pages, that's fine.  If it's a lot more, that may take a little bit more time.  But I understand that we just have two witnesses lined up for Thursday and Friday, as well.  It wouldn't seem like those witnesses would take all day.  Again, I know we've reviewed this, I certainly would like to have Dr. Merikangas in person because of the things that we have to show him, but I know I've made that request.

THE COURT:  I haven't completely denied it.  What I said is that we would go forward with a Zoom, and if proper cross-examination and proper examination could be garnered, we would do it that way.

MR. SAMUELS:  Yes, ma'am.

THE COURT:  Otherwise, we would look to making other arrangements for getting his testimony in person.

MR. SAMUELS:  Yes, ma'am.  I guess I'll just end with, I would really rather there not be a long delay or a long suspension in this.  We have all set aside the time for this.  The record is being developed.  I would hope this could happen very quickly, that we could get the documents quickly, be able to absorb them and go forward.

Thank you, Judge.

THE COURT:  Well, I just can't tell you how disappointed I am in the way this matter has proceeded.  As I say, I don't know if it's from just being overwhelmed,

inexperienced, not prepared.  I don't know what it is, but it's certainly been laborious.  I have checked even the transcript to see the amounts of time that goes between questions.  That is something that you can keep, and just how slowly it goes, sometimes minutes.

Then as I mentioned the first day, the comparison, when you look at the United States and how much they get in, and that is evident on a transcript.  You've got three hours and it's that thick, and then you've got three hours and it's that thick.  But, in any event, the thickness of the transcript is not what's important, it's the information, but it's also how you get that information across, and I'm just frankly disappointed.  I don't know what I'm going to do, but this is where we are today.

It appears that we can't go forward with Dr. Merikangas' testimony today, and he should be so informed.  He should be informed that he should be prepared to go forward tomorrow, and I am going to adjourn this case until 5:00 p.m.  you all are to report back here at 5:00 and give the Court some kind of status update as to where you are in producing these materials for Dr. Merikangas.  If they have to be produced in batches, you know, get some idea.  Get a handle on this.  In other words, if you've got 500 documents, then go ahead and produce 100 or what you can do.  In other words, it doesn't have to be all or nothing if

we can keep it moving.  So, consequently, I want to know an approximate amount of how many documents we are looking at, how long this is going to take, and what the process of production to the United States is going to be.

Is there anything else, Mr. Samuels?

MR. SAMUELS:  One moment, Your Honor.

THE COURT:  You need to let counsel know where you will be located, how to get in touch with you, so if you need to meet them here and the Court for an exchange of documents, you can do that.  I don't even know where your office is, but I know you have leased office space here in the building.

MR. SAMUELS:  We do, Your Honor, and we will advise *habeas* counsel of that location.  I'm sorry, Your Honor, if I can have just one moment.

THE COURT:  Yes.

MR. SAMUELS:  Your Honor, the only request that I would make is that if there are documents available, be produced, that we would get them in a form that we could access.  There is a form that the *habeas* counsel have used that only Ms. Ward can really access, and since she's traveling, that's difficult.

So if we could get them either on paper or via the USFX system that we use with the defender's office here in Norfolk, that would be preferable.  We just want the

JODY A. STEWART, Official Court Reporter

1002

documents as quickly as we can get them.

THE COURT:  What you are telling me is they went to the Department of Justice in D.C.?  She is traveling, but she is right here.  She is not traveling, physically traveling at the moment.  She is here in Norfolk.

MR. SAMUELS:  She is, Your Honor, but her access to this separate portal, it's just limited to Ms. Ward, and it's somewhat difficult for her to access that when she is traveling.

THE COURT:  I understand.

MR. SAMUELS:  Thank you, Judge.

MS. BALES:  Your Honor, we could grant Mr. Samuels or Ms. McKeel access, or, alternatively, we could provide copies.

THE COURT:  I'm going to tell you, you all work it out.

MR. SAMUELS:  Yes, ma'am.

THE COURT:  This is not something that we sit, and I tell you how to do it.  You work it out, and if you can't work it out, notify Ms. Armstrong, and we will reconvene, and I'll sit here with you while you produce your documents.  How is that?

MS. BALES:  We understand.

THE COURT:  You all, as attorneys and officers of the court, work it out.  If you can't, call Ms. Armstrong,

JODY A. STEWART, Official Court Reporter

1003

and I'll come and sit with you while you do it.  How is that?

MR. SAMUELS:  That's fine, Your Honor.  May I make one last request, that whatever is found, that it not be shared with witnesses until we've had a chance to review it.  That may be inappropriate at this stage.  I'd just like the chance to review these records first.

THE COURT:  I grant that motion.  That's only fair.  One of the extreme sanctions is they can't use them at all.

MR. SAMUELS:  Yes, ma'am.

THE COURT:  So, I mean, that's an appropriate *Jencks* Act or lack of discovery production.  You can't use the documents.  So, in any event, no, they can't be shared, they have to go to counsel, and if appropriate, and you've got some argument over them, you're going to have to get copies to the Court.

MR. SAMUELS:  Yes, ma'am.

THE COURT:  Court stands in recess until 5:00 or further notice.

(Recess from 12:34 p.m. to 5:03 p.m.)

THE COURT:  We have reconvened on this case, and the attorneys are here, and Mr. Runyon is here with his counsel.

Ms. Bales, would you like to give a report to the Court?

JODY A. STEWART, Official Court Reporter

MS. BALES:  I would, Your Honor.  We went back to our hotel and immediately began work on the Court's task, and what we discovered is that, unfortunately, we don't have an accurate record of every document that was disclosed.  So we would find the document, and then one of us would look at it and see, oh, that was actually admitted as an exhibit.  So we got a little bit bogged down trying to determine what was disclosed and what has not been disclosed.

So I've discussed this a little bit with Mr. Samuels, and unfortunately, I don't have a good answer to the Court's questions.  As far as how long it would take to do a reliable production of outstanding, undisclosed documents, specifically related to Dr. Merikangas, we do not have that yet.  We would try our best to get that to the government by 5:00 p.m. tomorrow.

It gets pulled up, the documents.  Many of them look similar, like e-mails, but when you start comparing them, a lot of the documents that come up have already been disclosed.  I discussed it a little bit with Mr. Samuels, that we could do like a reproduction of all of the materials, but that would place on the government the burden of sorting out what they already have and what is new.

So, you know, to do a production on Dr. Merikangas that is only the materials that have not been disclosed, we would try our best to get that done by 5:00 p.m. tomorrow.

We've spent about -- probably about 12 hours by now going through the record, and, you know, we think another -- this evening and another workday tomorrow, we should be able to achieve that task.

THE COURT:  Who on your team was responsible for this?

MS. BALES:  For the disclosures?

THE COURT:  Uh-huh.

MS. BALES:  That was Ms. Chavis, Your Honor.

THE COURT:  Let me hear from Ms. Chavis.  What excuse does she have?

MS. CHAVIS:  Hello, Your Honor.  I can tell you what I did in order to make the initial disclosures to the government.  I searched all of our files using an OCR search, which is the optical character recognition, and I put in, and I had discussed with the government the types of searches that I was conducting to make disclosures to them and indicated the search terms that I was using.

I used the names of our experts.  So, for example, for Dr. Merikangas, I put in his name, and it produced a list of documents that contained his name.  I then attempted to move all those documents into a file, and then went through those documents and to make sure that they were within the scope of the discovery order, and then had to move those files again to another folder so that they could

be uploaded to the platform where we were disclosing to the government.  And I did that for each expert that was involved in this case.

THE COURT:  When did you start that process?

MS. CHAVIS:  I started that process -- I believe it was the summer -- last summer.  It was a long process because of the volume of records in this case.

THE COURT:  Ms. Chavis, this *habeas* has been going on for seven and a half years.  So there is obviously a volume of documents, and it's certainly up to you, as attorneys and as officers of the courts, to keep up with your documents and to put them in a system that is doable and can meet the legal requirements of discovery and providing materials.

I don't know what system you all are using.  It sounds rather burdensome to me and not the most efficient, and I don't understand why.  I really find it unacceptable after seven and a half years of litigation.  Obviously, on this one segment, obviously there are thousands of documents, and the Court has had to go through them on the *habeas corpus*.  I've forgotten how many grounds and how many hundreds and hundreds of pages of documents and how many pages of opinions.

This matter has been back from the Fourth Circuit, and at that point, it was on a very narrow issue.

Certainly, it's not like you're doing a whole *habeas corpus*. It's back on a very narrow issue. One thing that I feel that your team has done is just forget about looking at the forest. You just throw out all these trees. Well, it might be relevant. It might be good.

I don't find that you've done a proper job on screening your evidence, just thinking you could offer whatever you want for whatever purpose you want. It's a disturbing process to the Court.

Who is the federal public defender for Tennessee? What district are you in?

MS. CHAVIS: The Eastern District, Your Honor, and our defender recently retired, and we have a brand-new defender. Her name is Gianna Maio.

THE COURT: When did she come on board?

MS. CHAVIS: She came on board, if it wasn't last week, it was the week before, Your Honor.

THE COURT: Well, who is over you? Who supervises you?

MS. CHAVIS: His name is Bobby Hudson.

THE COURT: What is his position?

MS. CHAVIS: He is an assistant supervisory defender.

THE COURT: One thing that I want by tomorrow morning is your organizational structure. I want to see the

JODY A. STEWART, Official Court Reporter

organizational structure of the Federal Public Defender of the Eastern District of Tennessee through from when this case was sent back from the Fourth Circuit to current day, and if necessary, I'm going to have somebody from that office report to the Court and investigate what has been going on in this case.  Because I've never had an experience like this in terms of the ability to present evidence and to abide by discovery rules.  It's very, very disheartening.

Certainly, if you can't do a better job than this, you shouldn't be reaching out to take cases in other jurisdictions.  We started with the Virginia Capital Resource Center here, and Ms. Brace was in charge, and then I believe that she was ill and had to retire, and I believe Ms. Peiffer has stepped in there.  It seems like you and Ms. Bales, and you particularly, have done the lead work in this case; is that correct?

MS. CHAVIS:  Yes, Your Honor, I have.  I'm sorry, Your Honor, if I may, just to explain.  I may have to provide you with two organizational charts because since the case has been on remand, I have shifted from one unit in our office to another.  I'm not sure if our charts will reflect that, but if they do, that would be the reason why I would provide the Court with two organizational charts.

THE COURT:  Well, are you in the capital division?

MS. CHAVIS:  Yes, Your Honor, I was in the capital

JODY A. STEWART, Official Court Reporter

1009

*habeas* unit.

THE COURT:  How long?

MS. CHAVIS:  For almost 25 years.

THE COURT:  Is Ms. Bales in the capital unit?

MS. CHAVIS:  Yes, ma'am, she is.

THE COURT:  How long has she been in there?

MS. BALES:  About 20 years, Your Honor.

THE COURT:  I won't go to the next step to ask how many hearings you have had like this, but I've never had one quite like this in my experience.  I've never had this type of hearing, particularly in a death penalty case.  But certainly in other *habeas* cases, I've had numbers and numbers of hearings.

So I'm just shocked at the lack of organization and preparation, and it's at the expense of a lot of individuals, and certainly the Court, the other litigants in the court, the other cases of the court, the other cases of the United States, the other cases of many defendants, Mr. Runyon.

This has far-reaching repercussions.  I'm not going to say any more now, but I'm certainly going to look into some type of sanctions.  One thing I'm thinking, and I might require you tonight, why don't you just give some documents to Mr. Samuels tonight.  You must have some.

MS. CHAVIS:  Yes, Your Honor.  We did already

JODY A. STEWART, Official Court Reporter

1010

produce documents to the government.

THE COURT:  How many have been produced so far, Mr. Samuels?

MR. SAMUELS:  Judge, I don't know how much this is. It was described between a half an inch and an inch of documents.  This is what they gave us this afternoon right before we started.

I understand the review is not complete, but just in this set that they gave us, there is two documents that stand out that are very concerning to the government given the allegations that have been made about the performance of trial counsel and the examination of those witnesses and the claims that those trial counsel did not have information, did not communicate with Dr. Merikangas.  I'd like to put on the record there are specific documents here that go right to that and run contrary to the representations that have been made in the pleadings.

THE COURT:  I know everybody is overwhelmed tonight.  I know that because I will tell you what I wrote, and I'm reading right now from my contemporaneous notes when Mr. Hudgins was testifying, and he said specifically over and over that Dr. Merikangas, there was an inaccurate statement in the recent affidavit about follow-up with him.

MR. SAMUELS:  Your Honor, there's a memorandum to file here prepared by Judge Hudgins that indicates that he

JODY A. STEWART, Official Court Reporter

had a conference call with Dr. Merikangas on August 13th, and Dr. Merikangas advised against putting on a mental health defense, that we had never received.

THE COURT: Shocking. Well, I made that note because I found that to be very unusual because Mr. Hudgins and Mr. Woodward are long-time trial attorneys in this court. I'm not saying what their performance was here or not, but they are long-time trial attorneys, and whether they did what they were supposed to do, I haven't decided that yet, but they are forthright. Mr. Hudgins sat there, and he was shocked, and he said that's just not correct, and you were pointing at those time statements and pointing at that and saying you didn't get back to Dr. Merikangas, and there you have documents saying he did.

I don't know where this is going. I want to see the extent of it because if there is fraud on the Court, this is very serious. This is a serious matter. You are dealing with a death penalty case. You are dealing with attorneys' reputations. You are dealing with a lot of important life matters to people.

You don't take that lightly, and you do not go through evidence that's only favorable to you. I distinctly remember that because here's where I wrote it down. I wrote down, when Dr. Merikangas gets on the stand, I'm going to ask him this if somebody else doesn't, because I believed

1012

Mr. Hudgins when he said he got back to him, and now you're saying there is a memo in there.

MR. SAMUELS:  Yes, ma'am.  It's a memo to file that clearly indicates that Mr. Hudgins and Mr. Woodward both had a conference call with Dr. Merikangas on August 13th about Dr. Merikangas's examination of the defendant.

THE COURT:  Well, as you get these documents, I want you to do two things.  I want you to highlight any pleadings that have been signed by counsel, representations to the Court, declarations by a witness that would obviously have been testified to or authored by Ms. Chavis and her office and were given to people to sign, and documents that are then contrary in the file, because if it turns out that these misrepresentations are as serious as they may lead, this could be a case of fraud on the Court.  It could be a case of reporting to Bar associations.

This is not something that the Court takes lightly. This is an extremely serious matter.  From the time this hearing began, I couldn't even figure out where some of the questions were going.  They were all over the place.  Then the misrepresentation to the Court about witnesses last Thursday, when three of those witnesses had been here since Monday in a local hotel.

So I would suggest where we are now is you start through those documents and pleadings, and I want them

JODY A. STEWART, Official Court Reporter

highlighted, and all of it gotten ready to be filed with the Court as an exhibit, not evidentiary, but as a court exhibit, and then the Court will go from there in deciding if sanctions are appropriate or not appropriate and give everyone an opportunity to be heard.

You need to have a better explanation, Ms. Chavis, than you tried.  You tried going through these systems.  I don't know what kind of systems you're going through, but I've never had, again, this problem with anybody else like this.

So where are we?  We are off of that.  We're back on.  So where are you now with the documents?

MS. CHAVIS:  We continue to review the documents, Your Honor, and -- I believe as Ms. Bales indicated.

MS. BALES:  Your Honor, we have advised opposing counsel and the Court that we would attempt to have a complete, accurate production of the previously undisclosed documents on Dr. Merikangas by 5:00 p.m. tomorrow.

THE COURT:  There are that many documents on Dr. Merikangas, one of the most important witnesses, that it's going to take you to 5:00 tomorrow.

MS. BALES:  Well, there are a lot of documents, but the part of the issue is flagging what has been disclosed and what has not been disclosed.

THE COURT:  You should have kept a record of that.

MS. McKEEL:  Absolutely, Your Honor.

THE COURT:  I've never heard of disclosing documents that you don't keep a record of what you disclosed.

MS. BALES:  We do have a record.  It just -- it appears to be incomplete, because we were assuming documents were undisclosed, and then we realized that they had been presented by the government as exhibits, and so the government --

THE COURT:  Why don't you give the government your list?  You said you've got a list of documents, and you're trying to figure out what you disclosed and not disclosed.  I direct you this evening to give that list to Mr. Samuels.

MS. BALES:  The list of documents that we disclosed?

THE COURT:  No, that's not what I said.  You said you have a list of documents, and you're going through them, and you don't know if you disclosed some of them or not some of them.  So there is a whole list of documents for Dr. Merikangas, is there not?

MS. BALES:  There is, Your Honor.

THE COURT:  And you're going through that list?

MS. BALES:  Yes, Your Honor.

THE COURT:  I direct you to give the list to Mr. Samuels.

JODY A. STEWART, Official Court Reporter

1015

MS. BALES:  We will, Your Honor.

THE COURT:  It's not his responsibility to go through and see what's been disclosed or not disclosed, but it certainly may facilitate some of this.  So if you've got a list, you just stood there and said we do have a list, but we were looking at the list, but we're not sure whether we really disclosed or really didn't disclose.

MS. BALES:  So actually Ms. Peiffer reminded me there are two issues.  When we do a search of our database, it does pull up documents, and then we're looking at the documents to see if it's been disclosed.  The other issue is that we still need to do a search of the entire file.

We have searched under the word "Merikangas" using OCR technology, but part of the process or the reason it will take us until tomorrow at 5:00 is to do some other searches, to use some other search terms to make sure that we somehow catch any other documents that don't pull up under "Merikangas" but that are relevant.

THE COURT:  Well, you said you had a list, did you not?

MS. BALES:  Well, Your Honor, each document that we have disclosed has an OAF number on it.

THE COURT:  What is OAF?

MS. BALES:  Original attorney file number.  And, you know, so when we do a search, it pulls up all these

JODY A. STEWART, Official Court Reporter

1016

documents that have an OAF number.  That's what I was calling the list.  We can certainly give the government the OAF number, the list of documents that pull up by OAF number.

MR. SAMUELS:  That won't tell me what those documents are, Your Honor.

THE COURT:  I understand that.

MR. SAMUELS:  It just gives me a number.

THE COURT:  It just gives you a number.

MR. SAMUELS:  Yes.

THE COURT:  It doesn't tell you what the document is.

MR. SAMUELS:  Yes.

THE COURT:  So you're doing that, and you are going through trying to decide what you've disclosed, what you haven't disclosed, and making your own decisions on relevance?

MS. BALES:  I mean, we are complying with the Court's order that if it's related to Merikangas and sentencing, we are disclosing it.

THE COURT:  Or if it's related to something, for instance, where you put a witness on the stand like Mr. Hudgins and examined him when you have contrary evidence in your file, you have to disclose that.  Those rules apply to this hearing.  So, you know, if it goes past

JODY A. STEWART, Official Court Reporter

Dr. Merikangas and goes into other witnesses.  We had one on Ms. Cronin yesterday, I believe.  So if it goes past Dr. Merikangas and into other witnesses, for instance, this one on Mr. Hudgins, that's very important.

MS. BALES:  Your Honor, we were focusing on Merikangas first so that we could continue with the presentation of proof.  We do anticipate doing a document search that is broader that addresses the government's concern about the trial attorneys and their testimony.

THE COURT:  Well, you certainly ought not to make any plans over this weekend, the three-day weekend, because whether we are going to be in trial or not, it looks like to me you all have a lot of work to be done in terms of being sure that you have provided proper information.  So you will have Saturday, Sunday, and Monday.

So if you've got travel plans or whatever, I would suggest that you reconsider those so that someone doesn't bring up on you that you were on a motorcycle ride or a wedding the weekend before when the Court has asked you to do things.  Because the inconvenience, and I'm not talking about just this judge and this proceeding, but the inconvenience to this court.

We have one of the busiest dockets in the United States.  There is a major, major criminal case starting before another judge in this courtroom on March 1, and the

1018

judge is coming from out of the area.  There is a multi-district litigation case, a 23-member case that's been pending since 2018 that's coming to trial.

You can see this courthouse, and you can see that there are not large courtrooms and the same number of courtrooms as we have judges.  So we definitely have a courtroom problem and a space problem, and we are trying to manage it.  So this is another issue, and I'm just talking about judicial resources and the taxpayers' resources.  But the most important thing right now is getting this proceeding, if we can, moving forward fairly to everyone.

All right.  So it sounds like to me what they are proposing is that they continue on this evening and then tomorrow and produce documents to you at 5:00.

MR. SAMUELS:  My understanding is by 5:00, Your Honor.  I hope they can send them electronically.  We would be back in Newport News, of course.

THE COURT:  If not, they are going to have to deliver them to Newport News.

MR. SAMUELS:  Yes, ma'am.

THE COURT:  They are going to have to get them hand-delivered, or deliver them however they want.  I assume they should be sending them to you electronically so that you can scan and deal with them.

MR. SAMUELS:  Yes, Your Honor.

JODY A. STEWART, Official Court Reporter

1019

THE COURT:  Is that the way you are going to send them?

MS. BALES:  Yes, Your Honor.  We were still searching for documents.  That's why we ended up making a hard copy for opposing counsel today.  But we will scan the documents in and e-mail them.  And if that doesn't work, we will hand-deliver a thumb drive to opposing counsel.

THE COURT:  If you don't have somebody in the Federal Public Defender's office that knows how to scan documents, that is amazing.  It's been amazing here that rather than having scanned documents, as you were permitted to do on your laptop, you have been standing there at a projector hand-putting documents under there and then complaining.

So you're not going to do what I call a, quote, document dump of papers and papers of documents.  You've got to put them in a format, and I'll set some deadlines and some times.  All the documents have to be gotten to Mr. Samuels by 4:00 tomorrow in a proper electronic format.

MS. BALES:  Yes, Your Honor, we will do that.

THE COURT:  Pertaining to Dr. Merikangas.  If they have not, you are to call my chambers and notify my chambers, and we are going to reconvene here.  I'm going to take whatever steps I need to take.  I'll be researching that.  I will be available.  You can either call

JODY A. STEWART, Official Court Reporter

Ms. Armstrong, because she can get directly into my chambers, which might be the easiest way, or you can call directly and speak with my assistant who will find me in the office.

MR. SAMUELS:  Yes, Your Honor.

THE COURT:  So we are going to move this however we can.  So this is the schedule.  You work this evening, however long you have to work; if all night, all night.  I'm sure you've pulled them before.  We all have.  You can work tomorrow up until 3:30, quarter to 4:00, but in the meantime, as you get these things, you ought to be scanning them off, because they all have to be produced and scanned to the United States Attorney in Newport News by 4:00 tomorrow.  If that's not accomplished, I'm to be contacted, and we will convene and proceed from there.

Is there any question, Mr. Samuels, or do you have anything further you want to say?

MR. SAMUELS:  I have two things, Your Honor. Number one, if they're in a position to be able to send these in batches as they are working on it, we would be grateful for that, even if it is electronically, if we could get some partway through the day, we would appreciate that.

The second issue is, Ms. Bales and I had discussed earlier that part of their review encompasses a concern for potentially privileged materials.  I don't know what that

1021

is, Judge.  It seems to me any privilege is waived.  But I would ask that if that's the case, and they are making a determination that something is privileged, that should be submitted to the Court for *in camera* review as to whether privilege should apply, in this case with respect to Dr. Merikangas and this claim.

THE COURT:  I agree.  If you're going to mark a document privileged, mark it privileged and get it to the Court, get it to my chambers.

MS. BALES:  I will do that, Your Honor.

THE COURT:  I will do an *in camera* review of it.

MS. BALES:  We will do that.

THE COURT:  You have at least seven people here, and the reason I know that is because the court reporter is delivering something like seven copies of transcripts to you, so you've got a slew of people, and I've seen them in this courtroom.  So if you have to get all hands on deck, I would suggest you get all hands on deck.

MS. BALES:  We will, Your Honor.

THE COURT:  How many people do you have here?

MS. BALES:  Your Honor, we have three attorneys that are appearing in the case, we have one paralegal from our office and one paralegal from Ms. Peiffer's office, and then there is another attorney.

THE COURT:  Who is Mr. Chavis?

1022

MS. BALES:  He is an investigator.

THE COURT:  So you have an investigator?

MS. BALES:  We do.

THE COURT:  Who is the gentleman sitting in the back?

MS. BALES:  Your Honor, that's Mr. Lee.  He's the director of the Resource Center, Virginia Resource Center.

THE COURT:  Well, they're in the case, too. They're the ones who wanted to associate you.

MS. BALES:  Yes, Your Honor.  Do we want to plan on Merikangas, Dr. Merikangas's testimony on Thursday at noon? Do we want to --

MR. SAMUELS:  I think we should get Dr. Merikangas done.  I think we are fine with that moving forward.

THE COURT:  All right.

MS. BALES:  We will notify him and let him know about that.

THE COURT:  I know there is a large team because I just know the numbers of copies that have had to be delivered to the attorneys or the parties or people in your group.  So, consequently, I know that you've got a number of individuals that can participate in this.  If you don't, maybe you ought to get them in here.

MS. BALES:  Okay.

THE COURT:  Anything else, Mr. Samuels, Ms. McKeel?

JODY A. STEWART, Official Court Reporter

1023

MR. SAMUELS:  No, Your Honor.  Thank you.

THE COURT:  Anything else, Ms. Bales, Ms. Chavis, Ms. Peiffer?

MS. BALES:  No, Your Honor.

THE COURT:  All right.  Then the Court remains ongoing with the directions that I've had but in recess until potentially 4:00 tomorrow.  It's going to certainly not bode well for you if you don't send these out in batches as you get them because it's not right to just send at 4:00 in the afternoon all these documents.  So if you can, that's another factor that the Court is going to look at, how much you cooperated and whether you just tried to make it even more difficult.

Then we will plan to reconvene for Dr. Merikangas at noon on Thursday.

MR. SAMUELS:  Yes, ma'am.

THE COURT:  The Court stands in recess until tomorrow.

(Hearing adjourned at 5:35 p.m.)

JODY A. STEWART, Official Court Reporter

1024

CERTIFICATION


    I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled matter.



            X_____/s/_____x

                        Jody A. Stewart

                    X_____2-14-2023 _____x

                            Date

JODY A. STEWART, Official Court Reporter