1024

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

- - - - - - - - - - - - - - - - - - -
                                      )
UNITED STATES OF AMERICA,             )
                                      )
v.                                    )   CRIMINAL ACTION NO.
                                      )   4:08cr16
DAVID ANTHONY RUNYON,                 )
                                      )
        Defendant.                    )
                                      )
                                      )
        AND                           )
                                      )
DAVID ANTHONY RUNYON,                 )
                                      )
        Petitioner,                   )   CIVIL ACTION NO.
                                      )   4:15cv108
V.                                    )
                                      )
UNITED STATES OF AMERICA,             )
                                      )
        Respondent.                   )
                                      )
- - - - - - - - - - - - - - - - - - -


TRANSCRIPT OF PROCEEDINGS

DAY 7

Norfolk, Virginia

February 15, 2023


BEFORE:  THE HONORABLE REBECCA BEACH SMITH
         United States District Judge


JODY A. STEWART, Official Court Reporter

1025

APPEARANCES:

        UNITED STATES ATTORNEY'S OFFICE
        By:  Brian Samuels
             Lisa R. McKeel
             Assistant United States Attorneys
                  And
        DEPARTMENT OF JUSTICE
        By:  Carrie L. Ward
             Counsel for the United States

        FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE
        By:  Dana C.H. Chavis
             Helen Susanne Bales
             Assistant Federal Community Defender
                  And
        VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER
        By:  Elizabeth J. Peiffer
             Counsel for the Defendant

1026

(Hearing commenced at 4:05 p.m.)

THE CLERK:  In case number 4:15cv108, David Anthony Runyon, petitioner, versus United States of America, respondent, and case number 4:08cr16, United States of America versus David Anthony Runyon.

Mr. Samuels, Ms. McKeel, and Ms. Ward, is the government ready to proceed?

MR. SAMUELS:  The government is ready.  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

THE CLERK:  Ms. Chavis, Ms. Peiffer, and Ms. Bales, is the defendant ready to proceed?

MS. BALES:  Yes, Your Honor.

THE COURT:  Good afternoon.  Let the record reflect that Mr. Runyon is here in person with his counsel at the counsel table.

Counsel, we left off yesterday afternoon.  There was an issue of production of required discovery documents that had not been produced for the testimony, at minimum, of Dr. Merikangas, who was scheduled to testify today.  Well, he was scheduled to testify yesterday, but there was a problem, so we canceled it.  Then there were still document problems, so it was canceled again for today.  We left it that the petitioner's counsel would produce the relevant documents to Mr. Samuels and counsel for the United States,

JODY A. STEWART, Official Court Reporter

1027

and that they would be produced by 3:30 so that we would know by 4:00 whether we needed to convene today.

The indication is that the documents have not all been produced or have not been produced, and we needed to convene.

So, Mr. Samuels, let me hear from you the status of what you have received and where we are.

MR. SAMUELS:  Yes, Your Honor.  Your Honor, as the Court knows, we were provided with some documents yesterday. There were approximately 219 pages of documents that were provided to the United States.  They were given to us in a hard-copy form, and then Ms. Bales e-mailed those documents to us last night at about 11:45 along with some other indices along with that.

Then later, I guess it was very early this morning, Your Honor, at about 1:30, we got --

THE COURT:  Sorry, I didn't hear the time. Something 30, 8:30?

MR. SAMUELS:  1:30, Your Honor, in the morning, 1:29 a.m., we got additional disclosures from Ms. Bales, and they were in two Zip files, one of which reflected searches that they had done under the name "Merikangas" and another set of documents that reflected searches that they had done under the word "MRI," and there were some additional searches in the works, it seemed.

JODY A. STEWART, Official Court Reporter

We reviewed those documents, Your Honor.  We posed a couple of questions about references in those documents to what appeared to be other documents that would be relevant. For example, we were provided with Mr. Woodward's time sheets, and in Mr. Woodward's time sheets, he referred to memorandum of interviews with Dr. Merikangas.  However, we were not provided with those memorandum of interviews, and so we inquired about that.  Ms. Bales informed us that they would follow up on that.

We also expressed some concern about the method of doing this search because it seemed to be restricted to just doing keyword searches, and our concern was if keyword searches had been done originally and not produced these documents, we should have searches that are actually looking at the documents, going page by page, to find not only the relevant materials for Dr. Merikangas, because we understood those would come first, but any other documents that would be relevant to the claim.  And we had passed that on to Ms. Bales this morning.  I think our last e-mail exchange was roughly around 9:30 or 10:00 in the morning.

Your Honor, we were getting ready to reach out to Ms. Bales to see what the status of this was and whether we would be receiving additional documentation and whether we would need to come down here, and we were advised, via message from Ms. Chavis, that she would not be able to

comply with the Court's order by 3:30 or to answer some of the questions that we had raised about additional documentation or about the parameters of the search.

At the point that we got that e-mail, Your Honor, we did not engage in any further communication. We just got ready to come down to court. We understand that there have been some additional searching that's been done, but other than getting the documentation that I described at about 1:30 this morning, we haven't gotten additional materials.

I don't know how voluminous those materials are, and I don't know what method was used to obtain or find them, if they were made on additional word searches, or if they were done by going through the files, I just don't have that information, Your Honor.

So that's where we are. I think our total document count, we've got about 340 pages of documents altogether. Some of those documents we had seen previously. And Ms. Bales did provide us with an index showing the documents that were produced to us yesterday in court and the documents that were produced earlier this morning. So we know what we have. I'm just not in a position to say what we don't have yet, Your Honor.

THE COURT: Just go back to one thing, it's just that I wasn't clear on. You said they originally did a word search, and they were doing it again?

JODY A. STEWART, Official Court Reporter

1030

MR. SAMUELS:  My understanding, based on what Ms. Chavis said yesterday, was the way they determined the scope of some of these documents that would be relevant to the claim was by doing word searches, and that looks into what's called OCR, or optical character recognition, where you are typing in the words and then seeing what documents come up from that.

Now, that's dependent on the terms that you use for the search, and it may not collect every document that is relevant to the issue, and certainly it wouldn't collect all of the documents that would be *Jencks* materials related to the testimony of a witness.

For instance, if Judge Hudgins testified, we would argue that we would be entitled to any e-mails or correspondence or memorandum or statements by Judge Hudgins that would fall within the scope of his testimony.

So when I made reference to additional word searches, our understanding was that was how *habeas* counsel was proceeding, was to search again, and I don't know if they were searching in a different database -- I'll let Ms. Bales address that -- but they were doing it in the same methodology, in other words, searching by doing keyword searches as opposed to actually looking through the files. That's my understanding, Your Honor.

THE COURT:  Thank you.

JODY A. STEWART, Official Court Reporter

1031

MR. SAMUELS:  Thank you, Judge.

THE COURT:  Anything you want to add, Ms. McKeel?

MS. McKEEL:  No, Judge.  I think we have given you a summary of what has happened so far.

THE COURT:  Anything, Ms. Ward, that you want to add?

MS. WARD:  No, Your Honor.  Thank you.

THE COURT:  Ms. Bales?

MS. BALES:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MS. BALES:  I keep appearing before you more frequently than I should as the limited *pro hac vice*.

THE COURT:  Your appointment may need to expand, I don't know, but you seemed to take some initiative yesterday, so I'll call on you first, and you seem to have been the one that's corresponding with Mr. Samuels at the moment.

MS. BALES:  Your Honor, I did correspond with Mr. Samuels as much as I could, but this morning I was locked out of what we call the workroom, which had the hotspot that everyone on the team was using, so I was not able to respond timely to his other request, but I believe Ms. Peiffer has.

Your Honor, I'd like to backtrack a little bit to yesterday afternoon.  When I reported to the Court at 5:00,

JODY A. STEWART, Official Court Reporter

1032

I told the Court that we had not been able to come up with an accurate list of materials that had been disclosed, and we were trying to understand what had happened and how that had happened.

One hypothesis was that perhaps Ms. Chavis had not searched in a whole separate folder, and this was based on the fact that the documents that had been disclosed had lower Bates numbers, and the ones that we were later discovering yesterday and yesterday evening had higher Bates numbers.

So when the government remarked that they had received -- you know, we hand-delivered some papers to them yesterday.  When the government remarked that there was a memo related to Dr. Merikangas and that would have been helpful to them, I had informed the Court that I thought that this was a mistake or an accident and didn't really have -- we were still trying to understand what had happened.

Yesterday evening we went back to the area where we were.  We were going through the files, and one thing that Ms. Peiffer showed me was two billing records from Dr. Merikangas that confirmed that he had actually reviewed the MRI slides.  I had never seen those before.

Typically, when our office will get a case, if it's not in the trial counsel file, we request the files from the

1033

experts, and sometimes they provide them, and sometimes they don't. Sometimes the file is large, sometimes it's smaller. But it's nothing like the size of the trial counsel file, which I told the Court yesterday is about 22,000 pages.

So I went on to Box to see what had been disclosed, and there is a folder that says "Merikangas trial file" on Box that had been uploaded and that the government had been granted access to, and it included, like, Merikangas' handwritten notes from when he examined Mr. Runyon. I mean, it's obviously materials that came from his file, but the billing records were not included.

And I had a concern that because this is a very -- typically -- Your Honor, I have not seen this file. I asked if we had it with us, and we didn't. I'm not sure -- we didn't bring that hard copy with us of Merikangas' file.

Typically, those files are small, discrete units, and I wanted to just look at the file and try to understand what had happened. I was concerned that these records had not been disclosed that seemed germane to requests that the government was making and possibly germane to Dr. Merikangas' testimony.

Now, I understand that -- Your Honor has remarked we have several people on the team kind of working on different things. My understanding is there was a discussion about showing this file, the billing record to

1034

Dr. Merikangas, you know, kind of disclosing that.  But at that point in time, I was concerned that it had not been disclosed before.

So I asked Ms. Peiffer if I could talk with her, you know, to kind of discuss this, and I explained, you know, that this is -- one other fact, Your Honor.  One of the indexes we provided to the government late last night or early this morning revealed about 80 files that were responsive to the search, and maybe around 40 to 50 percent of those files had not been disclosed.

But we did provide them, part of them yesterday before the 5:00 hearing and then the rest of the files later in the evening into the morning.  That would be consistent with what people were wondering, which is, like, maybe there is a whole folder that we didn't look at.

But this fact about Merikangas, that discrete folder that had not had this relevant material disclosed caused me to remember a conversation that I'd had with Ms. Chavis sometime in the past.  It was after the Court had remanded the case and after -- I don't have -- I'm not in my office, so I'm kind of a little bit going from my memory here.

It was after I had been moved into a different office that Ms. Chavis had come across this document that Mr. Samuels noted yesterday and expressed concern that it

JODY A. STEWART, Official Court Reporter

1035

should not be disclosed because it didn't have a date on it, and it is contrary to what we would have expected our expert to do.

I had told her that my impression of Mr. Woodward's law firm was that they would have kept a copy of everything before they sent the file to us and that it should be disclosed, and it was long before this hearing. It was an isolated conversation. After that, Ms. Chavis was transferred to a different unit, and she and I don't see each other very much, just based on the way our office operates.

So I shared that conversation with Ms. Peiffer and explained that I thought there could be a more serious problem here and that, you know, we needed to address it. So I wanted to share that with the Court and make myself available to the Court for any questions.

THE COURT: What is the document? The billing record from Dr. Merikangas?

MS. BALES: It is.

THE COURT: It's the billing record for the later work?

MS. BALES: Your Honor, it's very strange. There are two copies of his billing record. One of them just says -- has a date and says "review MRI" or -- I don't remember. I'm going from my memory here, but it references

JODY A. STEWART, Official Court Reporter

1036

the MRI, and then it bills for two hours.

But in the actual file, there is a second bill. Apparently, he wasn't paid, and he submitted a second bill, and the second bill has written on there "review MRI."  And so there is that minor but important difference between the two documents.

It was the second document that I had never seen and that -- you know, they were both -- I had only learned about both of them just while we were trying to get ready for Dr. Merikangas' testimony.  Dr. Merikangas was the neuropsychiatrist at trial, and I had tried to pay attention to what they were going to present with Dr. Merikangas because I would be presenting other neuropsychiatric evidence.

THE COURT:  As it turned out, you're the one who's also presenting Dr. Merikangas now?

MS. BALES:  Your Honor, I guess that depends on the result of this hearing.

THE COURT:  Let me ask you this.  In any event, both of those statements would be relevant to cross-examination of Dr. Merikangas as to what work he performed and when he performed it and then the e-mail, I think we saw yesterday, where he was making a recommendation to Mr. Hudgins?  Was that yesterday?

MR. SAMUELS:  What it was, Your Honor, it was a

memo to file that Judge Hudgins had put together after a conversation with Mr. Woodward and Dr. Merikangas where Dr. Merikangas was recommending not to put on a mental health defense unless -- well, even if the MRI and the PET scan showed something, that it would be risky, and we had never seen that memorandum, and I still haven't seen the second billing statement that Ms. Bales just referenced. We've seen the first, I believe.

MS. BALES:  I can respond to that when the Court wants me to.

THE COURT:  That was what I was remembering from yesterday, and obviously that would have been important to both Mr. Woodward's testimony and Mr. Hudgins' testimony, because this is a key issue in the case, and Dr. Merikangas obviously is a key expert.  There are a couple of key experts, but he is one of them.

You can respond if you want.

MS. BALES:  We did receive the e-mail from Mr. Samuels noting that Mr. Woodward's billing records referenced two memos.  Again, this is a situation where we receive files in different formats, but sometimes there will be a folder in trial counsel's file that is all of their memos to file.

So we have been looking for that second memo.  I've not found it yet, and I did go through -- this morning very

1038

early, I went through the hard copies of the boxes to see if I could find anything like that, and I spent a couple of hours.  I did not find anything.  That doesn't mean that it's not there.  I was going through as quickly as I could.

I didn't see, like, a large folder of counsel memo to files, and I didn't see anything on our electronic files.  But we are looking, and I agree that the billing records do reference two memos.

MR. SAMUELS:  Just to be clear, Your Honor, when I was saying we didn't get the second billing statement, I meant the second statement from Dr. Merikangas where he's got "review MRI."  You said there were two statements.  We have the one that reflects the MRI and PET on August 17th.  But you mentioned there was a second one that prompted your inquiry.  We don't have that one yet.

MS. BALES:  That may be in materials that were delivered while you were en route to here, but we will certainly produce it.  And they are identical except for that additional information.

THE COURT:  Ms. Peiffer.

MS. PEIFFER:  Pardon me.  I just wanted to correct the record.  It's not in the materials that were produced today.  I don't have access to the system where that record is.  So the materials that I produced today were from the files that I did have access to.

JODY A. STEWART, Official Court Reporter

1039

THE COURT:  Why don't you come up to the podium and tell the Court what you had access to and what you didn't, and what you didn't, why you didn't.

MS. PEIFFER:  So, Your Honor, I'm frankly still trying to figure out, after the realization that we -- when we started looking through these files that I do not have access to.  I know that we do have access to a portion of trial counsel's files, and that was what I was searching to make the productions that we've been making over the past several days, but there are some files on a particular system that I do not have access to.  I believe it's called Summation, and that's not something that I have had access to on Summation.

THE COURT:  Who has access to it?

MS. PEIFFER:  It's my understanding, although I'm not positive, Your Honor, that that is a system maintained on an H-drive or a hard drive that is accessed by the office in Tennessee, but I haven't been able to access it so I don't have independent access to that system or materials on Summation.

So I recognize that there is additional records that still need to be produced and searched, but I have not completed that task.

THE COURT:  Thank you.

Ms. Bales, do you have access to that system?

JODY A. STEWART, Official Court Reporter

MS. BALES:  Your Honor, I do.  Unfortunately, my office computer has an abundance of security features, and it will not let me log on to the hotel's Wi-Fi.  We had been using a shared hotspot, but the hotspot has been shut down.

THE COURT:  Who was sharing the hotspot?

MS. BALES:  Everyone that works on Mr. Runyon's team, all three attorneys and support staff from each office.

THE COURT:  Who shut it down?

MS. BALES:  Your Honor, I'm not sure.  I just went there this morning, and my key didn't work anymore, and I received a text from the paralegal in our office, who is here, and her key didn't work either.  I don't know what happened to that.  I did e-mail our office --

THE COURT:  Her key didn't work?

MS. BALES:  My hotel key.

THE COURT:  But the paralegal's didn't and yours didn't?

MS. BALES:  Correct.

THE COURT:  You don't know who shut it down?

MS. BALES:  I don't, Your Honor.

THE COURT:  Did you check with the hotel?

MS. BALES:  No, Your Honor, I didn't.  That didn't occur to me.  That sounds perfectly logical.

But I did e-mail my office and asked them to search

JODY A. STEWART, Official Court Reporter

for this file and to e-mail it to me, and when I left court today, I had not received it -- or when I left for court, I had not received it.  But we will certainly make a production as soon as we can on that.

THE COURT:  I understand.

Ms. Chavis.

MS. CHAVIS:  Hello, Your Honor.

THE COURT:  Hello.  Can you give the Court an update on your activities, as everyone else has?

MS. CHAVIS:  Yes, Your Honor.  Last night we were diligently going through records trying to determine not only what had not been disclosed, but why it had not been disclosed, and had come to the conclusion -- at least I had come to the conclusion that my initial search of the trial attorney files did not capture a certain electronic folder that did contain records in a certain Bates number range, and that's why there was a number of records that were showing up on our results last night as being not disclosed.

That's the best information that I have in trying to recreate the search results from quite a while ago as to why these records would not have been pulled when I used the same search terms that we did use last night.

THE COURT:  So they were showing up last night, but they hadn't been pulled before and given to counsel; is that correct?

1042

MS. CHAVIS:  They did show up last night.  There was another file that was called -- there are two -- so, unfortunately, our office system is not completely well organized, and we have files that are contained in a program called Summation, and we have files that are also contained on our server.  And so when I was doing a production, I had to go to several different locations for the trial attorney file and to try to run searches for responsive documents.

What we discovered last night is that there are -- on our server, there are two files that are labeled "Trial Attorney Documents Set 1" and "Trial Attorney Documents Set 2."  And it's the Trial Attorney Documents Set 2 that have the higher page numbers and the higher Bates range where these documents that have now been pulled are appearing from.

So it appears that it's that particular folder that I did not search initially.  This is all based on supposition but trying to make an educated guess as what would have happened trying to recreate that search.

THE COURT:  This is not a new folder; it's been there all along?

MS. CHAVIS:  Yes, Your Honor, it was there all along.

But with the title of Set 1 and Set 2, just if I were to see those files labeled that way today, not knowing

JODY A. STEWART, Official Court Reporter

1043

what I do know now, I would assume that that meant copy 1 and copy 2, because we do keep redundant versions of files so that not only do we have working copies but so that, you know, we don't affect the integrity of, you know, an original version of files.

THE COURT:  Well, what do you know about the lockout of the Wi-Fi?

MS. CHAVIS:  So the Wi-Fi hotspot is situated in a hotel room that is rented by me, and that we were all sharing as a team, and this morning we were supposed to meet as a team at 9:30, and I received an e-mail or a text message from Ms. Bales at 9:25 informing me that we were no longer having a meeting because they were distancing themselves from me.

THE COURT:  So you cut off access to the hotspot?

MS. CHAVIS:  And so later on in the day, I determined that since they are accusing me of misconduct, that I needed to protect my files that were in that office, and I had the room key changed, yes, Your Honor.  But nobody had been in that room, that I could tell, that entire morning.  And I had checked with our paralegal, and she was not able to contact Ms. Bales or other people from Ms. Peiffer's team, because my paralegal was supposed to start working this morning to continue the records production.

JODY A. STEWART, Official Court Reporter

1044

So not having heard anything from Ms. Bales or Ms. Peiffer, I assumed that they did not need access to the room. I had left messages for them to contact me back, and I have received no response. I had no idea that they were continuing to work on disclosures or if they even were continuing to work on disclosures because they had not communicated with me.

THE COURT: But you're the only one, then, with a key to the hotspot? You changed the key, and now you have the key?

MS. CHAVIS: Yes, Your Honor. But Ms. Bales can use her cell phone as a hotspot. It's not like she does not have Internet access.

THE COURT: She can't get into the room.

MS. CHAVIS: Correct. But she can use her personal cell phone as a hotspot to gain access on her laptop.

THE COURT: What is in the room? Are the documents in the room?

MS. CHAVIS: There are documents in the room, but she wanted to be inside the room to gain Internet access, but she can gain Internet access through her cell phone. So by closing the room off, there was no intent from blocking anyone from the Internet because everybody has access to the Internet through their cell phones.

THE COURT: What was the intent?

1045

MS. CHAVIS:  The intent was to protect my own records that are contained within the room because of the false accusations that are being leveled against me by my own co-counsel and that I can no longer trust them.

THE COURT:  Let me ask you this.  Are they your records, or do they belong to the Federal Public Defender? Are they your personal records?

MS. CHAVIS:  Some of them were my own personal records, yes, Your Honor.

THE COURT:  So they're not case records that would belong to the Federal Public Defender and the Virginia Capital Resource Center, if they were done on behalf of Mr. Runyon, and you're being paid through the Court, and everybody's being paid?

MS. CHAVIS:  There are also Mr. Runyon's files in that room, and our investigator this morning contacted --

THE COURT:  Who's the investigator?  Mr. Chavis?

MS. CHAVIS:  Yes, ma'am.  He contacted the legal assistant for Ms. Peiffer so that they could obtain their belongings from the room.  So Ms. Peiffer's legal assistant came to the room, met our investigator, and they withdrew all of their belongings from the workroom.

THE COURT:  Who is paying for that room?

MS. CHAVIS:  I am.

THE COURT:  Personally?  Or is the Public Defender

JODY A. STEWART, Official Court Reporter

paying for it, and it's going to be on an expense account?

MS. CHAVIS:  I will be reimbursed, Your Honor.

THE COURT:  So it's not your room.  You are renting that room on behalf of your litigation team, and that litigation team is the Federal Public Defenders from Tennessee and the Virginia Capital Resource Center, and those reimbursements, those bills then come to the Court. The Court works with Larry Dash at the Fourth Circuit to do a budget, and has diligently worked with Larry Dash, and then that is reimbursed.

So I'm not making a ruling, but in my opinion, I don't know how you can claim that it's your room just because you were the member of the team that rented it, if it's being paid for ultimately through the funds for this case.

MS. CHAVIS:  Your Honor, when I said that I was being reimbursed, I'm being reimbursed by my office, Federal Defender Services of Eastern Tennessee, and not through the CJA funds and Mr. Dash.  I just wanted to make that clear.

THE COURT:  You don't think that they are going to put that on the budget here?  I know the budget.  Your budget here, you are paid to come here.  You are paid for your rooms.  You're paid for your time.

MS. CHAVIS:  Yes, Your Honor, but Ms. Peiffer should not be charging for an additional room because that's

being paid from our office's budget that comes from a grant from the federal judiciary.

THE COURT:  I'm not saying that Ms. Peiffer is paying for it.  I'm just saying that the budget for this case is for the team, the team to work.  These things are billed to the budget for this case.  This is not your personal room, however you look at it.  It is a room that you have rented; if you want to say on behalf of the Public Defender in Tennessee, Ms. Bales is part of that.  This is not your room.

It seems odd that you took it upon yourself to change the key and have the only access to it when it has other people's records in it, and it's not your personal room.  That seems a bit odd to the Court that you would do that, knowing the strictures and the matters that have been going on in this court in regard to the production of these documents.

MS. CHAVIS:  I can understand Your Honor's viewpoint.  My viewpoint was that I was responsible for that room and for the equipment and the files that were in that room, and I also had my own personal files in that room. And I did make arrangements for Ms. Peiffer and her team to remove their belongings and the items that they had placed within that room.

THE COURT:  Is there anything else you want to say?

JODY A. STEWART, Official Court Reporter

1048

MS. CHAVIS:  No, Your Honor.

THE COURT:  Thank you.

Counsel, this is just my observation or my take from what I am hearing.  There is obviously a breakdown in the petitioner's team, and there are a number of concerns that the Court has.  Number one, there has to be communication between team members.  Number two, there can't be a lone person who says, if they belong to the case, this is my room, these are my records.

I don't know exactly what's going on, but there certainly have been problems, and this has not proceeded smoothly from the beginning because of these lack of, in the end, these productions.

This has turned out to be quite serious, when Mr. Hudgins was asked certain questions, and as I said yesterday, there is a lot at stake here.  You have got two attorneys whose reputations are at stake on ineffective assistance of counsel.  One has become a judge.  You've got a death penalty for Mr. Runyon at stake, and it is very important that the integrity of these proceedings be maintained in every way and that counsel here in this proceeding be effective and cooperative and move forward.

So I think that we have to take a few minutes and reflect on this.  There are things that can be done, and I think that the attorneys for the petitioner need to speak

JODY A. STEWART, Official Court Reporter

1049

with the petitioner and find out if he wants basically Ms. Chavis to proceed here.  He's heard what's gone on.

If there is a move to remove counsel, and the Court warrants it, in the interest of justice, that's a Supreme Court case, *Martel v. Clair*, 565 U.S. 648, it's a 2021 case, and under the authority for appointment, you recall it's the Court's appointment, 18 United States Code Section 3599(e), the Court can appoint or replace a similarly qualified attorney upon the attorney's own motion or upon motion of the defendant or the petitioner.

Obviously, a Court can *sua sponte*, "The courts have a duty of vigilance to assure that appointed counsel shall give proper professional service to their indigent clients." That's *Braxton v. Peyton*.  That's a caselaw, 365 F.2d 563, 564.  It's a 1966 Fourth Circuit case.

So this matter needs to proceed.  It's got to proceed properly under the rules.  There has to be proper document production.  Documents cannot be withheld in something this important to everyone involved.  These experts are key, as were the attorneys.

One question that I have, and we don't need to answer it today, but I simply don't understand why attorneys who have given up their files, probably in 2010 maybe, we are talking about 13 years ago, they represented Mr. Runyon in 2009, they did not represent him for appeal, and they

JODY A. STEWART, Official Court Reporter

1050

gave up their files some 13 years ago, and all the other witnesses have been given their files to review.  Ms. Cronin was given hers, and she simply testified, "I couldn't remember it except for the fact that I was able to review my file right before I came in here."

I still don't understand why neither Mr. Woodward nor Mr. Hudgins were given their files to review.  They kept saying, "Well, I'm sure it's in my file," or whatever, "but I turned that over."  Mr. Hudgins was simply shocked on the stand.  I think he might have said that, "You have my file?"  He didn't even know.  He met with you, and both of those attorneys met with petitioner's counsel, but they weren't even shown their files.

Mr. Hudgins was absolutely shocked on the stand when he realized that you had his file and he hadn't seen it.  Now things are coming from his file, which he was questioned on, and he insisted that he had done, and you had the record all along.  That's what occurred yesterday.  That's what's shocking.  His record was there.  He said he knew he talked to Dr. Merikangas.  He was drilled on that.  That was an important point.  His time records support it.  His memos to the file support it.

So there is some real problems here, in my opinion, over the integrity of this proceeding thus far.  I think there needs to be some discussion as to the withdrawal of

JODY A. STEWART, Official Court Reporter

1051

Ms. Chavis and the appointment then of Ms. Bales in her place, and then we look at a proper continuance because the government is entitled to these documents.  I understand we can't just produce them overnight and prepare hundreds of documents overnight for expert testimony.

So I am prepared to make the proper arrangements for this proceeding to go forward with integrity and with confidence in the proceedings, and the attorneys on both sides, and that the witnesses have been certainly afforded an opportunity to prepare their testimony properly, equally, and that the documents are produced both by the United States when they call somebody.

In fact, you filed a *Jencks* motion, and I said I grant it.  They've got to do it.  So I've never, in my long time on the bench, experienced anything of this nature.  I don't exactly have the words for it at the moment.

I don't know what arrangements we can make, but I think counsel needs to, unless Ms. Chavis is willing to withdraw, or the petitioner is willing to talk with counsel and ask that the motion be made, because I think that he needs to be consulted.  He has sat here and listened to all of this and has observed what has happened and that the integrity of his hearing is being put in jeopardy.

So it's 10 minutes to 5:00.  I am going to take a 30-minute recess, and petitioner's counsel can notify if

JODY A. STEWART, Official Court Reporter

you're ready earlier than that.

Counsel, you should stay.  There is no reason for you to leave the courtroom.  If you need a room to talk, I would direct the marshals to allow counsel a room to talk.  At this juncture, I include Ms. Bales in that because she has been admitted *pro hac vice* for many of the witnesses that are at issue right now.  In fact, she's got the yeoman's load of the experts, as I recall, looking at the list.

MS. BALES:  That's correct, Your Honor.

MS. CHAVIS:  Excuse me, Your Honor.  I would move to withdraw from this case at this time.

THE COURT:  Have you discussed it with Mr. Runyon?

MS. CHAVIS:  I did discuss it with him briefly.

THE COURT:  Can we put Mr. Runyon under oath?  You can stay there, Mr. Runyon.

(Defendant was sworn.)

THE COURT:  You are David Runyon?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Runyon, you've been here throughout these proceedings last week and this week; is that correct?

THE DEFENDANT:  That's correct, Your Honor.

THE COURT:  You have been present and observed all the proceedings?

THE DEFENDANT:  Yes, ma'am.

1053

THE COURT:  You observed what has happened over the last couple of days with the document production, or you've heard about it?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you understand that we haven't been able to go forward with a key witness that's being called on your behalf, Dr. Merikangas, because proper document production has not been made?  Do you understand?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Do you understand that in order to go forward, we have to have proper document production from your team to the government, and the same thing from the government to your team?  Do you understand?

THE DEFENDANT:  Yes, I understand.

THE COURT:  We can go forward.  We may have to have a continuance.  Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  But we can go forward if we have two counsel; that's what the statute requires.  When Ms. Bales was appointed, I did a limited appointment because you're technically, under the statute, only entitled to two counsel.  Do you understand?

THE DEFENDANT:  I understand.

THE COURT:  Ms. Chavis, given what has occurred the last couple of days, has moved to withdraw, and you heard

1054

that?

THE DEFENDANT:  Yes, I did.

THE COURT:  She said she talked to you briefly.  Has she?

THE DEFENDANT:  Yes, she has.

THE COURT:  Do you have any questions about her withdrawal?

THE DEFENDANT:  No.  I think we've pretty much decided that will be best for everybody involved.

THE COURT:  So are you in agreement with her withdrawal?

THE DEFENDANT:  Yes, I am.

THE COURT:  Is there any questions that you have for the Court in this regard?

THE DEFENDANT:  I do have concerns about our ability as far as --

THE COURT:  You mean to go forward?

THE DEFENDANT:  Yes, but I trust Your Honor's discretion, opinion, or whatever, on whether that's fair.

THE COURT:  Well, what I would propose is that we would go forward with what is on the record, but that doesn't mean that it can't be added to.  In other words, if your counsel decided they wanted to recall somebody, they could, or the United States.  They haven't called anybody yet.  They had Mr. Hudgins and Mr. Woodward on their witness

JODY A. STEWART, Official Court Reporter

list, and we'd go through, and actually if a witness is needed to be recalled, then certainly a continuance, because it's clear that neither Ms. Bales nor Ms. Peiffer have had an opportunity to produce the documents that need to be produced.

So it would not be appropriate for the Court to just say we are going to call Dr. Merikangas tomorrow, and you all do what you're going to do.  I would make appropriate arrangements.  Do you understand?

THE DEFENDANT:  I understand.  So my understanding is we are going to proceed and do as much as we can for the time that we have this courtroom allotted, but you don't intend to make a ruling at the end of this time because we will all need to have time to review the documents or whatever is missing and recall witnesses to clarify anything before you make a ruling?

THE COURT:  Of course.  I'm not going to make a ruling until the entire proceeding, all the evidence is in, the proceeding has concluded, and everyone has had an opportunity to argue the case.  It would proceed as the Court would in any hearing.  We are really only at the inception as we are now.

Obviously, we would proceed, and everybody would present their evidence.  They would have an opportunity to argue it.  I probably will give an opportunity for briefs.

JODY A. STEWART, Official Court Reporter

Certainly, no ruling would be made until everything was in and properly presented and argued.

THE DEFENDANT:  I understand.

THE COURT:  Thank you.

MS. PEIFFER:  Your Honor, may I add something?

THE COURT:  Yes.

MS. PEIFFER:  Before we went any further, I just wanted to request if we could still have the opportunity to speak with Mr. Runyon and reconvene briefly?  There are some things that we wanted to discuss with him.  I might have additional things to bring to the attention of the Court.

THE COURT:  I will allow that.  I would also note, just to clarify what I said, for instance, there are a couple of witnesses, in my opinion, that would not need to be recalled, like the people from Alaska.  There were no documents at issue with them.  I think their names were the Seegers?

MR. SAMUELS:  Seegers, Your Honor.

THE COURT:  So the Seegers, there are people like that that don't need to be recalled because there wasn't a document issue, and they were fully examined.  If Ms. Chavis examined them, and I would have to look back at my notes at who examined the.  She was in the case.  She was an attorney.  So the withdrawal would only be effective as of the time of the withdrawal.

JODY A. STEWART, Official Court Reporter

1057

So you want me to take the motion under consideration; is that what you want to do?

MS. PEIFFER:  Your Honor, the matters that I wanted to discuss with Mr. Runyon before court recessed for the day were not related precisely to that motion.

THE COURT:  You're just asking that you still have an opportunity to talk with him today, but it's not in relation to this motion?

MS. PEIFFER:  Not to Ms. Chavis' motion, no.

THE COURT:  You don't oppose the motion?

MS. PEIFFER:  No, if that's what the petitioner and Ms. Chavis think best, not at this time, Your Honor.

THE COURT:  Well, do you agree with it or not?  I think Mr. Lee is trying to get your attention.

MS. PEIFFER:  Your Honor, that may be part of the reason I was asking for the recess.  I just wanted to consult with my counsel.

THE COURT:  You want to consult with your counsel or with Mr. Runyon?

MS. PEIFFER:  Both, Your Honor.

MR. SAMUELS:  Your Honor, if I may.  I don't have any objection if we take a brief recess for this consultation to occur, just because the United States may want to offer its observations or position on this as well if the Court would permit.

JODY A. STEWART, Official Court Reporter

1058

THE COURT: I was going to let you do that.

MR. SAMUELS: Thank you, Judge.

THE COURT: I was confused about why she wanted the recess, but she seems to want it for more than one reason, so I will grant it. Obviously, I was going to then check with Ms. Bales, and I was going to then check with you, and the usual where I go down the line.

What we will do is, it's getting close to 5:00. We will take a 30-minute recess until 5:30, and we'll resume on this matter and on how to proceed with some of our remaining time. The Court stands in recess for 30 minutes.

(Recess from 4:57 p.m. to 5:30 p.m.)

THE COURT: Everyone is here, and the defendant is here at counsel table.

Ms. Peiffer, we had the recess. Is there anything you want to represent further to the Court?

MS. PEIFFER: Your Honor, I believe Ms. Bales has something that she needs to speak with the Court about.

THE COURT: Do you need to speak to the Court about anything?

MS. PEIFFER: Nothing further right now, Your Honor.

THE COURT: You do not oppose Ms. Chavis' withdrawal?

MS. PEIFFER: I do not oppose her motion.

JODY A. STEWART, Official Court Reporter

1059

THE COURT:  You had said that before.  Okay.

MS. BALES:  Your Honor, I called my supervisor and our defender, and they instructed me to move to withdraw from Mr. Runyon's case.  I just spoke with Mr. Runyon that I would be making this motion.

They wanted me to argue or present to the Court that there is a concern going forward that I would stay on the case when there had been the allegations that the Court has been dealing with, and they thought it was probably in Mr. Runyon's best interest to have different counsel on the case, so I move to withdraw, Your Honor.

THE COURT:  But how long has the defender in Tennessee been on this case?

MS. BALES:  Your Honor, we got on the case in 2015.

THE COURT:  So basically we would be reinventing that complete wheel for this hearing?

MS. BALES:  Yes, Your Honor.

THE COURT:  I do want to make a comment, that the Court has seen nothing deficient about your performance throughout this matter.  As I told you before, you have been straightforward, and you have been forthright with the Court and with opposing counsel.  So I want that to be clear on both the record and to whoever is the Public Defender in Tennessee, and I have not yet agreed to the motion.

MS. BALES:  Okay.  Thank you, Your Honor.

JODY A. STEWART, Official Court Reporter

1060

MR. SAMUELS:  Your Honor, this is a lot that has transpired in the last couple of days since we started, with the finding of the information that had not been disclosed, to the issue as to what had been disclosed, to these motions to withdraw.

I guess my inclination and observation is we have put a lot of time and effort into this matter, both on the petitioner's side and also on the side of the United States, and I think, because of the implications, I think it might be better if this was done with some briefing, Your Honor, and there was some time for briefing to be done by the petitioner, and the United States would have an opportunity to respond, both in terms of the question of a withdrawal and the implications as to what that would be, as well as to where we go forward from here, just because I think that there has been a lot of information that has come in, and it might be a good idea to take some time to kind of sort that out before decisions are made.  That would be my request, Your Honor.

THE COURT:  Do you oppose Ms. Chavis' withdrawal?

MR. SAMUELS:  I do not, Your Honor.  Thank you, Judge.

THE COURT:  Then in terms of Ms. Chavis' motion to withdraw, as joined in by the petitioner, the Court would grant that motion and find good cause based upon, in

JODY A. STEWART, Official Court Reporter

1061

particular, the lack of production of documents and what has transpired over the last couple of days.  That's the first thing.

I would also, in conjunction with that, just put on, just as a Court exhibit on the record under seal, for the records here and the notes, just what transpired today through e-mail.  One of the e-mails everyone has seen.  This was to Ms. Armstrong, the courtroom deputy, and it was from Ms. Hansen, and it was to Ms. Armstrong, and it went to Mr. Samuels, Ms. McKeel, Ms. Ward, Ms. Peiffer, and Ms. Bales.  It was, "Subject:  David Runyon update."  It says, "Hello, Tammy, I would like to notify the Court that I will not be able to comply with the Court's 3:30 p.m. deadline, and I will not be providing answers to Brian's questions that he has posed to Suzanne due to the allegations of fraud that have been made by my co-counsel. Thank you, Dana."  I would make this a sealed Court Exhibit 1A.

(Court Exhibits 1A received in evidence.)

THE COURT:  Then later this came to me typed from my judicial assistant, having talked directly with Ms. Armstrong who relayed that at 2:34 p.m. she sent an e-mail to all counsel to advise that all parties should reconvene at 4:00 p.m. in Courtroom 4 this afternoon, requested confirmation of receipt of the e-mail.  Brian Samuels, AUSA, confirmed

JODY A. STEWART, Official Court Reporter

receipt, noting they will be here.  Lisa McKeel confirmed receipt.  Suzanne Bales confirmed receipt.  Elizabeth Peiffer confirmed receipt, noting that she will be in court at 4:00 p.m.

2:55 p.m., Ms. Armstrong called Dana Chavis' mobile phone as she had not responded to my e-mail.  "There was no answer, and I left a voicemail regarding reconvening at 4:00."

3:03 p.m., Ms. Armstrong called Ms. Peiffer to inquire if she knew whether Ms. Chavis had received the notification to be in court at 4:00.  Ms. Peiffer said she does not know whether she did or not and that she has not been in direct contact with Ms. Chavis today.

So the first chain started at 2:18 in to my chambers, and that would be Court Exhibit 1A, and the other started at 2:34 p.m., and that would be Court Exhibit 1B, and they would both be under seal as information conveyed to the Court.

(Court Exhibits 1B received in evidence.)

THE COURT:  So I put that on record.

The other that I am going to put on record, although I have written on this, so I will put a clean copy, there was the direction to Ms. Chavis yesterday to provide organizational charts of the Federal Public Defender's offices, and she did comply.  She sent an e-mail in to

Ms. Armstrong this morning at 9:36 a.m., and she did copy Mr. Samuels, Ms. McKeel, Ms. Ward, Ms. Peiffer, and Ms. Bales in this case. It's referenced FDS Eastern Tennessee organizational chart, forwarded to my chambers, and it says, "Good morning. Per the Judge's order, please find attached the organizational charts of my office since the time of the remand of this case. Thank you, Dana," and that would be Court Exhibit Number 1C.

That can just be Court Exhibit Number 2. It doesn't need to be sealed. There is no reason to seal the organizational charts. The only thing that I did was put them in chronological order. They just came through in all sorts of order. So rather than keep them in a confusing order, the Court did put them in chronological order, or had my assistant when she stapled it to give the e-mail to me.

So that will be Court Exhibit Number 2. But I wanted that to be of record.

(Court Exhibit 2 received in evidence.)

THE COURT: I grant the motion of Ms. Chavis to withdraw at this juncture. I deny the motion of Ms. Bales to withdraw. I will enter an appointment that indicates that Ms. Chavis is out of the case, Ms. Bales is in the case, and then I will take her motion under advisement and let everybody brief it so that you can then file the motion, Ms. Bales, and it can be accompanied by a memorandum.

You can respond, Mr. Samuels, to the motion with a memorandum, and then you can make any reply.  Let's keep this going fairly quickly.  You should have your motion and memorandum in by the end of this week.

You can reply by next Wednesday.

MR. SAMUELS:  Yes, ma'am.

THE COURT:  Excuse me, respond.

Then you can reply, Ms. Bales, by next Friday so that way we keep everything moving forward.

I am reluctant at this juncture to allow the Public Defender from Tennessee to withdraw after they have all of these documents.  They have been in the case all of this time, and it's important to move it forward.  There is going to have to be some good cause shown here.

I am going to direct Mr. Lee, who is here and is head of the Virginia Capital Resources, to contact directly the Public Defender in the Eastern District of Tennessee. It was on the recommendation of your office that they were brought into this case, so you should talk directly.  I understand she is new, just came on.  This is an extremely serious matter.  It's obviously a death penalty case.  It's been going on now since 2008.  It's now 2023.  Her office has had this case for a number of years and has the documents and all of the information relating to it.

So I am going to direct you, Mr. Lee, as head of

the Virginia Capital Resources Center, you were one of the first attorneys on the case, and Ms. Brace was with the case for years and obviously did an outstanding job, and, of course, Ms. Peiffer has, too, thus far.  So I want you to impress upon this Federal Public Defender the very importance of you don't just give up the case or the ship in the middle of a storm, that it's important to have continuity.

The fact that there has been a problem with rules and production of documents from one attorney in the office does not mean that the whole office has problems.  The Court feels strongly about that.  Ms. Bales has done, thus far, a very good job and has been very forthright with the Court.

I would like you to then write back to the Court, to report back to the Court on your conversation, and I don't even know the name of this person at this juncture.

The other matters that need to be taken care of, we've got a briefing schedule.  Mr. Runyon still has two attorneys.  Ms. Chavis has been removed.  Mr. Lee is going to call the head of the Eastern Tennessee Federal Public Defender's office.  In the meantime, you should tell the Federal Public Defender, Mr. Lee and Ms. Bales, that Ms. Chavis is to be completely removed from any association whatsoever with this case.  That includes documents, that includes discussions in terms of the substance of this case.

JODY A. STEWART, Official Court Reporter

She's to be completely walled out of the case, that's the first thing, so that there is no taint.

Number two, access to that room is to be restored immediately to Ms. Bales and Ms. Peiffer over whoever is paying for this hotspot and this room, the documents in there, and Ms. Chavis is no longer in the case, and she may not have access to the room.

So if she has things in there, I don't know how she could have personal documents, if she has got personal documents, they will have to be gathered and given back to her. That room is to be restored. It's not to be left there with Ms. Chavis as the only individual with access when she is no longer a representative of either the petitioner or the Court.

So if there is a problem with that, I want the Court to be notified first thing in the morning, and I'm going to take the appropriate steps to take care of that situation in terms of it not being done per the Court's order. This is important. I'm not going to have allegations of tampering, and I've never heard of such a thing, an attorney on a team locking everybody else out of a room that has the documents and the hotspot. So if it's not clear, I'll summarize what is to be done.

Ms. Chavis' motion to withdraw, as joined in by the petitioner, has been granted. It is effective immediately.

The Court appoints Ms. Bales as the second attorney, and that is effective immediately.  My order will be entered effective today and will be filed tomorrow.

Mr. Lee is to contact directly the head of the Public Defender's office in Tennessee to explain the severity of this, and if necessary, the Court will have the individual up here when I hear the motion to support the motion.  So whoever is head of that office and is making the instructions will most likely ultimately have to appear before this Court.

Then, Ms. Bales, you are instructed to file it.  You file it, do the memorandum, you respond, and we go from there.

Can you think of anything else, Mr. Samuels?

MR. SAMUELS:  Yes, Your Honor.  Your Honor, I assume that the Court's order is that any case-related files that Ms. Chavis had will be turned over to Ms. Bales?

THE COURT:  Yes.

MR. SAMUELS:  The second question I had, Your Honor, was the Court had set some deadlines and requirements for the production of the discovery and the disclosures.  We would ask that that continue.  I understand that they were in the midst of doing some of that.  In fact, Ms. Peiffer may have had a production that she was ready to make, but she was holding it off based on this hearing.

Certainly, we would like to get the documents that we are entitled to, and it would seem that there would be no reason for that not to continue while we are undergoing this period of briefing on the motion.

THE COURT:  Certainly.  We are going to continue with the production of documents with Ms. Bales and Ms. Peiffer in charge.

MR. SAMUELS:  Thank you, Judge.

THE COURT:  What was the first thing you said?

MR. SAMUELS:  You covered it, Your Honor.  Thank you.

THE COURT:  Is there anything else you can think of, Ms. Bales, that I haven't covered?

MS. BALES:  No, Your Honor.

THE COURT:  Ms. Peiffer, anything else you can think of that I haven't covered?

MS. PEIFFER:  No, Your Honor.

THE COURT:  Mr. Lee?

MR. LEE:  No, Your Honor.

MS. BALES:  Your Honor, we would release the outstanding witnesses from their subpoenas.  I think it is primarily expert witnesses.

THE COURT:  No, I'm not going to release them from their subpoenas because we are going to move forward.  I'm just taking a break while we decide whether you can withdraw

or not.  So I'm not releasing them from their subpoenas.  I don't know how you've got them scheduled, but we obviously would not be back in court before, I guess it would be Thursday, a week from today.

MS. BALES:  So pick back up with the hearing?

THE COURT:  We will pick back up with the motion to withdraw, and unless you withdraw, we then will pick back up on Friday with the hearing.

MS. BALES:  Your Honor, we would respectfully ask for more time to prepare for the hearing.  I'm not familiar with a lot of the records in the case, and I think that we would need more time for me to be able to competently manage the rest of the hearing.

There is Dr. Merikangas, Dr. Martell, and Jean Barrett.  Those are the outstanding witnesses.  And then, also, if the government recalls witnesses, that would take me some time to get familiar with the voluminous trial counsel files.

THE COURT:  Well, Dr. Martell shouldn't take any time because she is your expert, and she's the one that's testifying about what the standards are supposed to be.  So I don't understand why she would take any more preparation time.

What we are going to do is we are going to convene next Thursday, and we will determine this motion to

1070

withdraw, and then we will look at setting a schedule after that, depending upon the outcome of the motion.  But you may not release any subpoenas except what you have between now and next Thursday.

You should still be producing documents.  I'm planning to go forward with Dr. Cunningham, because we have worked hard to get him, Dr. Cunningham, unless you withdraw on, I believe it's the 23rd or 24th.  We have worked hard to get him, so I would be planning to go forward with that.

We, obviously, have to be released from the schedule, but the document production continues, and not only the document production, but when I look at the witnesses, I went back through my notes over the break, and it appears that I don't see any need to recall any of the lay witnesses.  I don't think there were any documents involved with them that are at issue that I'm aware of.  If it is, you can make the Court aware at the appropriate time.

There may be a need to recall, or to call in the government's case, Mr. Hudgins and Mr. Woodward because of the document problem.  I don't know about Ms. Cronin.  I know that there was the one document yesterday with Ms. Cronin.

So in terms of the lay witnesses, I don't recall anything, so we've gotten through that testimony.  The only one would be Ms. Cronin for limited testimony depending upon

what other documents, if any, come up with her.  Then, of course, there is Mr. Hudgins and Mr. Woodward and whatever documents come up with them.

In terms of the witnesses, I will hear you all on this when we set a schedule.  We have to determine the motion to withdraw, and then we'll set a schedule.  But in the meantime, in fact, so that we can keep this document production going, maybe the best time to hear the motion to withdraw will be next Friday.  That way you all will have fully briefed it, and it would give you time to continue with your document production, look at what witnesses you have and what preparation you would need.

Is that agreeable, Mr. Samuels?

MR. SAMUELS:  It's fine, Your Honor.  If it's easier for the Court, we can even try and respond on Tuesday.

THE COURT:  We will continue, then, to set this on Thursday.  I want to move forward if I can as much as I can.

Then in terms of reconvening, if after the Court looks at the motions and determines it is necessary for the Federal Public Defender from Tennessee to be here, the Court will so advise Ms. Bales and Mr. Lee to inform her of the necessity for her presence, and we will go from there.

Is everybody straight, then, how we are proceeding from now until next Thursday at noon?

MR. SAMUELS:  Yes, ma'am, the United States is.

MS. BALES:  Your Honor, we have a couple of experts who were scheduled to testify on Monday and Tuesday of next week.  Would the Court want to move them back, after the Court takes up the motion to withdraw?

THE COURT:  If you can schedule them, yes.  But for now, I can't tell you to keep them on, but if they're willing to be on hold, that would be great.

MS. BALES:  We will check with them, Your Honor.

THE COURT:  Check with them and see what their schedule is.  But whatever you had, Dr. Merikangas, obviously, but again, we can do him by Zoom.  As I understand it, he is only in D.C., or the D.C. area.

MS. BALES:  That's correct, Your Honor.

THE COURT:  We've already got Dr. Cunningham scheduled, and he is a key witness, and we will keep on track with him.

MS. BALES:  Okay.  So his schedule will stay the same, and the witnesses before that?

THE COURT:  We will try to rearrange them.

MS. BALES:  Thank you, Your Honor.

THE COURT:  Anything else, Ms. Peiffer?

MS. PEIFFER:  Nothing further, Your Honor.

THE COURT:  You just file your brief and your response, and then anything else you have to say, you can

1073

say in an argument.  You don't have to file a reply to the government.  So it's just your brief by Friday.

MS. BALES:  Yes, Your Honor.

THE COURT:  Yours by Tuesday.

MR. SAMUELS:  Yes, Your Honor.

THE COURT:  Then we will hear it on Thursday.

MR. SAMUELS:  That would be at noon, Your Honor?

THE COURT:  Yes.

MR. SAMUELS:  Your Honor, we do have one witness that was a potential rebuttal witness that starts to go into a class on February 27th.  That may be a situation where we seek to have him presented by teleconference.  We will raise that at the appropriate time, but just to let everyone know. That was Dr. Aguirre who was going to testify in the space we had next Wednesday, I believe.

THE COURT:  Obviously, we have to regroup on scheduling at this point.

MR. SAMUELS:  Yes, ma'am.

THE COURT:  If there is nothing further, the Court stands in recess for today, the Court itself in general until tomorrow.  When is Dr. Cunningham, when is he scheduled?

MR. SAMUELS:  I thought Dr. Cunningham was scheduled for next Friday, a week from this Friday.

MS. BALES:  Next Thursday?

JODY A. STEWART, Official Court Reporter

Your Honor, I apologize.  I don't have the schedule in front of me, but we were going to do Martell on Tuesday, the government's expert on Wednesday, and Dr. Cunningham on Thursday.

THE COURT:  Then we will need to argue this motion on Wednesday, then.

MR. SAMUELS:  Yes, ma'am.  We will be ready.

THE COURT:  We'll need to argue it on Wednesday at noon because Dr. Cunningham is difficult to get, and I want to be sure and hold everything for him.  We should be ready to go because that was one of the witnesses that Ms. Bales was admitted to be in charge of specifically, and she and Ms. Peiffer can focus on documents that may need to be produced for that witness, maybe put that ahead of everything, continue Dr. Merikangas, and then move to Dr. Cunningham.

MS. BALES:  Thank you, Your Honor.

THE COURT:  I want to be sure everything is straight.  So the 17th for Ms. Bales' motion and memorandum, the 21st for your motion and memorandum, and the 22nd at noon in this court for the argument on the motion to withdraw.  Then, depending on that, we are planning right now on the 23rd for Dr. Cunningham.

MR. SAMUELS:  Yes, Your Honor.

THE COURT:  The Court stands in recess.

JODY A. STEWART, Official Court Reporter

1075

(Hearing adjourned at 6:00 p.m.)

CERTIFICATION


    I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled matter.




       X_____/s/_____x

               Jody A. Stewart

               X_____2-15-2023 _____x

                     Date


JODY A. STEWART, Official Court Reporter