1076

N THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

```
- - - - - - - - - - - - - - - - - - - -
                                         )
UNITED STATES OF AMERICA,                )
                                         )
v.                                       )   CRIMINAL ACTION NO.
                                         )   4:08cr16
DAVID ANTHONY RUNYON,                    )
                                         )
        Defendant.                       )
                                         )
                                         )
        AND                              )
                                         )
DAVID ANTHONY RUNYON,                    )
                                         )
        Petitioner,                      )   CIVIL ACTION NO.
                                         )   4:15cv108
v.                                       )
                                         )
UNITED STATES OF AMERICA,                )
                                         )
        Respondent.                      )
                                         )
- - - - - - - - - - - - - - - - - - - -
```

TRANSCRIPT OF PROCEEDINGS

DAY 8

Norfolk, Virginia

February 22, 2023


BEFORE:   THE HONORABLE REBECCA BEACH SMITH
          United States District Judge

JODY A. STEWART, Official Court Reporter

1077

APPEARANCES:

        UNITED STATES ATTORNEY'S OFFICE
        By:  Brian Samuels
            Lisa R. McKeel
            Assistant United States Attorneys
                And
        DEPARTMENT OF JUSTICE
        By:  Carrie L. Ward
            Counsel for the United States

        FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE
        By:  Helen Susanne Bales
            Stephen Ferrell
            Gianna Maio
            Assistant Federal Community Defenders
                And
        VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER
        By:  Elizabeth J. Peiffer
            Counsel for the Defendant

1078

(Hearing commenced at 12:07 p.m.)

THE CLERK:  In Case No. 4:15cv108, David Anthony Runyon, Petitioner, v. United States of America, Respondent, and Case No. 4:08cr16, United States of America v. David Anthony Runyon.

Mr. Samuels, Ms. McKeel, and Ms. Ward, is the government ready to proceed?

MR. SAMUELS:  The government is ready.  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

THE CLERK:  Ms. Bales and Ms. Peiffer, is the defendant ready to proceed?

MS. BALES:  We are, Your Honor.  Good afternoon.

THE COURT:  Good afternoon, Ms. Bales.

Good afternoon, Ms. Peiffer.

Then I would also acknowledge the presence of Mr. Lee, who is here.  He is head of the Virginia Capital Resource Center.  I would also acknowledge the presence of, and correct me if I don't pronounce it properly.  Is it Ms. Maio?

MS. MAIO:  It's Maio, Your Honor.  Thank you.

THE COURT:  Ms. Maio is here as head of the Federal Defender Services for the Eastern District of Tennessee, and I believe that Mr. Ferrell, Stephen Ferrell, is here --

MR. FERRELL:  Yes, Your Honor.

JODY A. STEWART, Official Court Reporter

1079

THE COURT:  -- as the Capital Habeas Unit Supervisor, so I do acknowledge you and welcome you to our court.

The first matter that I did want to put on the record is Court Exhibit 1.  Mr. Lee, I do appreciate your follow-up that I directed you to do, and you did send the Court a letter on February 17th indicating that you and Ms. Maio had not been able to reach any type of agreement on the joint representation, and I did want to make that Court Exhibit Number 1.

It's just the follow-up letter, and it just does what the Court asked Mr. Lee to do, but I wanted that to be on record where he indicates that he had waited until late Friday to send this letter, hoping that the developments might be different, but they were not and so, consequently, he did follow up in writing, and I would make that Court Exhibit Number 1 for the hearing today.

(Court Exhibit 1 received in evidence.)

THE COURT:  Ms. Bales, I believe it's your motion, and you may argue it, and then I'll hear anything that either Mr. Ferrell or Ms. Maio want to say.

MS. BALES:  Your Honor, we are here today to answer one question, and that is whether I have a conflict of interest in representing Mr. Runyon.  The answer to that question is, yes, I do have a conflict.

JODY A. STEWART, Official Court Reporter

And what I propose for the roadmap for this hearing today, Your Honor, with the Court's permission, is I would like to tell the Court why I think I have an individual conflict, and then I would ask that Ms. Maio be able to argue why the office has a conflict.

THE COURT:  That's fine.

MS. BALES:  Your Honor, as we set forth in the motion, Ms. Chavis withdrew, and I think the record makes clear that she withdrew because she felt she had a conflict, and the conflict is related to the discovery issues that emerged last week.  To be candid with the Court, we are still investigating, from a disclosure standpoint, trying to reach a conclusion on what happened with the disclosures, why they were incomplete, and what additional material needs to be disclosed.

But she withdrew.  I think it's because she had a conflict.  She is under investigation, there is sort of an ethical cloud over her, and that caused her to have a competing interest between doing what was in her best interest and what would be in Mr. Runyon's best interest.

The conflict that I have, Your Honor, is twofold, which is because she and I worked for the same office, her unethical conduct, I fall under that cloud.  Also, Your Honor, I've been informed that our office is conducting an independent investigation into what has happened here at the

JODY A. STEWART, Official Court Reporter

1081

hearing, and my conduct here will be investigated.

So I am being investigated for -- my office is investigating me for the disclosure sequence of events that happened last week.  And I do feel that I'm under a conflict because, you know, my law license and my livelihood are part of that, could potentially be impacted by the investigation, and then that concern affects me while I actually need to be zealously representing Mr. Runyon.

So I did want to put that on the record, that that's why I feel that I have a conflict in this case.  And with the Court's permission, I would ask that our office, our defender address the Court now.

THE COURT:  I understand that you're arguing that Ms. Chavis's problems are imputed to you, at least from a standpoint of representation, her withdrawal, and I certainly know the United States has indicated something about the Court getting into this investigation, but the Court is not going to do that.  That's not a role for a Court.

The Court has to be concerned with the proceedings at hand and there being proper representation.  Whatever happens internally in the Defender Services for Eastern Tennessee is for that office.  It is not for the Court.  So you need not even argue that, because that is not my role. My role is to conduct this *habeas* proceeding in a proper

manner, with proper representation for Mr. Runyon and the United States, and to be sure that the proper discovery is to be had.

I would also note that Ms. Peiffer is the lead attorney, and she has also moved to withdraw any *pro hac vice* motions that she made.

That is correct, isn't it?

MS. PEIFFER:  Yes, Your Honor.  My motion is to withdraw my *pro hac vice* application in support for Ms. Bales' appearance as counsel.

THE COURT:  I, obviously, haven't ruled on that. What I'm saying is that what you're arguing, Ms. Bales, is that the problems with Ms. Chavis are thereby imputed to you under the law.  I believe there is a Supreme Court case that you cited, *Martel*.

MS. BALES:  Yes, Your Honor.

THE COURT:  You don't need to go any further for right now.  I just want to make it clear that the findings of the Court last week did not have anything to do with you or your conduct.  So I want to make that clear on the record.

I would note that Ms. Chavis arrived without a docking station for the computer; the Court had to provide that.  There was no power cord; the Court had to provide that.  The power cord then, somehow, was gone the next day.

JODY A. STEWART, Official Court Reporter

1083

It was here, and I'm not saying anybody took it or whatever, but we had to provide a second cord, as I understand it.

There were no documents loaded onto the computer, and the Court had given equal permission for each side to have a laptop for the display of the documents, and Ms. Chavis had no documents loaded onto the computer.  She displayed them on a projector, and that's why it took so long -- you can look at it -- for the examinations to go forward.

They were displayed on the projector, and something would come up, and I'm just saying that none of this was with Ms. Bales; this was with Ms. Chavis.  She would say, "Well, the document is back at my hotel."  You're supposed to bring your documents with you, at least.

So it's past history now for the Court with Ms. Chavis, but I'm saying that none of this occurred with Ms. Bales, in terms of Ms. Chavis was the individual that had been admitted by the Court, and there was only a provisional note for Ms. Bales to examine the experts, all of the experts.  So it was a provisional *pro hac vice* admission for Ms. Bales.

All of these, the delay in the proceedings, it just took hours to examine witnesses and go through documents and project them onto the screen, and they were back at the hotel, and so forth.  So I'm just saying that I'm not

1084

getting into any investigation, and I find no grounds before the Court for Ms. Bales, but I do understand it being imputed.  I'm not getting into the investigation or the imputation or any of those things, so I just wanted to say that up front.

Thank you, Ms. Bales.

MS. BALES:  Thank you, Your Honor.

THE COURT:  Ms. Maio.

MS. MAIO:  Thank you, Your Honor.  First, I'd like to begin by telling the Court that I am appalled at what has transpired in these proceedings.  I want to apologize first to the Court, I want to apologize to Mr. Runyon, and to the government on behalf of Federal Defenders for the harm that this has caused.

I understand that Mr. Runyon's appeal began with 18 claims, and that there is only one claim, the claim that this Court is well aware of, the ineffective assistance based on not fully established mental health defense.  I fully appreciate that that claim is the only thing that stands between Mr. Runyon and execution of a death sentence.

I also understand that the documents that were not disclosed, pursuant to the Court's order, relate to that specific issue.  Your Honor, we are mindful of the ramifications involved in moving to withdraw.  Nonetheless, I feel that the Office is bound by an ethical duty to do so.

JODY A. STEWART, Official Court Reporter

1085

Your Honor, I'd like to briefly explain to the Court the steps that we have taken as an office to address this situation since it came to my attention on February 13th.

First, Ms. Chavis, as well as her husband, Mr. Chavis, who is the lead investigator in Mr. Runyon's case, have been removed from the case. Pursuant to the Court's order, all of the file access has been restricted for both Mr. and Mrs. Chavis.

Second, as a community defender office, we are governed by a board of directors. The board of directors has taken preliminary steps to designate a person, perhaps more than one person, to conduct an external investigation into the conduct in this case.

And I understand the Court's point that we are not going to go in-depth on that, but I wanted to make the Court aware of the action we have taken. We intend for this investigation to examine what every member of the team knew and what actions they took or failed to take.

Finally, Your Honor, both Ms. Chavis and Ms. Bales received advice of counsel from personal attorneys last week when these allegations came to light.

Your Honor, I believe that the heart of the conflict is driven by the fact that we cannot at this point divorce the Court's ongoing disclosure requirement from this

1086

external investigation.  Both touch on disclosure concerns. Federal Defender attorney and staff members, all of them involved in this case, potentially have a self-interest that's implicated if their conduct or the conduct of their co-workers is proven to be negligent or worse.

I'm not going to repeat what we have provided to the Court in our written pleadings in consultation with ethics experts, but I would like to highlight just briefly the two rules that we feel are most relevant to support our position.

The first is Virginia Rule of Professional Conduct 1.782.  Under that rule, we believe that Ms. Bales is ethically required to withdraw because of the fact that her representation is materially limited by her personal interest.  That's the same basis why we feel it was appropriate for the Court to grant Ms. Chavis's motion to withdraw, given that we believe that she had a conflict for the same reason.

Your Honor, we can't know what exactly transpired, where the blame lies with respect to these deficiencies and the fact that we did not comply with the Court's order, and we can't know that until the investigation is complete.

Your Honor, I think that both Ms. Chavis and Ms. Bales have a substantial personal interest that is triggered, that is implicated, because of their

noncompliance with the Court's discovery order and the potential allegations of misconduct that may flow from that. As Ms. Bales noted earlier, there is a risk to both for damage to their reputation, and it threatens their livelihood.

Ms. Chavis, as the Court is aware, accused Ms. Bales on the record of lying about her.  If Ms. Bales remains on the case, her participation with the investigation, as well as her ongoing representation of Mr. Runyon, we believe, would create a conflict with her and prevent her from providing, perhaps, an admission of error in Mr. Runyon's case, while simultaneously representing him.

That's why we feel it's appropriate to ask the Court to appoint a non-conflicted attorney.  We feel that is the only way to ensure that Mr. Runyon receives competent advice as to how to proceed.

Your Honor, I would like to cite the two -- I would like to note two opinions that were cited by the government that we feel support our position under this particular rule.

The first is *United States v. Glover*, which is a 2021 Fourth Circuit decision.  In that case, the defendant attempted to withdraw a plea that he said was coerced. During the hearing, in which the Court engaged in this consideration of this issue, a conflict became clear,

JODY A. STEWART, Official Court Reporter

because the attorney's statements that were self-serving were directly at odds to what the client's interest was. Therefore, the Court ruled that there was a conflict which necessitated withdrawal.

In the *Christeson* case, Your Honor, which is a 2015 Supreme Court case, the Court agreed that it was appropriate to substitute counsel in a *habeas* case when the tolling was potentially impacted by counsel's failure to meet a statute of limitation under HIPAA.  What the Court recognized there is that counsel cannot be expected to request relief on the basis of misconduct while still continuing to represent that client.

Your Honor, we believe that the conflict created here means that if there were results from our external investigation which produced results that potentially adversely impact Mr. Runyon's claim, if Ms. Bales remains on the case, that that may be a conflict for her as to whether to reveal information that perhaps benefits her but is adverse to Mr. Runyon.

Your Honor, under Rule 1.10 under the Virginia Rules of Professional Conduct, we do believe that when one of our attorneys is conflicted out of representing a client, that should apply to the entire office.  We believe that the Federal Defenders Office -- we are an office of approximately 51 employees.  We believe that we do qualify

JODY A. STEWART, Official Court Reporter

as a firm for purposes of the Rules of Professional Conduct.

Your Honor, just for context, this is our practice within our office in terms of conflict. Thankfully, it does not arise in the context of alleged misconduct, but if there is some reason for an attorney to withdraw from FDSET, our practice, in accordance with the rules and our understanding of the rules, is that it requires the entire office to withdraw under the imputed conflict rule.

I'd like to point out, Your Honor, two cases that were cited by the government that we don't feel are factually on all fours with this situation regarding imputation.

The first is the *Laserda* decision. There the Court determined that one counsel was disqualified. The Court determined that the remaining co-counsel was permitted to stay in the case. But I think it's factually distinct for two important reasons:

One, co-counsel was not in the same office, and, most importantly, co-counsel was not involved in the misconduct of the counsel that was disqualified. We are not in a position to say that at this juncture, Your Honor, because we are not -- we don't know what the outcome of the investigation will be.

Secondly, the government cited the *Akerly v. Red Barn System*, which is a Third Circuit decision. And, again,

one lawyer was disqualified; co-counsel was permitted to remain on the case.  There were two factually distinguishing matters there.  First, the disqualified attorney had a minor role.  Here we don't have that at all.  We have two attorneys who were intimately involved for a number of years with Mr. Runyon's defense.  And, secondly, in the *Red Barn* case, there was not an active relationship between the attorneys, which, again, I think makes it factually distinguishable.

Your Honor, I don't know that it's necessary to address the waiver concerns regarding Mr. Runyon.  I do have some points on that, but I think I'll stop there in terms of what we think the basis is, if the Court has any questions for me at this point.

THE COURT:  Well, in this situation, if the Court determines that as a matter of law, at a minimum, there is an imputed conflict, then you can't waive an actual conflict.  If the Court finds an actual conflict under the Supreme Court authority or other authority, there would be no waiver involved because that's something that, whether it be very serious here, a capital case, if the Court finds in the interest of justice as a matter of law there is an actual conflict.  Even though here the general Fourth Circuit standard is the *Mullen* case, obviously, the timeliness of this is concerning to the Court, but the Court

1091

can't control the timing of this because it happened.  The United States can argue for itself, and I'm obviously going to entertain that argument, but it's not a waivable conflict, in the Court's opinion, if the Court so finds.  Do you agree with that?

MS. MAIO:  Yes, Your Honor, I do.

THE COURT:  Because it would be ineffective assistance of counsel automatically if the Court left in a conflicted attorney, whether it be imputed or so forth.  I understand your imputed argument, and I read the caselaw where the public defenders, and we operate this way, I would say, in our district, that if a public defender is involved in a case, then that means no other person from the office can be involved in any aspects of that case, conflict or not.

MS. MAIO:  Yes, Your Honor.

THE COURT:  I assume that you have the same rules?

MS. MAIO:  Yes, ma'am, we do.

THE COURT:  Anything else?

MS. MAIO:  No, Your Honor.  Thank you.

THE COURT:  Mr. Ferrell, is there anything that you'd like to say to the Court?

MR. FERRELL:  No, Your Honor, I don't have any independent or additional remarks.  I merely wanted to put myself available to the Court if the Court had specific

1092

questions about the operations of the Capital Habeas Unit in any way.  Ms. Maio is a new defender and hasn't been working with us so long, and I wanted to make sure that any questions that the Court had, someone was available to answer them.  Beyond that, I don't have any further argument.

THE COURT:  No.  I have seen the organizational charts, which I did request, and I believe they should be on the record as Court exhibits.  I believe I made those.

In any event, no, I don't.  I understand the working relationships on the case; it's been represented to the Court in the documents and the statements, and I appreciate your coming here today.

MR. FERRELL:  Thank you, Your Honor.

THE COURT:  Ms. Peiffer, is there anything that you want to add?  Let's see.  Your motion to withdraw the *pro hac vice* sponsorship was filed *ex parte*.  I understand that. You represent that on February 6th, 2023, she was admitted *pro hac vice* on the motion of the undersigned at 764.  There was a motion made a while back, and I've gone back through that motion, and the Court took it under advisement.

And then you did another motion with the limited sponsorship, and you have moved to withdraw that *pro hac vice ex parte* motion.  Even though it was submitted *ex parte*, I'm going to direct that it remain under seal.  If

JODY A. STEWART, Official Court Reporter

1093

you want to address it, you can.  I am going to direct that a copy of it go both to Ms. Maio and the United States, but it will be a sealed document on the record.

Do you have any objection or anything you want to add to that motion?

MS. PEIFFER:  No, Your Honor.  Would you like me to remove my mask?  I'm trying to wear it out of respect for my cough.

THE COURT:  It's up to you.  I can hear you and understand you.

MS. PEIFFER:  Okay.  Well, then, I'll keep it on, but if you have difficulty understanding, please just let me know.

THE COURT:  That's fine.

MS. PEIFFER:  I don't have anything beyond -- to add much beyond what I have already stated in the motion, other than to note, for the benefit of those who haven't seen the motion, that our reasoning tracks very closely with the same reasoning that was already presented by Ms. Bales and Ms. Maio.

Our concern is that I did consult with our counsel for the Virginia Bar, who suggested that there was a conflict and that such an action would be an appropriate action in accordance with my ethical duties to the Court and to the Bar.  Thank you.

JODY A. STEWART, Official Court Reporter

1094

THE COURT:  Mr. Lee, I know you're here, and do you have anything that you'd like to add before I turn to the United States?

MR. LEE:  No, I do not.

THE COURT:  Thank you, Mr. Lee, for being in attendance today.

I'll have the *ex parte* motion run off and brought in, and I will give a copy to the United States and give a copy to Ms. Maio.  I'll let you share it with Ms. Peiffer, with Mr. Runyon.

Mr. Samuels.

MR. SAMUELS:  Yes, Your Honor.

THE COURT:  I know Ms. McKeel, I think, signed the response.  It doesn't matter to me, but you are going to argue?

MR. SAMUELS:  Yes, Your Honor.

THE COURT:  All right.

MR. SAMUELS:  Thank you, Judge.

Your Honor, the United States understands the severity of the situation that we are under here, and we had filed our response, and then I believe there had been another supplemental response filed by the defense that we didn't have the benefit of, and we didn't have the benefit of some of the arguments and representations that have been made here today.

JODY A. STEWART, Official Court Reporter

1095

Our concern, as the Court alluded to -- and I'm sorry if that was misunderstood -- was that there should be enough of a record justifying the severity of this. Because even with the argument from Ms. Maio and Ms. Bales today, it seems like this has been focused a little bit on just a discovery or a disclosure violation and an investigation into that. As the United States looks at the materials that have been disclosed, we certainly believe that those materials really do go to the heart of the claim and why we are back here.

But Ms. Bales and Ms. Maio have both provided some additional information today that goes more towards an investigation of misconduct. And there was a representation that Ms. Bales had accused Ms. Chavis of lying on the record. Again, when we looked through the transcript, that wasn't as clear, but now we understand that representation is here before the Court, as well as the investigation that's being done.

Judge, the only points that I would make or observations I would make is, as the Court knows, we have been engaged in this hearing and this representation for a long time, and certainly the Rules of Professional Conduct are geared towards the interests of the client, and that's true, as well, with rules regarding imputed conflicts. If we take the proposition that there is a conflict here and

JODY A. STEWART, Official Court Reporter

1096

that it is imputed to Ms. Bales, in the government's view, that's the starting point of the analysis.  It's a general imputation, but then the Court can look at other things, and the Court can look at the relationship between Ms. Bales and Ms. Chavis.  The Court can look at the proximity of Ms. Bales to the conduct.

That was an area that we struggled with, Your Honor, because not only was Ms. Bales not appointed initially -- and it wasn't the Office of the Federal Defender that was appointed.  It was Ms. Chavis appointed individually.  Ms. Bales was initially denied appointment back in 2015 when the claim began, and even the statement of their expert that was provided yesterday indicated that it was really Ms. Chavis that had the responsibility for the claim development.

So we were not certain how close was Ms. Bales to this conduct and submit that that's something that the Court can consider in determining the extent of any imputation and whether or not that would affect any diligent or competent representation that Ms. Bales would provide going forward here.

And once you get into the imputation of conflict, in the government's view, the analysis looks at is there good cause to justify withdrawal, particularly at this stage, and that's something that the Court looks at the

JODY A. STEWART, Official Court Reporter

totality of the circumstances, including the interest of justice, the interest of the defendant, judicial efficiency. I know the Court is looking and balancing all those factors here going forward, and Ms. Bales and Ms. Maio have touched on those issues.

The government's focus and concern was that if there was going to be a withdrawal, that that be based on an articulated conflict that didn't just go to a discovery violation. Because even in the status report --

THE COURT: Let me just ask you this, Mr. Samuels.

MR. SAMUELS: Yes, ma'am.

THE COURT: Excuse me for interrupting you.

MR. SAMUELS: Of course.

THE COURT: First of all, when we were here last, you mentioned something about 219 documents. You all were the ones who were -- and rightfully so -- strenuously making the points to the Court. That was at 11:45 a.m., and then at 1:30 a.m., you said that there were additional disclosures coming across the computers. How many boxes are you claiming? Something like 45 boxes or folders?

MR. SAMUELS: Well, Judge, I don't know how -- from our understanding, the Federal Defender has claimed that there are 45 boxes of files. This box that I've put on the table is the set of documents that we've received in the last few days.

1098

THE COURT:  I don't know who was responsible for turning them over individually, and I've told you I'm not getting into that, because that's not the purview of the Court if there is an imputed conflict.  I think the Supreme Court, frankly, has made it pretty clear.  I have read all the cases, and the two cases that you did cite, you didn't have them in the exact same office, in close working relationship.

I believe a lot of the documents go to the witnesses who were the expert witnesses, and that was of great concern to the Court, because much of this case at this juncture depends upon, basically, what the attorneys knew, what they could have known, and then the decision that they made.

I'm concerned, too, that the attorneys weren't allowed to see their files in any way.  I don't understand why every other witness was able to see their file, and I expressed that the other day, these attorneys have been away from this case for over ten years, well over ten years, and they weren't allowed to see their own files?  I mean, maybe we have to revisit that another day.

MR. SAMUELS:  I understand, Your Honor.

THE COURT:  You're talking about these expert witnesses.  That was the limited basis upon which the Court granted Ms. Bales' admission.  I don't know who was

JODY A. STEWART, Official Court Reporter

1099

responsible, and I'm not going to conduct an investigation into the Defender Services of Eastern Tennessee.  That is not the purview of the Court.  The purview of the Court is to be sure Mr. Runyon, his life is at stake, and to be sure he gets a fair and complete hearing and that the United States, trying to uphold the jury verdict, has the documents that it's entitled to.  That's the purview of the Court.

Under the law, if you look at the *Martel v. Clair* case, that was a motion to withdraw in a capital *habeas* case.  That's the United States, 565 U.S. 648 at 652.  It's a 2012 case.  They specifically said that the, "'Interests of justice' standard contemplates a context-specific inquiry."  We have pretty much been doing that for the last few days.

And also in *Christeson v. Roper*, the case that the Supreme Court made clear in 2015, that a conflict of interest may be grounds for substitution.  Now, I'm getting ahead of myself a little bit.  We will talk about a substitution.

Technically, one attorney can go forward in this matter at this stage.

MR. SAMUELS:  Yes, ma'am.

THE COURT:  Ms. Peiffer is qualified.  I've checked her credentials.  She has the requisite number of years.  She has been in one capital case, I think, since -- I

JODY A. STEWART, Official Court Reporter

1100

checked the Fourth Circuit dockets.  I'll have to look.  I think it's since 2011.  We will get to that at the appropriate time.

MR. SAMUELS:  Yes, Your Honor.

THE COURT:  In my opinion, you're just going to be back here again on this whole matter.

MR. SAMUELS:  I understand, Your Honor.  And certainly the government does think there are ramifications to these disclosures, both from their lateness and from their substance, that can be taken up at another time.  It doesn't have to be considered right now.

And I agree with the Court that this is a fact-specific analysis.  I think the record is better developed today than it was even last week, with the additional information that's been provided.

The Court has a great degree of discretion here, and the United States just wanted to ensure that the factual landscape was laid out here that supported a finding that there was a conflict, that this wasn't just something that was inadvertent.  Because even in the status update that we received on Friday, we were hearing the same thing that Ms. Chavis said, which was there was this double-file naming system, and it seemed to be saying that was the cause of this.

Today we have heard more:  That there is an

investigation, that there is involvement with Ms. Bales and Ms. Chavis in this investigation.  I'm not asking the Court to look into that.  I'm just pointing that out, that that is a different matter than just a failure to disclose, and, frankly, Your Honor, I think it should be because the substance of these documents go directly to the heart of the surviving claim of why we are here.

In other words, had Mr. Hudgins, Mr. Woodward, had the Court had access to some of these documents, the question of attorney strategy would have been very, very clear to the Court and to the Fourth Circuit.  So that's a concern, as well, that the surviving nature of this is based on documents that have been withheld which really clear up this question.

But we understand, Your Honor, the question that the Court has to consider of the conflict and the imputed nature of it.

Unless the Court has any other questions for me, I'll stop here.

THE COURT:  No, I don't.

Ms. McKeel, is there anything you want to add, or Ms. Ward?

MS. McKEEL:  No, Your Honor.  We have found out more information in the last few days with regard to just beyond discovery violations, so Mr. Samuels has articulated

JODY A. STEWART, Official Court Reporter

our position.

Thank you, Judge.

THE COURT:  Ms. Ward, is there anything further you want to add?

MS. WARD:  No, Your Honor.  Thank you.

THE COURT:  I would just comment that what Mr. Samuels has put on the table is like a Bankers-Box-size file full of notebooks and documents.

MR. SAMUELS:  Yes, Your Honor.

THE COURT:  I don't know how many are in there, but there are at least a few hundred.

MR. SAMUELS:  There are, Your Honor.  I think it is over 800.  And, again, we haven't had the opportunity to fully assess all of that.  There may be time to do that, and I hope at that time I can come back to the Court for any requested relief for the ramifications of that.  I know we are not dealing with that right at this point.

THE COURT:  Anything else that you want to add, Ms. Maio?

MS. MAIO:  Your Honor, briefly, if I may, in response to Mr. Samuels, I want to put on the record, and the new information, I may have interchanged Ms. Bales' and Ms. Chavis's names when I spoke earlier, and I just wanted to clarify.

When I made the statement earlier about accusations

JODY A. STEWART, Official Court Reporter

1103

that were made before this Court of, quote, "lying" between Ms. Bales and Ms. Chavis, I was specifically referencing Page 1045 of the transcript, and that was when the Court was engaged in an inquiry with Ms. Chavis regarding the access to the shared room.

In response to the Court's questioning, at the top of Page 1045, Ms. Chavis said, "The intent was to protect my own records that are contained within the room because of the false accusations that are being leveled against me by my own co-counsel and that I can no longer trust them."

So I just wanted to clarify that. I don't know anything beyond what's in the record in terms of that, and I apologize if I misspoke earlier on that point. Thank you.

THE COURT: Also, there was an e-mail exchange sent to the Court, if you recall, and that is part of the record.

In other words, it was sent to Ms. Armstrong, the courtroom deputy, about appearance before the Court, about production of records, and then we went into the hotel room. But what you're saying came out in the hearing, and also there was the e-mail exchange.

MS. MAIO: Yes, Your Honor. That's all I have. Thank you.

THE COURT: We will take a 10-minute recess, and I'm going to have my clerk give you the *ex parte* documents, one for the United States and one for the Public Defender

JODY A. STEWART, Official Court Reporter

for Eastern Tennessee, the Defender Services, and Ms. Peiffer, so you have one at hand.  I have that for you if you need to review it with Mr. Runyon.  If he has a copy, he needs to understand that it is under seal.

The Court will take a 10-minute recess.

(Recess from 12:54 p.m. to 1:08 p.m.)

THE COURT:  Is there anything that anybody else wants to say in this matter?

Then, I would find that based upon the filings and the representations before the Court that have transpired since last week, which would include Ms. Chavis's withdrawal and the briefs and then the representations of the attorneys and the caselaw and the Virginia Rules of Professional Responsibility, I would find that, due to the discovery issue that has arisen in this case, and that issue is clear on the record, and the fact that Ms. Bales and Ms. Chavis worked closely together on this case, as has been represented to the Court, since 2015, and the fact that the Federal Defender Services for Eastern Tennessee is now conducting both an internal and an external investigation into the conduct in question involving Ms. Chavis, Ms. Bales, and anyone else who has had a role in the investigation of the case, that Ms. Bales does have both a personal and an imputed conflict under the Virginia Rules of Professional Conduct.

1105

Ms. Peiffer has consulted with the Virginia Bar, as has been represented to the Court, and the Rules of Professional Conduct have been cited to the Court, and also the Supreme Court caselaw that the Court has mentioned, the *Martel* case and the *Christeson* case, as well as Fourth Circuit precedent for conflict, I would find that there is both an actual personal conflict for Ms. Bales as well as an imputed conflict.

Certainly, the Defender Services for Eastern Tennessee would be considered a law firm, or an office together, the same as the Federal Public Defenders are around the United States, but particularly under the Virginia Rules of Professional Conduct, which govern the conduct set forth in our local rules.

I would find that there is both a personal and an imputed conflict, that the activities of Ms. Chavis and Ms. Bales have been intertwined.  To what extent the Court doesn't know, but it has been a long-term, it's not a distant relationship, it's the same office.  They have worked together on this case, and they have worked for a number of years on this case.  Ms. Bales has been at the hearings before this Court.

Based upon all of that, I would find that the interests of justice require that the Court grant Ms. Bales' motion to withdraw, and I do so at this time.

JODY A. STEWART, Official Court Reporter

1106

I would also note that that would then moot the motion of Ms. Peiffer, because Ms. Bales is no longer -- would no longer be in the case.  So it moots her motion, because the ruling of the Court *ipso facto* takes care of her motion.  That would leave Ms. Peiffer, she is the lead attorney, and she was the lead attorney and continues to be the lead attorney in this case.

In terms of the discovery material that needs to be turned over, I would address Ms. Maio, who is the head of that office.  Do you still have the boxes of exhibits and materials that need to be turned over?

Ms. Maio, if you will come up to the podium.

MS. MAIO:  Yes, Your Honor.

THE COURT:  Do you have all of the documents in this case ready to be transferred to Ms. Peiffer?

MS. MAIO:  Yes, Your Honor.

THE COURT:  That's where they need to go, and then we will talk about turning those documents over, but somebody's got to go through them.

MS. MAIO:  Yes, Your Honor, understood.  We will provide those, all of those documents, to Ms. Peiffer.

THE COURT:  I'm going to set a deadline.

MS. MAIO:  Yes, Your Honor.

THE COURT:  I'm not just going to say you have to provide them.  You have to get all those documents to them

JODY A. STEWART, Official Court Reporter

1107

by 5:00 on Friday.

MS. MAIO:  Yes, Your Honor.

THE COURT:  Didn't you represent that there were 45 boxes?  However many documents, you have to get the documents, if she doesn't have them.  I don't know what she has or doesn't have.

MS. MAIO:  Understood, yes, Your Honor.

THE COURT:  I want you to then file a representation, an affidavit with the Court, that indicates that all case materials have been turned over.  I know you've got to do your investigation, so let's talk about how you are going to do this.

I'm in a position where I don't know what Ms. Peiffer has.  I don't know what the Virginia Capital Resources Center has or representations.  It's just not clear to the Court, so somebody's got to clarify this, maybe Ms. Peiffer, because I assume you're going to need some of these documents if you're going to be doing an internal and an external investigation.

MS. MAIO:  Yes, Your Honor.

THE COURT:  So we have to come up with a means, and you're the head of the office.  Mr. Ferrell is here, and I'm going to direct both you and Mr. Ferrell, this is the direction that I'm going to give:  To make arrangements with Ms. Peiffer between now and 5:00 on Friday for how you all

1108

are going to exchange these documents.  You've got electronic means, I would think.  I just think you've got these boxes of documents, as I understand it; is that right?

MS. MAIO:  Yes, Your Honor.  We have a number of boxes.  I believe I understand the Court's directive with respect to that, that we make these arrangements and then the affidavit.

THE COURT:  Yes.  You can carry out the arrangements.  I can't get into the mechanics of what you're going to do.  As an officer of the Court, I have to depend upon your affidavit and your representation under oath that you have made appropriate arrangements with Ms. Peiffer and the Virginia Capital Resources Center to turn over all the documents for the case.  I'm not getting into what you keep or not, but, obviously, the documents have to go to Ms. Peiffer, as the lead attorney.

MS. MAIO:  Yes, ma'am.

THE COURT:  And then, Ms. Peiffer, I want you, on Monday, to file an affidavit indicating that appropriate arrangements have been made for you to receive any of the case documents that are in the possession of the Federal Defender Services for Eastern Tennessee.

MR. SAMUELS:  Your Honor, may I make one request for that process?

Your Honor, this disclosure is ongoing.  We don't

JODY A. STEWART, Official Court Reporter

1109

know everything that we don't know, but we do know that in the course of what we have been provided to date, there are references to two memoranda from Mr. Woodward that would be dated August 13th and August 16th, 2009.

My understanding to date is those have not been located, and what I'm hoping is that Ms. Maio, in connection with turning over those documents, could also include some representation that they have made a diligent search for those and they either have them or don't have them so when we are trying to figure this out down the road, it's not a question of, well, those documents could have been in the Federal Defender's Office.

They're just two documents that I can point to now, Your Honor, but I think it would be helpful to just have some clarity on those two memoranda. I have discussed with Ms. Peiffer a little bit about that, and I know they were looking for them, but they have not turned up to date.

THE COURT: Well, then, I will put Ms. Maio and Ms. Peiffer under a continuing duty in the case. If you come across documents that are referenced, and you don't have, you let Ms. Peiffer know, and then she has to be in touch with either Ms. Maio or Mr. Ferrell, and they have to try to locate the documents.

MR. SAMUELS: Thank you, Your Honor. That's perfectly acceptable.

1110

THE COURT:  I think you would need to keep any listing of these documents so that if it comes up in the future, you have a reference to what documents you have, the correspondence, whether it be e-mail or whatever correspondence you have with Ms. Peiffer, because she'll be the one who will then have to be in charge.  Since she's the one who moved for the admission of Ms. Chavis and Ms. Bales, she would have to be the one that would be in charge of recovering those documents from them.  But, obviously, Ms. Maio is an officer of the Court, as well, and she would be in charge of communicating with Ms. Peiffer.

MR. SAMUELS:  Yes, Judge.  We will keep track of that.

THE COURT:  So I will summarize that by Friday close of business, Ms. Maio and Ms. Peiffer have to come to an agreement on the transfer of these documents, and Ms. Maio is to put that in an affidavit form to the Court. Then Ms. Peiffer is to confirm by affidavit by close of business on Monday, and in the meantime, Ms. Maio and Ms. Peiffer are under a continuing duty.

As the United States goes through these documents, they will communicate to Ms. Peiffer if a document is referenced, and they don't have it, and then Ms. Peiffer will need to follow through with that with Ms. Maio and, ultimately, if it can't be located, with the Court.  So that

JODY A. STEWART, Official Court Reporter

1111

will have to be an ongoing directive.

Is there any question, Ms. Maio, about the expectations of the Court?

MS. MAIO:  No, Your Honor.

THE COURT:  Ms. Peiffer, are there any questions about the expectations of the Court?

MS. PEIFFER:  Not at this time, Your Honor.

THE COURT:  Mr. Samuels, are there any questions about the directions and expectations of the Court?

MR. SAMUELS:  No, Your Honor.  Thank you.

THE COURT:  The record should reflect that Mr. Runyon has been here throughout these proceedings.  His lead counsel remains intact, because Ms. Peiffer is the lead counsel and with the Virginia Capital Resources Center.

The other direction is, obviously, I have to continue the evidentiary hearing in this matter, and the current witnesses need to be canceled.  I believe you've got one scheduled to come in tomorrow, Ms. Peiffer?

MS. PEIFFER:  That's correct, Your Honor.  In fact, I believe he's traveling today for testimony tomorrow, and so we will make those arrangements as quickly as we can after leaving court.

THE COURT:  Are you still getting documents in regard to Dr. Cunningham?

MR. SAMUELS:  We are still getting documents, Your

JODY A. STEWART, Official Court Reporter

1112

Honor.  There were keyword searches, I think, that were discussed last week.  Those have largely been completed, to my understanding, but now there is this page-by-page review that's being conducted.  So I don't know what the status of that is in terms of the full production.

THE COURT:  Well, the Court obviously has to continue the evidentiary hearing in this matter, and you can cancel the current witnesses, Ms. Peiffer.  We need to discuss other incidents here.  There needs to be some type of time period put on this discovery.

These are the matters that I have that may be tangentially related to the withdrawal today:  The first is under the statute, which is 18 United States Code, Section 3599(c), is the applicable statute for the attorney, it says, "If the appointment is made after judgment, at least one attorney so appointed must have been admitted to practice in the Court of Appeals for not less than five years, and must have had not less than three years' experience in the handling of appeals in that court in felony cases."  That's the applicable statute.  Ms. Peiffer so qualifies.

When the Court admitted her in 2021, her resume reflects that she meets these qualifications.  I would note that she has been in the case, in the *Zook* case, since 10-6-2011; is that correct, in the Fourth Circuit,

JODY A. STEWART, Official Court Reporter

1113

Ms. Peiffer?

MS. PEIFFER:  Your Honor, *Zook* is the name of the warden.

THE COURT:  It's T-e-l-e-g-u-z.

MS. PEIFFER:  Yes, Your Honor.  I don't know for certain off the top of my head, but that sounds approximately right.  I will note that that case ended at some point, but it's not currently before the Fourth Circuit.

THE COURT:  I know, but what I'm saying is that you meet the qualifications.  The appointment here is after judgment, and you are so appointed.  I have appointed you to replace Ms. Brace in 2021, and you've certainly been admitted to practice in the Court of Appeals for more than five years.

MS. PEIFFER:  That's correct, Your Honor.

THE COURT:  You qualified for capital representation, obviously.

MS. PEIFFER:  Yes, Your Honor.

THE COURT:  So we do have the lead attorney who is qualified.

So we can proceed with the discovery that we are doing, is the point that I'm making.  There is only a requirement for one attorney, and Ms. Peiffer so qualifies under the statute.  I would make that finding.  Her resume

JODY A. STEWART, Official Court Reporter

1114

is before the Court.  Her admission *pro hac vice* is before the Court.  She is designated as lead attorney, and she's certainly been admitted before the Court of Appeals for the Fourth Circuit for more than five years, and she obviously is qualified for death penalty capital case representation.

To the extent that Ms. Peiffer or the Virginia Capital Resources seeks appointment of another attorney, they will have to move the Court for that appointment.  We need to come up with some type of proper discovery schedule at this point.  I'm not requiring, but I recommend that you consider taking some depositions of these experts, because already, I believe Dr. Mirsky, he's deceased?

MR. SAMUELS:  He is, Your Honor.

THE COURT:  So we have got to come up with a discovery schedule in the case, and that's something that the parties need to discuss.  I would hope that you can present some type of agreed order to the Court on discovery.

You've just got to keep this moving, because as far as the Court is concerned, we are in the middle of this evidentiary hearing.  The evidentiary hearing has begun.  The transcripts are all written up.  The only witnesses that were involved in the ethical and *Jencks* violation thus far have been Ms. Sheila Cronin.  There was a document produced after the fact through another witness for Ms. Cronin by Ms. Chavis and the two attorneys.  The individuals can be

JODY A. STEWART, Official Court Reporter

1115

recalled.  In fact, the two attorneys are already on the government's witness list.  Ms. Cronin is local, as I understand it from her testimony, or she's moved?  I see somebody shaking their head.  I knew she gave a local address.

MS. McKEEL:  She was, but she's since moved to Boca Raton, she testified to.

THE COURT:  Then you will just have to make arrangements for her, if you need to examine her further, as the documents are produced.  So you can recall those witnesses.  The first week were basically the lay witnesses, and I don't know that there were any violations in regard to those witnesses, the lay witnesses.  I'm not aware of any, but I don't know what's being produced or not produced.

So as far as the Court is concerned, we need to set a date for some type of report back on the discovery schedule and a new continued hearing date.  I won't require that we do that today, because I know that you've got to look at your schedules.

I will say here that time is of the essence with these documents.  I know that there is a lot to go through, but it's phenomenal to the Court.  It's just a travesty.  I just have to say that on the record.  What has occurred is a travesty.  The case is tragic to begin with, and then on top of that, it's just a travesty what has occurred with this

1116

discovery.  I don't understand how you are in *habeas* litigation all these years and don't have your documents in order.  It just raises questions with the Court, and that's all I can say.  I can't understand how.

Mr. Ferrell, maybe that is something that you need to address with the Court.  This *habeas* litigation has been going on since 2015, I believe.

MR. FERRELL:  Yes, Your Honor, and I don't have a good explanation for the Court, unfortunately, but I can tell you that I have been recently appointed as the supervisor, and that has become one of our priorities, is to make sure that our records are electronically searchable, scanned, available, organized so that we can find them. This travesty, as you call it, is certainly something that I will be fixing.

THE COURT:  What about before the Fourth Circuit and the filings before this Court?  I trust the filings before this Court.  Ms. Brace had appeared before this Court for years, and I'm not casting any dispersions on Ms. Peiffer, because she came into it because of Ms. Brace's health.  But you were in this case at the Fourth Circuit, were you not?

MR. FERRELL:  I was not, but our office certainly was, yes.  So, yes, and those facts, and the facts that I've been reading since the beginning of last week are very

JODY A. STEWART, Official Court Reporter

1117

troubling to me, as well, and something that certainly has to be addressed. I must express some similar viewpoints with the Court.

Unfortunately, at this point I don't have a good explanation for you. I can tell you that this problem will be rectified and will not happen again.

THE COURT: Let me just think for a minute.

It's incumbent upon you and Ms. Maio, if you determine that there has been misrepresentations to the Fourth Circuit or to this Court from your office, other than the ones that are known, to make Ms. Peiffer aware of it and this Court aware of it. I mean, Ms. Peiffer would have to make this Court aware of it because they've been in this case all along, too.

It's incumbent upon you, in my opinion, as an officer of the Court and an officer, basically, of your Defender Services and the United States to make any misrepresentations that have been made to the Fourth Circuit Court of Appeals or this Court, the United States District Court for the Eastern District of Virginia, known to lead counsel, and then it would be her duty to make that known to the Court. Do you understand that obligation?

MR. FERRELL: I certainly do, yes.

THE COURT: Ms. Maio, do your understand that obligation?

JODY A. STEWART, Official Court Reporter

1118

MS. MAIO:  Yes, Your Honor, I do.

THE COURT:  Counsel, I've been on the bench since 1985, and I've never been so disappointed.

With that, I'm going to adjourn court.

(Hearing adjourned at 1:41 p.m.)

CERTIFICATION


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.



X_____/s/_____x

Jody A. Stewart

X_____2-22-2023 _____x

Date


JODY A. STEWART, Official Court Reporter