**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

|  |  |
|---|---|
| DAVID ANTHONY RUNYON,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 4:15-cv-108<br><br>Initial Criminal No. 4:08-cr-16-3<br><br>CAPITAL § 2255 PROCEEDINGS<br>HON. REBECCA BEACH SMITH |

**MOTION FOR TESTING, TRANSPORTATION, AND SECURITY**
**OF PETITIONER DAVID RUNYON**

Petitioner, David A. Runyon, respectfully renews his request for this Court to issue an Order directing the United States Marshals Service to transport Mr. Runyon to a medical center for the purposes of obtaining Prolonged Video Electroencephalographic "EEG" Monitoring. On December 13, 2022, this Court denied Petitioner's original Motion for Testing, Transportation, and Security, but noted that "Petitioner may renew his motion after the evidentiary hearing has begun and the relevant testimony has been heard." ECF No. 718 at 8. The evidentiary hearing has now concluded and testimony from the recently provided transcripts reinforce the need for EEG testing. The request is now ripe for the Court's consideration and Petitioner accordingly renews his motion. In support of this motion, Runyon states the following:

1.     On November 10, 2022, Petitioner filed an Ex Parte Motion for Testing, Transportation, and Security of Petitioner David Runyon at VCU Health Epilepsy Monitoring Unit

1

and Request for Protective Order. ECF No. 705 (hereinafter "Motion for Testing").[1] In that motion, Petitioner explained that Siddhartha Nadkarni, M.D., who has now been qualified as an expert in neuropsychiatry and epileptology in this case, had reviewed many of Runyon's records and identified several indicators for epilepsy, including episodes of unawareness or "unconsciousness" and focal deficits in sustained attention on neuropsychological testing. *Id.*; *see also* ECF No. 706-1, Dr. Nadkarni letter, 11/15/2022. Dr. Nadkarni advised that further examination was warranted to rule out epilepsy, and requested Prolonged EEG Monitoring.

2.    On November 19, 2022, this Court issued an Order to Show Cause, directing Petitioner to show cause on several issues, including "why a current diagnosis of epilepsy would be relevant to the court's determination of whether Petitioner's trial counsel was ineffective at trial in 2009." ECF No. 708 at 7.

3.    Petitioner responded on November 25, 2022. ECF No. 709 (hereinafter "Response to Court Order to Show Cause"). In that Response, Petitioner explained that EEG testing is necessary for the adequate development of the critical issue of whether trial counsel did a reasonable investigation into Runyon's brain damage and mental health in 2009. Mr. Runyon had several indicators in 2009 which should have prompted trial counsel to pursue EEG testing, including significant head injuries, a history of "spells that are very suspicious for epileptic seizures," and abnormalities in his neurological examination that suggest brain injury and are

---

[1] Petitioner initially filed his request ex parte because it contained matters related to the development of his case for the evidentiary hearing, and was filed before the hearing began and before evidentiary disclosures. *See* ECF No. 709 at 1. The request was amended on November 15, 2022, after counsel were contacted by VCU Health with a change to the address where Runyon should report. ECF No. 706 (hereinafter "Amended Motion for Testing"). The Court did not rule on the ex parte status of the motion because it denied the motion. ECF No. 718 at 2 n.2. Now that the hearing has concluded, there is no longer a need for the request to remain ex parte, and Petitioner has no objection to these filings being filed on the public docket at this juncture if the Court deems it appropriate.

"consistent with a potential epileptic focus." *Id.* at 4 (citing Dr. Nadkarni Letter, 11/23/2022, attached). This test would likely have led to a diagnosis of untreated epilepsy, a condition linked with numerous cognitive and psychiatric consequences. Because of its significant effect on behavior and cognition, epilepsy is mitigating in death penalty sentencing proceedings. *Id.* at 4–5 (collecting caselaw). A finding of epilepsy would therefore support Runyon's claim that trial counsel was ineffective for failing to investigate his brain damage and mental health, and also that Runyon was prejudiced as a result.

4.      On December 13, 2022, this Court denied the Motion. ECF No. 718. The Court agreed that "[a] diagnosis of epilepsy is related to the issue on remand from the Fourth Circuit" because "a diagnosis of epilepsy would be a mitigating factor, and some indicators available to counsel before Petitioner's trial support a position that a reasonable attorney would have pursued additional medical testing, which ultimately could have led doctors to order an EEG test for epilepsy." *Id.* at 4. And the Court concluded that a district court has authority to grant a transport order for medical testing under the All Writs Act where the proposed medical testing is "necessary or appropriate in aid of" the court's jurisdiction. *Id.* at 3. But at the time, before there had been any testimony, the Court questioned the probative value of a diagnosis of epilepsy. *Id.* at 4–5. The Court held that "the 'need' and 'appropriateness' of conducting an EEG test in 2023 will become clearer" as the evidentiary hearing proceeds. *Id.* at 6–7. In particular, the Court noted that Dr. Nadkarni could testify as to "how [the] indicators [for EEG testing] impact the reasonableness of counsels' investigation and the likelihood of an EEG test resulting in a diagnosis of epilepsy." *Id.* at 6. Accordingly, the Court denied the motion, but explained that "[s]hould the need and appropriateness of an EEG test become apparent during the evidentiary hearing, the court will be receptive to a renewed motion." *Id.* at 7–8.

5.      The transcript of the November 2023 portion of the evidentiary hearing became available to counsel on December 15, 2023. Dr. Nadkarni's testimony at this hearing has made clear the "need" and "appropriateness" of conducting an EEG. First, he elaborated on the indicators for epilepsy available in 2009 that should have prompted counsel to pursue EEG testing. The first key indicator is Runyon's history of nocturnal episodes and visual hallucinations, which are likely a form of seizure. As Dr. Nadkarni testified, this is a very specific symptom for temporal lobe epilepsy. 2023 Hr'g Tr. 1719:11–15 ("[V]isual hallucinations and the nocturnal dream-like state and the shaking at night, those are very, very in line with temporal lobe epilepsy."); 1845:9–13 (similar). Runyon's history of head injuries also supports a diagnosis of epilepsy, and evidence at the hearing established that Runyon sustained multiple significant head injuries, beginning when he was a toddler. 2023 Hr'g Tr. 1714:8–9; *see also, e.g.*, 2023 Hr'g Tr. 1617:24–1618:2. Dr. Nadkarni opined that he believes Runyon "has epilepsy." 2023 Hr'g Tr. 1596:12–18, 1710:22–1711:3, 1713:3–14. These symptoms all predate 2009, and many date back to Runyon's childhood. 2023 Hr'g Tr. 1718:23–1719:1 (nocturnal spells, a symptom of Runyon's likely epilepsy, date back to his childhood). A reasonable investigation into Mr. Runyon's brain damage and mental health in 2009 would have unearthed these significant and highly specific indicators for epilepsy, flagging a need to rule out the condition with the same prolonged EEG test Mr. Runyon now seeks. Dr. Nadkarni has explained that "[i]t would be standard practice for a neurologist, presented with Mr. Runyon's symptomology, to rule out an epileptic disorder." Dr. Nadkarni letter, 11/22/2022.

6.      Dr. Nadkarni also testified that it is extremely likely that an EEG will lead to confirmation of epilepsy. As already noted, Runyon has several highly specific symptoms of temporal lobe epilepsy, and Dr. Nadkarni testified that in his opinion it is not possible that Runyon was faking these symptoms, given the manner in which he described them. 2023 Hr'g Tr. 1719:5–

9. Because a patient's history is a very important factor in epilepsy diagnosis, Dr. Nadkarni has been able to diagnose Runyon with epilepsy. 2023 Hr'g Tr. 1714:11–15 ("85% of what we base the diagnosis on is the history."); 1710:19–1711:4 (diagnosing epilepsy); 1718:20–22 (similar). Runyon's relevant history and symptoms were available to be developed and considered in preparing his defense to the capital charges in 2009. It is highly likely that an EEG would confirm this and would provide more information about the location and etiology of the epilepsy.

7.      Dr. Nadkarni also elaborated on the potential utility of EEG test results at the hearing. An EEG is a test that measures electrical activity in the brain, 2023 Hr'g Tr. 1714:10–24, and shows "how everything is working and how it is functioning." 2023 Hr'g Tr. 1715:1–10. This testing provides different information than an MRI because it shows "the functional aspect of the tissues," while an MRI shows a static, structural picture of the brain. *Id.* An EEG would identify "where the epilepsy is starting from," and would enable Dr. Nadkarni to classify which type of epilepsy it is. 2023 Hr'g Tr. 1713:5–8, 1713:22–1714:9. He testified that the EEG will likely reveal focal epilepsy, which means it is likely the result of head injury (as opposed to generalized epilepsy, which is genetic, more common in children, and more benign). 2023 Hr'g Tr. 1713:5–1714:9 (explaining that "focal means in one area, and generalized means the EEG shows spikes all over the brain").

8.      Finally, Dr. Nadkarni testified to the cognitive and psychiatric effects of untreated epilepsy. Seizure activity can alter the brain and cause changes in a person's decision-making and judgment, and thus is highly relevant to Runyon's moral culpability, and crucial to the analysis of his ineffective assistance of counsel claim. In particular, untreated epilepsy leads to "the same kinds of problem[s] that you can have from a brain injury. Each seizure is like another little injury to the brain." 2023 Hr'g Tr. 1719:16–20. As Dr. Nadkarni and other experts explained at the

evidentiary hearing, brain injuries like Runyon's have a significant impact on behavior and cognition. Frontal lobe injury is associated with poor decision-making, poor judgment, and poor impulse control, among other serious deficits. 2023 Hr'g Tr. 1649:18–1652:21 (explaining how frontal lobe injury causes impaired executive functioning and disinhibition); 1976:9–18 (similar testimony from Merikangas). Epilepsy "could exacerbate the same symptomatology as frontal lobe injury has. . . . [T]hese are . . . compounding conditions that come together." 2023 Hr'g Tr. 1845:23–1846:8. It would "magnify[] the deficits already present from the head injury." Dr. Nadkarni letter, 11/22/22. These neurological effects are highly relevant to Runyon's ability to control his actions and exercise good judgment, and thus go directly to his degree of responsibility for his criminal conduct. Epilepsy can also cause psychiatric disorders, including schizoaffective disorder. 2023 Hr'g Tr. 1720:10–13.

9.      All of this would have been powerful mitigating evidence. It is well-settled that brain abnormality, including epilepsy, is mitigating. Jurors would have readily understood that Runyon was not to blame for having epilepsy, and yet, as experts like Dr. Nadkarni could have explained, epilepsy is a medical explanation for neurological and psychiatric deficits that caused Runyon's criminal conduct. *See Porter v. McCollum*, 558 U.S. 30, 41, 43 (2009) (finding evidence of defendant's "troubled history," including "brain abnormality" to be mitigating); *Gray v. Branker*, 529 F.3d 220, 236 (4th Cir. 2008) (evidence of mental disorder which "would have provided the jury with a medical explanation" for defendant's behavior "would surely have provided a significant boost" to mitigation case). Many other courts—including the United States Supreme Court—have found prejudice where this sort of evidence is omitted from a mitigation case. *See, e.g.*, *Porter*, 558 U.S. at 43; *Summerlin v. Schriro*, 427 F.3d 623, 643 (9th Cir. 2005) (finding prejudice in part due to failure to present evidence of psychomotor epilepsy, "significant

6

mitigation testimony" because the condition "would have strongly affected [the petitioner's] ability to control his actions after the onset of the seizure"); *Ferrell v. Hall*, 640 F.3d 1199, 1234–35 (11th Cir. 2011) (finding prejudice where counsel failed to introduce evidence that petitioner suffered "organic brain damage to the frontal lobe, bipolar disorder, and temporal lobe epilepsy"). EEG testing is therefore relevant and important to the legal question before the Court: it is likely to substantiate Runyon's claim that he was prejudiced by his trial counsel's ineffectiveness.

10.     Before Petitioner's previous Motion was filed, Petitioner's counsel contacted the VCU Health Epilepsy Monitoring Unit to schedule an appointment. Petitioner's counsel is prepared to coordinate the logistics for such an appointment in a similar manner should the Court grant this request.

## CONCLUSION

Petitioner respectfully requests that this Court grant the request for a transport order for prolonged EEG monitoring.


Dated: December 21, 2023          Respectfully Submitted,

/s/ *Kathryn M. Ali*

Kathryn M. Ali, VSB No. 97966
Ali & Lockwood LLP
300 New Jersey Avenue N.W., Suite 900
Washington, D.C. 20001
Telephone (202) 651-2475
katie.ali@alilockwood.com

Elizabeth J. Peiffer, VSB No. 71353
Robert Lee, VSB No. 37410
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972

epeiffer@vcrrc.org

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, N.W.
Room 650
Washington, D.C. 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

/s/ *Kathryn M. Ali*